## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
**COMPTEL,**                              )
                                          )
                    Plaintiff,            )  Civil Action No. 06CV01718 (HHK)
                                          )
         v.                               )
                                          )
**Federal Communications Commission,**    )
                                          )
                    Defendant.            )
_____)


## <u>PLAINTIFF COMPTEL'S MOTION FOR SUMMARY JUDGMENT</u>

Plaintiff COMPTEL, by undersigned counsel, respectfully moves, pursuant to

Fed. R. Civ. Pro. 56, for summary judgment on its complaint for declaratory and

injunctive relief against Defendant Federal Communications Commission ("FCC").  As

demonstrated in the Statement of Material Facts As To Which There Is No Genuine Issue

and the Memorandum of Points and Authorities submitted herewith, COMPTEL is

entitled to judgment as a matter of law and an order enjoining the FCC from withholding

the documents requested by COMPTEL in its Freedom of Information Act ("FOIA")

request or, in the alternative, an order compelling the FCC to produce the documents to

the Court for an *in camera* inspection and resolution of COMPTEL's entitlement to the

documents under FOIA.   COMPTEL is also entitled as a matter of law to a judgment that

the FCC's failure to comply with the statutory time frame for resolving COMPTEL's

request and its failure to produce any of the documents to which COMPTEL is entitled

constitute  violations of FOIA.

February 12, 2007                                    Respectfully submitted,

 

_____
Mary C. Albert, DC Bar #347617
Jonathan D. Lee, D/C/ Bar #435586
COMPTEL
900 17th Street N.W., Suite 400
Washington, D.C. 20006
(202) 296-6650
malbert@comptel.org
jlee@comptel.org

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                )
**COMPTEL,**                                     )
                                                )
                    Plaintiff,                  ) Civil Action No. 06CV01718 (HHK)
                                                )
        v.                                      )
                                                )
**Federal Communications Commission,**           )
                                                )
                    Defendant.                  )
_____)

<u>**PLAINTIFF COMPTEL'S MEMORANDUM OF POINTS AND AUTHORITIES**</u>
<u>**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**</u>

        Pursuant to Fed. R. Civ. Pro. 56 and LCvR 7, Plaintiff COMPTEL hereby submits

its memorandum of points and authorities in support of its motion for summary judgment

against Defendant Federal Communications Commission ("FCC").  COMPTEL seeks an

order compelling the FCC to produce documents requested pursuant to the Freedom of

Information Act, 5 U.S.C.§552, ("FOIA").  The FCC has violated Section 552(a)(6) of

FOIA by failing to release the requested documents within the time period prescribed by

the statute.  Summary judgment is appropriate where, as here, there are no genuine issues

of material fact and the moving party is entitled to judgment as a matter of law.

<u>**FACTUAL BACKGROUND**</u>

        COMPTEL[1] is a non-profit trade association whose members consist of

communications service providers and their supplier partners.  On April 4, 2005,

COMPTEL, by its in-house counsel Mary C. Albert, submitted an electronic FOIA

request to the FCC for all pleadings and correspondence in FCC File No.

_____

[1]        At the time it filed its FOIA request, COMPTEL was known as CompTel/ALTS.

EBH-04-IH-0342, the file opened to investigate Intervenor AT&T, Inc.[2] for violations of Section 254 of the Communications Act, 47 U.S.C. §254, and Part 54 of the FCC's rules, 47 C.F.R. §§54.1 *et seq.*, in connection with the submission of claims for and receipt of universal service funds for the New London, Connecticut Public Schools.[3] The FCC terminated its investigation in December 2004 upon issuance of an Order adopting a Consent Decree.[4]

On August 24, 2004, the FCC's Enforcement Bureau sent AT&T a Letter of Inquiry ("LOI") notifying the company that the Bureau was investigating whether it had violated the FCC's rules and orders regarding universal service funding.[5] The LOI explicitly warned AT&T that requests for confidential treatment of any materials AT&T submitted to the FCC must comply with the requirements specifically mandated by Section 0.459(b) of the FCC's rules, 47 C.F.R. §0.459(b), and that the Bureau would "not consider confidentiality requests that do not so comply."[6] Section 0.459(b) of the FCC's rules details the showing that must be made by a party seeking confidential treatment for submissions made to the FCC and authorizes the Enforcement Bureau to grant a request for confidentiality only if the request shows by a preponderance of the evidence a case

---

[2]    FCC File No. EB-04-IH-0342 was opened to investigate conduct by SBC Communications, Inc. On November 21, 2005, SBC Communications, Inc. consummated its merger with AT&T Corp. and changed its name to AT&T, Inc. See Intervenor AT&T's Answer at n. 1. For convenience, COMPTEL refers to the former SBC Communications, Inc. as AT&T throughout.

[3]    Statement of Undisputed Facts submitted herewith at ¶¶1-2 and Exhibits A and B.

[4]    Statement of Undisputed Facts at ¶3; Exhibit B Order at ¶3.

[5]    Statement of Undisputed Facts at ¶4 and Exhibit C at 1.

[6]    Statement of Undisputed Facts at ¶5 and Exhibit C at 3-4.

for nondisclosure consistent with the provisions of FOIA.[7]  AT&T responded to the LOI

on September 13, 2004,[8] but apparently did not seek confidential treatment for its

submissions at that time.[9]

    After the FCC notified AT&T of COMPTEL's FOIA request, AT&T requested,

by letter dated May 27, 2005, confidential treatment for the documents it submitted in

response to the LOI and objected to their release as well as to the release of the FCC's

LOI to COMPTEL.[10]  AT&T alleged that all of the documents requested by COMPTEL

were exempt from disclosure under the "'law enforcement-privacy' and 'confidential

commercial information' exemptions to the FOIA's disclosure requirements,"[11] 5 U.S.C.

§§552(b)(7)(C), 552(b)(4).

    Almost one month later, on June 23, 2005, the FCC provided COMPTEL with a

copy of AT&T's May 27, 2005 letter objecting to the disclosure of all documents sought

by COMPTEL.[12]  COMPTEL responded to SBC's objections to the release of the

documents by letter to the Enforcement Bureau dated June 28, 2005.[13]

    By letter dated August 5, 2005 addressed to AT&T and COMPTEL, William H.

Davenport, Chief of the FCC's Enforcement Bureau, Investigations and Hearings

---

[7]    47 C.F.R. §0.459(b).

[8]    Statement of  Undisputed Facts at ¶6 and Exhibit C at 1.

[9]    Statement of Undisputed Facts at ¶7 and Exhibit C.

[10]    Statement of Undisputed Facts at ¶¶8-9 and Exhibit D at 2.

[11]    Statement of Undisputed Facts at ¶9 and Exhibit D at 2.

[12]    Statement of Undisputed Facts at ¶10 and Exhibit D at 1.

[13]    Statement of Undisputed Facts at ¶11 and Exhibit E.

Division,  relayed the Enforcement Bureau's determination that AT&T's request for confidential treatment "substantially fail[ed] to comply with the standards set forth in Section 0.459(b) of the Commission's rules," 47 C.F.R. § 0.459(b).[14]  The Bureau rejected AT&T's claim that the documents were wholly exempt from disclosure under FOIA Exemption 7.[15]  It also found that AT&T did not provide the FCC with "any specific reasons for withholding its responses in their entirety," did not "explain the degree to which specific information is commercial or financial or contains a trade secret," and did not "explain how disclosure of such information could result in substantial competitive harm."[16]

Despite the deficiencies in AT&T's showings,  the Enforcement Bureau nonetheless found that "certain information in [AT&T's] submissions constitutes commercial or financial information, the disclosure of which could result in substantial competitive harm to [AT&T]," and was "exempt from disclosure under FOIA Exemption 4," 5 U.S.C. §552(b)(4).[17]  The Bureau also stated that it would withhold from disclosure "drafts of Bureau pleadings and correspondence, memoranda and emails, distributed among Commission staff, which discuss the issues and investigation related to this matter," pursuant to FOIA exemption 5, 5 U.S.C.§ 552(b)(5).[18]  The Bureau did not

---

[14]     Statement of Undisputed Facts at ¶14 and Exhibit C at 3-6.

[15]     Statement of Undisputed Facts at ¶15 and Exhibit C at 3, 5-6.

[16]     Statement of Undisputed Facts at ¶14 and Exhibit C at 4.

[17]     Statement of Undisputed Facts at ¶15 and Exhibit C at 5.

[18]     Statement of Undisputed Facts at ¶ 16 and Exhibit C at 6.

identify the documents or provide an estimate of the number of pages or documents it proposed to withhold.[19]

The Bureau's letter informed COMPTEL and AT&T that the Bureau would produce the non-exempt documents to COMPTEL if AT&T failed to file an application for review of the Bureau's decision with the FCC's Office of General Counsel within 10 working days.[20]  The letter also informed COMPTEL of its right to file an application for review of the Bureau's action within 30 days.[21]

On August 19, 2005, AT&T timely filed an application for review of the Enforcement Bureau's determination to release documents to COMPTEL[22] and COMPTEL responded on September 1, 2005.[23]  On September 6, 2005, COMPTEL filed an application for review of the Bureau's determination to withhold documents pursuant to Exemptions 4 and 5.[24]  In its application for review, COMPTEL asked the Commission for a *Vaughn* index of any documents it proposed to withhold.[25]

As of this date, the FCC has not ruled either on COMPTEL's or on AT&T's application for review, has not released any documents to COMPTEL, has not provided an estimate of the number of pages or documents it proposes to withhold and has not

---

[19]     Statement of Undisputed Facts, Exhibit C.

[20]     Statement of Undisputed Facts at ¶17 and Exhibit C at 1, 6.

[21]     *Id.*

[22]     Statement of Undisputed Facts at ¶18 and Exhibit G.

[23]     Statement of Undisputed Facts at ¶19 and Exhibit H.

[24]     Statement of Undisputed Facts at ¶20 and Exhibit I.

[25]     Statement of Undisputed Facts at ¶21 and Exhibit I at 6.

provided a *Vaughn* index identifying with specificity the documents it proposes to withhold and the FOIA Exemptions justifying the withholdings.[26]

According to the FCC's Freedom of Information Act Annual Report for Fiscal Year 2005 (October 1, 2004 to September 30, 2005), the average FCC response time for administrative appeals of FOIA decisions in fiscal year 2005 was 292 days, almost 15 times the statutory time limit.[27]

According to the FCC's Freedom of Information Act Annual Report for Fiscal Year 2006 (October 1, 2005 to September 30, 2006), the average FCC response time for administrative appeals of FOIA decisions in fiscal year 2006 was 338 days, almost 17 times the statutory time limit.[28]  The FCC has not acted on COMPTEL's administrative appeal for more than 500 days, or more than 25 times the statutory time limit.

## ARGUMENT

Fed. R. Civ. Pro 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no *genuine issue* as to any *material fact* and that the moving party is entitled to a judgment as a matter of law" (emphasis added).  The Supreme Court has explained that only disputes over facts that might affect the outcome of the suit under governing law should preclude the entry of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[26]    Statement of Undisputed Facts at ¶¶ 23, 27.

[27]    Statement of Undisputed Facts at ¶25.

[28]    Statement of Undisputed Facts at ¶26.

The substantive law governing COMPTEL's motion is straightforward. The FOIA requires every federal agency, upon request, to make "promptly available to any person" any "records" so long as the request "reasonably describes such records" and the records are not subject to an exemption from disclosure. 5 U.S.C. §552(a)(3). *Assassination Archives & Research Ctr. v. CIA*. 334 F.3d 55, 57 (D.C. Cir. 2003). The statute sets forth specific time limits within which federal agencies must act on FOIA requests. 5 U.S.C. §552(a)(6)(A). To the extent it seeks to withhold records, the agency must provide an estimate of the volume of records it proposes to withhold. 5 U.S.C. §552(a)(6)(F). The agency also bears the burden of demonstrating the applicability of one of nine specific exemptions that shield the records from disclosure. 5 U.S.C. §552(b). The law is clear that

> [i]f an agency invokes an exemption, it bears the burden of establishing the applicability of the claimed exemption. And, even if an agency establishes an exemption, it must nonetheless disclose all reasonably segregable, nonexempt portions of the requested record(s). 5 U.S.C. §552(b).

*Assassination Archives & Research Ctr. v. C.I.A*, 334 F.3d at 57.

There is no dispute with respect to any material fact in this case and COMPTEL is entitled to judgment on its Complaint as a matter of law. COMPTEL's electronic FOIA request identified specific agency records in the possession of the FCC. The FCC did not allege that every responsive record was subject to withholding pursuant to a specific FOIA Exemption. The FCC has failed to provide any of the requested records to COMPTEL despite the fact that the statutory time limitations have long since expired. As a result, COMPTEL is entitled to a declaration that the FCC has violated the FOIA and an order directing the FCC to release the documents requested by COMPTEL

without further delay.  In the alternative, COMPTEL is entitled to an order directing the FCC to produce a *Vaughn* Index along with the requested documents to the Court for an *in camera* inspection and resolution of COMPTEL's right to the documents under FOIA.

## I.  Standing and Jurisdiction

COMPTEL has standing to bring this action.  Section 552(a)(6)(C)(i) of FOIA, 5 U.S.C. § 552(a)(6)(C)(i), provides that any person making a request for documents shall be deemed to have exhausted his administrative remedies if the government fails to comply with the applicable statutory time limits.  Section 552(a)(6)(A)(ii) of FOIA, 5 U.S.C. § 552(a)(6)(A)(ii), requires the FCC to make a determination with respect to any administrative appeal of a FOIA action within 20 working days of receipt of the appeal.

COMPTEL has constructively exhausted its administrative remedies because the FCC has failed to act on its application for review of the Enforcement Bureau's decision for more than 500 days, well beyond the 20 day statutory time limit.   See, *Oglesby v. United States Dep't. Of The Army*, 920 F.2d 57, 62 (D.C. Cir. 1990) ("[i]f the agency has not responded within the statutory time limits, then, under 5 U.S.C. §552(a)(6)(C), the requester may bring suit").

The FCC's failure to render a decision on COMPTEL's application for review of the Enforcement Bureau's action for more than 500 days after receipt of COMPTEL's appeal is a flagrant violation of the FOIA's statutory time limitations and COMPTEL is entitled to a declaratory ruling so holding.  The FCC's failure to produce the documents requested by COMPTEL is also a flagrant violation of its statutory obligations under FOIA and COMPTEL is entitled to a declaratory ruling so holding.

Section 552(a)(4)(B) of FOIA, 5 U.S.C. § 552(a)(4)(B), confers jurisdiction on this Court to enjoin the FCC from withholding the records requested by COMPTEL and to order the production of all records improperly withheld.  That Section also confers jurisdiction on this Court to examine the contents of the requested agency records *in camera* to determine whether such records or any part thereof should be withheld under any of the exemptions set forth in Section 552(b), 5 U.S.C. § 552(b).  COMPTEL is entitled to an order from this Court directing the FCC to release the records requested by COMPTEL.  In the alternative, COMPTEL is entitled to an order from this Court directing the FCC to produce both a *Vaughn* Index and the records requested for an *in camera* inspection to determine whether any exemptions legitimately apply.

## II.    The FCC Has Improperly Withheld Records

The FCC's Enforcement Bureau conceded eighteen months ago that it has identified documents responsive to COMPTEL's FOIA request and that COMPTEL is entitled to at least some of those documents.[29]  The FCC has not yet produced any of those documents.[30]

The FCC was required by statute to have decided COMPTEL's application for review of the Enforcement Bureau's decision denying access to the remaining documents over 16 months ago.  The FCC has taken no action on COMPTEL's application for review and has stated its intent not to release any records to COMPTEL prior to this Court's ruling on any dispositive motions.[31]  As demonstrated by the 338 day average

---

[29]    Statement of Undisputed Facts at ¶¶12, 17; Exhibit C 1, 6; Exhibit F.

[30]    Statement of Undisputed Facts at ¶23.

[31]    *See* Stipulated Scheduling Order at n. 1.

time frame for resolving administrative appeals of FOIA actions, the FCC's failure to

timely act on COMPTEL's application for review is not out of the ordinary. Rather, it is

part of a pattern of conduct that blatantly violates the FOIA and frustrates its purpose.

The FCC's failure to comply with the statutory deadlines for production of the

requested documents and its failure to adequately explain why any document requested

by COMPTEL has been lawfully withheld precludes a finding that the FCC has properly

withheld any of the documents requested. *See Electronic Privacy and Information*

*Center v. Dep't. Of Justice,* 416 F. Supp. 2d 30, 40 (D.D.C. 2006) ("Congress recognized

that delay in complying with FOIA requests is 'tantamount to denial.'").

The FCC has the burden of demonstrating the applicability of a FOIA exemption

to every document or portion of a document that it wishes to withhold from disclosure.

The D.C. Circuit has described that burden as follows:

> the burden which the FOIA specifically places on the Government to show
> that the information withheld is exempt from disclosure cannot be satisfied
> by the sweeping and conclusory citation of an exemption plus submission
> of disputed material for *in camera* inspection. . . . Thus, *we require that*
> *when an agency seeks to withhold information it must provide a relatively*
> *detailed justification, specifically identifying the reasons why a particular*
> *exemption is relevant and correlating those claims with the particular part*
> *of a withheld document to which they apply*.

*Mead Data Cent., Inc. v. United States Dep't. Of The Air Force*, 566 F.2d 242, 251 (D.C.

Cir. 1977) (emphasis added), citing *Vaughn v. Rosen*, 484 F.2d 820, 824-26 (D.C. Cir.

1973), *cert. denied*, 415 U.S. 977 (1974); *Summers v. U.S. Dep't of Justice,* 140 F. 3d.

1077, 1080 (D.C.Cir. 1998) (in order to carry its burden of proving that an exemption

applies, agency must submit a *Vaughn* index to explain why information was withheld).

The *Vaughn* index requirement, which is designed to permit a FOIA requester to

effectively present his case and challenge exemptions invoked by the agency, "is equally

applicable to proceedings *within the agency*." *Mead Data Cent., Inc. v. United States Dep't. Of The Air Force*, 566 F.2d at 251 (emphasis added).

The Enforcement Bureau's decision on COMPTEL's FOIA request did not come close to adequately identifying the documents, or portions thereof, it proposed to withhold or explaining how the documents fit within any of FOIA's exemptions. Instead, the Bureau merely alleged that FOIA Exemption 4 protected certain "commercial or financial" information in AT&T's submissions to the Commission, "the disclosure of which could result in substantial competitive harm to [AT&T]."[32]   The Bureau stated that the exempt information "include[d], but was not limited to, costs and pricing data [and] billing and payment dates,"[33] but it did not define the specific competitive harm that their release would cause AT&T.  Nor did the Bureau identify the number of documents or pages it was proposing to withhold, the dates of the documents, the authors or recipients of the documents, the subject matter of the documents or whether any nonexempt material in the documents was segregable.  In addition, the Bureau alleged that drafts of intra-agency pleadings and correspondence, memoranda and emails discussing the investigation were protected from disclosure pursuant to FOIA Exemption 5, but did not otherwise describe the documents or the volume of pages that it proposed to withhold.[34]   These are the very types of "conclusory and generalized allegations of exemptions" that have been repudiated by the D.C. Circuit as insufficient to satisfy the agency's burden under FOIA.  See *Vaughn v. Rosen*, 484 F.2d at 826.

---

[32]      Statement of Undisputed Facts at ¶15 and Exhibit C at 5.

[33]      Statement of Undisputed Facts, Exhibit C at 5.

[34]      Statement of Undisputed Facts, Exhibit C.

### a. The FCC Has Failed to Demonstrate That Any Records Are Exempt From Disclosure Under Exemption 4

The FCC's rules set forth specific criteria that parties requesting confidential treatment for documents submitted to the agency must meet.[35]  Before AT&T submitted any documents to the FCC in connection with the Bureau's investigation, the Bureau warned AT&T that requests for confidential treatment must comply with the requirements specifically mandated by the FCC's rules.[36]  AT&T apparently did not request confidential treatment for any of its documents at the time they were submitted to the FCC.  Indeed, AT&T did not request confidential treatment until after the FCC notified it of COMPTEL's FOIA request.[37]

The Bureau correctly found that AT&T's belated request for confidential treatment was woefully inadequate:

> [AT&T] has failed to provide a statement of specific reasons for withholding its responses in their entirety.  While generally categorizing the information contained in its submissions, [AT&T] does not, as required by section 0.459(b)(3) explain the degree to which specific information is commercial or financial or contains a trade secret.  Nor does it explain, as required by section 0.459(b)(5), how disclosure of such information could result in substantial competitive harm.  [AT&T] also fails to state whether any of the information for which it seeks protection is already available to the public.[38]

Despite these findings, the Bureau determined on its own that disclosure of certain information "could result in competitive harm to [AT&T]" and stated its intent to withhold certain documents, including, but not limited to, AT&T's costs and pricing data,

---

[35]     47 C.F.R.§ 0.459(b).

[36]     Statement of Undisputed Facts at ¶5.

[37]     Statement of Undisputed Facts at ¶8.

[38]     Statement of Undisputed Facts ¶14.

invoice and discount amounts, and its billing and payment dates pursuant to FOIA

Exemption 4.[39]

Exemption 4 does not protect from disclosure the rates AT&T charged or the

discounts it provided to any participating schools and libraries because that information

already is in the public domain.  Section 54.501(d)(3) of the FCC's rules, 47 C.F.R.

§54.501(d)(3), requires universal service recipients, such as AT&T, to make records of

rates charged and discounts allowed to participating schools available for public

inspection.[40]

While acknowledging the applicability of the public inspection rule, the Bureau

stated that AT&T could comply with its requirements "by maintaining a 'public

inspection' file containing the required rate information" and that "the rule does not

mandate disclosure of the SBC invoice and discount information pursuant to

COMPTEL's FOIA request."[41]   The FCC's justification for withholding the information

has no legal basis.

Exemption 4 permits an agency to withhold from disclosure *confidential*

commercial and financial information.  Commercial or financial information is

"confidential" if its disclosure is likely to cause substantial competitive harm to the entity

from which the information was obtained.  *CNA Financial Corporation v. Donovan,* 830

F. 2d 1132, 1152 (D.C. Cir. 1987).  A claim to confidentiality cannot be sustained under

---

[39]    Statement of Undisputed Facts at ¶15, Exhibit C at 5.

[40]    Section 54.501(d)(3) of the FCC's rules requires service providers to "keep and
retain records of rates charged to and discounts allowed for eligible schools and libraries
– on their own or as part of a consortium.  Such records shall be made available for
public inspection."

[41]    Exhibit C at 5.

Exemption 4 for any data that is already in the public domain. *Id.* 830 F.2d at 1154 (exemption 4 does not shield data that are in the public domain from disclosure). To the extent that any of the requested documents show the rates AT&T charged or the discounts it allowed – i.e., the information required to be maintained in its "public inspection" file – neither Exemption 4 nor any other Exemption protects the documents from disclosure. *See Tax Analysts v. United States Dep't. Of Justice,,* 845 F.2d 1060 (D.C. Cir. 1988), *aff'd sub nom., United States Dep't. Of Justice v. Tax Analysts*, 492 U.S. 136 (1989) (DOJ's refusal to produce publicly available tax decisions constituted improper withholding under FOIA because no FOIA exemption permitted withholding).

As for the other information the Enforcement Bureau determined to withhold pursuant to Exemption 4 – *i.e.*, billing and payment dates and cost information -- the FCC did not show how disclosure would cause substantial competitive harm to AT&T. After concluding that AT&T had failed to show how disclosure of any of the information could result in substantial competitive harm, the Bureau's own conclusory and generalized allegation of substantial competitive harm cannot support a decision to withhold the requested documents.[42] *See CNA Financial Corporation v. Donovan,* 830 F. 2d at 1154 (competitive harm is "harm flowing from the affirmative use of proprietary information by competitors"); *Public Citizen Health Research Group v. Food and Drug Administration*, 704 F.2d 1280, 1291 (D.C. Cir. 1983) (competitive harm does not mean simply an injury to competitive position as might flow from customer or employee disgruntlement or embarrassing publicity).

---

[42] Statement of Undisputed Facts ¶14, Exhibit C at 4.

### b. The FCC Has Failed to Demonstrate that Any Records Are Exempt From Disclosure Under Exemption 5

Exemption 5 of the FOIA permits an agency to withhold inter-agency or intra-agency memoranda that would not be available to a private party in litigation with the agency through discovery.  In invoking this exemption, the Enforcement Bureau stated that it "will withhold from public disclosure drafts of pleadings and correspondence, and memoranda and emails, distributed among Commission staff which discuss the issues and investigation related to this matter."[43]  The burden is on the FCC to prove that Exemption 5 protects all of these materials.  *Vaughn v. Rosen,* 484 F.2d 820, 826-27.  The Bureau's conclusory and generalized allegation that Exemption 5 applies to all of the withheld material does not satisfy that burden.

In order to justify withholding the documents, the FCC is required to describe both the contents of each of the withheld documents and enough about their context to establish that Exemption 5 applies.  *SafeCard Services, Inc. v. Securities and Exchange Commission*, 926 F.2d 1197, 1204 (D.C. Cir. 1991); *Vaughn v. Rosen,* 484 F.2d 820 (withheld documents must be described and indexed).  The Bureau provided no details with respect to the number of documents or pages being withheld, the dates of the documents, the authors or recipients of the documents, the subject matter of the documents or the factual content of the documents.[44]  Because the Bureau's decision neither identified the documents withheld with particularity nor described their contents, there is no basis for the Court to find that the documents have been properly withheld.

---

[43]     Statement of Undisputed Facts at ¶16.

[44]     Statement of Undisputed Facts, Exhibit C at 6.

Moreover, Exemption 5 does not protect any purely factual material appearing in intra-agency documents in a form that is severable without compromising the deliberative or policy making material contained therein. *Mead Data Cent., Inc. v. United States Dep't. Of The Air Force*, 566 F.2d at 254 (the deliberative process exemption does not permit the nondisclosure of underlying factual content of documents without a showing that facts would reveal advice, opinions or evaluations circulated within agency as part of decision making process); *Environmental Protection Agency v. Mink*, 410 U.S. 73 (1973) (agency must demonstrate by surrounding circumstances that particular documents are purely advisory or deliberative and contain no separate factual information); *Sterling Drug v. Federal Trade Commission,* 450 F.2d 698 (D.C. Cir. 1971) (while communications of thoughts and opinions are to be protected, statements of fact are subject to disclosure). The FCC has not alleged that any of the withheld documents contain no segregable statements of fact and has therefore failed to demonstrate that they have been properly withheld.

Finally, intra-agency memoranda that explain decisions not to file a complaint are final opinions made in the adjudication of a case that fall outside the scope of Exemption 5. *National Labor Relations Board v. Sear Roebuck & Co.,* 421 U.S. 132 (1975); *SafeCard Services, Inc. v. Securities and Exchange Commission*, 926 F.2d 1197, 1204 (D.C. Cir. 1991) (agency's decision not to file injunctive action against a particular entity is final agency action in the adjudication of a case). The Bureau's investigation into AT&T's violations of the Commission's universal service rules was terminated upon the adoption of a Consent Decree.[45]   A complaint was never filed.   To the extent that any

---

[45]        Statement of Undisputed Facts, Exhibit B.

of the documents withheld pursuant to Exemption 5 reflect an explanation of the Bureau's or the Commission's decision not to pursue a complaint against AT&T, they must be produced.

### III.    COMPTEL Is Entitled To Judgment As A Matter of Law

This Court has jurisdiction to enjoin the FCC from withholding the records requested by COMPTEL and to order the production of the records improperly withheld. *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 494 (D.C.Cir. 1988) (courts have a duty to prevent agencies from engaging in unreasonable delays in disclosing non-exempt documents); *Electronic Privacy and Information Center v. Dep't. Of  Justice,* 416 F. Supp. 2d 30, 35 (D.D.C. 2006) (same); *United States Dep't. Of Justice v. Tax Analysts*, 492 U.S. 136 (1989).  The undisputed facts show that the FCC has determined that it has approximately 3200 pages of records responsive to COMPTEL's FOIA request and that it has not produced those records for almost two years after the request was made.  The undisputed facts also show that the FCC has not demonstrated with the requisite particularity that FOIA Exemptions 4 or 5 properly protect from disclosure any of the documents it proposes to withhold.  Thus, the FCC has improperly withheld documents from COMPTEL and COMPTEL is entitled to an order enjoining the FCC from withholding the records.  *Electronic Privacy and Information Center v. Dep't. Of Justice,* 416 F. Supp. 2d at 40 ("Congress recognized that delay in complying with FOIA requests is 'tantamount to denial.'"); *United States Dep't. Of Justice v. Tax Analysts*, 492 U.S. at 150 (agency's failure to produce records that do not fall within one of the nine FOIA exemptions constitutes improper withholding).

In the event this Court determines that it should conduct an *in camera* review of the documents prior to ordering production, it must compel the FCC to produce a *Vaughn* index describing "*each* document or portion thereof withheld" and relating "for *each* withholding . . . the consequences of disclosing the sought-after information." *King v. United States Dep't. Of Justice*, 830 F.2d 210, 223-224 (D.C. Cir. 1987) (emphasis in original).

## <u>CONCLUSION</u>

For the foregoing reasons, COMPTEL respectfully requests that the Court grant its motion for summary judgment against Defendant FCC and issue an order

(1) enjoining the FCC from withholding the documents responsive to COMPTEL's FOIA request or, in the alternative, compelling Defendant FCC to produce the documents requested by COMPTEL to the Court for an *in camera* inspection and resolution of COMPTEL's entitlement to the documents under FOIA;

(2) compelling the FCC to disclose the volume of documents withheld and to produce a *Vaughn* index that describes each document or portion thereof withheld and why each document or portion thereof is exempt from disclosure;

(3) declaring that the FCC's refusal to disclose the documents requested by COMPTEL is unlawful; and

(4) declaring that the FCC's failure to comply with the 20 day statutory time frame for resolving administrative appeals of FOIA requests is unlawful.

February 12, 2007                              Respectfully submitted,


_____
Mary C. Albert, DC Bar #347617
Jonathan D. Lee, D/C/ Bar #435586
COMPTEL
900 17th Street N.W., Suite 400
Washington, D.C. 20006
(202) 296-6650
malbert@comptel.org
jlee@comptel.org

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **COMPTEL,** | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 06CV01718 (HHK) |
| | ) | |
| v. | ) | |
| | ) | |
| **Federal Communications Commission,** | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF COMPTEL'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE

Pursuant to Fed. R. Civ. Pro. 56 and LCvR 7, Plaintiff COMPTEL hereby submits its Statement of Material Facts As To Which There Is No Genuine Dispute. This Statement is submitted in support of COMPTEL's Motion For Summary Judgment filed simultaneously herewith.

1. On April 4, 2005, COMPTEL, through its in-house counsel Mary C. Albert, submitted an electronic Freedom of Information Act ("FOIA") request to Defendant Federal Communications Commission ("FCC") for "all pleadings and correspondence" contained in FCC File No. EB-04-IH-0342. Complaint at ¶ 5; FCC's Answer to Complaint at ¶5; and Exhibit A attached hereto.

2. FCC File No. EB-04-IH-0342 relates to the investigation of Intervenor AT&T, Inc.[1] for violations of "Part 54 of the Commission's rules in connection with

---

[1]     FCC File No. EB-04-IH-0342 was opened to investigate conduct by SBC Communications, Inc. On November 21, 2005, SBC Communications, Inc. consummated its merger with AT&T Corp. and changed its name to AT&T, Inc. See

[AT&T] Connecticut's receipt of universal service support for New London Public Schools ('NPLS') projects." *In the Matter of SBC Communications, Inc*, DA 04-3893, Order and Consent Decree, attached as "Exhibit B" hereto.

3. The FCC terminated its investigation into AT&T's conduct upon adopting an Order approving a Consent Decree between the FCC and Intervenor AT&T on December 16, 2004. Exhibit B, Order at ¶3.

4. On August 24, 2004, the FCC's Enforcement Bureau sent AT&T a Letter of Inquiry ("LOI") notifying the company that the Bureau was investigating whether it had violated the FCC's rules and orders regarding universal service funding. Exhibit C attached hereto.

5. According to the FCC, the LOI issued to AT&T by the Enforcement Bureau explicitly warned AT&T that requests for confidential treatment of any submissions to the FCC must comply with the requirements specifically mandated by section 0.459(b) of the FCC's rules, 47 C.F.R. §0.459, and that the Bureau would "not consider confidentiality requests that do not so comply." Exhibit C, at 3-4. Section 0.459 of the FCC's rules authorizes the Bureau to grant a request for confidentiality only if the request shows by a preponderance of the evidence a case for nondisclosure consistent with the provisions of FOIA.[2]

6. On September 13, 2004, AT&T responded to the Bureau's August 24, 2004 LOI. Exhibit C at 1.

---

Intervenor AT&T's Answer at n. 1. For convenience, COMPTEL refers to the former SBC Communications, Inc. as AT&T throughout.

[2]    47 C.F.R. §0.459(d)(2).

7. Despite the Enforcement Bureau's warning regarding requests for Confidential treatment that failed to comply with the FCC's rules, AT&T apparently did not seek confidential treatment for its submissions when it responded to the Bureau's LOI. See Exhibit C.

8. Not until after the FCC notified AT&T of COMPTEL's FOIA request did AT&T seek confidential treatment for the materials it had submitted to the FCC in response to the LOI. Its request for confidential treatment was made in a letter dated May 27, 2005 opposing the release of any records in response to COMPTEL's FOIA request. Exhibit D attached hereto.

9. In its May 27, 2005 letter, AT&T sought confidential treatment for all of the materials it had submitted to the FCC and opposed the release of any of the requested records to COMPTEL, including the FCC's August 24, 2004 LOI. AT&T contended that all of the records requested by COMPTEL were exempt from disclosure under the "'law enforcement-privacy' and 'confidential commercial information' exemptions to the FOIA's disclosure requirements." 5 U.S.C. §§552(b)(4), (b)(7). Exhibit D at 2.

10. On June 23, 2005, the FCC provided COMPTEL with a copy of AT&T's May 27, 2005 letter objecting to its FOIA request. Exhibit D at 1.

11. On June 28, 2005, COMPTEL responded to AT&T's objections to the release of any records in response to the FOIA request. Exhibit E attached hereto.

12. On July 20, 2005, the FCC notified COMPTEL that it had identified approximately 3200 pages of documents that were responsive to COMPTEL's request. Exhibit F attached hereto.

13. COMPTEL agreed to pay the FCC approximately $2100.00 for the search, review and copying costs incurred in responding to its FOIA request. Exhibit F.

14. By letter dated August 5, 2005 addressed to AT&T and COMPTEL, William H. Davenport, Chief of the Investigations and Hearings Division of the FCC's Enforcement Bureau, relayed the Enforcement Bureau's determination that AT&T's request for confidential treatment was deficient and substantially failed to comply with the requirements of the FCC's rules. The Bureau found that AT&T did not provide the FCC with any "specific reasons for withholding its responses in their entirety" and further did "not . . . explain the degree to which specific information is commercial or financial or contains a trade secret." The Bureau further found that AT&T also did not explain "how disclosure of such information could result in substantial competitive harm." Additionally, the Bureau noted that AT&T failed to disclose whether any of the information for which it sought confidential treatment was already available to the public. Exhibit C, at 3-4.

15. Although it determined that AT&T did not explain the degree to which specific information was commercial or financial information or how disclosure of such information would result in substantial competitive harm, the Enforcement Bureau found that "certain information in [AT&T's] submissions constitutes commercial or financial information, the disclosure of which could result in substantial competitive harm to [AT&T]," and was "exempt from disclosure under FOIA Exemption 4," 5 U.S.C. §552(b)(4). Exhibit C at 5. The Bureau did not identify the documents or provide an estimate of the number of pages or documents it proposed to withhold pursuant to Exemption 4. Exhibit C.

4

16.   The Bureau also asserted that it would withhold from disclosure "drafts of Bureau pleadings and correspondence, memoranda and emails, distributed among Commission staff, which discuss the issues and investigation related to this matter," pursuant to FOIA exemption 5, 5 U.S.C.§ 552(b)(5).  Exhibit C at 6.   The Bureau did not identify the documents provide an estimate of the number of pages or documents it proposed to withhold pursuant to Exemption 5.  Exhibit C.

17.   Finally, the Bureau's letter informed COMPTEL and AT&T that the Bureau would produce the non-exempt documents to COMPTEL if AT&T failed to file an application for review with the FCC's Office of General Counsel within 10 working days. The letter also informed COMPTEL of its right to file an application for review of the Bureau's action within 30 days.  Exhibit C at 1, 6.

18.   On August 19, 2005, AT&T timely filed an application for review of the Enforcement Bureau's determination to release documents in response to COMPTEL's FOIA request.  Complaint at ¶6, FCC's Answer at ¶6; and Exhibit G attached hereto.

19.   COMPTEL responded to AT&T's application for review on September 1, 2005.  Complaint at ¶6; FCC's Answer at ¶6; and Exhibit H attached hereto.

20.   On September 6, 2005, COMPTEL timely filed an application for review of the Bureau's determination to withhold certain documents  Complaint at ¶6; FCC's Answer at ¶6; and Exhibit I attached hereto.

21.   In its application for review, COMPTEL asked the FCC for a *Vaughn* index of any documents it proposed to withhold.  Exhibit I at 6.

22.   AT&T responded to COMPTEL's application for review on September 20, 2005.  Exhibit J attached hereto.

23. As of this date, the FCC has not ruled on COMPTEL's or AT&T's applications for review and has released no documents to COMPTEL. Complaint at ¶¶6,7; FCC's Answer at ¶¶6, 7.

24. Despite its admission that the statutory time period for resolving COMPTEL's application for review expired over one year ago and its Enforcement Bureau's determination that COMPTEL is entitled to some documents, Defendant FCC has told this Court that it has no intention of releasing any records to COMPTEL "prior to the Court's ruling on any dispositive motion filed in this case." Complaint at ¶8; FCC's Answer at ¶8; Stipulated Scheduling Order at n. 1.

25. According to the FCC's Freedom of Information Act Annual Report for Fiscal Year 2005 (October 1, 2004 to September 30, 2005), the average FCC response time for FOIA appeals in fiscal year 2005 was 292 days, almost 15 times the statutory time limit. Complaint at ¶9; FCC's Answer at ¶9.

26. According to the FCC's Freedom of Information Act Annual Report for Fiscal Year 2006 (October 1, 2005 to September 30, 2006),[3] the average FCC response time for FOIA appeals in fiscal year 2006 was 338 days, almost 17 times the statutory time limit.

27. As of this date, the FCC has failed to provide COMPTEL with an estimate of the number of pages or documents it proposes to withhold or a *Vaughn*

---

[3]    Available at http://www.fcc.gov/foia/2006foiareport.pdf.

index or any other particularized description of the documents that it proposes to

withhold. The FCC has also failed to explain specifically, and with particularity, why all,

or any portions, of the documents not produced are properly withheld under FOIA.

February 12, 2007                        Respectfully submitted,

                                         _____
                                         Mary C. Albert, DC Bar #347617
                                         Jonathan D. Lee, D/C/ Bar #435586
                                         COMPTEL
                                         900 17th Street N.W., Suite 400
                                         Washington, D.C. 20006
                                         (202) 296-6650
                                         malbert@comptel.org
                                         jlee@comptel.org

# Exhibit A

Project Code  *M 3100*

# ★URGENT
## Freedom of Information Act
### PRIORITY PROCESSING REQUIRED

Priority processing required under provisions of The Freedom of Information Act

## Records not routinely available

*2 005 - 333*

_____
**Bureau/Office**

*EB*

_____
**Date Time Limit Expires**

*05/02/05*

Other coordinating Bureaus/Offices

_____

_____

# URGENT
## PRIORITY PROCESSING REQUIRED

Form A 202

**Patricia Quartey**

| | |
|---|---|
| From: | Mary C. Albert [malbert@comptelascent org] |
| Sent: | Monday, April 04, 2005 10:52 AM |
| To: | FOIA |
| Subject: | Electronic FOIA (E-FOIA) Request Form |

Mary C. Albert
CompTel/ALTS, 1900 M Street N.W.
800
Washington, DC
20036

Phone Number: (202)296-6650
Fax Number:(202)296-7585
Email Address: malbert@comptelascent.org

Date of Request: 04/04/2005

Mary C. Albert Requests:
All pleadings and correspondence contained in File No. EB-04-IH-0342.
-----------------------------------------------------
Subject: Enforcement Bureau investigation into SBC Communications, Inc. compliance with 47 USC Section 254 and 47 CFR Part 54.

Maximum Fee: $50.00

Listed In CFR 47:
If Yes Give Reasons for Inspection:

Is the requester entitled to a restricted fee assessment? No
If Yes Give Reasons for Inspection:

Any Additional Information and/or Comments:

Server protocol: HTTP/1.1
Remote host: 208.178.77.162
Remote IP address: 208.178.77.162

# Exhibit B

Federal Communications Commission _____ DA 04-3893

**Before the**
**FEDERAL COMMUNICATIONS COMMISSION**
Washington, D.C. 20554

|                           |   |                          |
|---------------------------|---|--------------------------|
| In the Matter of          | ) | File No. EB-04-IH-0342   |
|                           | ) |                          |
| SBC Communications Inc.   | ) | Acct. No. 200532080007   |
|                           | ) |                          |
|                           | ) | FRN No. 0005049150       |

**ORDER**

Adopted: **December 14, 2004**                    Released: **December 16, 2004**

By the Chief, Enforcement Bureau:

1.    In this Order, we adopt a Consent Decree terminating an investigation into possible violations by SBC Communications Inc. ("SBC") of section 254 of the Communications Act of 1934, as amended ("the Act"), 47 U.S.C. § 254, and Part 54 of the Commission's rules, 47 C.F.R. § 54.1 *et seq.*

2.    The Enforcement Bureau ("Bureau") and SBC have negotiated the terms of the Consent Decree. A copy of the Consent Decree is attached hereto and incorporated by reference.

3.    We have reviewed the terms of the Consent Decree and evaluated the facts before us. We believe that the public interest would be served by approving the Consent Decree and terminating the investigation.

4.    Based on the record before us, and in the absence of material new evidence relating to this matter, we conclude that there are no substantial or material questions of fact as to whether SBC possesses the basic qualifications, including those related to character, to hold or obtain any Commission license or authorization.

5.    Accordingly, **IT IS ORDERED**, pursuant to Section 4(i) of the Communications Act of 1934, as amended, 47 U.S.C. §§ 154(i), and the authority delegated by section 0.111 and 0.311 of the Commission's rules, 47 C.F.R. §§ 0.111, 0.311, that the attached Consent Decree **IS ADOPTED**.

6.    **IT IS FURTHER ORDERED** that the above-captioned investigation **IS TERMINATED**.

FEDERAL COMMUNICATIONS COMMISSION

David H. Solomon
Chief, Enforcement Bureau

Before the
FEDERAL COMMUNICATIONS COMMISSION
Washington, D.C. 20554

| | | |
|---|---|---|
| | ) | File No. EB-04-IH-0342 |
| In the Matter of | ) | |
| | ) | Acct. No. 200532080007 |
| SBC Communications Inc. | ) | |
| | ) | FRN No. 0005049150 |

CONSENT DECREE

## I.    INTRODUCTION

1.    The Enforcement Bureau (the "Bureau") of the Federal Communications Commission (the "Commission" or "FCC") and SBC Communications Inc. ("SBC") and its wholly-owned subsidiaries and affiliates, hereby enter into this Consent Decree for the purpose of terminating an Investigation into whether SBC Connecticut complied with universal service support requirements of section 254 of the Communications Act of 1934, as amended ("the Act"),[1] and Part 54 of the Commission's rules.[2]

2.    For purposes of this Consent Decree, the following definitions shall apply.

(a)  The "Commission" means the Federal Communications Commission and all of its bureaus and offices.

(b)  "Bureau" means the Enforcement Bureau of the Federal Communications Commission.

(c)  "SBC" means SBC Communications Inc., and its successors and assigns.

(d)  "SBC Connecticut" means The Southern New England Telephone Company d/b/a SBC Connecticut, a wholly owned subsidiary of SBC.

(e)  "Parties" means SBC and the Bureau.

(f)  "Order" or "Adopting Order" means an order of the FCC adopting the terms of this Consent Decree without change, addition, or modification.

(g)  "Final Order" means an order that is no longer subject to administrative or judicial reconsideration, review, appeal, or stay.

(h)  "Investigation" means the investigation commenced by the Commission in the above-referenced file concerning whether SBC Connecticut violated Part 54 of the Commission's rules in connection with SBC Connecticut's receipt of universal service support for New London Public Schools ("NLPS") projects, which are referenced in SBC's August 6, 2004

---

[1] 47 U.S.C. § 254.

[2] 47 C.F.R. § 54.1 et seq.

and September 13, 2004, responses to Bureau inquiries.[3]

(i) "Effective Date" means the date on which the Bureau adopts the Adopting Order.

## II.    BACKGROUND

3.    The "E-Rate" or "Education-Rate" Program is the universal service fund ("USF") mechanism designed to assist eligible schools and libraries in gaining access to telecommunications and advanced services.[4]  On August 6, 2004, SBC informed the Bureau that, as part of its continuing review of its wholly-owned subsidiaries' involvement in the E-Rate program, it discovered that SBC Connecticut may have used or received E-Rate funds in a manner inconsistent with the Commission's rules and orders.  More specifically, SBC informed the Bureau that, with respect to the NLPS, SBC Connecticut invoiced the Schools and Libraries Division ("SLD") of the Universal Service Administrative Company ("USAC")[5] in one funding year for services provided in another; that SBC Connecticut invoiced SLD for services it provided to certain schools and other entities for which it had not sought and obtained authorization; and that SBC Connecticut invoiced SLD for services that are not eligible for USF support.  SBC Connecticut refunded to SLD the amounts collected in connection with these invoices and withdrew any outstanding invoices.

## III.    AGREEMENT

4.    The Parties agree and acknowledge that this Consent Decree shall constitute a final settlement of the Investigation.  In express reliance on the covenants and representations contained herein, and to avoid the further expenditure of scarce public resources, the Bureau agrees to terminate the Investigation.  In consideration for the termination of the Investigation and in accordance with the terms of this Consent Decree, SBC agrees to the terms, conditions and procedures contained herein.

5.    SBC agrees that SBC Connecticut will make a voluntary contribution to the United States Treasury in the amount of five hundred thousand dollars ($500,000) within ten (10) calendar days from the Effective Date.  SBC Connecticut must make this payment by check, wire transfer or money order drawn to the order of the Federal Communications Commission, and the check, wire transfer or money order should refer to "Acct. No. 200532080007" and "FRN No. 0005049150."  If SBC Connecticut makes this payment by check or money order, it must mail the check or money order to: Forfeiture Collection Section, Finance Branch, Federal Communications Commission, P.O. Box 73482, Chicago, Illinois, 60673-7482.  Payment by overnight mail may be sent to Bank One/LB 73482, 525 West Monroe, 8th Floor Mailroom, Chicago, IL 60661.  Payment by wire transfer may be made to ABA Number 071000013, receiving bank Bank One, and account number 1165259.

6.    SBC agrees that within thirty (30) days from the Effective Date, and to ensure SBC's wholly-owned subsidiaries' future compliance with the Commission's rules governing the E-Rate

---

[3] Letters from Christopher Heimann, General Attorney, SBC Telecommunications, Inc., to David Janas, Special Counsel, Investigations & Hearings Division, Enforcement Bureau, Federal Communications Commission, dated August 6, 2004 and September 13, 2004.

[4] *See* Part 54, Subpart F, of the Commission's rules, 47 C.F.R. § 54.500 *et seq.*

[5] The Commission has designated USAC to administer universal service support under Commission direction and oversight.  47 C.F.R. § 54.701.

program, SBC will institute a Compliance Plan. That plan will include, at a minimum, the following components:

**A. Compliance Training Program.** SBC shall establish and maintain an E-rate compliance training program for its wholly-owned subsidiaries' employees responsible for sales, account management, and project management relating to E-Rate contracts and services.[6] This program will include at least the following elements:

    i.   SBC shall maintain a training package regarding E-Rate program requirements for its wholly-owned subsidiaries' employees responsible for sales, account management, and project management relating to E-Rate contracts and services. This package shall cover the following subject matter areas: eligible services, competitive bidding, the application process, service provider roles and responsibilities, discounts, the prohibition against free services, service substitutions and equipment transfers, billing SLD for services, and document retention requirements. The training package shall also include a section on the potential ramifications of failing to comply with the E-Rate rules, and a section reminding employees that they are responsible for knowing their obligations under the SBC Code of Business Conduct, which requires employees to comply with all applicable legal and regulatory requirements. The training package shall also remind employees that they are responsible for maintaining the highest level of honesty and integrity, and notifying management if they learn of or suspect that any employee has engaged in any illegal or unethical business conduct related to the E-Rate program.

    ii.   SBC shall provide E-Rate training sessions, at least annually, utilizing the foregoing training package for its wholly-owned subsidiaries' employees responsible for sales, account management, and project management relating to E-Rate contracts and services. SBC also will provide the training package to new employees of its wholly-owned subsidiaries that are responsible for sales, account management, and project management functions relating to E-Rate contracts and services within 45 days of being assigned such responsibilities.

    iii.   SBC shall update and enhance the foregoing training package regarding the E-Rate rules as appropriate and necessary to reflect the current FCC rules.

**B. Regional E-Rate Coordinators.** SBC shall cause each of its regional business sales organizations to designate and maintain an employee to act as the E-Rate subject matter expert for that organization. The Regional E-Rate Coordinators shall be responsible for answering day-to-day E-Rate questions posed by employees in their business units and bringing potential violations of the E-Rate rules to the attention of the SBC Legal Department.

---

[6] Under this provision, SBC will not be required to provide E-Rate compliance training to employees whose responsibilities do not include any decision making regarding E-Rate contracts and services, and whose involvement in E-Rate projects is limited to performing non-E-Rate specific job functions.

**C. E-Rate Oversight Team.** SBC shall establish and maintain an E-Rate Oversight Team to provide training and act as a resource for SBC's business units regarding the rules and requirements of the E-Rate Program. The E-Rate Oversight Team shall include representatives of SBC's Regulatory Planning and Policy Group, Regulatory Compliance Group, and Legal Department. The E-Rate Oversight Team will:

 i.   act as the central point of contact for documentation and dissemination of E-Rate Program requirements throughout the company;

 ii.  monitor changes in the federal E-Rate rules and regulations and ensure that those changes are documented and disseminated appropriately;

 iii. develop and coordinate dissemination of E-Rate training materials;

 iv.  serve as a centralized resource for resolving questions and problems relating to SBC's compliance with applicable E-Rate Program rules and regulations; and

 v.   work with SBC's Regional E-Rate Coordinators to ensure consistent implementation of the E-Rate rules and regulations across the company.

**D. E-Rate Oversight Team Subcommittees.** The E-Rate Oversight Team shall establish and maintain inter-disciplinary E-Rate subcommittees, which will be charged with the following responsibilities:

 i.   Program Requirements Subcommittee: Outlining E-Rate Program requirements and mapping each to the appropriate organizations and business functions

 ii.  Training Subcommittee: Developing and delivering E-Rate training and updating training material, as needed, to reflect program changes.

 iii. Marketing and Communications Subcommittee: Maintaining the SBC customer and employee E-Rate websites to serve as repositories for E-Rate reference materials.

 iv.  Billing and Collections/IT/Invoicing/Accounting Subcommittee: Developing consistent methods of operations for SLD invoicing, tracking and monitoring SLD receivables, account reconciliation, and collections.

 v.   Process Standardization Subcommittee: Developing consistent methods and procedures for sales, customer invoicing, SLD escalations, document retention and other issues that might arise.

**E. SLD Principal Point of Contact.** SBC shall designate an employee with appropriate background and experience in E-Rate matters to act as SBC's principal point of contact with the SLD for questions relating to interpretation of the E-Rate rules, requests for extensions of E-Rate deadlines, and appeals of adverse decisions by SLD. SBC will instruct employees with E-Rate responsibilities that they should route such questions to SBC's principal point of contact with the SLD.

**F. Termination.** The provisions of this Paragraph 6 shall remain in effect for two (2) years from the Effective Date.

7. The Bureau agrees that, in the absence of new evidence relating to incidents that were not the subject of the Investigation, the Bureau will not use the facts developed in the Investigation, or the existence of this Consent Decree, to institute, on its own motion, any new proceedings, formal or informal, or to take any actions on its own motion against SBC concerning the matters that were the subject of the Investigation. The Bureau also agrees that, in the absence of such new evidence, it will not use the facts developed in the Investigation to institute on its own motion any proceeding, formal or informal, or take any action against SBC with respect to its basic qualifications, including its character qualifications, to be a Commission licensee.

8. Nothing in this Consent Decree shall prevent the Commission or its delegated authority from adjudicating any formal complaint that may be filed pursuant to section 208 of the Act, and to take any action in response to such formal complaint. Except as expressly provided in this Consent Decree, nothing herein shall prevent the Commission or its delegated authority from investigating SBC's compliance with the Act, the Commission's rules, or this Consent Decree.

9. SBC waives any and all rights it may have to seek administrative or judicial reconsideration, review, appeal or stay, or otherwise to challenge or contest the validity of this Consent Decree and the Adopting Order, provided the Bureau issues an Adopting Order without change, addition, or modification.

10. SBC's decision to enter into this Consent Decree is expressly contingent upon issuance of an Order that is consistent with this Consent Decree, and which adopts the Consent Decree without change, addition, or modification.

11. In the event that this Consent Decree is rendered invalid by any court of competent jurisdiction, it shall become null and void and may not be used in any manner in any legal proceeding.

12. If either party (or the United States on behalf of the Commission), brings a judicial action to enforce the terms of the Adopting Order, neither SBC nor the Bureau shall contest the validity of this Consent Decree or the Adopting Order, and SBC will waive any statutory right to a trial *de novo*.

13. The parties agree that this Consent Decree is for settlement purposes only and that it does not constitute an admission, denial, adjudication on the merits, or a factual or legal determination regarding any compliance or noncompliance with the requirements of section 254 of the Act or Part 54 of the Commission's rules.

14. Any violation of this Consent Decree or the Adopting Order will constitute a separate violation of a Commission order, entitling the Commission or its delegated authority to exercise any rights and remedies attendant to the enforcement of a Commission order.

15. The Parties agree that if any provision of this Consent Decree conflicts with any subsequent rule or order adopted by the Commission (except an order specifically intended to revise the terms of this Consent Decree to which SBC Connecticut does not consent) that provision will be superseded by such Commission rule or order.

Federal Communications Commission                    DA 04-3893

16. This Consent Decree may be signed in counterparts.

FEDERAL COMMUNICATIONS COMMISSION
ENFORCEMENT BUREAU

By: _____
          David H. Solomon
          Chief, Enforcement Bureau

SBC Communications Inc.

By: _____
          James C. Smith
          Senior Vice President - FCC
          SBC Telecommunications, Inc.

# Exhibit C



**FEDERAL COMMUNICATIONS COMMISSION**
Enforcement Bureau, Investigations and Hearings Division
445 12ᵗʰ Street, S.W., Room 4-C320
Washington, D.C. 20554

August 5, 2005

<u>**Via Certified Mail, Return Receipt Requested,**</u>
<u>**Facsimile and E-Mail**</u>

Mr. Jim Lamoureux
SBC Services, Inc.
1401 I Street N.W., Suite 400
Washington, D.C. 20005

Ms. Mary C. Albert
Vice President, Regulatory Policy
CompTel / ALTS
1900 M Street, N.W.
Washington, D.C. 20036

      Re:   Freedom of Information Act Request
             FOIA Control No. 2005-333

Dear Mr. Lamoureux and Ms. Albert:

## I.    INTRODUCTION

      This letter concerns a Freedom of Information Act ("FOIA") request from Comptel/ALTS ("Comptel") for information submitted by SBC Communications, Inc. ("SBC") in response to a Letter of Inquiry ("LOI") from the Enforcement Bureau. SBC has requested confidential treatment of its submissions. As explained below, we grant SBC's request in part and deny it in part. Therefore, we will release to Comptel SBC's responses as described herein unless we receive an application for review from SBC within ten working days from the date of this letter. If Comptel believes that any portion of this decision is in error, it may file an application for review of this action with the Commission's Office of General Counsel within 30 days of the date of this letter.

## II.    BACKGROUND

      On August 24, 2004, the Investigations and Hearings Division of the Enforcement Bureau (the "Bureau") sent SBC an LOI notifying the company that the Bureau was investigating whether it violated Part 54, Subpart F, of the Commission's rules, 47 C.F.R. §§ 54.500-54.521, and the Commission's orders regarding universal service funding.[1] SBC responded to this LOI on September 13, 2004.[2]

---

[1] Letter to Michelle A. Thomas, Executive Director, Federal Regulatory, SBC Communications, Inc., and Christopher Heimann, General Attorney, SBC Telecommunications Inc. from Hillary S. DeNigro, Deputy Chief.

Mr. Jim Lamoureux
Ms. Mary C. Albert
August 5, 2005
Page 2

On December 16, 2004, the Bureau terminated its investigation by adopting a Consent Decree in which SBC agreed to make a voluntary contribution to the United States Treasury in the amount of $500,000 and to institute a compliance plan, as specified therein, "to ensure SBC's wholly-owned subsidiaries' future compliance with the Commission's rules governing the E-Rate program."[3] The Consent Decree specifies that "it does not constitute an admission, denial, adjudication on the merits, or a factual or legal determination regarding any compliance or noncompliance with the requirements of section 254 of the Act or Part 54 of the Commission's rules."[4]

On April 4, 2005, the Bureau received Comptel's FOIA request for copies of "all pleadings and correspondence contained in file number EB-04-IH-0342,"[5] the investigative file for the investigation referenced in the December 16, 2004, Consent Decree. On May 27, 2005, SBC filed its response to the FOIA request, opposing release of the requested documents and seeking confidentiality for the materials.[6] SBC argues in its Opposition that the requested documents were "compiled for law enforcement purposes," and, thus, are exempt from disclosure under FOIA Exemption 7. Specifically SBC argues that disclosure is prohibited by FOIA Exemption 7(C) because it would cause an unwarranted invasion of personal privacy. SBC also contends that FOIA Exemption 4 prohibits release of the requested documents because the documents "clearly pertain to SBC's business dealings with one of its customers" and because many of the documents contain information pertaining to SBC's systems, processes and operations, and include cost, pricing and other "commercially sensitive" information.[7]

By letter dated June 28, 2005, Comptel replied to SBC's Opposition.[8] Comptel challenges SBC's claims that FOIA Exemptions 7(C) and 4 prohibit disclosure of the requested

---

Investigations and Hearings Division, Enforcement Bureau, Federal Communications Commission, dated August 24, 2004 (" LOI")

[2] Letter to David Janas, Special Counsel, Investigations and Hearings Division, Enforcement Bureau from Christopher Heimann, General Attorney, SBC Telecommunications Inc., dated September 13, 2004 ("LOI Response").

[3] *SBC Communications Inc*, Order and Consent Decree, 19 FCC Rcd 24014 (Enf. Bur. 2004)

[4] *Id* at 24019, ¶13

[5] *See* Electronic FOIA (E-FOIA) request form from Mary C. Albert ("Requester"), Comptel / ALTS, dated April 4, 2005 ("FOIA 2005-333"). In a telephone conversation with IHD staff on April 12, 2005, the Requester modified and clarified her FOIA request to seek only pleadings filed by SBC and correspondence between SBC and the Commission.

[6] *See* Letter from Jim Lamoureux, Senior Counsel, SBC Services, Inc., to Judy Lancaster, Investigations and Hearings Division, Enforcement Bureau, dated May 27, 2005 ("Opposition")

[7] Opposition at 6

[8] Letter from Mary C. Albert, Vice President Regulatory Policy, CompTel/Ascent/ALTS to Judy Lancaster, Investigations and Hearings Division, Enforcement Bureau, Federal Communications Commission, dated June 28, 2005 ("Reply")

Mr. Jim Lamoureux
Ms. Mary C. Albert
August 5, 2005
Page 3

documents. Although Comptel does not object to redaction from the requested documents of the names, telephone numbers, and home and email addresses of SBC employees, it argues that Exemption 7(C) is inapplicable to SBC because it is "a large, publicly traded corporation . . . that . . . possesses no protectable personal privacy interest."[9] Comptel also asserts that SBC's "conflicting positions" regarding whether its submissions were provided to the Bureau voluntarily or under compulsion do not support SBC's reliance upon Exemption 4 to prohibit disclosure of the requested documents, that SBC's "conclusory and generalized" characterizations of the records as confidential commercial information are "insufficient to demonstrate the likelihood of substantial competitive injury" as required by Exemption 4, and that the cost and pricing information that SBC wishes to withhold from disclosure is already in the public domain because E-Rate service providers are required under section 54.501(d)(3) of the Commission's rules[10] to make those records available for public inspection.[11]

## III.    DISCUSSION

### A.    SBC's Requests To Keep Its Responses Confidential In Their Entirety Are Deficient

Section 0.459 of the Commission's rules establishes a procedure by which parties may request that information or materials that they have submitted to the Commission not be made routinely available for public inspection. *See* 47 C.F.R. § 0.459. This rule requires that a party seeking confidentiality provide a statement of the reasons for withholding the materials in question from public inspection and set forth specific categories of materials for which such treatment is appropriate. A request for confidentiality "shall include," *inter alia*, an "explanation of the degree to which the information is commercial or financial, or contains a trade secret or is privileged;"[12] an "[e]xplanation of how disclosure of the information could result in substantial competitive harm;"[13] and "[i]dentification of whether the information is available to the public and the extent of any previous disclosure of the information to third parties."[14]

We find that SBC's requests for confidential treatment of its submissions substantially fail to comply with the standards set forth in section 0.459(b) of the Commission's rules. The rules clearly state that casual requests for confidentiality that do not comply with the requirements set forth in sections 0.459(a) and (b) will not be considered.[15] Further, the LOI

---

[9] *Id* at 2.

[10] 47 C.F.R. § 54.501(d)(3).

[11] Reply at 3.

[12] *See* 47 C.F.R. § 0.459(b)(3).

[13] See 47 C.F.R. § 0.459(b)(5).

[14] See 47 C.F.R. § 0.459(b)(7).

[15] *See* 47 C.F.R. § 0.459(c).

Mr. Jim Lamoureux
Ms. Mary C. Albert
August 5, 2005
Page 4

issued to SBC by the Bureau explicitly warns SBC that requests for confidential treatment must comply with the requirements specifically mandated by section 0.459(b), and that the Bureau will not consider confidentiality requests that do not so comply.

Nevertheless, SBC has failed to provide a statement of specific reasons for withholding its responses in their entirety. While generally categorizing the information contained in its submissions, SBC does not, as required by section 0.459(b)(3), explain the degree to which specific information is commercial or financial or contains a trade secret. Nor does it explain, as required by section 0.459(b)(5), how disclosure of such information could result in substantial competitive harm. SBC also fails to state whether any of the information for which it seeks protection is already available to the public.[16]

We find SBC's request for the confidential treatment of all its submissions to be overly broad. Portions of the documents submitted by SBC appear to contain commercial or financial information, the disclosure of which could result in substantial competitive harm to SBC. But most of those pages also contain information that is not confidential, such as FRN numbers, lists of equipment, and references to ordinary administrative matters. Some of that information is already within the public domain.[17] Release of such information appears unlikely to result in competitive harm to SBC and SBC offers no justification for withholding such information as commercial, financial or trade secret information. Consequently, that information will be disclosed.

Accordingly, we conclude that SBC has failed to demonstrate by a preponderance of the evidence a case for nondisclosure of all of its submissions. We therefore deny SBC's requests that we grant confidential treatment of the entirety of its submissions.

### B. Portions of SBC's Submissions Are Subject To Protection From Disclosure As "Commercially Sensitive Information"

We base confidentiality determinations under section 0.459 of the Commission's rules relating to commercial or financial materials on Exemption 4 of the FOIA which permits us to withhold "trade secrets and commercial or financial information obtained from a person and [that is] privileged or confidential."[18] Exemption 4 protects "any financial or commercial information provided to the Government on a *voluntary* basis if it is of a kind that the provider would not customarily release to the public."(emphasis added)[19] However, under Exemption 4 commercial or financial materials that are part of *required* submissions are held to be confidential only when

---

[16] See 47 C.F.R. § 0.459 (b)(7).

[17] Federal Registration Numbers ("FRN"s), including those of SBC, are available to the public on the Commission Registration System ("CORES") database which is located on the Commission's internet web page. *See also* 47 C.F.R. 54.501(d)(3)

[18] 5 U.S.C. § 552(b)(4)

[19] *See Critical Mass Energy Project v. NRC*, 975 F.2d 871, 880 (D.C. Cir. 1992) ("*Critical Mass*")

Mr. Jim Lamoureux
Ms. Mary C. Albert
August 5, 2005
Page 5

disclosure would either impair the government's ability to obtain necessary information in the future or would be likely to substantially harm the competitive position of the submitter.[20]

SBC's LOI responses were *required* submissions for the purposes of our FOIA analysis.[21] An LOI is an administrative order that compels the production of information. Failure to respond properly to an LOI may subject an entity to forfeiture action.[22] Because we directed SBC to submit its written responses to the Bureau's LOI, its responses were required.

We find that certain information in SBC's submissions constitutes commercial or financial information, the disclosure of which could result in substantial competitive harm to SBC. Such commercially sensitive information includes, but is not limited to, SBC's costs and pricing data, its billing and payment dates, and identifying information of SBC's staff, contractors, and the representatives of its contractors and customers. Accordingly, such information is exempt from disclosure under FOIA Exemption 4.[23]

Although section 54.501(d)(3) of the Commission's rules requires telecommunications service providers such as SBC to allow public inspections of the rates it charges and the discounts it allows to schools and libraries eligible for universal service support,[24] SBC can comply with the rule's requirements by maintaining a "public inspection file" containing the required rate information. The rule does not mandate disclosure here of all of the pricing data contained in SBC's submissions. In this instance, disclosure of SBC's invoice and discount amounts could disclose the total value of its contract, information that would not otherwise be publicly available. That information is not in the public domain and its release is not required by the rule. Because release of SBC pricing information in this case is likely to substantially harm SBC's competitive position, such information is exempt from disclosure under FOIA Exemption 4.

### C.    Names of SBC Employees And Customers Are Protected From Disclosure Due To Personal Privacy Concerns

The FOIA statute, 47 U.S.C. § 552(b)(7)(C), provides that records or information compiled for law enforcement purposes are exempt from disclosure to the extent that the

---

[20] *National Parks and Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974) ("*National Parks*"); *Critical Mass*, 795 F.2d at 878 (citing *National Parks*)

[21] *See Critical Mass* (establishing separate tests for confidential treatment of voluntary submissions and required submissions). See also

[22] *See SBC Communications. Inc*, Order of Forfeiture, 17 FCC Rcd 7589 (2002) (forfeiture paid); *Globcom Inc*. Notice of Apparent Liability for Forfeiture and Order, 18 FCC Rcd 19893, n. 36 (2003), *response pending*

[23] *See, e.g. In Re The Lakin Law Firm, P.C*, Memorandum Opinion and Order, 19 FCC Rcd 12727 (2004)

[24] 47 C.F.R. § 54.501(d)(3) provides that "[Telecommunications] Service providers shall keep and retain records of rates charged to and discounts allowed for eligible schools and libraries – on their own or as part of a consortium Such records shall be available for public inspection "

Mr. Jim Lamoureux
Ms. Mary C. Albert
August 5, 2005
Page 6

production of such records could reasonably be expected to "constitute an unwarranted invasion of personal privacy" are exempt from disclosure.[25] Generally, businesses do not possess "personal privacy" interests as required for application of FOIA Exemption 7(C).[26] However, the individuals identified in SBC's submissions do have such privacy rights and, pursuant to this provision, portions of SBC's submissions will be redacted to withhold the names and identifying information of those individuals to prevent unwarranted invasions of their personal privacy.

> **D.    Documents Which Disclose an Agency's Deliberative Process Are Protected From Disclosure**

Exemption 5 of the FOIA protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."[27] Pursuant to this exemption we will withhold from public disclosure drafts of Bureau pleadings and correspondence, and memoranda and emails, distributed among Commission staff, which discuss the issues and investigation related to this matter.

**IV.    CONCLUSION**

For the reasons stated above, we grant in part and deny in part SBC's request for confidentiality. If SBC believes that this decision is in error, it must file an application for review of this action with the Commission's Office of General Counsel within ten working days of the date of this letter. *See* 47 C.F.R. § 0.461(i). We will produce the documents requested as noted above if no such application for review is filed. We will assess copying charges, if any, at that time. If Comptel believes that this decision is in error, it may file an application for review of this action with the Commission's Office of General Counsel within 30 days of the date of this letter. *See* 47 C.F.R. § 0.461(j).

We are providing SBC's counsel with a copy of the documents as redacted pursuant to this decision.

Sincerely,

William H. Davenport
Chief, Investigations and Hearings Division
Enforcement Bureau

---

[25] 5 U.S.C. § 552(b)(7)(C). *See also* 5 U.S.C. § 552(b)(6); *In re William McConnell, Broadcasting and Cable*, Order, 18 FCC Rcd 26371 (2003).

[26] *See, e.g. Chadmore Communications, Inc.*, Memorandum Opinion and Order, 13 FCC Rcd 23943 (1998).

[27] 5 U.S.C. § 552(b)(5).

# Exhibit D

**Mary Albert**

| | |
|---|---|
| **From:** | "Judy Lancaster" <Judy.Lancaster@fcc.gov> [Judy.Lancaster@fcc.gov] |
| **Sent:** | Thursday, June 23, 2005 3:26 PM |
| **To:** | Mary Albert |
| **Cc:** | William Davenport |
| **Subject:** | FOIA 2005-333 |
| **Attachments:** | TEXT.htm; 2005-333.SBC confid req - FOIA Objection.05-27-05.pdf; Mime.822 |

Ms. Albert:

As we discussed this afternoon, attached is a copy of SBC's response to
your FOIA request.

 <<2005333.SBC confid req  FOIA Objection.052705.pdf>>

Sincerely,

Judy Lancaster

Investigations & Hearings Division
Enforcement Bureau
Federal Communications Commission
445 12th Street, S.W., Room 4A237
Washington, D.C. 20554
2024187584 Direct Dial
2024182080 IHD Fax



**Jim Lamoureux**
Senior Counsel

SBC Services, Inc.
1401 I Street NW, Suite 400
Washington, D.C. 20005
Phone 202 326-8895
Fax 202 408-8745

May 27, 2005

## BY ELECTRONIC AND U.S. MAIL

Judy Lancaster
Enforcement Bureau
Investigations and Hearings Division
Federal Communications Commission
445 12th Street SW
Washington DC 20554

> Re:   **Freedom of Information Act Request, Control No. 2005-333**
> **(CompTel/ALTS, April 4, 2005)**

Dear Ms. Lancaster:

SBC Communications Inc. ("SBC"), on behalf of itself and its affiliates, opposes release of the records sought by CompTel/ALTS in the above-referenced Freedom of Information Act ("FOIA") request. In its request, CompTel/ALTS seeks release of "[a]ll pleadings and correspondence contained in File No. EB-04-IH-0342." Included within the scope of the CompTel/ALTS request are records that SBC submitted to the Commission in response to a Letter of Inquiry issued by the Enforcement Bureau, as well as the Letter of Inquiry itself.[1] All of the records responsive to the CompTel/ALTS request were issued and obtained by the Commission as part of an Enforcement Bureau investigation, and thus, pursuant to 47 C.F.R. § 0.457, are not routinely available for public inspection.[2] Moreover, all responsive documents plainly fall within the "law enforcement-privacy" and "confidential commercial information" exemptions to the FOIA's disclosure requirements. *See* 5 U.S.C. § 552(b)(7)(C) and 5 U.S.C. § 552(b)(4). Accordingly, pursuant to the FOIA and Commission Rule 0.459, all of the requested records should be maintained by the Commission as confidential and should not be made available for public inspection or disclosure.

All of the records requested by CompTel/ALTS fall within 5 U.S.C. 552(b)(7)(C), which exempts from public disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to constitute an unwarranted invasion of personal privacy." All of the records responsive to the CompTel/ALTS request were clearly "compiled for law enforcement

---

[1] If the Commission determines that other records are responsive to the CompTel/ALTS request, SBC reserves the right to object to disclosure of any such additional records.

[2] Contrary to FCC Rule 0.461(c) pertaining to material not routinely available for public inspection, the CompTel/ALTS request does not "contain a statement of the reasons for inspection and the facts in support thereof."

Judy Lancaster
May 27, 2005
Page 2 of 7

purposes." The Letter of Inquiry itself was issued as part of an Enforcement Bureau investigation, and the documents provided to the Enforcement Bureau by SBC were all in response to the Letter of Inquiry. The stated purpose of the Enforcement Bureau's Letter of Inquiry, as well as the overall purpose of the Enforcement Bureau's investigation was to determine whether SBC had violated Commission rules. It is thus plain that the records in question were compiled by the Enforcement Bureau for law enforcement purposes. The courts have made clear that all agency enforcement proceedings, including civil enforcement proceedings generally, and FCC Enforcement Bureau investigations in particular, fall within the ambit of Exemption 7. *See, e.g., Aspin v. Dept. of Defense,* 348 F. Supp. 1081 (D.D.C.), *aff'd* 491 F.2d 24 (D.C. Cir. 1972); *Windels, Marx, Davies & Ives. v. Dept. of Commerce,* 576 F. Supp. 405 (D.D.C. 1983); *Kay v. FCC,* 867 F. Supp. 11 (D.D.C. 1994). There is thus no doubt that all of the records responsive to the CompTel/ALTS request were compiled for law enforcement purposes under Exemption 7 of the FOIA.

Moreover, disclosure of the records requested by CompTel/ALTS would cause an unwarranted invasion of personal privacy, and thus, pursuant to Exemption 7(C), should not be disclosed. The purpose of Exemption 7(C) is to protect third parties from embarrassment, reprisal or harassment, and other invasions of privacy associated with the stigma of law enforcement investigations. *See Voinche v. F.B.I,* 940 F. Supp. 323 (D.D.C. 1996); *Foster v. U.S. Dept. of Justice,* 933 F. Supp. 687 (E.D. Mi 1996). Moreover, because of the intense privacy interests in information compiled by law enforcement agencies, Exemption 7(C) "affords broad[] privacy rights to suspects, witnesses, and investigators." *Bast v. Dep't of Justice,* 665 F.2d 1251, 1254 (D.C. Cir. 1981). The question of whether disclosure of such information is warranted turns on whether "the privacy interest at stake outweighs the public interest in disclosure." *Nation Magazine, Washington Bureau v. U.S. Customs Svc.,* 71 F.3d 885, 893 (D.C. Cir. 1995). In this instance, there is no public interest in disclosure that could possibly offset the invasion of privacy that would result from disclosure.

The Supreme Court has made clear that, for purposes of Exemption 7(C), "whether an invasion of privacy is *warranted* cannot turn on the purposes for which the request for information is made." *United States Dept. of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 771 (1989). Rather, "whether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny rather than on the particular purpose for which the document is being requested." *Id. (Internal quotation marks and citations omitted.).*[3] In *Reporters Committee,* several journalists sought disclosure under the FOIA of the FBI "rap sheet" of a reputed mob boss. In holding that disclosure was prohibited by Exemption 7(C), the Court held that the core purpose of the FOIA,

> . . . is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about

---

[3] *See also Wichlacz v. U.S. Dept. of Interior,* 938 F. Supp. 325 (E.D. Va. 1996)(only possible public interest to weigh against privacy interest is extent to which disclosure would shed light on agency's performance of its statutory duties or otherwise let citizens know what their government is up to).

an agency's own conduct. In this case—and presumably in the typical case in which one private citizen is seeking information about another—the requester does not intend to discover anything about the conduct of the agency that has possession of the requested records. Indeed, response to this request would not shed light on the conduct of any Government agency or official.

*Reporters Committee*, 489 U.S. at 773. More specifically, with respect to documents compiled by agencies during the course of law enforcement investigations, the Court further held that,

> . . . although there is undoubtedly some public interest in anyone's criminal history, especially if the history is in some way related to the subject's dealing with a public official or agency, the FOIA's central purpose is to ensure that the *Government's* activities be opened to the sharp eye of public scrutiny, not that information about *private citizens* that happens to be in the warehouse of the Government be so disclosed.

*Id.* at 774.[4] The Court thus concluded that the public interest in disclosure of the rap sheet sought by the journalists "is not the type of interest protected by the FOIA." *Id.* at 775. As a general proposition, moreover, the Court held,

> . . . as a categorical matter that a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy, and [] when the request seeks no "official information" about a Government agency, but merely records that the Government happens to be storing, the invasion of privacy is "unwarranted."

*Id.* at 780.[5] (Emphasis added.) The Court's holding in *Reporters Committee*, as well as the D.C. Circuit's holding in *SafeCard Services* apply with equal force in this instance.

---

[4] *See also SafeCard Services, Inc. v. Securities and Exchange Commission*, 926 F.2d 1197, 1205 (D.C. Cir. 1991)("the type of information sought is simply not very probative of an agency's behavior or performance."); *Nation Magazine*, 71 F.3d at 895 ("In some, perhaps many, instances where a third party asks if an agency has information regarding a named individual in its law enforcement files, the cognizable public interest in that information will be negligible; the requester will be seeking records about a private citizen, not agency conduct."); *Alexander & Alexander Svcs., Inc. v. Securities and Exchange Commission,* Civ.A. No. 92-1112 (JHG), 1993 WL 439799 (D.D.C. Oct. 19, 1993)("when a private citizen seeks information regarding another private citizen or corporation, the requester is not seeking information regarding the conduct of the agency in possession of the information.").

[5] *See also SafeCard*, 926 F.2d at 1205-1206 ("Indeed, unless there is compelling evidence that the agency denying the FOIA request is engaged in illegal activity, and access to the names of private individuals appearing in the agency's law enforcement files is necessary in order to confirm or refute that evidence, there is no reason to believe that the incremental public interest in such information would ever be significant."); *see also id.* at 1205 ("The public interest in disclosure is not just less substantial, it is insubstantial.")

Judy Lancaster
May 27, 2005
Page 4 of 7

The only records responsive to the CompTel/ALTS request are internal documents of a private party that were submitted to and compiled by the Commission pursuant to investigative demands issued by the Enforcement Bureau. None of the records in question contain "official information" about the Commission; nor do any of the records pertain to the conduct of the Commission or any Commission official. The only ostensible interest on the part of CompTel/ALTS in disclosure of the requested documents is to try to embarrass SBC with the information compiled by the Enforcement Bureau. There is thus no public policy interest in disclosure of the requested documents. Conversely, there are substantial privacy interests in such documents. As with information compiled by the FBI in rap sheets, the requested records are no more than documents that "happen to be in the warehouse" of the Commission because they were gathered during the course of a law enforcement investigation. Indeed, the privacy interest in the particular information at issue here is stronger than that in *Reporters Committee*. The discrete informational components of rap sheets are frequently publicly available through various court records; it was thus the compilation of such information in which the Court found a cognizable privacy interest. *See Reporters Committee*, 489 U.S. at 763-764.[6] Here, in contrast, none of the information is generally publicly available. Indeed, but for the investigative demand of the Enforcement Bureau, the information would remain in SBC's possession. Moreover, the information would remain in SBC's possession as discrete documents and information scattered throughout SBC's offices and files. But for the Enforcement Bureau's investigative demand, there would be no compilation of those records as there is now in the Enforcement Bureau's files. Accordingly, given the strong privacy interest in the records at issue here, and the complete lack of any public interest in disclosure of those records, *Reporters Committee* and *SafeCard Services* make clear the Exemption 7(C) compels the Commission not to publicly disclose any of the records responsive to the CompTel/ALTS request.

Exemption 4 also requires that the Commission not publicly disclose any of the records responsive to the CompTel/ALTS request. 5 U.S.C. § 552(b)(4). Exemption 4 applies to "trade secrets and commercial or financial information obtained from a person and privileged and confidential." *Id.* The phrase "commercial or financial information" has a broad meaning under the FOIA, and includes anything pertaining to or relating to commerce. *American Airlines, Inc. v. National Mediation Bd.*, 588 F.2d 863, 870 2d Cir. 1978); *see also Public Citizen Health research Group v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983)(documents are commercial if a submitter has a commercial interest in them). The records at issue here clearly pertain to SBC's business dealings with one of its customers and are thus undoubtedly commercial information under the FOIA.

Those records, moreover, are confidential under Exemption 4. Two lines of cases have evolved for determining whether agency records fall within this component of Exemption 4. Under *Critical Mass*, commercial information that is voluntarily submitted to the Commission must be

---

[6] *Reporters Committee* thus disposes of any notion that SBC has no privacy interest in the records in question merely because the investigation is a matter of public record as a result of the Order issued by the Commission approving the Consent Decree between SBC and the Enforcement Bureau. *See, e.g., Reporters Committee*, 489 U.S. at 1480 ("In sum, the fact that an event is not wholly private does not mean that an individual has no interest in limiting disclosure or dissemination of the information." (Internal quotation marks and citations omitted.))

withheld from public disclosure if such information is not customarily disclosed to the public by the submitter. *Critical Mass Energy Project v. NRC*, 975 F.2d 871, 879 (D.C. Cir. 1992). All of the information at issue here is maintained on a confidential basis within SBC and would not ordinarily be disclosed to parties outside the company. Company practices instruct employees not to disclose such information outside the company and restrict access to this information on a need-to-know basis. In short, none of the information at issue here is customarily disclosed to the public, and should, therefore, be withheld under Exemption 4.

For materials not subject to *Critical Mass*, *National Parks* establishes a two part test for determining if information qualifies for withholding under Exemption 4. *National Parks & Conservation Assoc. v. Morton*, 498 F.2d 765 D.C. Cir. (1974). The first prong asks whether disclosing the information would impair the government's ability to obtain necessary information in the future. The second prong asks whether the competitive position of the person from whom the information was obtained would be impaired or substantially harmed. If the information meets the requirements of either prong, it is exempted from disclosure under Exemption 4. Here, the first prong of *National Prongs* compels the Commission not to publicly disclose the records requested by CompTel/ALTS. The subject matter of the investigation at issue here was voluntarily brought to the Enforcement Bureau's attention by SBC as a result of an ongoing internal review conducted by SBC. SBC, moreover, voluntarily refunded all amounts that might have been at issue, and it entered into a consent decree to make a voluntary contribution to the United States Treasury. Compelled public disclosure of the records compiled by the Enforcement Bureau in this instance would plainly impair the Enforcement Bureau's ability to obtain similar information in the future. It would chill industry incentives to conduct internal investigations and to bring the results of those investigations to the attention of the Commission. It would thus hamper the general ability of the Commission to conduct investigations and enforcement proceedings and to rely on the cooperation of parties involved in those proceedings, which would necessarily impair the Commission's ability to obtain documents and information in investigations and enforcement proceedings. It would, in short, undermine the agency's "effective execution of its statutory responsibilities." *9 to 5 Org. for Women Office Workers v. Board of Governors*, 721 F.2s 1, 11 (1st Cir. 1983). *See also Africa Fund v. Mosbacher*, No. 92-289, 1993 WL 183736 at *7 (S.D.N.Y. May 26, 1993)(disclosure would impinge upon agency's receipt of substantial information that potential exporters voluntarily submit when seeking export licenses and that the agency finds invaluable in making policy and maintaining effective export controls.) Accordingly, in addition to Exemption 7(C), Exemption 4 also compels the Commission not to publicly disclose any of the records responsive to the CompTel/ALTS request.

If the Commission determines that Exemptions 7(C) and 4 do not compel it to withhold all of the requested records from public disclosure, at a minimum, specific records and information responsive to the CompTel/ALTS requests fall within the scope of Exemptions 7(C) and 4 and should be withheld from public disclosure. First, the requested records contain information identifying SBC employee names, titles and job functions, phone numbers, email addresses, and physical addresses, which are highly sensitive not only in terms of SBC confidential commercial information, but also from a personal privacy perspective. Indeed, the DC Circuit holds "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure."

*SafeCard*, 926 F.2d at 1206. Accordingly, the Commission should withhold from disclosure all such information pertaining to individuals identified in the records responsive to the CompTel/ALTS request.

In addition, the documents in question contain competitively sensitive information which should not be made available for public disclosure. Telecommunications is a highly competitive industry. The presence of such competition and the likelihood of competitive injury threatened by release of the information provided to the Commission by SBC should compel the Commission to withhold the information from public disclosure. *CNA Financial Corp. v. Donovan*, 830 F.2d 1132, 1152 (D.C. Cir. 1987); *Frazee v. U.S. Forest Service*, 97 F.3d 367, 371 (9th Cir. 1996); *Gulf & Western Indus. v. U.S.*, 615 F.2d 527, 530 (D.C. Cir. 1979).[7]

The requested records contain information pertaining to SBC's systems, processes, and operations, and thus represent confidential commercial information that should not be released under the FOIA. The records also contain cost, pricing information that clearly falls within the scope of Exemption 4. Attachment A identifies the records that contain such information. Competitors could use such confidential information to assist in targeting their service offerings and enhancing their competitive positions, to the detriment of SBC's competitive position. *See, e.g., GC Micro Corp. v. Defense Logistics Agency*, 33 F.3d 1109 (9th Cir. 1994). Commission precedent has clearly found this type of information to be competitively sensitive and withholdable under Exemption 4.[8] The Commission has recognized that competitive harm can result from the disclosure of confidential business information that gives competitors insight into a company's costs, pricing plans, market strategies, and customer identities. *See In re Pan American Satellite Corporation*, FOIA Control Nos. 85-219, 86-38, 86-41, (May 2, 1986).[9] Accordingly, the Commission should withhold all of the records identified in Attachment A.

---

[7] It is worth noting that the request in question comes from a trade association representing many of SBC's competitors in the marketplace.

[8] *See e.g. In Matter of Pacific Bell Telephone Company Petition for Pricing Flexibility for Special Access and Dedicated Transport Services*, CCB/CPD No. 00-23, DA 00-2618, November 20, 2000 (supporting confidentiality for collocation data); *Local Exchange Carrier's Rates, Terms and Conditions for Expanded Interconnection Through Virtual Collocation for Special Access and Switched Transport; Southwestern Bell Telephone Company*, 13 FCC Rcd 13615 (1998)(keeping administrative operating expenses confidential because it would provide insight into business strategies); *AT&T/McCaw Merger Applications* 9 FCC Rcd 2610 (1994)(keeping confidential accounting records showing account balance information); *NAACP Legal Defense Fund on Request for Inspection of Records* 45 RR 2d 1705 (1979)(keeping confidential records that contained employee salary information); *Mercury PCS II, LLC (Request for Inspection of Records) Omnipoint Corporation (Request for Confidential Treatment of Documents)*, FCC 00-241 (July 17, 2000)(keeping confidential marketing plans and strategy information).

[9] Further, the Commission has ruled that not only should such information be protected, but also that information must be protected through which the competitively sensitive information can be determined. *Allnet Communications Services, Inc. Freedom of Information Act Request*, FOIA Control No. 92-149, Memorandum Opinion and Order (released August 17, 1993) at p. 3. The

Judy Lancaster
May 27, 2005
Page 7 of 7

     For the above reasons, SBC opposes the CompTel/ALTS request for the records described in its April 4, 2005, email. If you have any questions, please do not hesitate to contact me at (202) 326-8895.

                    Sincerely,

                    Jim Lamoureux
                    Senior Counsel
                    SBC Services, Inc.

cc:    William Davenport

---

Commission's decision was upheld in a memorandum opinion of the U.S. Court of Appeals for the D.C. Circuit, which affirmed a U.S. District Court decision protecting the information. *Allnet Communications Services, Inc. v. FCC*, Case No. 92-5351 (memorandum opinion issued May 27, 1994, D.C. Cir.).

# ATTACHMENT A

<u>LOI</u>

Document Reference                          Information that is confidential commercial

| Pages 4-8 | Identification of SBC's customers, contracts, projects, and invoice amounts |
|---|---|

<u>SBC Response to LOI</u>

Document Reference                          Information that is confidential commercial

| SBC's Responses to the Enforcement Bureau's interrogatories (pages 1-15) | Identification of SBC's customers, contracts, projects, invoice amounts and subcontractors |
|---|---|
| Attachment A, Job Responsibilities (pages 1-9) | Identification of SBC job functions, responsibilities and priorities |
| SBCNL000022–27 | Identification of SBC vendors and subcontractors, cost and pricing detail, and general customer bid strategies and operational processes |
| SBCNL000029 | Identification of SBC cost and pricing detail |
| SBCNL000042–55 | Identification of SBC cost and pricing detail |
| SBCNL000056-59 | Identification of SBC vendors and subcontractors, and general customer bid strategies and operational processes |
| SBCNL000060 | Identification of SBC cost and pricing detail and vendor and subcontractor information |
| SBCNL000061 | Identification of SBC cost and pricing detail |
| SBCNL000062-65 | Identification of SBC cost and pricing detail and general customer bid strategies and operational processes |
| SBCNL000067 | Identification of SBC cost and pricing detail and vendor and subcontractor information |
| SBCNL000068-72 | Identification of SBC vendors and subcontractors, cost and pricing detail, and general customer bid strategies and operational processes |
| SBCNL000074-80 | Identification of SBC general customer bid strategies and operational processes |
| SBCNL000081-100 | Identification of SBC operational processes, vendor and subcontractor information, cost and pricing detail and billing information |
| SBCNL000101-102 | Identification of SBC billing information |
| SBCNL000103 – 142 | Identification of SBC cost and pricing detail and billing information |
| SBCNL00143-152 | Identification of SBC cost and pricing detail |
| SBCNL00163 – 166 | Identification of SBC cost and pricing detail and billing information |
| SBCNL00167 | Identification of SBC vendor and subcontract information |
| SBCNL000169 | Identification of SBC billing information |
| SBCNL000170 – 174 | Identification of SBC vendor and subcontract information |
| SBCNL000175 – 178 | Identification of SBC cost and pricing detail and billing information |

Letter to Judy Lancaster
Re: Freedom of Information Act Request, Control No. 2005-333
May 27, 2005
Attachment A
Page 2 of 2

| | |
|---|---|
| SBCNL000179 – 182 | Identification of SBC cost and pricing detail and billing information and vendor and subcontract information |
| SBCNL000183 | Identification of SBC cost and pricing detail and billing information |
| SBCNL000184 – 185 | Identification of SBC cost and pricing detail and billing information |
| SBCNL000186-190 | Identification of SBC billing information and operational processes |
| SBCNL000196-218 | Identification of SBC internal documentation and operational processes |

# Exhibit E



**1900 M St. NW • Suite 800 • Washington, DC 20036**
**P (202) 296-6650    F (202) 296-7585**

June 28, 2005

Ms. Judy Lancaster
Enforcement Bureau
Federal Communications Commission
445 12th Street S.W.
Washington, D.C. 20554

      Re: Freedom of Information Act Request, Control No. 2005-333

Dear Ms. Lancaster:

      CompTel/ALTS hereby responds to SBC Communications, Inc.'s ("SBC") objection to the release of documents to CompTel/ALTS pursuant to the above-captioned Freedom of Information Act ("FOIA") request.

      On April 4, 2005, CompTel/ALTS submitted an FOIA request to the Commission for documents contained in File No. EB-04-IH-0342. These documents relate to the Enforcement Bureau's investigation of SBC for violations of the Commission's rules in connection with the receipt of universal service support for the New London Connecticut Public Schools. The Commission terminated the investigation upon issuing an Order adopting a Consent Decree. *In the Matter of SBC Communications, Inc.*, File No. EB-04-IH-0342, Order, DA 04-3893 (released December 16, 2004).

      By letter dated May 27, 2005, SBC objected to disclosure of the documents requested on the grounds that they were exempt from disclosure pursuant to FOIA Exemptions 7(C) and 4.[1] 5 U.S.C. §§ 552(b)(7)(C), 552(b)(4). SBC is wrong on both counts. As demonstrated below, neither Exemption is applicable and the Commission is obligated to grant CompTel/ALTS' request without further delay.[2]

---

[1]     See Letter from Jim Lamoureux, SBC, to Judy Lancaster dated May 27, 2005. SBC's letter was provided to CompTel/ALTS on June 23, 2005.

[2]     CompTel/ALTS notes for the record that the Commission has not met the statutory deadline for notifying CompTel/ALTS whether it will comply with the request for documents nor provided written notice to extend the deadline. See 5 U.S.C. §552(a)(6).

Ms. Judy Lancaster
June 28, 2005
Page 2

The FOIA embodies a policy authorizing liberal disclosure of government documents and records. Government documents must be produced upon request unless they are specifically exempted from disclosure by statute. FOIA Exemption 7 authorizes disclosure of law enforcement[3] records unless the government can demonstrate one of six specific harms. Although SBC correctly notes that pursuant to Exemption 7(C), the Commission has the discretion to exempt from disclosure investigatory records compiled for law enforcement purposes only to the extent that the production of such records "could reasonably be expected to constitute an unwarranted invasion of personal privacy," it has failed to demonstrate that the documents requested are covered by that Exemption.

SBC asserts that disclosure of the records requested by CompTel/ALTS would cause an unwarranted invasion of its personal privacy. (SBC Objection at 2) SBC is mistaken. As a large, publicly traded corporation, it is well settled that SBC possesses no protectable "personal privacy" interest as that term is used in the FOIA. *The Washington Post Company v. United States Department of Agriculture*, 943 F.Supp. 31, 35 n. 4 (D.D.C. 1996); *Ivanhoe Citrus Association v. Handley*, 612 F. Supp. 1560, 1567 (D.D.C. 1985); *National Parks and Conservation Association v. Kleppe*, 547 F.2d 673 (D.C. Cir. 1976). *See also, The Washington Post Company v. United States Department of Justice*, 863 F. 2d 96, 100 (D.C. Cir. 1988) (investigation and assessment of business decisions of corporate employees during the development and marketing of a commercial product do not qualify for exemption from disclosure under Exemption 7(C)). Thus, the Commission cannot withhold the documents under Exemption 7(C) on the grounds that their release may invade SBC's "personal privacy."

To the extent that any of the responsive documents contain the names, telephone numbers, email addresses and physical addresses of SBC employees, CompTel/ALTS has no objection to the redaction of such information before the documents are released. *See Safecard Services, Inc. v. Securities and Exchange Commission*, 926 F.2d 1197 (D.C. Cir. 1991) (upholding SEC's deletion of names and addresses of third parties mentioned in investigatory file).

SBC's reliance on Exemption 4 is similarly unavailing. Exemption 4 gives the Commission discretion to withhold privileged and confidential "commercial or financial information." SBC asserts that all records responsive to the CompTel/ALTS request meet the test of confidentiality under Exemption 4 and must be withheld. (SBC Objection at 4). The test for determining whether information is confidential within the meaning of Exemption 4 differs depending on whether the information was provided to the government voluntarily or under compulsion. *Critical Mass Energy Project v. Nuclear Regulatory Commission*, 975 F. 2d 871 (D.C. Cir. 1992). Financial or commercial information voluntarily provided to the government is exempt from disclosure if it is of a kind that would not customarily be released to the public. *Id.* In contrast, information that is provided to the government under compulsion will be treated

---

[3]    CompTel/ALTS also notes for the record that it does not concede SBC's characterization of the records requested as being compiled for law enforcement purposes

Ms. Judy Lancaster
June 28, 2005
Page 3

as confidential where its disclosure would (1) impair the government's ability to obtain necessary information in the future or (2) cause substantial harm to the competitive position of the person from whom information was obtained. *National Parks and Conservation Association v. Kleppe*, 547 F.2d 673 (D.C. Cir. 1976).

SBC's argument that all responsive documents are confidential is entitled to little weight given the conflicting positions it takes with respect to whether the information was provided voluntarily or under compulsion. SBC first asserts that the responsive documents were produced under compulsion. "The only records responsive to CompTel/ALTS request are internal documents of a private party that were submitted to and compiled by the Commission pursuant to investigative demands issued by the Enforcement Bureau"; "but for the investigative demand of the Enforcement Bureau, the information would remain in SBC's possession"; "[b]ut for the Enforcement Bureau's investigative demand, there would be no compilation of those records as there is now in the Enforcement Bureau's files"; "the documents provided to the Enforcement Bureau by SBC were all in response to the Letter of Inquiry." (SBC Objection at 2, 4) If the Enforcement Bureau compelled SBC to submit the documents to the Commission, the first prong of the *National Parks* test cannot be satisfied. In *National Parks*, the Court held that where entities are required to submit commercial information to the government, there is no danger that public disclosure of the information will impair the ability of the government to obtain such information in the future. 547 F. 2d at 678. *See also, CNA Financial Corporation v. Donovan*, 830 F. 2d 1132, 1153 (D.C. Cir. 1987) (where government requires submission of information, first prong of *National Parks* test is not implicated).

Nor has SBC satisfied the second prong of the *National Parks* test which requires a showing that disclosure of the information will cause substantial harm to SBC's competitive position. *Id.* at 677. SBC merely asserts that the requested records "contain information pertaining to SBC's systems, processes and operations" and also "contain cost, pricing information" that could be used by competitors "to assist in targeting their service offerings and enhancing their competitive positions, to the detriment of SBC's competitive position." (SBC Objection at 6) Such conclusory and generalized allegations are insufficient to demonstrate the likelihood of substantial competitive injury necessary to sustain the burden of nondisclosure under Exemption 4. *Id.* at 680. In any event, Exemption 4 cannot be used to justify withholding any of the cost and pricing information contained in the responsive documents identified on SBC's Attachment A because such data is already in the public domain. Section 54.501(d)(3) of the Commission's rules clearly requires that e-rate service providers, such as SBC, make records of rates charged and discounts allowed to participating schools available for public inspection. That rule reads as follows:

> Service providers shall keep and retain records of rates charged to and discounts allowed for eligible schools and libraries – on their own or as part of a consortium. **Such records shall be made available for public inspection.**

47 C.F.R. §54.501(d)(3) (emphasis added). Records that are required to be made available for public inspection are not confidential within the meaning of Exemption 4. *See CNA Financial Corporation v. Donovan*, 830 F. 2d 1132, 1154 (D.C. Cir. 1987) (a claim of confidentiality cannot be made for any data in the public domain).

Ms. Judy Lancaster
June 28, 2005
Page 4

     In the alternative, SBC argues that the responsive documents were voluntarily provided to the Commission and are protected from disclosure because they are of a kind that SBC would not ordinarily disclose to parties outside the company. (SBC Objection at 5)  SBC has failed, however, to identify any financial or commercial information that was voluntarily provided to the Commission.  On the contrary, SBC concedes that only "the subject matter of the investigation at issue" was "voluntarily brought to the enforcement Bureau's attention by SBC." (SBC Objection at 5)  The "subject matter" of the investigation is not entitled to exemption from disclosure under Exemption 4 because the Commission has already made the "subject matter" of the investigation a matter of public record by virtue of its release of the Order and Consent Decree.  SBC's voluntary act of notifying the Commission of possible rule violations cannot shield the subsequent investigatory record nor any documents SBC provided to the Commission under regulatory compulsion from disclosure.

     SBC has failed to demonstrate that the information requested is protected from disclosure under either Exemption 7(C) or Exemption 4 of the FOIA.  As a result, the FOIA mandates release of the requested files to CompTel/ALTS immediately.

               Respectfully submitted,


               Mary C. Albert
               Vice President, Regulatory Policy



cc:  William Davenport
     Jim Lamoureux, SBC

# Exhibit F

**Mary Albert**

| | |
|---|---|
| **From:** | "Judy Lancaster" <Judy.Lancaster@fcc.gov> [Judy.Lancaster@fcc.gov] |
| **Sent:** | Thursday, July 21, 2005 11:12 AM |
| **To:** | Mary Albert |
| **Cc:** | William Davenport |
| **Subject:** | RE: FOIA 2005-333 |
| **Attachments:** | TEXT.htm; Mime.822 |

Ms. Albert:

This is to confirm our discussion today wherein you now authorize payment of $2088.52 for the search, review and copying fees incurred in responding to your aboverereferenced FOIA request for "[a]ll pleadings and correspondence contained in File No. EB04IH0342." This amount is calculated by subtracting $149.18 ($132.18 specified in your email + $17 for the cost of 100 copies) from our prior fee estimate of $2237.70. As discussed, we believe that you are a commercial Requester and plan to assess fees accordingly. However, we now estimate that the total fee assessed for production of the documents requested will be less than your revised authorized total of $2088.52.

Please respond by reply email no later than 3 p.m. today if I have misstated your authorization agreement in any way.

Sincerely,

Judy Lancaster

Federal Communications Commission
Enforcement Bureau
Investigations and Hearings Division
442 12th Street, S.W., Room 4A431
Washington, D.C. 20554
Direct Phone: (202) 4187584
Facsimile:    (202) 4182080

Original Message
From: malbert@comptelascent.org [mailto:malbert@comptelascent.org]
Sent: Wednesday, July 20, 2005 12:23 PM
To: malbert@comptelascent.org; William Davenport
Cc: Judy Lancaster
Subject: Re: FOIA 2005333

Mr. Davenport:

Thank you for the update. CompTel/ALTS will pay the fees with one caveat. As a nonprofit association, we believe we should be charged pursuant to the assessment schedule set forth in Section 0.470(a)(3) of the Commission's rules, which would entitle us to receive the first 100 pages of reproduction and the first two hours of search time ($132.18) at no charge. If you disagree, please let me know. Otherwise, please proceed and contact me when the documents are available. Thanks for your help.

Mary Albert
Vice President, Regulatory Policy
CompTel/ALTS
1900 M. Street, N.W., Suite 800
Washington, D.C. 200363508
www.comptelascent.org
2022966650 (ph)
2022967585 (fax)
malbert@comptelascent.org

>>> "William Davenport" <William.Davenport@fcc.gov> 07/20/05 9:23 AM >>>

Dear Ms. Albert:
As discussed earlier today, we are reviewing approximately 3200 pages of documents that are potentially responsive to your request, submitted under the Freedom of Information Act ("FOIA"), for "[a]ll pleadings and correspondence contained in File No. EB04IH0342." Your FOIA request indicates that you are willing to pay a maximum fee of $50 for the search, review and copying of the requested documents. However, we estimate the cost to retrieve, review and copy 3,000 pages of responsive documents at approximately $2237.70 (approximately 30 hours of work by a GS14 at $57.59 per hour, or $1727.70, and $510 for copying at $.17 per page). Please advise us if you agree to pay this amount. Upon receipt of your revised payment authorization, we will complete the review and copying of the requested documents and proceed to issue a decision on your FOIA request as quickly as possible.

For your information, a general description of the fees applicable to processing FOIA requests is available on our website at http://www.fcc.gov/foia <http://www.fcc.gov/foia> .

Please contact Judy Lancaster at 2024187584 if you have any questions regarding this matter.

William H. Davenport

Chief, Investigations and Hearings Division
Enforcement Bureau
FCC
(202) 4181034

*** NonPublic: For Internal Use Only ***

# Exhibit G



Jim Lamoureux
Senior Counsel

SBC Services, Inc
1401 I Street NW, Suite 400
Washington, D.C. 20005
Phone 202 326-8895
Fax 202 408-8745

August 19, 2005

## VIA FACSIMILE, HAND DELIVERY AND U.S. MAIL

Samuel Feder
Acting General Counsel
Office of General Counsel
Federal Communications Commission
445 12th Street SW
Washington DC 20554

> **Re:**   **Application for Review of Freedom of Information Action;**
> **FOIA Control No. 2005-333**

Dear Mr. Feder:

Pursuant to 47 C.F.R. § 0.461(i), SBC Communications Inc. ("SBC") hereby files an application for review of the Enforcement Bureau's August 5, 2005, determination to deny in part confidential treatment of records responsive to a Freedom of Information Act ("FOIA") request submitted by CompTel/ALTS. SBC does not object to the specific redactions proposed by the Enforcement Bureau under FOIA Exemptions 4 and 7(C) or its determination to withhold documents under Exemption 5. However, SBC seeks review of the Bureau's rejection of SBC's assertion of the application of Exemption 7(C), *in toto*, to the responsive records.

Background

In its FOIA request, CompTel/ALTS sought release of "[a]ll pleadings and correspondence contained in File No. EB-04-IH-0342." Included within the scope of the CompTel/ALTS request are records that SBC submitted to the Commission in response to a Letter of Inquiry issued by the Enforcement Bureau, as well as the Letter of Inquiry itself. All such records responsive to the CompTel/ALTS request were obtained by the Commission as part of an Enforcement Bureau investigation. Accordingly, SBC asserted that all such responsive documents fell within the "law enforcement-privacy" exemption to the FOIA's disclosure requirements. *See* 5 U.S.C. § 552(b)(7)(C).[1] Pursuant to the FOIA and Commission Rule 0.459, SBC requested that all of the requested records should be maintained by the Commission as confidential and should not be made available for public inspection or disclosure.

---

[1] *See* Letter from Jim Lamoureux, Senior Counsel, SBC Services Inc to Judy Lancaster, Investigations and Hearings Division, Enforcement Bureau, Federal Communications Commission (May 27, 2005)("*Lamoureux Letter*").

Samuel Feder
August 19, 2005
Page 2 of 8

On August 5, 2005, the Enforcement Bureau denied SBC's request that the documents be withheld from disclosure under FOIA Exemption 7(C).[2] Although the Enforcement Bureau agreed to redact the names of individuals contained in the responsive records, the Enforcement Bureau otherwise denied SBC's claim that the records should be withheld pursuant to Exemption 7(C).[3] Its rationale for doing so was contained in a single sentence: "Generally businesses do not possess 'personal privacy' interests as required for application of FOIA Exemption 7(C)." In effect, with a single sweeping statement, the Enforcement Bureau held, as a categorical matter, that corporations have no rights under FOIA Exemption 7(C). Thus, according to the Enforcement Bureau, a corporation's basis for requesting non-disclosure of records compiled for law enforcement purposes is limited to an assertion that the records fall within some other specific FOIA exemption, such as Exemption 4 pertaining to confidential commercial information. That holding is inconsistent with and contrary to the purpose underlying Exemption 7(C), cases addressing the scope of Exemption 7(C), and the actual language of Exemption 7(C). Accordingly, SBC respectfully requests that the Enforcement Bureau's rejection of SBC's request for confidentiality be reversed, and that the documents requested by CompTel/ALTS be withheld from disclosure.

<u>Exemption 7(C) Compels Withholding of the Responsive Documents</u>

Exemption 7(C) applies to all "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The purpose of Exemption 7(C) is to protect parties who had been the subject of law enforcement proceedings from embarrassment, reprisal or harassment, and other invasions of privacy associated with the stigma of law enforcement investigations. *See Voinche v. F.B.I*, 940 F. Supp. 323 (D.D.C. 1996); *Foster v. U.S. Dept. of Justice*, 933 F. Supp. 687 (E.D. Mi 1996). Because of the intense privacy interests in information compiled by law enforcement agencies, Exemption 7(C) "affords broad[] privacy rights to suspects, witnesses, and investigators." *Bast v. Dep't of Justice*, 665 F.2d 1251, 1254 (D.C. Cir. 1981). With respect to the records at issue here, there is no question, and the Enforcement Bureau does not challenge, that the records were "compiled for law enforcement purposes."[4] Thus, the only question is

---

[2] *See* Letter from William H. Davenport, Chief, Investigations and Hearings Division, Enforcement Bureau, Federal Communications Commission to Jim Lamoureux, SBC Services Inc. at 5-6 (August 5, 2005)("Davenport Letter").

[3] The Enforcement Bureau also agreed to redact specific information in the responsive records pursuant to Exemption 4, and it withheld certain records pursuant to Exemption 5. SBC does not seek review of those determinations.

[4] The Letter of Inquiry was issued as part of an Enforcement Bureau investigation, and the documents provided to the Enforcement Bureau by SBC were all in response to the Letter of Inquiry. The stated purpose of the Enforcement Bureau's Letter of Inquiry, as well as the overall purpose of the Enforcement Bureau's investigation was to determine whether SBC had violated Commission rules. It is thus plain that the records in question were compiled by the Enforcement Bureau for law enforcement purposes. The courts have made clear that all agency enforcement proceedings, including civil enforcement

whether disclosure of such documents would constitute an unwarranted invasion of SBC's personal privacy.

The question of whether disclosure of records compiled for law enforcement purposes is warranted turns on whether "the privacy interest at stake outweighs the public interest in disclosure." *Nation Magazine, Washington Bureau v. U.S. Customs Svc.*, 71 F.3d 885, 893 (D.C. Cir. 1995). In this instance, there is no public interest in disclosure that could possibly offset the invasion of privacy that would result from disclosure. The Supreme Court has made clear that, for purposes of Exemption 7(C), "whether an invasion of privacy is *warranted* cannot turn on the purposes for which the request for information is made." *United States Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 771 (1989). Rather, "whether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny rather than on the particular purpose for which the document is being requested." *Id. (Internal quotation marks and citations omitted.)*[5] The Supreme Court's *Reporters Committee* decision is dispositive in this instance.

In *Reporters Committee*, several journalists sought disclosure under the FOIA of the FBI "rap sheet" of a reputed mob boss. In holding that disclosure was prohibited by Exemption 7(C), the Court held that the core purpose of the FOIA,

> . . . is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct. In this case—and presumably in the typical case in which one private citizen is seeking information about another—the requester does not intend to discover anything about the conduct of the agency that has possession of the requested records. Indeed, response to this request would not shed light on the conduct of any Government agency or official.

*Reporters Committee*, 489 U.S. at 773. More specifically, with respect to documents compiled by agencies during the course of law enforcement investigations, the Court further held that,

---

proceedings generally, and FCC Enforcement Bureau investigations in particular, fall within the ambit of Exemption 7. *See. e.g., Aspin v. Dept. of Defense*, 348 F. Supp. 1081 (D.D.C.), *aff'd* 491 F.2d 24 (D.C. Cir. 1972); *Windels, Marx, Davies & Ives v. Dept. of Commerce*, 576 F. Supp. 405 (D.D.C. 1983); *Kay v. FCC*, 867 F. Supp. 11 (D.D.C. 1994).

[5] *See also United States Dep't of Defense v. Federal Labor Relations Bd.*, 114 S.Ct. 1006, 1012 (1994)("the only relevant 'public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,'" which is 'contribut[ing] significantly to public understanding *of the operations or activities of the government.*'")(*quoting Reporters Committee*); *Wichlacz v. U.S. Dept. of Interior*, 938 F. Supp. 325 (E.D. Va. 1996)(only possible public interest to weigh against privacy interest is extent to which disclosure would shed light on agency's performance of its statutory duties or otherwise let citizens know what their government is up to).

. . . although there is undoubtedly some public interest in anyone's criminal history, especially if the history is in some way related to the subject's dealing with a public official or agency, the FOIA's central purpose is to ensure that the *Government's* activities be opened to the sharp eye of public scrutiny, not that information about *private citizens* that happens to be in the warehouse of the Government be so disclosed.

*Id.* at 774.[6] The Court thus concluded that the public interest in disclosure of the rap sheet sought by the journalists "is not the type of interest protected by the FOIA." *Id.* at 775. As a general proposition, moreover, the Court held,

. . . *as a categorical matter* that a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy, and [] when the request seeks no "official information" about a Government agency, but merely *records that the Government happens to be storing*, the invasion of privacy is "unwarranted."

*Id.* at 780 (emphasis added).[7] (Emphasis added.) notably, nowhere in its decision did the Court limit its holding to the disclosure of documents pertaining to *individuals*. The Court's holding in *Reporters Committee*, as well as the D.C. Circuit's subsequent application of that holding in *SafeCard Services* and *Nation Magazine* thus apply with equal force in this instance

The only records responsive to the CompTel/ALTS request are internal documents of a private corporate citizen that were submitted to and compiled by the Commission pursuant to investigative demands issued by the Enforcement Bureau. None of the records in question contain "official information" about the Commission; nor do any of the records pertain to the conduct of the Commission or any Commission official. The only ostensible interest on the part of CompTel/ALTS in disclosure of the requested documents is to try to embarrass SBC with the information compiled

---

[6] *See also SafeCard Services, Inc v. Securities and Exchange Commission*, 926 F 2d 1197, 1205 (D C Cir. 1991)("the type of information sought is simply not very probative of an agency's behavior or performance."); *Nation Magazine,* 71 F.3d at 895 ("In some, perhaps many, instances where a third party asks if an agency has information regarding a named individual in its law enforcement files, the cognizable public interest in that information will be negligible; the requester will be seeking records about a private citizen, not agency conduct."); *Alexander & Alexander Svcs , Inc v. Securities and Exchange Commission,* Civ.A. No. 92-1112 (JHG), 1993 WL 439799 (D.D.C. Oct. 19, 1993)("when a private citizen seeks information regarding another private citizen or corporation, the requester is not seeking information regarding the conduct of the agency in possession of the information ")

[7] *See also SafeCard*, 926 F.2d at 1205-1206 ("Indeed, unless there is compelling evidence that the agency denying the FOIA request is engaged in illegal activity, and access to the names of private individuals appearing in the agency's law enforcement files is necessary in order to confirm or refute that evidence, there is no reason to believe that the incremental public interest in such information would ever be significant."); *see also id.* at 1205 ("The public interest in disclosure is not just less substantial, it is insubstantial.")

by the Enforcement Bureau. There is thus no public policy interest in disclosure of the requested documents.

Conversely, there are substantial privacy interests in such documents. As with information compiled by the FBI in rap sheets, the requested records are no more than documents that "happen to be in the warehouse" of the Commission because they were gathered during the course of a law enforcement investigation. Indeed, the privacy interest in the particular information at issue here is stronger than that in *Reporters Committee*. The discrete informational components of rap sheets are frequently publicly available through various court records; it was thus the compilation of such information in which the Court found a cognizable privacy interest. *See Reporters Committee*, 489 U.S. at 763-764.[8] Here, in contrast, the records are SBC's private possessions; none of the information in those records is generally publicly available. Indeed, but for the investigative demand of the Enforcement Bureau, the records would remain in SBC's possession. Moreover, the information would remain in SBC's possession as discrete documents and information scattered throughout SBC's offices and files. But for the Enforcement Bureau's investigative demand, there would be no compilation of those records as there is now in the Enforcement Bureau's files. Accordingly, given the strong privacy interest in the records at issue here, and the complete lack of any public interest in disclosure of those records, *Reporters Committee* is clear that Exemption 7(C) compels the Commission not to publicly disclose the records responsive to the CompTel/ALTS request.

The Enforcement Bureau's sole response to this argument is that "Generally, businesses do not posses 'personal privacy' interests as required for application of FOIA Exemption 7(C)."[9] That statement is inaccurate as a general proposition as well as in the application of Exemption 7(C) to compilations of records contained in law enforcement files.

First, there is no support for any general proposition that corporations do not have privacy rights in their documents. In an analogous setting in which a corporation sought to keep sealed documents that had been produced in discovery in civil litigation, the D.C. Circuit held that "a corporation possesses legitimate constitutional expectations of confidentiality in internal commercial information." *Tavoulares v. Washington Post Company*, 724 F.2d 1010, 1022 (D.C. Cir. 1983), *rev'd en banc on other grounds*, 737 F.2d 1170 (1984). The only qualification of a corporation's right to nondisclosure is to allow "adequate policing of corporate conduct." *Id.*[10]

---

[8] *Reporters Committee* thus disposes of any notion that SBC has no privacy interest in the records in question merely because the investigation is a matter of public record as a result of the Order issued by the Commission approving the Consent Decree between SBC and the Enforcement Bureau. *See. e.g.*, *Reporters Committee*, 489 U.S. at 1480 ("In sum, the fact that an event is not wholly private does not mean that an individual has no interest in limiting disclosure or dissemination of the information ")(*internal quotation marks and citations omitted*).

[9] *Davenport Letter* at 6.

[10] Which, of course, goes to the authority and power of the Commission to obtain documents from SBC in the first instance, not to subsequent disclosure of those documents to the public.

Similarly, and even closer to the situation at hand, in a case in which a corporation sought to keep sealed documents that had been gathered by law enforcement officials during searches of a corporation, the D.C. Circuit held that "The public attributes of corporations may reduce pro tanto the reasonability of their expectation of privacy, but the nature and purpose of the corporate entity and the nature of the interest sought to be protected will determine the question whether under given facts the corporation per se has a protectible interest." *U.S v. Hubbard*, 650 F.2d 293, 306 (D.C. Cir. 1980). There is thus no question that corporations generally have privacy interests in their own documents.

There also is no merit to the argument that the protections of Exemption 7(C) do not apply to corporations. On its face, Exemption 7(C) is not limited to protecting the personal privacy of individuals. Nor has SBC been able to discover any legislative history that would suggest that Exemption 7(C)'s protections are limited to individuals. Indeed, there is no reason that corporations should not be protected from the embarrassment, reprisal or harassment, and other invasions of privacy associated with the stigma of law enforcement investigations that Exemption 7(C) was designed to prevent.

The Enforcement Bureau's holding effectively conflates the protections afforded by Exemptions 6 and 7(C). Both Exemption 6 and Exemption 7(C) involve personal privacy concerns, but the specific language of Exemption 6 is fundamentally different than the language of Exemption 7(C). Specifically, Exemption 6 only protects from disclosure "personnel and medical files and similar files." 47 U.S.C. § 552(B)(6). Thus, by its own terms, Exemption 6 protects information that could only pertain to an individual and which might reveal personal private information pertaining to that individual. A personnel file is something that is compiled only with respect to an individual as an employee, and a medical file is something that is compiled only with respect to an individual's medical health. Corporations, in their own capacity, do not have personnel or medical files. It thus makes plain sense to conclude that Exemption 6 implicates only individual privacy concerns and does not apply to corporations. In contrast, there are no restrictive adjectives with respect to the files subject to Exemption 7(C). Rather, Exemption 7(C)'s protections against invasions of privacy applies to all records or information compiled for law enforcement purposes.

The Commission's holding also flies in the face of the language in Exemption 7(B), which immediately precedes Exemption 7(C). Exemption 7(B) applies to documents that would deprive "a person"—not an individual—of a right to a fair trial or an impartial adjudication. 47 U.S.C. § 552(b)(7)(B). Corporations are generally presumed "persons" for purposes of statutory construction. *See, e.g., Cook County, Illinois v. U.S.*, 123 S.Ct. 1239, 1244 (2003)("There is no doubt that the term [person] [extends] to corporations, the Court in 1826 having expressly recognized the presumption that the statutory term 'person' extends as well to persons politic and incorporate, as to natural persons whatsoever.")(*internal quotation marks and citations omitted*). It is thus reasonable to attach the same presumption to Exemption 7(C)'s use of the term "personal," which is merely the adjectival form of the noun "person" used in Exemption 7(B). The language and structure of Exemptions 6, 7(B) and 7(C) thus compel rejection of the Commission's holding that Exemption 7(C) does not apply to corporations.

Samuel Feder
August 19, 2005
Page 7 of 8

Nor is there case support for the Enforcement Bureau's holding. The Enforcement Bureau's sweeping pronouncement that corporations have no rights to non-disclosure under Exemption 7(C) was supported by a citation to a single prior Commission decision: *Chadmore Communications, Inc. Memorandum Opinion and Order*, 13 FCC Rcd. 23943 (1998). That decision rejected a non-disclosure claim on the ground that the information in question pertained to the interests of individuals "in their status as holders of commercial radio licenses, a capacity in which they have neither a personal privacy interest nor an expectation of privacy." *Id.* ¶ 7. As support for its holding in *Chadmore*, the Commission relied upon three cases, all of which involved application of Exemption 6, and none of which involved application of Exemption 7(C). *Sims v. CIA*, 642 F.2d 562 (D.C. Cir. 1980); *National Parks and Conservation Ass'n v. Kleppe*, 547 F.2d 673 (D.C. Cir. 1976); *Ivanhoe Citrus Ass'n v. Handley*, 612 F. Supp. 1560 (D.D.C. 1985).[11] None of the cases relied upon by the Commission thus actually stand for the proposition that Exemption 7(C) does not apply to corporations.[12]

Moreover, all three cases pre-date the Supreme Court's decision in *Reporters Committee*. That decision fundamentally altered the calculus of balancing public and private interests in determining whether to disclose documents in response to FOIA requests. Thus, all of the cases relied on by the Commission in *Chadmore*, and, by extension in this instance, to restrict the scope of Exemption 7(C) are supplanted by the Court's pronouncement in *Reporters Committee* that the core purpose of the FOIA is not served by disclosure of information that merely resides in agency files but reveals nothing about the agency's own conduct, and its *categorical* pronouncement that a third party request that seeks no "official information" about an agency,

---

[11] The *Chadmore* decision apparently understood the tenuousness of its conclusion, because it went on to find, "Even assuming these commercial licensees have a privacy interest, it is at most de minimis and is far outweighed by the public interest in publicly disclosing information about commercial licensees who have been granted rule waivers in Commission proceedings." *Chadmore* ¶ 7. In this instance, *Reporters Committee* firmly and categorically establishes that there is *no* public interest in granting disclosure to a third party of law enforcement records that happen to be stored in agency files. Accordingly, any slight privacy interest is sufficient to compel nondisclosure.

[12] One D.C. Circuit decision, *Washington Post Co. v. United States Dep't of Justice*, 863 F.2d 96, 100 (D.C. Cir. 1988)("Information relating to business judgments does not qualify for exemption."), and one decision from the United States District Court for D.C., *Cohen v. EPA*, 575 F. Supp. 425, 429 (D.D.C. 1983)("The privacy exemption does not apply to information regarding professional or business activities.") contain language suggesting that Exemption 7(C) protects only individual privacy interests. However, as with the Commission's decision in *Chadmore*, both *Washington Post* and *Cohen* support their statements as to the applicability of Exemption 7(C) with citations to prior cases that involved only the application of Exemption 6. Thus, the *Cohen* decision relies on *Rural Housing alliance v. Untied States Dep't of Agriculture*, 498 F.2d 73 (D.C. Cir. 1974) and *Kurzon v. Dep't Of Health and Human Svcs.*, 649 F.2d 65 (1st Cir. 1981), both of which involved only the application of Exemption 6, and the *Washington Post* decision relies on *Sims v. CIA*, 642 F.2d 562 (D.C. Cir. 1980), which also involved only the application of Exemption 6. Thus, as with the Commission's *Chadmore* decision, neither *Washington Post* or *Cohen* are supported by prior decisions concerning the scope of Exemption 7(C). Moreover, as with the cases relied on by the Commission in *Chadmore*, both *Washington Post* and *Cohen* pre-date the Supreme Court's *Reporters Committee* decision.

Samuel Feder
August 19, 2005
Page 8 of 8

but merely seeks files accumulated and stored by the agency is an invasion of privacy. The holding in *Reporters Committee* is not limited to privacy interests of individuals. Rather, the comparison of the core purpose of the FOIA—shedding light on agency conduct—and the potential invasion of privacy occasioned by disclosure of law enforcement records an agency happens to be storing, applies with equal force to individuals and corporations. Indeed, the United States District Court for D.C. has indicated its understanding that the Court's holding in *Reporters Committee* applies "when a private citizen seeks information regarding another private citizen *or corporation.*" *Alexander & Alexander* at *10 (emphasis added). In that case, the district court rejected the SEC's proposed disclosure of information dealing only with individuals in their professional capacities. *Id.* It held that under *Reporters Committee*

> personal information is exempt from disclosure to a FOIA requester in the absence of compelling evidence that the agency was involved in illegal activity. The fact that the information may or may not injure these individuals' reputations is irrelevant to the inquiry whether the information sheds any light on what the SEC "was up to." *Id.*

That application of the balancing required under *Reporters Committee* is directly on point here. None of the documents requested by CompTel/ALTS reveal anything about the official conduct of the Commission. They are all SBC's personal business documents. Accordingly, given the complete lack of any public interest that would be served by disclosure, the documents should be withheld.[13]

The Enforcement Bureau's sweeping pronouncement that Exemption 7(C) does not apply to corporations is thus belied by the purpose of Exemption 7(C), cases addressing the scope of Exemption 7(C), and the actual language of Exemption 7(C). Accordingly, SBC respectfully requests that the Enforcement Bureau's rejection of SBC's request for confidentiality be reversed, and that the documents requested by CompTel/ALTS be withheld from disclosure.

If you have any questions, please do not hesitate to contact me at (202) 326-8895.

Sincerely,

Jim Lamoureux
Senior Counsel
SBC Services, Inc.

cc:    Judy Lancaster
       Mary C. Albert

---

[13] *See United States Dep't of Defense v. Federal Labor Relations Authority*, 114 S.Ct. 1006, (1994)("Because a very slight privacy interest would suffice to outweigh the relevant public interest, we need not be exact in our quantification of the privacy interest. It is enough for present purposes to observe that the employees' interest in nondisclosure is not insubstantial.")

# Exhibit H

COMPETITIVE
TELECOMMUNICATIONS
ASSOCIATION

1900 M STREET NW, SUITE 800
WASHINGTON DC 20036-3508

PH: 202 296 6650
FX: 202 296 7585
www.comptel.org

# CompTel®

September 1, 2005

**By Facsimile, U.S. Mail and E-Mail**

Samuel Feder, Esq.
Acting General Counsel
Federal Communications Commission
445 12th Street S.W.
Washington, D.C. 20554

> Re:    SBC's Application for Review of Freedom of Information
> Act Action, FOIA Control No. 2005-333

Dear Mr. Feder:

Pursuant to Section 0.461(i)(1) of the Commission's Rules, 47 C.F.R. § 0.461(i)(1) CompTel hereby responds to SBC Communications, Inc.'s ("SBC") application for review of the Enforcement Bureau's August 5, 2005 letter rejecting its claim that Freedom of Information Act ("FOIA") Exemption 7(C) protects from disclosure all pleadings and correspondence in File No. EB-04-IH-0342. The Commission should summarily deny SBC's Application for Review because the arguments contained therein are utterly without merit.

## Background

On April 4, 2005, CompTel submitted an FOIA request to the Commission for documents contained in File No. EB-04-IH-0342. These documents relate to the Enforcement Bureau's investigation of SBC for violations of the Commission's rules in connection with the receipt of universal service support for the New London Connecticut Public Schools. The Commission terminated the investigation upon issuing an Order adopting a Consent Decree. *In the Matter of SBC Communications, Inc.*, File No. EB-04-IH-0342, Order, DA 04-3893 (released December 16, 2004). The Enforcement Bureau informed SBC of CompTel's FOIA request and by letter dated May 27, 2005, SBC objected to disclosure of the documents requested on the grounds that they were exempt

Mr. Samuel Feder
September 1, 2005
Page 2

from disclosure pursuant to FOIA Exemptions 7(C) and 4.[1]  5 U.S.C. §§ 552(b)(7)(C),
552(b)(4).  CompTel responded to SBC's objections by letter dated June 28, 2005.  By
letter dated August 5, 2005, the Bureau sustained in part and overruled in part SBC's
objections to release of the documents requested.  On August 19, 2005, SBC submitted
its Application for Review of the Bureau's decision, but limited its request for review to
the Bureau's determination that Exemption 7(C) does not protect the documents from
disclosure *in toto.*

### SBC Has Waived Its Right To Request
### Confidential Treatment Under Commission Rule 0.459

SBC contends that it sought confidential treatment for the requested documents
pursuant to Section 0.459 of the Commission's Rules.[2]  Section 0.459 provides that any
person submitting information or materials to the Commission "may submit therewith a
request that such information not be made routinely available for public inspection."
SBC apparently did not request confidential treatment at the time the materials were
submitted to the Enforcement Bureau despite the fact the Bureau had alerted SBC to its
right to request such treatment.[3]  Indeed, SBC did not request confidential treatment until
it learned of CompTel's FOIA request, which came 5 months after the Bureau terminated
the investigation into possible violations of the Commission's universal service funding
rules and 8 months after the documents were submitted to the Commission.  SBC's
dilatory behavior in requesting confidential treatment for the records cannot be reconciled
with its claims in this matter that the documents requested are extremely "private."

SBC asserted that all records responsive to the CompTel request were entitled to
confidential treatment, but did not provide the detailed explanation required by Section
0.459(a).  The Bureau correctly found that SBC failed to meet its burden of
demonstrating that confidential treatment was warranted for the requested documents

---

[1]   See Letter from Jim Lamoureux, SBC, to Judy Lancaster dated May 27, 2005.  SBC's letter
was provided to CompTel/ALTS on June 23, 2005.

[2]   See Application for Review at 1.

[3]   Application for Review at 1 at fn. 1.  Although SBC submitted the documents to the
Commission on or about September 13, 2004, it appears that SBC did not ask for confidential
treatment at that time.  The Bureau notes that the Letter of Inquiry sent to SBC on August 24,
2004 warned SBC that requests for confidential treatment must comply with the requirements
set forth in Section 0.459(b) and that the Bureau would not consider confidentiality requests
that did not so comply.  See August 5, 2005 Letter from William H. Davenport to Jim
Lamoureux and Mary C. Albert at 4.  SBC made no attempt to secure confidential treatment for
the materials until the Bureau advised it of CompTel's April 4, 2005 FOIA request.

Mr. Samuel Feder
September 1, 2005
Page 3

pursuant to Section 0.459(b).[4]   In its Application for Review, SBC did not challenge the
Bureau's finding.  Accordingly, the Commission should conclude that SBC has waived
any rights to confidential treatment under Section 0.459 both by failing to make the
request that the documents be withheld from public inspection in a timely manner and by
failing to raise any objection to the Bureau's determination in its August 19, 2005
Application for Review.

## Exemption 7(C) Does Not Protect
## The Records From Disclosure

SBC maintains that all documents contained in the case file of the Commission's
investigation into its violation of the e-rate rules are exempt from disclosure pursuant to
FOIA exemption 7(C) simply because they were accumulated in the course of an
Enforcement Bureau investigation of SBC's business activities.[5]  There is no support for
SBC's position in either the language of the statute or the case law that SBC itself cites.

Exemption 7(C) protects from disclosure "records or information compiled for
law enforcement purposes, *but only to the extent* that the production of such law
enforcement records or information . . . could reasonably be expected to constitute an
unwarranted invasion of *personal privacy.*"  5 U.S.C. §552(b)(7)(C) (emphasis added).
If, as SBC asserts, the only criterion for withholding material under Exemption 7(C) is
that the information was compiled for law enforcement purposes, there would be no need
for the language narrowly limiting the exemption to situations where disclosure could
constitute an unwarranted invasion of *personal* privacy.  *See FBI v. Abrahmson,* 456 U.S.
615, 627-628 (1982) (all law enforcement files are not entitled to a blanket exemption
from disclosure); *Wichlaz v. U.S. Department of Interior,* 938 F. Supp. 325 (E.D.Va.
1996) (the conclusion that documents were compiled for law enforcement purposes does
not preclude disclosure); *Kimberlin v. Department of Justice,* 139 F. 3d 944, 950 (D.C.
Cir. 1998) at 950 (in order to withhold an entire file pursuant to Exemption 7(C), the
government must show that disclosure of any part of the file could reasonably be
expected to constitute an unwarranted invasion of personal privacy); *The Nation
Magazine v. U.S. Customs Service,* 71 F.3d 885, 896 (D.C. Cir. 1995) (agencies not
permitted to exempt from disclosure *all* of the material in an investigatory record solely
on the grounds that the record includes some information that identifies a private citizen

---

[4]      August 5, 2005 Letter from William H. Davenport to Jim Lamoureux and Mary C. Albert at 3-
4.

[5]      SBC's Application for Review at 1 (all documents responsive to CompTel's request were
obtained by the Commission as part of an Enforcement Bureau investigation and accordingly
fall within the "law enforcement –privacy" exemption to the disclosure requirements).
CompTel notes for the record that it does not concede the validity of SBC's characterization of
the records requested as being compiled for law enforcement purposes.

Mr. Samuel Feder
September 1, 2005
Page 4

or provides that person's name and address). SBC made no showing that disclosure of any of the requested documents could reasonably be expected to constitute an unwarranted invasion of *personal* privacy.[6]

The FOIA embodies a policy authorizing liberal disclosure of government documents and records and such records must be produced upon request unless they are specifically exempted from disclosure by statute. Given the liberal disclosure policy of FOIA, the exemptions are to be narrowly construed in favor of disclosure. *Wichlaz v. U.S. Department of Interior*, 938 F. Supp. 325, 331 (E.D.Va. 1996). The Bureau correctly determined that "businesses do not possess 'personal privacy' interests as required for application of FOIA Exemption 7(C)." The Bureau's determination is well grounded in both Commission and judicial decisions interpreting the privacy exemption. *See e.g., Chadmore Communications, Inc.*, FOIA Control No. 97-308, Memorandum Opinion and Order, 13 FCC Rcd 23943 (1998) (individuals have neither a personal privacy interest nor an expectation of privacy in their capacity as holders of commercial radio licenses); *The Washington Post Company v. United States Department of Agriculture*, 943 F.Supp. 31, 35 n. 4 (D.D.C. 1996)(a business entity has no "personal privacy" interest); *Ivanhoe Citrus Association v. Handley*, 612 F. Supp. 1560, 1567 (D.D.C. 1985) (neither corporations nor business associations possess protectible privacy interests); *National Parks and Conservation Association v. Kleppe*, 547 F.2d 673 (D.C. Cir. 1976). *See also, The Washington Post Company v. United States Department of Justice*, 863 F. 2d 96, 100 (D.C. Cir. 1988) (investigation and assessment of business decisions of corporate employees during the development and marketing of a commercial product do not qualify for exemption from disclosure under Exemption 7(C)); *Cohen v. EPA*, 575 F. Supp. 425, 429 (D.D.C. 1983) (the Exemption 7(C) privacy exemption does not apply to information regarding business and professional activities).

Despite this precedent, SBC alleges quite incredibly that there is no case support for the Bureau's holding.[7] Moreover, it attempts to discredit the Bureau's reliance on *Chadmore* on the grounds that the judicial decisions[8] cited therein involved Exemption 6,

---

[6] The Bureau has agreed to delete the names of individuals identified in the SBC documents to protect their privacy interests. August 5, 2005 Letter from William H. Davenport to Jim Lamoureux and Mary C. Albert at 6.

[7] August 5, 2005 Letter from William H. Davenport to Jim Lamoureux and Mary C. Albert at 6.

[8] Application for Review at 2, 7, 8

[9] *Chadmore* cites *Sims v. CIA*, 642 F2d 562 (D.C. Cir. 1980); *National Parks and Conservation Ass'n v. Kleppe*, 547 F.2d 673 (D.C. Cir. 1976); and *Ivanhoe Citrus Ass'n v. Hadley*, 612 F. Supp. 1560 (D.D.C. 1985).

Mr. Samuel Feder
September 1, 2005
Page 5

rather than Exemption 7. [10]  While SBC concedes that Exemption 6 applies only to the privacy interests of individuals, it argues that Exemption 7(C) is not so limited. [11]  SBC's argument is without foundation.  It is well settled that although "Exemption 7(C) is not congruent with Exemption 6, the difference lies in the standard of review and not in the relevant privacy interests covered by the exemption." *Cohen v. EPA*, 575 F. Supp. 425, 429 at n. 6. [12]  Significantly, SBC has not been able to unearth one case finding that large publicly traded corporations, such as SBC, possess protectible privacy interests within the meaning of Exemption 7(C).  Instead, it relies on *Tavoulareas v. Washington Post Company*, 724 F.2d 1010 (D.C. Cir. 1983) for the proposition that a corporation has a legitimate expectation of privacy in internal corporate information. [13]  SBC's reliance on *Tavoulareas* underscores the weakness of its argument.  In addition to the fact that *Tavoulareas* addressed a request for the reinstatement of a protective order for discovery materials and not a FOIA request, the opinion and judgment of the Court have been vacated and thus have no precedential value.  *See Tavoulareas v. Washington Post Company*, 737 F. 2d 1170 at 1172 (D.C. Cir. 1984).

SBC also argues that because invasion of SBC's privacy is not warranted to promote the basic purposes of the FOIA, the Supreme Court's decision in *United States Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749 (1989), requires the Commission to withhold from disclosure all of the documents requested by CompTel. [14]  Again, SBC's position is wide of the mark.  As a large publicly traded corporate entity, SBC simply does not have a protectible privacy interest within the meaning of Exemption 7(C), much as it wishes it otherwise.  For that reason, the Commission is not required to balance SBC's purported privacy interest against the public interest in disclosure.

---

[10]     SBC's Application for Review at 7.

[11]     *Id.* at 6.

[12]     Exemption 6 protects from disclosure "personnel and medical files and similar files, the disclosure of which *would* constitute a clearly unwarranted invasion of personal privacy" whereas Exemption 7(C) protects from disclosure law enforcement records but only to the extent that such disclosure "*could* constitute an unwarranted invasion of personal privacy." 5 U.S.C. §§ 552(b)(6), 552(b)(7)(C)  *U.S. Department of Defense v. Federal Labor Relations Board*, 510 U.S. 487, 496 (1994) (Exemption 7(C) is more protective of privacy than Exemption 6)

[13]     Application for Review at 5.

[14]     Application for Review at 3-5.

Mr. Samuel Feder
September 1, 2005
Page 6

Although the privacy interest at stake in *Reporters Committee* was that of an individual,[15] SBC contends that the Court did not limit its holding to documents pertaining to individuals.[16] Not only is there no language in the Supreme Court's decision to support SBC's assertion that corporations have the type of privacy interests protected by Exemption 7(C), SBC has cited no case decided in the 16 years since *Reporters Committee* was issued that has so found. On the contrary, the cases SBC does cite all deal with the privacy rights of individuals. *See The Nation Magazine v. U.S. Customs Service*, 71 F. 3d 885 (D.C. Cir. 1995) (information in investigatory files that would reveal the identities of individuals who are subjects, witnesses or informants in law enforcement investigations are exempt from disclosure under Exemption 7(C)); *Safecard Services, Inc. v. Securities and Exchange Commission*, 926 F.2d 1197 (D.C. Cir. 1991) (agency may withhold the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C)); *United States Department of Defense v. Federal Labor Relations Board*, 510 U.S. 487 (1994) (home addresses of bargaining unit employees may be withheld from disclosure under Exemption 6); *Wichlaz v. U.S. Department of Interior*, 938 F. Supp. 325 (D.D.C. 1996) (law enforcement officers, interviewees, suspects, witnesses and other individuals named in investigatory files may be withheld pursuant to Exemption 7(C)); *Alexander & Alexander Services, Inc. v. Securities and Exchange Commission*, 1993 U.S. Dist. Lexis 14945 (D.D.C. 1993) (Exemption 7(C) protects from disclosure personal information about corporate officers, directors and employees, such as home phone numbers, salaries, pension benefits and personal expenses and assets).[17]

SBC has failed to demonstrate any error in the Bureau's determination that Exemption 7(C) of the FOIA does not protect from disclosure the documents requested

---

[15] The *Reporters Committee* Court found that Exemption 7(C) was properly applied to withhold an individual's rap sheet from disclosure.

[16] Application for Review at 4, 8

[17] SBC also relies on *U.S. v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980) (Application for Review at 6) which has no applicability to the facts of this case. *Hubbard* involved a church's motion for the return of documents that had been seized in the course of a criminal investigation and the church's claim that it had a privacy interest in the documents under state law. Contrary to SBC's contention that the case stands for the proposition that corporations generally have privacy interests in their own documents, the Court found that "[w]hether and to what extent the privacy interests protected by state law may be asserted by corporations is still unsettled." *Id.* at 306

Mr. Samuel Feder
September 1, 2005
Page 7

by CompTel. For the foregoing reasons, the Commission should deny SBC's Application
for Review and direct the Enforcement Bureau to make the documents available without
further delay.

Respectfully submitted,

/s/

Mary C. Albert
Vice President, Regulatory Policy

cc:  William Davenport
     Jim Lamoureux, SBC

# Exhibit I

## Mary Albert

| | |
|---|---|
| **From:** | Mary Albert |
| **Sent:** | Tuesday, September 06, 2005 5:46 PM |
| **To:** | sam.feder@fcc.gov; william.davenport@fcc.gov; jlee@comptelascent.org; jl3757@sbc.com |
| **Subject:** | FOIA Control No. 2005-333 |

**Attachments:**    TEXT.htm; Opposition toFOIA Application for Review on CompTel Letterhead.doc

Gentlemen — earlier this afternoon I emailed you CompTel's Application for Review of the Enforcement Bureau's decision in the above-captioned FOIA action. I just realized that the version I sent was not on CompTel letterhead for which I apologize. Attached is another copy of the Application for Review. this one on letterhead (no other changes)

Mary Albert
Vice President. Regulatory Policy
CompTel
1900 M. Street. N.W., Suite 800
Washington, D C  20036-3508
www.comptelascent.org
202-296-6650 (ph)
202-296-7585 (fax)
malbert@comptelascent.org

  

TEXT.htm (1 KB)   Opposition toFOIA
Application ...

1



COMPETITIVE
TELECOMMUNICATIONS
ASSOCIATION

1900 M STREET NW. SUITE 800
WASHINGTON DC 20036-3508

PH: 202 296 6650
FX: 202 296 7585
www.comptel.org



September 6, 2005

**By Facsimile, U.S. Mail and E-Mail**

Samuel Feder, Esq.
Acting General Counsel
Federal Communications Commission
445 12th Street S.W.
Washington, D.C. 20554

Re:  CompTel's Application for Review of Freedom of
     Information Act Action, FOIA Control No. 2005-333

Dear Mr. Feder:

Pursuant to Section 0.461(j) of the Commission's rules, 47 C.F.R. §0.461(j), CompTel hereby submits its Application for Review of the Enforcement Bureau's August 5, 2005[1] letter denying in part CompTel's Freedom of Information Act Request ("FOIA") on the grounds that FOIA Exemptions 4 and 5 protect certain documents from disclosure.

### Background

On April 4, 2005, CompTel filed with the Commission an FOIA request for documents contained in File No. EB-04-IH-0342. These documents relate to the Enforcement Bureau's investigation of SBC for violations of the Commission's rules in connection with the receipt of universal service support for the New London, Connecticut Public Schools. The Commission terminated the investigation in December 2004 upon issuing an Order adopting a Consent Decree. *SBC Communications, Inc.* Order and Consent Decree, 19 FCC Rcd 24014 (released December 16, 2004).

Apparently SBC did not seek confidential treatment for its documents at the time it provided them to the Commission in connection with the investigation. Upon being

---

[1]    August 5, 2005 Letter from William Davenport to Jim Lamoureux and Mary C. Albert.

Samuel Feder, Esq
September 6, 2005
Page 2

notified of CompTel's FOIA request, however, SBC objected to the disclosure of the documents requested, claiming that they were exempt from disclosure pursuant to FOIA Exemptions 7(C) and 4, 5 U.S.C. §§552(b)(7)(C) and 552(b)(4).[2]   CompTel responded to SBC's objections and the Bureau issued its decision on August 5, 2005.[3]   The Bureau rejected SBC's Exemption 7(C) claims, but stated that it would withhold certain documents pursuant to Exemption 4 and certain other documents pursuant to Exemption 5 of the FOIA.   CompTel is at an extreme disadvantage in making a case for review of the Enforcement Bureau's decision because the Bureau has not provided CompTel with a Vaughn index[4] identifying the documents it proposes to withhold and the particular Exemption(s) that applies to each document.   Nonetheless, out of an abundance of caution and in order to protect its rights on appeal, CompTel requests that the Commission review the Bureau's determinations to withhold documents pursuant to Exemptions 5 and 4 for the following reasons.

### The Bureau Has Not Identified With Particularity The Documents Withheld Under Exemption 5 Or Demonstrated That The Exemption Applies

Exemption 5 of the FOIA, 47 U.S.C. §552(b)(5), permits the Commission to withhold inter-agency or intra-agency memorandums that would not be available to a private party in litigation with the agency through discovery.   In invoking this exemption, the Bureau has stated that it "will withhold from public disclosure drafts of pleadings and correspondence, and memoranda and emails, distributed among Commission staff which discuss the issues and investigation related to this matter."[5]   The burden is on the Bureau to prove that Exemption 5 protects all of these materials.   *Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir. 1973), *cert. denied,* 415 U.S. 977 (1974).   The conclusory and generalized allegation that Exemption 5 applies to all of the withheld material is insufficient to meet the Bureau's burden.   In order to carry its burden, the Bureau must describe both the contents of each of the withheld documents and enough about their context to establish that Exemption 5 applies.   *SafeCard Services, Inc. v. Securities and Exchange Commission*, 926 F.2d 1197, 1204 (D.C. Cir. 1991); *Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974) (withheld documents must be described and indexed).   Because the materials the Bureau intends to withhold are not otherwise identified or indexed, it is impossible for CompTel to challenge with any specificity the Bureau's decision to withhold any or all of the documents.   Based on the information that is available to CompTel, however, there are at least two aspects of the Bureau's Exemption 5 determination that warrant review.

---

[2]   May 27, 2005 Letter from Jim Lamoureux to Judy Lancaster.

[3]   August 5, 2005 Letter from William Davenport to Jim Lamoureux and Mary C. Albert.

[4]   *See e.g. Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974) (withheld documents must be described and indexed).

[5]   August 5, 2005 Letter from William Davenport to Jim Lamoureux and Mary C. Albert at 6.

Samuel Feder, Esq.
September 6, 2005
Page 3

First, intra-agency memoranda that explain decisions not to file a complaint are final opinions made in the adjudication of a case that fall outside the scope of Exemption 5. *National Labor Relations Board v. Sear Roebuck & Co.*, 421 U.S. 132 (1975); *SafeCard Services, Inc. v. Securities and Exchange Commission*, 926 F.2d 1197, 1204 (D.C. Cir. 1991) (agency's decision not to file injunctive action against a particular entity is final agency action in the adjudication of a case). The Bureau's investigation into SBC's violations of the Commission's universal service rules was terminated upon the adoption of a Consent Decree. *SBC Communications, Inc.* Order and Consent Decree, 19 FCC Rcd 24014. A complaint was never filed. To the extent that any of the documents withheld pursuant to Exemption 5 reflect an explanation of the Bureau's or the Commission's decision not to pursue a complaint against SBC, they must be produced.

Secondly, Exemption 5 does not protect any purely factual material appearing in the intra-agency documents in a form that is severable without compromising the deliberative or policy making material contained therein. *Environmental Protection Agency v. Mink*, 410 U.S. 73 (1973) (agency must demonstrate by surrounding circumstances that particular documents are purely advisory or deliberative and contain no separate factual information); *Sterling Drug v. Federal Trade Commission,* 450 F.2d 698 (D.C. Cir. 1971) (while communications of thoughts and opinions are to be protected, statements of fact are subject to disclosure). To the extent that any of the documents withheld contain statements of fact, those documents, or the portions thereof that contain the statements of fact, must be produced.

## Exemption 4 Does Not Protect From Disclosure All of
## The Financial Information The Bureau Intends To Withhold

The Bureau warned SBC in the Letter of Inquiry ("LOI") pursuant to which SBC submitted the documents requested by CompTel that requests for confidential treatment must comply with the requirements specifically mandated by Section 0.459(b), and that the Bureau would not consider confidentiality requests that did not so comply.[6] SBC apparently did not heed the warning or request confidential treatment at the time it submitted the documents. Indeed, it did not request confidential treatment until 8 months after the documents were originally produced to the Commission, 5 months after the investigation was terminated and then only in response to CompTel's FOIA request.[7]

The Bureau correctly found that SBC's belated request for confidential treatment was woefully inadequate:

---

[6]     August 5, 2005 Letter from William Davenport to Jim Lamoureux and Mary C. Albert at 3-4.

[7]     May 27, 2005 Letter from Jim Lamoureux to Judy Lancaster.

Samuel Feder, Esq
September 6, 2005
Page 4

We find that SBC's requests for confidential treatment of its submissions substantially fail to comply with the standards set forth in section 0.459(b) of the Commission's rules.[8]

SBC has failed to provide a statement of specific reasons for withholding its responses in their entirety. While generally categorizing the information contained in its submissions, SBC does not, as required by section 0.459(b)(3) explain the degree to which specific information is commercial or financial or contains a trade secret. Nor does it explain, as required by section 0.459(b)(5), how disclosure of such information could result in substantial competitive harm. SBC also fails to state whether any of the information for which it seeks protection is already available to the public.[9]

Despite these findings, the Bureau determined on its own that disclosure of certain information "could result in competitive harm to SBC." As a result, the Bureau stated its intent to withhold certain documents, including, but not limited to, SBC's costs and pricing data, invoice and discount amounts, and its billing and payment dates[10] pursuant to Exemption 4 of FOIA, 5 U.S.C. §552(b)(4).

Exemption 4 gives the Commission discretion to withhold from disclosure confidential commercial and financial information. In order to prevail on a claim under Exemption 4, a party must demonstrate that disclosure of the requested information is likely to cause substantial harm to the competitive position of the entity from whom the information was obtained. *National Parks and Conservation Association v. Kleppe*, 547 F.2d 673, 677-678 (D.C. Cir. 1976). The Bureau determined that SBC had failed to show how disclosure of any of the information could result in substantial competitive harm. The Bureau's own conclusory and generalized allegation of substantial competitive harm is unacceptable and cannot support its decision to withhold the requested documents. *Public Citizen Health Research Group v. Food and Drug Administration*, 704 F.2d 1280, 1291 (D.C. Cir. 1983). It is difficult to imagine, for example, how the disclosure of billing and payment dates could cause substantial harm to SBC's competitive position. Moreover, the fact that SBC was unable to demonstrate substantial harm to its competitive position from disclosure of the documents should weigh heavily against withholding any of the documents.

---

[8]     August 5, 2005 Letter from William Davenport to Jim Lamoureux and Mary C. Albert at 1.

[9]     *Id.* at 4. SBC did not challenge these findings in its Application for Review of the Bureau's decision.

[10]     *Id.* at 5.

Samuel Feder, Esq
September 6, 2005
Page 5

The Bureau's determination that Exemption 4 protects from disclosure SBC's invoice and discount amounts is similarly wanting. Exemption 4 does not protect from disclosure the rates SBC charged or the discounts it provided to any participating schools and libraries because that information already is (or should be) in the public domain. Section 54.501(d)(3) of the Commission's rules requires e-rate service providers, such as SBC, to make records of rates charged and discounts allowed to participating schools available for public inspection.[11]

While acknowledging the applicability of the rule, the Bureau stated that SBC can comply with its requirements "by maintaining a 'public inspection' file containing the required rate information" and that the rule does not mandate disclosure of the SBC invoice and discount information pursuant to CompTel's FOIA request because disclosure of such amounts "could disclose the total value of [SBC's] contract, information that would not otherwise be publicly available.[12] There are at least two flaws in the Bureau's reasoning. First, a claim to confidentiality cannot be sustained under Exemption 4 for any data that is already in the public domain. *CNA Financial Corporation v. Donovan,* 830 F. 2d 1132,1154 (D.C. Cir. 1987). To the extent that any of the requested documents show the rates SBC charged or the discounts it allowed – i.e., the information required to be maintained in its "public inspection" file -- the documents must be produced. Secondly, the inquiry that must be made in determining whether Exemption 4 applies is not whether or not the information would otherwise be publicly available, but whether disclosure would cause substantial competitive harm to SBC. *CNA Financial Corporation v. Donovan,* 830 F. 2d at 1153 (rejecting appellant's invitation to adopt an Exemption 4 test that "focuses solely on whether the material is 'customarily kept confidential' by the submitter"). The Bureau did not explain exactly how disclosure of the total value of SBC's contract to provide publicly funded e-rate services to the New London, Connecticut schools could cause SBC competitive harm. Moreover, although the Bureau found that SBC had failed "to state whether any of the information for which it seeks protection is already available to the public,"[13] the Bureau determined apparently on its own that the total value of SBC's contract "is not in the public domain" without revealing the factual basis for that determination.

The exemptions in the Freedom of Information Act must be construed narrowly in such a way as to provide maximum access to the material requested. The Commission cannot sustain the Bureau's determination to withhold materials pursuant to Exemptions 5 and 4 withhold further explanation and justification.

---

[11]     Section 54.501(d)(3) requires service providers to "keep and retain records of rates charged to and discounts allowed for eligible schools and libraries – on their own or as part of a consortium. Such records shall be made available for public inspection."

[12]     August 5, 2005 Letter from William Davenport to Jim Lamoureux and Mary C. Albert at 5.

[13]     *Id* at 4.

Samuel Feder, Esq.
September 6, 2005
Page 6

  For the foregoing reasons, CompTel respectfully requests that the Commission grant this Application for Review and at the very least direct the Enforcement Bureau to provide a *Vaughn* index of the documents it proposes to withhold.

        Respectfully submitted,

         /s/

        Mary C. Albert

cc: William Davenport
  Jim Lamoureux

# Exhibit J



**Jim Lamoureux**
Senior Counsel

SBC Services, Inc
1401 I Street NW, Suite 400
Washington, D C. 20005
Phone 202 326-8895
Fax 202 408-8745

September 20, 2005

**VIA FACSIMILE, U.S. MAIL, AND EMAIL**

Samuel Feder
Acting General Counsel
Office of General Counsel
Federal Communications Commission
445 12th Street SW
Washington DC 20554

      Re:    **CompTel's Application for Review of FOIA Action
                FOIA Control No. 2005-333**

Dear Mr. Feder:

      SBC Communications Inc. ("SBC"), hereby opposes the Application for Review submitted by CompTel on September 6, 2005.[1] CompTel seeks review of the Enforcement Bureau's partial denial of CompTel's October 7, 2003, broad-sweeping Freedom of Information Act ("FOIA") request for "[a]ll pleadings and correspondence contained in File No. EB-04-IH-0342." Included within the scope of CompTel/ALTS's original FOIA request are business records that SBC submitted to the Commission in response to a Letter of Inquiry issued by the Enforcement Bureau. In response to CompTel/ALTS' request, the Enforcement Bureau declined to disclose certain information in SBC's business records that constitute confidential commercial information under Exemption 4 to the FOIA. Specifically, the Enforcement Bureau declined to disclose information including "SBC's cost and pricing data, its billing payment dates, and identifying information of SBC's staff, contractors, and representatives of its contractors and customers."[2] The Enforcement Bureau also declined to disclose certain documents under Exemption 5, which protects "interagency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). In light of the confidential commercial nature of the material requested, and the confidentiality of the documents under the deliberative process privilege, the Commission should affirm its earlier decision not to disclose the requested material and should deny CompTel's Application for Review.

---

[1] *See* Letter from Mary C. Albert, CompTel, to Samuel Feder, Acting General Counsel, Federal Communications Commission, FOIA Control No 2005-333 (Sept. 6, 2005)("CompTel AFR").

[2] *See* Letter from William H. Davenport, Chief, Investigations and Hearings Division, Enforcement Bureau, Federal Communications Commission to Jim Lamoureux, SBC Services Inc. at 5 (Aug. 5, 2005)("Davenport Letter").

Samuel Feder
September 20, 2005
Page 2 of 4

Exemption 4 applies to "trade secrets and commercial or financial information obtained from a person and privileged and confidential." *Id.* The phrase "commercial or financial information" has a broad meaning under the FOIA, and includes anything pertaining to or relating to commerce. *American Airlines, Inc. v. National Mediation Bd.*, 588 F.2d 863, 870 2d Cir. 1978); *see also Public Citizen Health research Group v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983)(documents are commercial if a submitter has a commercial interest in them). CompTel does not challenge the determination that the records at issue are commercial or financial information. The information in those records which the Enforcement Bureau declined to disclose is, moreover, confidential under Exemption 4. *National Parks* establishes a two part test for determining if information qualifies for withholding under Exemption 4. *National Parks & Conservation Assoc. v. Morton*, 498 F.2d 765 D.C. Cir. (1974). The first prong asks whether disclosing the information would impair the government's ability to obtain necessary information in the future. The second prong asks whether the competitive position of the person from whom the information was obtained would be impaired or substantially harmed. If the information meets the requirements of either prong, it is exempted from disclosure under Exemption 4. Here, the first prong of *National Prongs* fully supports the Enforcement Bureau's decision not to publicly disclose the material at issue.

The subject matter of the Enforcement Bureau's investigation was voluntarily brought to the Enforcement Bureau's attention by SBC as a result of an ongoing internal review conducted by SBC. SBC, moreover, voluntarily refunded all amounts that might have been at issue, and it entered into a consent decree to make a voluntary contribution to the United States Treasury. Compelled public disclosure of the material at issue in this instance would plainly impair the Enforcement Bureau's ability to obtain similar information in the future. It would chill efforts to conduct internal investigations and to bring the results of those investigations to the attention of the Commission. It would thus hamper the general ability of the Commission conduct investigations and enforcement proceedings and to rely on the cooperation of parties involved in those proceedings, which would necessarily impair the Commission's ability to obtain documents and information in investigations and enforcement proceedings. It would, in short, undermine the agency's "effective execution of its statutory responsibilities." *9 to 5 Org. for Women Office Workers v. Board of Governors*, 721 F2.s 1, 11 (1st Cir. 1983). *See also Africa Fund v. Mosbacher*, No. 92-289, 1993 WL 183736 at *7 (S.D.N.Y. May 26, 1993)(Disclosure would impinge upon agency's receipt of substantial information that potential exporters voluntarily submit when seeking export licenses and that the agency finds invaluable in making policy and maintaining effective export controls.) Accordingly, Exemption 4 fully supports the Enforcement Bureau's determination not to publicly disclose the material at issue.

In addition, the material CompTel seeks to obtain clearly is competitively sensitive information which should not be made available for public disclosure. That material contains cost and pricing information, billing and payment dates, and customer and contractor information that clearly falls within the scope of Exemption 4. Such information—which SBC specifically identified for each document responsive to CompTel's request—plainly is commercially sensitive, and SBC is not aware that any of it is in the public domain.[3] Competitors could use such confidential

---

[3] The Enforcement Bureau is correct that Commission Rule 54.501(d)(3) does not require SBC to disclose either the records at issue, or the information in the format and substance in which it appears in those

Samuel Feder
September 20, 2005
Page 3 of 4

information to assist in targeting their service offerings and enhancing their competitive positions, to the detriment of the competitive position of the SBC Companies. *See, e.g., GC Micro Corp. v. Defense Logistics Agency,* 33 F.3d 1109 (9th Cir. 1994). Commission precedent has clearly found this type of information to be competitively sensitive and withholdable under Exemption 4.[4] The Commission, moreover, has recognized that competitive harm can result from the disclosure of confidential business information that gives competitors insight into a company's costs, pricing plans, market strategies, and customer identities. *See In re Pan American Satellite Corporation,* FOIA Control Nos. 85-219, 86-38, 86-41, (May 2, 1986).[5] In its initial objection to CompTel's FOIA request, SBC clearly articulated each of these reasons that disclosure of such information could be competitively harmful to SBC. Accordingly, the Enforcement Bureau was clearly justified in withholding the material in question under Exemption 4.

The Commission also should affirm the Enforcement Bureau's application of Exemption 5 to the requested records. CompTel essentially disputes that the withheld records are predecisional.[6] All of the records identified by the Enforcement Bureau, however—drafts of pleadings and correspondence, and internal memoranda generated during the pendency of the Enforcement Bureau's investigation—are plainly pre-decisional. None embody final agency action or policy making that has the force of law, implement final Commission policy, or justify

---

records. That rule merely requires SBC maintain information, in whatever form SBC chooses, of the rates charged to and discounts allowed for eligible schools and libraries. It does not require SBC to disclose underlying cost or pricing data, or invoice and discount amounts that could be used to ascertain such data or the overall value of SBC's contracts.

[4] *See e.g. In Matter of Pacific Bell Telephone Company Petition for Pricing Flexibility for Special Access and Dedicated Transport Services,* CCB/CPD No. 00-23, DA 00-2618, November 20, 2000 (supporting confidentiality for collocation data); *Local Exchange Carrier's Rates, Terms and Conditions for Expanded Interconnection Through Virtual Collocation for Special Access and Switched Transport, Southwestern Bell Telephone Company,* 13 FCC Rcd 13615 (1998)(keeping administrative operating expenses confidential because it would provide insight into business strategies); *AT&T/McCaw Merger Applications* 9 FCC Rcd 2610 (1994)(keeping confidential accounting records showing account balance information); *NAACP Legal Defense Fund on Request for Inspection of Records* 45 RR 2d 1705 (1979)(keeping confidential records that contained employee salary information); *Mercury PCS II, LLC (Request for Inspection of Records) Omnipoint Corporation (Request for Confidential Treatment of Documents),* FCC 00-241 (July 17, 2000)(keeping confidential marketing plans and strategy information).

[5] Further, the Commission has ruled that not only should such information be protected, but also that information must be protected through which the competitively sensitive information can be determined. *Allnet Communications Services, Inc. Freedom of Information Act Request,* FOIA Control No. 92-149, Memorandum Opinion and Order (released August 17, 1993) at p. 3. The Commission's decision was upheld in a memorandum opinion of the U.S. Court of Appeals for the D.C. Circuit, which affirmed a U.S. District Court decision protecting the information. *Allnet Communications Services, Inc. v. FCC,* Case No. 92-5351 (memorandum opinion issued May 27, 1994, D.C. Cir.) Billing and payment date information would certainly fall within this category. Billing and payment date information also is commercially sensitive in its own right as it pertains to the details of SBC's ongoing business operations and processes.

[6] *CompTel AFR* at 3.

Samuel Feder
September 20, 2005
Page 4 of 4

action already taken by the Commission. They are all thus clearly distinguishable from the records at issue in *National Labor Relations Board v. Sears Roebuck and Co.*, 421 U.S. 132 (1975) and *SaefCard Services, Inv. Securities and Exchange Comm'n*, 926 F.2d 1197 (D.C. Cir. 1991), which reflected final agency decisions. Here, the only documents that reflect final Commission action are the Order and Consent Decree which terminated the Enforcement Bureau's investigation. The Enforcement Bureau's internal drafts, work papers, emails, and memoranda undoubtedly reflect the Enforcement Bureau's deliberative processes as well as the pre-decisional communications between staff. Accordingly, the Commission should affirm the Enforcement Bureau's determination to withhold documents pursuant to Exemption 5.

   If you have any questions, please do not hesitate to contact me at (202) 326-8895.

                         Sincerely,


                         Jim Lamoureux
                         Senior Counsel
                         SBC Services, Inc.


cc:    Judy Lancaster
       Mary C. Albert

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
**COMPTEL,**                            )
                                        )
                Plaintiff,              )  Civil Action No. 06CV01718 (HHK)
                                        )
        v.                              )
                                        )
**Federal Communications Commission,**  )
                                        )
                Defendant.              )
_____)

### [PROPOSED] <u>ORDER</u>

Upon consideration of COMPTEL's Motion for Summary Judgment, the oppositions thereto and all other papers herein, the Court hereby finds that Defendant Federal Communications Commission's ("FCC") failure to disclose the documents requested by COMPTEL is a violation of the Freedom of Information Act ("FOIA"), 5 U.S.C.§552, and that the FCC's conduct in failing to comply with the statutory time limits in resolving COMPTEL's FOIA request is unlawful.  It is hereby

**ORDERED** that COMPTEL's Motion for Summary Judgment is **GRANTED**; and it is further

**ORDERED** that Defendant FCC shall produce all documents responsive to COMPTEL's FOIA request within 10 days of the date of this order; and it is further

**ORDERED** that the FCC shall provide COMPTEL and this Court with a document index and declaration, as specified in _Vaughn v. Rosen_, 484 F.2d 820 (D.C. Cir. 1973), identifying all documents withheld and stating its justification for withholding

any documents responsive to COMPTEL's request within 10 days of the date of this

order; and it is further

       **ORDERED** that the FCC shall provide this Court with copies of all documents

responsive to COMPTEL's request which the FCC claims are not subject to disclosure

pursuant to a lawful exemption under FOIA within 10 days of the date of this order.


Dated:_____, 2007        _____

                                      Henry H. Kennedy, Jr.
                                      United States District Judge
                                       for the District of Columbia