# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| **COMPTEL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-1718 (HHK)** |
| | ) | |
| **FEDERAL COMMUNICATIONS** | ) | |
| **COMMISSION,** | ) | |
| | ) | |
| **Defendant,** | ) | |
| | ) | |
| **AT&T,** | ) | |
| | ) | |
| **Intervenor.** | ) | |

_____)

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Federal Communications Commission ("FCC") requests that the Court

enter summary judgment against plaintiff pursuant to Fed. R. Civ. P. 56 because there is

no genuine issue as to any material fact and Defendant is entitled to judgment as a matter

of law in this Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, case. Attached is a

memorandum of points and authorities, with exhibits, and a proposed order.

Respectfully submitted,

_____s/Jeffrey A. Taylor_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____s/Rudolph Contreras_____
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

_____s/Peter S. Smith_____
PETER S. SMITH, D.C. BAR # 465131
Assistant United States Attorney
United States Attorney's Office
Civil Division

555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0372

Of counsel:

Michael A. Krasnow, Esq.,
Office of General Counsel,
Federal Communications Commission

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **COMPTEL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-1718 (HHK)** |
| | ) | |
| **FEDERAL COMMUNICATIONS** | ) | |
| **COMMISSION,** | ) | |
| | ) | |
| **Defendant,** | ) | |
| | ) | |
| **AT&T,** | ) | |
| | ) | |
| **Intervenor.** | ) | |

## DEFENDANT'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

Pursuant to Local Rule 7(h), Defendant submits this statement of material facts as to which there is no genuine issue:

### Processing of FOIA Request

1.      By e-mail dated April 4, 2005, Mary C. Albert, Vice President, Regulatory Policy, CompTel, submitted a Freedom of Information Act ("FOIA") request to the FCC seeking "[a]ll pleadings and correspondence contained in File No. EB-04-IH-0342."  *See* electronic FOIA Request Form from Mary C. Albert, dated April 4, 2005, attached to Lancaster Decl. as Attachment A ("FOIA request").  CompTel's FOIA request was referred to the FCC's Investigations and Hearings Division ("IHD") for response.  *Id*. at ¶ 3.

2.      "File No. EB-04-IH-0342" is a case file that the FCC's IHD maintains in connection with an investigation that it conducted in calendar year 2004 to determine whether SBC (now AT&T) violated FCC rules and orders regarding the schools and libraries universal service support mechanism, also known as the E-Rate program.[1]  Lancaster Decl. at ¶ 4.  The E-Rate program provides discounts to schools and libraries for certain telecommunications and related services provided to them by vendors such as SBC.  *See* 47 C.F.R. §§ 54.502-03.

---

[1]  During November 2005, SBC completed its acquisition of AT&T Corp., and the combined company is now known as AT&T Inc.  For ease of reference, the company is referred to as SBC herein.

3.     IHD's investigation was prompted by an August 6, 2004 letter from SBC to the FCC notifying the Commission that, during an internal audit, SBC had discovered "certain irregularities" that constituted an "apparent violation of the E-rate rules."  IHD's investigation ultimately concluded on December 16, 2004 by the adoption of a Consent Decree.  Lancaster Decl. at ¶ 5.

4.     In connection with its investigation, on August 24, 2004, IHD issued SBC a letter of inquiry ("LOI") requiring SBC to provide the Commission with certain company records and information.  Lancaster Decl. at ¶ 6.

5.     Case file no. EB-04-IH-0342 contains the following records that are responsive to Comptel's FOIA request: (1) SBC's August 6, 2004 letter and attachments thereto (approximately 30 pages); (2) the FCC's LOI, dated August 24, 2004 (approximately 9 pages); (3) SBC's response to the LOI and exhibits thereto, dated September 13, 2004 (approximately 268 pages); (4) drafts and final versions of documents related to the investigation, *e.g.*, the consent decree (approximately 104 pages); and (5) intra-agency and inter-agency e-mails, and intra-agency notes and memoranda, discussing issues related to IHD's investigation (approximately 133 pages).  Lancaster Decl. at ¶ 7.

6.     By letter dated May 27, 2005, SBC opposed release of the records sought by CompTel's FOIA request, and requested that all records that it submitted to the FCC in connection with IHD's E-Rate investigation be treated as confidential.  *See* letter from Jim Lamoureux, Senior Counsel, SBC, to Judy Lancaster, IHD, EB, FCC, dated May 27, 2005, Lancaster Decl., Attachment B.

7.     On June 28, 2005, CompTel submitted a reply to SBC's May 27, 2005 letter.  *See* letter from Mary C. Albert to Judy Lancaster, IHD, EB, FCC, dated June 28, 2005, Lancaster Decl., Attachment C.

8.     On August 5, 2005, the IHD issued a decision granting in part and denying in part CompTel's FOIA request ("IHD's decision").  *See* letter from William H. Davenport, Chief, IHD, EB, FCC, to Jim Lamoureux (SBC) and Mary C. Albert (Comptel), dated August 5, 2005, Lancaster Decl., Attachment D.   IHD's decision also constituted a decision concerning SBC's May 27, 2005 request for confidential treatment (as described in ¶ 8 above).  *Id.*  IHD's decision concluded that certain records contained in case file no. EB-04-IH-0342 should be released to CompTel, and that others should be withheld from disclosure in whole or in part under FOIA Exemptions 4, 5, 6 and 7(C).

9.     On August 19, 2005, SBC filed with the FCC an application for review (an administrative appeal) of IHD's decision.  *See* letter from Jim Lamoureux to Samuel Feder, Acting General Counsel, Office of General Counsel, FCC, dated August 19, 2005, Lancaster Decl., Attachment E.

10.     On September 1, 2005, CompTel filed an opposition to SBC's August 19, 2005 application for review.  *See* letter from Mary C. Albert to Samuel Feder, Esq., FCC, dated September 1, 2005, Lancaster Decl., Attachment F.

11.     On September 6, 2005, CompTel filed an application for review of IHD's decision.  *See* letter from Mary C. Albert to Samuel Feder, Esq., FCC, dated September 6, 2005, Lancaster Decl., Attachment G.

12.     On September 20, 2005, SBC filed an opposition to CompTel's September 6, 2005 application for review.  *See* letter from Jim Lamoureux to Samuel Feder Esq., FCC, dated September 20, 2005, Lancaster Decl., Attachment H.

13.     The administrative appeals of both parties remain pending before the Commission.  IHD has redacted all protected information from the records contained in IHD case file no. EB-04-IH-0342 that are responsive to CompTel's FOIA request, but has not yet released any records to CompTel.  Lancaster Decl. at ¶ 16.

## Segregability

14.     FCC reviewed IHD case file no. EB-04-IH-0342 to determine whether any records therein contain information responsive to CompTel's FOIA request that is segregable from the information withheld in IHD's decision.  Lancaster Decl. at ¶¶ 31-33.

Respectfully submitted,

_____s/Jeffrey A. Taylor_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____s/Rudolph Contreras_____
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

_____s/Peter S. Smith_____
PETER S. SMITH, D.C. BAR # 465131
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0372

Of counsel:

Michael A. Krasnow, Esq.,
Office of General Counsel,
Federal Communications Commission

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

COMPTEL,                  )
                                 )

      **Plaintiff,**       )
                                 )

      **v.**                  )      **Civil Action No. 06-1718 (HHK)**
                                 )

**FEDERAL COMMUNICATIONS**   )
  **COMMISSION,**       )
                                 )

      **Defendant,**     )
                                 )

**AT&T,**                 )
                                 )

      **Intervenor.**    )

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff filed this civil action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel production of certain Federal Communication Commission ("FCC") records. Those records relate to an FCC investigation into allegations that SBC Communications, Inc. ("SBC") violated the Agency's rules when it submitted claims for universal service support for the New London, Connecticut public schools.[2] *See* Complaint at ¶ 1. The Agency granted in part and denied in part plaintiff's prior administrative request for these same records, finding that some of them may be released but that others are protected from disclosure in whole or in part under various FOIA exemptions.

As demonstrated in this Memorandum and the attached Declaration of Judy Lancaster of the FCC's Enforcement Bureau ("Lancaster Decl."), the documents in

---

[2] During November 2005, SBC completed its acquisition of AT&T Corp., and the combined company is

dispute fall squarely within various FOIA exemptions. There are no genuine issues of material fact regarding the applicability of these exemptions, and the FCC therefore is entitled to judgment as a matter of law.

## I.  BACKGROUND

### A.  Statutory Framework

The FOIA requires federal government agencies to release records to the public upon request, unless one of nine statutory exemptions applies.  *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975); *Gilda Industries Inc. v. United States Customs & Border Protection Bureau*, 2006 WL 2982150 (D.D.C. 2006).  Four such exemptions are at issue in this case:

Exemption 4.  FOIA Exemption 4 protects from disclosure "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential."  *See* 5 U.S.C. § 552(b)(4).

Exemption 5.  Exemption 5 covers "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  *See* 5 U.S.C. § 552(b)(5).

Exemption 6.  Exemption 6 applies to personal information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."  *See* 5 U.S.C. § 552(b)(6).

---

now known as AT&T Inc.  For ease of reference, the company is referred to as SBC herein.

Exemption 7(C). Exemption 7(C) protects from disclosure information compiled for law enforcement purposes release of which could reasonably be expected to constitute an unwarranted invasion of personal privacy for certain individuals to whom the information pertains. *See* 5 U.S.C. § 552(b)(7)(C).

### B. Proceedings Before the Commission

By e-mail dated April 4, 2005, plaintiff submitted a FOIA request to the FCC seeking "[a]ll pleadings and correspondence contained in File No. EB-04-IH-0342." *See* Lancaster Decl., at ¶ 3, attached hereto as Exhibit 1; Attachment A thereto. The Agency referred plaintiff's FOIA request to the Investigations and Hearings Division ("IHD") of its Enforcement Bureau ("EB") for response. *Id.* "File No. EB-04-IH-0342" is the IHD's case file for an investigation that it conducted in 2004 to determine whether SBC violated FCC rules and orders regarding the schools and libraries universal service support mechanism, also known as the education rate ("E-Rate") program.[3] *Id.* at ¶ 4. IHD's investigation was prompted by an August 6, 2004 letter from SBC notifying IHD that SBC had discovered "certain irregularities" during an internal audit that constituted an "apparent violation of the E-rate rules." *Id.* at ¶ 5. SBC's notification prompted IHD to issue SBC a letter of inquiry ("LOI") requiring it to provide the FCC with certain company records and information.[4] *Id.* at ¶ 6.

---

[3] The E-Rate program provides discounts to schools and libraries for certain telecommunications and related services provided to them by vendors such as SBC. *See* 47 C.F.R. §§ 54.502-03.

[4] IHD's investigation concluded on December 16, 2004 by the adoption of a Consent Decree. Lancaster Decl. at ¶ 5.

IHD case file no. EB-04-IH-0342 contains the following records that are responsive to Comptel's FOIA request: (1) SBC's August 6, 2004 letter and attachments thereto; (2) the FCC's LOI, dated August 24, 2004; (3) SBC's response to the LOI and exhibits thereto, dated September 13, 2004; (4) drafts and final versions of documents related to the investigation, *e.g.*, the consent decree; and (5) intra-agency and inter-agency e-mails, and intra-agency notes and memoranda discussing issues related to IHD's investigation.  *See* Lancaster Decl. at ¶ 7.

By letter dated May 27, 2005, SBC opposed release of the records sought by plaintiff's FOIA request, and requested that all records that it submitted to the FCC in connection with IHD's E-Rate investigation be treated as confidential.  *Id.* at ¶ 8; Attachment B thereto.  SBC contended that the records were protected from disclosure under FOIA Exemption 4 because they "clearly pertain to SBC's business dealings with one of its customers."  SBC also said that the records contained information pertaining to SBC's systems, processes, and operations, and include cost, pricing, and other "commercially sensitive" information.  *Id.*, Attachment B thereto at 6.  SBC also contended that the records were protected from disclosure under FOIA exemption 7(C) because they were "compiled for law enforcement purposes," and disclosure would cause an unwarranted invasion of personal privacy.  *Id.*

On August 5, 2005, IHD granted in part and denied in part plaintiff's request ("IHD's decision").[5]  *See* Lancaster Decl. at ¶ 10; Attachment D thereto.  IHD's decision

---

[5] IHD's FOIA decision also constituted a decision concerning SBC's May 27, 2005 request for confidential treatment of the records that it submitted in connection with IHD's E-Rate investigation.

concluded that certain records contained in case file no. EB-04-IH-0342 should be released to plaintiff, and that others should be withheld from disclosure in whole or in part under FOIA Exemptions 4, 5, 6 and 7(C).  IHD concluded first that there was no basis under the Commission's rules to treat all of the records as confidential, as SBC had requested.  IHD found that SBC had "failed to provide a statement of specific reasons for withholding" this information in its entirety; did not explain "how disclosure of the information could result in substantial competitive harm"; and failed to show whether any of the information is publicly available.  *See* Lancaster Decl. at ¶¶ 10-11 and Attachment D thereto at 4; *see also* 47 C.F.R. § 0.459 (FCC regulation setting forth the requirements for individuals or entities to request confidential treatment of information they submit to the Commission).

IHD concluded on its own motion, however, that certain information contained in SBC's submissions in case file no. EB-04-IH-0342 should be treated as confidential, including "costs and pricing data, its billing and payment dates, and identifying information of SBC's staff, contractors, and the representatives of its contractors and customers."  *Id.*; *see also* 47 C.F.R. § 0.457(d)(2) (FCC regulation permitting the Commission to determine on its own motion that submitted information is confidential).  IHD concluded that such information was protected from disclosure under FOIA Exemption 4 because it was not publicly available and disclosure was "likely to substantially harm SBC's competitive position."  *See* Lancaster Decl. at ¶¶ 10-11 and Attachment D thereto at 5.

Additionally, IHD concluded that the names of individuals identified in SBC's

submissions should be redacted under FOIA Exemptions 6 and 7(C).[6]  Finally, IHD

concluded that drafts of bureau pleadings and correspondence, and internal memoranda

and e-mails discussing the FCC's investigation of SBC, should be withheld from release

pursuant to FOIA Exemption 5 because such records would disclose the Commission's

deliberative process.  *See* Lancaster Decl. at ¶¶ 10-11 and Attachment D thereto at 6.

Both SBC and plaintiff filed administrative appeals with the Commission.  *See*

Lancaster Decl. at ¶¶ 12-15; 47 C.F.R. §§ 0.461(i); 0.461(j).  Those appeals remain

pending with the Commission.  *See* Lancaster Decl. at ¶ 16.  As a result, IHD has not yet

released any records to plaintiff.

## C.    This Case

On October 5, 2006, plaintiff filed the instant civil action.  *See* Complaint.  More

than 20 working days have elapsed since plaintiff filed its administrative appeal, thus this

Court has subject-matter jurisdiction because plaintiff has constructively exhausted its

administrative remedies.  *See* 5 U.S.C. § 552(a)(6)(A) (setting forth deadlines for agency

responses to FOIA requests and appeals); *Oglesby*, 920 F.2d at 62 ("[i]f the agency has

not responded within the statutory time limits, then, under 5 U.S.C. § 552(a)(6)(C), the

requester may bring suit").  On December 11, 2006, the Court granted AT&T's motion to

intervene in this litigation.  *See Order Granting Unopposed Motion to Intervene*.

---

[6] IHD's FOIA decision concluded that "businesses do not possess personal privacy interests as required for
application of FOIA Exemption 7(C)," but "the individuals identified in SBC's submissions do have such
privacy rights."  *Id.* at 6 (citing 5 U.S.C. § 552(b)(6) (FOIA Exemption 6).

## II.    <u>STANDARD OF REVIEW</u>

Where no genuine dispute exists as to any material fact, summary judgment is required.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986).  A genuine issue of material fact is one that would change the outcome of the litigation.  *Id*. at 247.  Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial.

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment, the plaintiff must present some objective evidence that would enable the Court to find it is entitled to relief.  In *Celotex Corp. v. Catrett*, the Supreme Court held that, in responding to a proper motion for summary judgment, the party that bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. 477 U.S. 371, 322-23 (1986).

In *Anderson,* the Supreme Court explained the circumstances under which summary judgment is appropriate:

> If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted . . . [T]he mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff.

*Anderson*, 477 U.S. at 252; *see also Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor).  In *Celotex*, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored

procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

These general summary judgment standards apply to FOIA cases, which are typically decided on motions for summary judgment.[7] *See Miscavige v. I.R.S.*, 2 F.3d 366, 368 (11th Cir. 1993)). In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, not withheld, is unidentifiable, or is exempt from disclosure. *Students Against Genocide v. Department of State*, 257 F.3d 828, 833 (D.C. Cir. 2001); *Weisberg v. U.S. Dept. of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980).

An agency satisfies the summary judgment requirements in a FOIA case by providing the Court and plaintiff with affidavits or declarations and other evidence that show that the documents are exempt from disclosure. *Hayden*, 608 F.2d at 1384; *Church of Scientology of California v. U.S. Dept. of Army*, 611 F.2d 738, 742 (9th Cir. 1979). Summary judgment may be awarded to an agency in a FOIA case solely on the basis of agency affidavits [or declarations] "when the affidavits describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad

---

[7] For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to *de novo* review by the courts. *Hayden v. National Sec. Agency/Central Sec. Service*, 608 F.2d 1381, 1384 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937 (1980).

faith.'" *Trans Union LLC v. Federal Trade Com'n*, 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)); *see also McGhee v. C.I.A.*, 697 F.2d 1095, 1102 (D.C. Cir. 1983); *Public Citizen Inc. v. Department of State*, 100 F. Supp. 2d 10, 16 (D.D.C. 2000). When the pleadings, supplemented by affidavits or declarations, show no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law, summary judgment should be granted to defendant. *Perry v. Block*, 684 F.2d 121 (D.C. Cir. 1982).

## III.   ARGUMENT

As set forth below, the FCC properly withheld from disclosure the records and information at issue.

### A.   The FCC Properly Withheld And/Or Redacted Records Pursuant To FOIA Exemption 4.

This case concerns the portion of FOIA Exemption 4 that protects confidential commercial or financial information. *See* 5 U.S.C. § 552(b)(4). This exemption applies when the requested information is "(1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential." *Id*.; *Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983). The information that the FCC withheld from disclosure here satisfies all of the foregoing criteria.

#### 1.   Commercial or Financial Information

The terms "commercial" and "financial" are given their ordinary meanings for purposes of FOIA Exemption 4. *See Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 28 (D.D.C. 2000) (citing *Public Citizen Health Research Group v. FDA*,

704 F.2d 1289, 1290 (D.C. Cir. 1983), and *Washington Post Co. v. HHS*, 690 F.2d 252, 266 (D.C. Cir. 1982)).  Records are deemed to be "commercial" so long as the submitter has a "commercial interest" in them.  *See Public Citizen*, 704 F.2d at 1290.

Here, IHD case file no. EB-04-IH-0342 contains information submitted to the FCC by SBC, which provides telecommunications and related services to the public.  The information concerns SBC's commercial business operations.  *See* Lancaster Decl. at ¶ 17.  This information thus constitutes information that is of commercial interest to SBC.

### 2.    <u>Obtained from a Person</u>

Records are considered to be "obtained from a person" for purposes of FOIA Exemption 4 so long as they were submitted by a "partnership, corporation, association, or public or private organization other than an agency."  *See* 5 U.S.C. § 551(2); *Allnet Communication Services, Inc. v. FCC,* 800 F. Supp. 984, 988 (D.D.C. 1992).  The records contained in IHD case file no. EB-04-IH-0342 were submitted by SBC, a corporation, and were thus obtained from a "person" as that term applies to Exemption 4.

### 3.    <u>Confidential Information</u>

The information also qualifies as "confidential" under FOIA Exemption 4.  The first step of the analysis focuses on whether the information was submitted involuntarily, *e.g.*, whether the submitter was required to provide the information to the Government.  *See Pub. Citizen Health Research Group v. FDA*, 185 F.3d 898, 903 (D.C. Cir. 1999).  In this case, the FCC required SBC to submit the information at issue; therefore the records were submitted "involuntarily" for purposes of FOIA Exemption 4.  *See* Lancaster Decl. at ¶¶ 6, 17.

Where, as here, the federal government requires a private party to submit information, the information is deemed confidential for purposes of FOIA Exemption 4 if its disclosure is "likely either '(1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.'" *Pub. Citizen Health Research Group v. FDA*, 185 F.3d at 903 (quoting *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974). Both factors support the FCC's withholding of the information contained in IHD case file no. EB-04-IH-0342 here.

### a. Disclosure would impair the Government's ability to obtain necessary information in the future.

Information is confidential for purposes of Exemption 4 if its release would impair an agency's ability to carry out its statutory purposes. *See Judicial Watch v. Export-Import Bank*, 108 F. Supp. 2d 19, 28 (D.D.C. 2000); *Comstock Int'l, Inc. v. Export-Import Ban*k, 464 F. Supp. 804, 808 (D.D.C. 1979) (holding that because submitters of information were "reluctant to negotiate agreements with the agency absent assurances of confidentiality," disclosure would interfere with agency's ability to fulfill its statutory mandate). Disclosure of the confidential financial and commercial information contained in IHD case file no. EB-04-IH-0342 would impair the ability of the FCC to fulfill its statutory mandate under the Telecommunications Act of 1996 ("1996 Act"). The 1996 Act directed the FCC to create and oversee the E-Rate program.[8]

---

[8] The Commission appointed the Universal Service Administrative Company ("USAC"), a private, not-for-profit corporation, to serve as the federal universal service fund administrator. *See Changes to the Board of Directors of the National Exchange Carrier Association*, Third Report and Order in CC Docket No. 97-21, Fourth Order on Reconsideration in CC Docket No. 97-21 and Eighth Order on Reconsideration in CC Docket No. 96-45, 13 FCC Rcd 25058, 25063-66, ¶¶ 10-14 (1998); 47 C.F.R. § 54.701(a). By

*See* 47 U.S.C. § 254(b). In order to effectively perform its regulatory and enforcement duties with respect to Commission regulation generally, including the E-Rate program, the FCC relies on the cooperation of its licensees. Here, SBC voluntarily alerted the FCC to a problem with its use of E-Rate funding prior to the investigation that gave rise to the records at issue in this case. SBC's voluntary disclosure reasonably was assured to prompt an FCC inquiry into SBC's business practices regarding the E-Rate program that would necessarily require SBC to provide the Commission with confidential financial and commercial information regarding its participation in that program. The FCC did in fact initiate an investigation into SBC's compliance with the E-Rate program's rules, and SBC was required to submit such confidential business information to the Commission.[9]

SBC's voluntary disclosure here alerted the FCC to a problem with a licensee's use of E-Rate program funding, prompted the FCC to investigate that problem, and resulted in SBC's taking voluntary remedial action to correct the problem. *See* Lancaster Decl. at ¶ 20. Release of SBC's sensitive financial and commercial information would discourage other licensees from voluntarily reporting to the Commission internal compliance problems out of fear that such voluntary disclosure could result in release of their confidential business information through the FOIA. *Id*. at ¶ 21. Service providers would thus be inclined to delay or avoid reporting such problems to the FCC, which would hinder the FCC's ability to discover and address such problems quickly and

---

Commission order, USAC administers the USF and the E-Rate program.

[9] Even if the Court were to analyze SBC's submissions to FCC as having been "voluntary," they were not of the kind that SBC customarily would release to the public, as is evidenced by AT&T's intervention in this lawsuit. *See Critical Mass*, 975 F.2d at 880 (standard for withholding material volunteered to the government is whether it is of the sort the provider would customarily release to the public).

effectively. Discouraging licensee's voluntary disclosures thus hinders the FCC's ability to fulfill its statutory directives. *See* Lancaster Decl. at ¶ 21.

Additionally, disclosure of SBC's confidential business information would make it difficult for the FCC to obtain reliable financial and commercial information from other telecommunications companies. *Id*. at ¶ 22. The government has a compelling interest in ensuring that the information it receives is of the highest quality and reliability, even where submissions of information are mandatory. *See Judicial Watch v. Export-Import Bank*, 108 F. Supp. 2d at 30. Where submission of information to a government agency is mandatory, the information is properly withheld pursuant to Exemption 4 if disclosure of that information under FOIA would result in a diminution of the reliability or quality of what is submitted. *See Critical Mass*, 975 F.2d at 878 (citing *Washington Post Co. v. HHS,* 690 F.2d 252 (D.C. Cir. 1982)). Disclosure of SBC's confidential financial and commercial information here could encourage other companies to be less forthcoming in their submissions of such information to the FCC out of concern for their own financial interests. *See* Lancaster Decl. at ¶ 22; *Judicial Watch v. Export-Import Bank*, 108 F. Supp. 2d at 29-30.

The Commission's public responsibility extends to promoting the competitive nature of the telecommunications industry. The FCC relies on the proper FOIA exemptions to protect companies from disclosure of confidential commercial and financial business information that they submit to the Commission. Requiring disclosure of such information would place the FCC in the untenable position of carrying out its statutory mandate while betraying the competitive interests of its regulatees.

13

### b.	The Withheld Information is Confidential Because Its Disclosure Would Cause Substantial Competitive Harm.

The data at issue is "confidential" for the independent reason that its disclosure would be likely to "cause substantial harm to the competitive position of the person from whom the information was obtained." *Pub. Citizen Health Research Group v. FDA*, 185 F.3d at 903.  Exemption 4 protects information wherever there is evidence of  "actual competition and a likelihood of substantial competitive injury" to the provider of that information. *Judicial Watch*, 108 F. Supp. 2d. at 29 (quoting *CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1152 (D.C. Cir. 1987)).  A "competitive injury" is one "flowing from the affirmative use of proprietary information by competitors." *See FDA*, 704 F.2d at 1291 n. 30.  In assessing whether this element is satisfied, "the Court need only 'exercise its judgment in view of the nature of the material sought and competitive circumstances in which the submitter does business,' but 'no actual adverse effect on competition need be shown.'" *See Changzhou Laosan Group v. U.S. Customs & Border Prot. Bureau*, No. 04-1919, 2005 WL 913268, at *5 (D.D.C. Apr. 20, 2005) (*quoting Nat'l Parks & Conservation Ass'n v. Kleppe*, 547 F.2d 673, 675 (D.C. Cir. 1976)).  An agency can establish a likelihood of substantial competitive injury by demonstrating that disclosure would provide competitors with valuable insights into the company's operations, give competitors pricing advantages over the company, or unfairly advantage competitors in future business negotiations. *National Parks and Conservation Ass'n*, 547 F.2d 673, 684 (D.C. Cir. 1976); *Center for Public Integrity v. Dep't of Energy*, 191 F. Supp 2d 187, 194 (D.D.C. 2002); *Export-Import Bank*, 108 F. Supp 2d at 29.

The telecommunications industry is very competitive.  Telecommunications

companies do not customarily disclose to outside parties the type of detailed financial

and commercial information that is contained in IHD case file no. EB-04-IH-0342. *See*

Lancaster Decl. at ¶ 17. Specifically, the information covered by Exemption 4 is

contained in SBC's narrative response to the FCC's LOI and various exhibits thereto. *Id.*

The exhibits consist of invoices for services and equipment that SBC submitted to the

school district and the Schools and Libraries Division and that SBC received from

suppliers, as well as related quotations, orders, and funding commitments. *Id.* The

exhibits also include internal SBC spreadsheets and e-mails that discuss financial

information related to the provision of service and equipment. *Id.*

IHD properly redacted from these records pricing and cost data, and billing and

payment dates. *Id.* at ¶ 18. For example, the FCC redacted from SBC's response to LOI

Inquiry 4(a) information regarding invoice amounts and dates. The redacted response

reads:

> FRN 936679 (Bennie Dover) in the amount of XXXX was invoiced
> on or about XXXXXXX in application ID 4250008. FRN 936583
> (Jennings) in the amount of XXXX was invoiced on or about
> XXXXXXX in application ID 424966. FRN 936642 (Winthrop)
> in the amount of XXXX was invoiced on or about XXXXXXX in
> applications ID 425001. FRN 936663 (little Red) in the amount of
> XXXX was invoiced on or about XXXXXXX in application ID 425006.

*See* Lancaster Decl. at ¶ 18. Pricing and cost data is among the most sensitive corporate

information. *Id.* at ¶ 19. Information regarding the timing of billing and payment could

give competitors insights into SBC's relationships with its customers and suppliers,

including whether the customers are prompt payers. *Id.* Disclosure of this information

would give SBC's competitors an overview of SBC's costs, pricing, schedules, and

operations.  *Id*.  Such information could enable competitors to craft offerings and proposals that would allow them to compete more effectively against SBC for similar business, and/or allow competitors to woo SBC's contractors or contacts.  *Id*.  Similarly, release of the total value of SBC's contract would provide competitors with crucial information that could be used to underbid SBC in future contract negotiations for this and similar contracts.  *Id*.

Such information is therefore confidential business and financial information that was properly redacted from these records under FOIA Exemption 4.  *See National Parks and Conservation Association v. Kleppe,* 547 F.2d at 684 (information would give competitors valuable insights into operational strengths and weaknesses); *Timken Co. v. U.S. Customs Service*, 491 F. Supp. 557, 559-60 (D.D.C. 1980) (information would allow competitors and customers to estimate profit margins and production costs thereby giving competitors insights into competitive strengths and weaknesses).

In sum, all factors satisfy the criteria for Exemption 4 withholding of the commercial and financial information contained in IHD case file no. EB-04-IH-0342: the information is commercial or financial, was obtained from a person, and is confidential in two distinct respects.  Accordingly, this information was properly withheld pursuant to FOIA Exemption 4.

**B.**      **The FCC Properly Withheld And/Or Redacted Records Pursuant To FOIA Exemption 5.**

In response to plaintiff's FOIA request, FCC withheld material under Exemption 5 of FOIA because it would be privileged in civil litigation. 5 U.S.C. § 552(b)(5). In addition, FCC redacted portions of certain records for the same reasons. After reviewing these materials, FCC determined that they are exempt from disclosure under Exemption 5, which includes the common-law deliberative process privilege. Exemption 5 of FOIA exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).

The Supreme Court has interpreted Exemption 5 as allowing an agency to withhold from the public documents which a private party could not discover in litigation with the agency. *United States v. Weber Aircraft Corporation*, 465 U.S. 792, 799 (1984); *National Labor Relations Board v. Sears, Roebuck & Co.,* 421 U.S. 132, 148 (1975). Exemption 5 incorporates privileges that the Government enjoys under the relevant statutory and case law in the pretrial discovery context. *Federal Trade Commission v. Grolier, Inc*., 462 U.S. 19, 26 (1983). Agency documents that are not routinely discoverable in civil litigation are exempted from disclosure under Exemption 5. *Id*. at 27.

The general purpose of the deliberative process privilege is to "prevent injury to the quality of agency decisions." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975). Specifically, three policy purposes consistently have been held to constitute the bases for this privilege: (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of

proposed policies before they are finally adopted; and (3) to protect against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action. *See, e.g., Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *Jordan v. United States Dep't of Justice*, 591 F.2d 753, 772-73 (D.C. Cir. 1978) (en banc). Documents that are commonly encompassed by the deliberative process privilege include "advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated," *Sears*, 421 U.S. at 150. *See also Schell v. HHS*, 843 F.2d 933, 942 (6th Cir. 1988) ("It is the free flow of advice, rather than the value of any particular piece of information, that Exemption 5 seeks to protect.").

Accordingly, materials that summarize issues and advise superiors are properly protected under the deliberative process privilege. *See, e.g., Thompson v. Dep't of the Navy*, No. 95-347, 1997 WL 527344, at *4 (D.D.C. Aug. 18, 1997) (protecting materials created to brief senior officials who were preparing to respond to media inquiries, on the basis that "disclosure of materials reflecting the process by which the Navy formulates its policy concerning statements to and interactions with the press" could stifle frank communication within the agency), *aff'd*, No. 97-5292, 1998 WL 202253, at *1 (D.C. Cir. Mar. 11, 1998) (per curiam). A category of documents particularly likely to be found exempt under the deliberative process privilege is "drafts." *See, e.g., City of Va. Beach v. Dept. of Commerce*, 995 F.2d 1247, 1253 (4th Cir. 1993).

Withheld materials must be both predecisional, *Jordan*, 591 F.2d at 774, and

deliberative, i.e., "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975). So long as a document was generated as part of such a process of agency decision making, Exemption 5 is applicable. *See Senate of the Commonwealth of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987).

There should be no issue between the parties as to certain materials addressed in the FCC's administrative decision as being subject to withholding under Exemption 5, but that do not appear to be responsive to plaintiff's FOIA request for all "pleadings and correspondence contained in File No. EB-04IH-0342." Lancaster Decl., Attachment A. On April 12, 2005, plaintiff expressly clarified that its FOIA request was for correspondence between SBC and FCC. Lancaster Decl., Attachment D, note 5. Thus, plaintiff's request would not cover internal FCC e-mails, memoranda and other strictly internal documents. Although seemingly unresponsive to the plain language of Comptel's FOIA request, FCC's administrative decision discussed FCC internal records and we will do so here.

FCC properly withheld all e-mails among FCC staff discussing issues related to the SBC investigation, and staff memoranda dealing with these issues, pursuant to the deliberative process privilege. *See* Lancaster Decl. at ¶ 23. These communications reflect FCC staff's opinions and impressions regarding the FCC's investigation of SBC and thus constitute deliberative materials, *id*. at ¶ 24, and are predecisional inter- or intra-

agency communications protected under Exemption 5.[10]  *See* Lancaster Decl. at ¶ 24; 5 U.S.C. § 552(b)(5) (referring to "inter-agency or intra-agency" communications).

Preliminary drafts of the consent decree and an agreement tolling the statute of limitations also properly are withheld under Exemption 5, because they reflect the tentative thinking of FCC staff with respect to these documents, the final versions of which are matters of public record.  *See* Lancaster Decl. at ¶ 25; *Sierra Club v. U.S. Dep't of Interior,* 384 F. Supp. 2d 1, 18-20 (D.D.C. 2004) (draft documents were pre-decisional and exempt from disclosure); *Wireless Consumer Alliance,* 20 FCC Rcd at 3878 ¶ 12 (withholding drafts of orders, letter rulings, and public notices).  Such documents are pre-decisional because they represent the consideration of issues prior to adoption of the consent decree or, in a few instances, involve the preliminary consideration of potential additional action.  *See* Lancaster Decl. at ¶ 26.

Additionally, portions of e-mails discussing the draft consent decree that involve communications between FCC staff and SBC properly are withheld under the settlement privilege embraced by Exemption 5.  *Id.; Wireless Consumer Alliance,* 20 FCC Rcd at 3874, 3883 n.55, *citing Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc. d/b/a Heatway Systems,* 332 F.3d 976 (6th Cir. 2003) (recognizing settlement privilege). Finally, FCC staff members' handwritten notes regarding these issues, including notes made on copies of the e-mails, memoranda, and drafts mentioned above, are protected

---

[10] Communications with USAC, the administrator of the Universal Service Fund, are treated as intra-agency communications.  *See Klamath Water Users Protective Ass'n v. Department of the Interior,* 189 F.3d 1034, 1038 (9th Cir. 1999), *aff'd,* 532 U.S. 1 (2001); *Lead Industries Ass'n, Inc. v. OSHA,* 610 F.2d 70, 83 (2d Cir. 1979) (application of Exemption 5 to governmental communications with outside consultants); *Dateline NBC,* FCC 06-73 (May 30, 2006) at n. 15 (FCC communications with NECA, the TRS Fund administrator, are intra-agency communications).

from disclosure by Exemption 5 for the reasons set forth above.

      **C.**      **The FCC Properly Withheld And/Or Redacted Records Pursuant To FOIA Exemptions 6 and 7(C).**

The rest of the information that IHD redacted from the records contained in case file no. EB-04-IH-0342 is properly withheld from disclosure pursuant to FOIA exemptions 6 and 7(C). Exemption 6 of the FOIA protects from disclosure personal information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." *See* 5 U.S.C. § 552(b)(6). The Supreme Court has interpreted "similar files" to have a broad meaning so that all information that "applies to a particular individual" qualifies for Exemption (b)(6) consideration. *See Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (quoting *Department of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982)).

This information is also properly withheld from disclosure pursuant to FOIA exemption 7(C), because it was compiled for law enforcement purposes and its release could reasonably be expected to constitute an unwarranted invasion of personal privacy for certain individuals to whom the information pertains. *See* 5 U.S.C. § 552(b)(7)(C). This exemption protects the identities of suspects and other persons of investigatory interest who are identified in agency records in connection with law enforcement investigations. *Reporters Comm. for Freedom of the Press v. U.S. Dept of Justice*, 816 F.2d 730, 780 (D.C. Cir. 1987), *modified on other grounds*, 831 F.2d 1124 (D.C. Cir. 1987), *rev'd on other grounds*, 489 U.S. 749 (1989); *Computer Prof'ls for Social Responsibility v. U.S. Secret Serv.*, 72 F.3d 897, 904 (D.C. Cir. 1996). Similarly,

individuals who provide information to law enforcement authorities, like the law enforcement personnel themselves, have protectable privacy interests in their anonymity. *Computer Prof'ls for Social Responsibility*, 72 F.3d at 904; *Farese v. U.S. Dep't of Justice*, 683 F. Supp. 273, 275 (D.D.C. 1987). The fact that the requester might be able to figure out the individuals' identities through other means, or that their identities have been disclosed elsewhere, does not diminish the privacy interests at stake. *Fitzgibbon v. CIA*, 911 F.2d 755 (D.C. Cir. 1990); *Weisberg v. Dep't of Justice*, 745 F.2d at 1476.

Once a privacy interest has been established, it must be balanced against the public interest, if any, that would be served by disclosure. *Albuquerque Publ'g Co. v. Dep't of Justice*, 726 F. Supp. 851, 855 (D.D.C. 1989). The public interest in disclosure is limited to the FOIA's "core purpose" of shed[ing] light on an agency's performance of its statutory duties." *Reporters Comm. for Freedom of the Press v. U.S. Dept of Justice*, 489 U.S. 749, 773 (1989). *Accord National Archives and Records Administration v. Favish*, 124 S.Ct. 1570, 1580-81 (2004). This standard is not easily satisfied when law enforcement information pertaining to individuals is sought, for there "is no reasonably conceivable way in which the release of one individual's name . . . would allow citizens to know 'what their government is up to.'" *Fitzgibbon v. CIA*, 911 F.2d 755, 768 (D.C. Cir. 1990). *See also Albuquerque Publ'g Co.*, 726 F. Supp. at 855-56 (no public interest in disclosure of sensitive information DEA obtained about individuals and their activities, where such material would not shed light on DEA's conduct with respect to the investigation). Furthermore, in order to overcome legitimate privacy interests, the requester must not only demonstrate the existence of the public interest, but also that the

public interest is both significant and compelling. *Senate of Puerto Rico v. Dep't of Justice,* 823 F.2d 574, 588 (D.C. Cir. 1987); *Stone v. EPA OIG*, 727 F. Supp. 662, 667-69 (D.D.C. 1990).

Records compiled in the course of an inquiry that focuses with special intensity upon an identifiable possible violation of law are records that have been compiled for "law enforcement purposes." *Birch v. United States*, 803 F.2d 1206 (D.C. Cir. 1986). The Commission's LOI required SBC to submit internal documents to the Commission in connection with the FCC's investigation into whether SBC violated FCC rules and orders. *See* Lancaster Decl. at ¶ 28. The LOI stated that "[t]o knowingly and willfully make any false statement or conceal any material fact in reply to this inquiry is punishable by fine or imprisonment. *See* 18 U.S.C. § 1001; *see also* 47 C.F.R. § 1.17." *Id*. Thus, SBC's submissions are "records or information compiled for law enforcement purposes."

The Court has emphasized that "both the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person." *See U.S. Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 763 (1989). In order to determine whether there would be a "clearly unwarranted invasion of personal privacy," the Court must balance the interests of protecting "an individual's private affairs from unnecessary public scrutiny," and "the public's right to governmental information." *Lepelletier*, 164 F.3d at 46 (interior quotation marks omitted)(citing *United States Dept. of Defense Dept. of Military Affairs v. FLRA*, 964 F.2d 26, 29 (D.C. Cir. 1992) (quoting *Department of Air Force v. Rose*, 425

U.S. 352, 372 (1976)).  In determining how to balance the private and public interests involved, the Supreme Court has sharply limited the notion of "public interest" under the FOIA:  "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'"  *Lepelletier*, 164 F.3d at 46 (editing by the court, emphasis supplied, interior quotation marks omitted) (quoting *United States Dept. of Defense v. FLRA*, 510 U.S. 487, 497 (1994)); *see also Reporters Committee*, 489 U.S. at 773; *but see Lepelletier*, 164 F.3d at 48 (in extraordinary circumstance where the individuals whose privacy the government seeks to protect have a "clear interest" in release of the requested information, the balancing under Exemption 6 must include consideration of that interest).

Here, IHD redacted the names and other identifying information of individuals identified in SBC's submissions contained in IHD case file no. EB-04-IH-0342.  *See* Lancaster Decl. at ¶ 29.  Most of these individuals apparently are SBC employees, representatives, contractors and sub-contractors.  *Id*.  Others appear to be SBC's contacts from other companies and organizations.  *Id*.  For example, IHD redacted from SBC's response to LOI Inquiry 2(e) the name and job title of an SBC employee so that the redacted response states:

> XXXXXXXXXXXX authorized billing for these on-site engineering
> services in or about November, 2003.  So far as SBC can determine,
> XXXXX was not aware at the time he authorized this billing that some
> of the services had been performed in schools for which SLD had not
> committed Year 6 funding.

*Id*. at ¶ 30.

First, plaintiff does not object to redaction of such personally-identifiable information. *Id.*, Attachment C thereto, at 2. Each of these individuals is entitled to privacy regarding his or her employer, job, and work performance. Release of such information would constitute an unwarranted invasion of these third-parties' privacy interests and would serve no legitimate public interest. *See* Lancaster Decl. at ¶ 29. The import of the remaining information contained in the records at issue is not significantly impacted by the redaction of the identifying information regarding these individuals. *Id*. The information is therefore properly protected from disclosure pursuant to FOIA exemptions 6 and 7(C).

**D.      FCC Properly Assessed Segregability.**

The FOIA requires that, if a requested record contains information that is exempt from disclosure under one of the FOIA exemptions, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." *Oglesby*, 79 F.3d at 1176 ("[i]f a document contains exempt information, the agency must still release 'any reasonably segregable portion' after deletion of the nondisclosable portions") quoting 5 U.S.C. § 552(b); *Trans-Pac. Policing Agreement,* 177 F.3d at 1028 (district courts have a duty to consider segregability in FOIA cases). Further, "[i]t has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Ctr., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

The FCC has reviewed IHD case file no. EB-04-IH-0342 to determine whether any such segregable information exists. In addition to the records that IHD's decision determined should be released, the FCC has determined that portions of certain other documents are segregable from the protected information and may thus be released. Specifically, the FCC has determined that it may release portions of e-mails containing material that do not reflect staff deliberations and that can readily be segregated from deliberative material without disclosing its context. *See* Lancaster Decl. at ¶¶ 31-32. These consist of a news article and a chart listing SBC e-rate projects.[11] *See* Lancaster Decl. at ¶ 32. Certain public documents contained in IHD case file no. EB-04-IH-0342 are also releasable. *Id*. at ¶ 33. These consist of copies of two judicial plea agreements in other proceedings. *Id*. Finally, the case file also contains a copy of a Commission decision, which is available in the FCC Record and on the Commission's website and therefore will not be released.[12] *Id*.

---

[11] The FCC will redact any confidential information covered by Exemption 4.

[12] *Request for Review of a Decision of the Universal Service Administrative Company (Naperville, Illinois)*, 16 FCC Rcd 5032 (2001). The copy in the file contains handwritten notations, which may be withheld

## IV.    __CONCLUSION__

For the foregoing reasons, this Court should grant defendant's motion for

summary judgment, enter summary judgment for defendant and dismiss plaintiff's

complaint with prejudice.

<div style="margin-left: 40%;">

Respectfully submitted,

_____s/Jeffrey A. Taylor_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
Interim United States Attorney


_____s/Rudolph Contreras_____
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney


_____s/Peter S. Smith_____
PETER S. SMITH, D.C. BAR # 465131
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0372

</div>

Of counsel:

Michael A. Krasnow, Esq.,
Office of General Counsel,
Federal Communications Commission

---

under Exemption 5.  *See* Lancaster Decl. at ¶ 33.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

COMPTEL,                              )
                                     )
    Plaintiff,                    )
                                     )
    v.                            )    Civil Action No. 06–1718 (HHK)
                                     )
FEDERAL COMMUNICATIONS               )
COMMISSION,                          )
                                     )
    Defendant.                    )

## DECLARATION OF JUDY LANCASTER

1.    I am presently employed as an attorney in the Investigations and Hearings Division ("IHD"), Enforcement Bureau ("EB"). Federal Communications Commission ("FCC" or "Commission"). I have been employed in that capacity since the FCC's EB was created in 1999. IHD, among other things, investigates and responds to complaints about alleged violations of the Commission's rules regarding broadcast and telecommunications matters.

2.    The information set forth in this Declaration is based upon my official knowledge acquired in my official position in IHD, EB, FCC.

3.    By e-mail dated April 4, 2005, Mary C. Albert, Vice President, Regulatory Policy, CompTel, submitted a Freedom of Information Act ("FOIA") request to the FCC seeking "[a]ll pleadings and correspondence contained in File No. EB-04-IH-0342." *See* electronic FOIA Request Form from Mary C. Albert, dated April 4, 2005, attached hereto as Attachment A. I will refer to Ms. Albert's e-mail herein as CompTel's FOIA request. CompTel's FOIA request was referred to the FCC's IHD for response.

4.    "File No. EB-04-IH-0342" is a case file that the FCC's IHD maintains in connection with an investigation that it conducted in calendar year 2004 to determine whether SBC violated FCC rules and orders regarding the schools and libraries universal service support mechanism, also know as the E-Rate program.[1] The E-Rate program provides discounts to schools and libraries for certain telecommunications and related services provided to them by vendors such as SBC. *See* 47 C.F.R. §§ 54.502-03.

5.    IHD's investigation was prompted by an August 6, 2004 letter from SBC to the FCC notifying the Commission that, during an internal audit, SBC had discovered "certain irregularities" that constituted an "apparent violation of the E-rate rules." IHD's

---

[1] In or about November 2005, SBC completed its acquisition of AT&T Corp., and the combined company is now known as AT&T Inc. For ease of reference, the company is referred to as SBC herein.

investigation ultimately concluded on December 16, 2004 by the adoption of a Consent Decree.

6.    In connection with its investigation, on August 24, 2004, IHD issued SBC a letter of inquiry ("LOI") requiring SBC to provide the Commission with certain company records and information.

7.    Case file no. EB-04-IH-0342 contains the following records that are responsive to Comptel's FOIA request: (1) SBC's August 6, 2004 letter and attachments thereto (approximately 30 pages); (2) the FCC's LOI, dated August 24, 2004 (approximately 9 pages); (3) SBC's response to the LOI and exhibits thereto, dated September 13, 2004 (approximately 268 pages); (4) drafts and final versions of documents related to the investigation, *e.g.*, the consent decree (approximately 104 pages); and (5) intra-agency and inter-agency e-mails, and intra-agency notes and memoranda, discussing issues related to IHD's investigation (approximately 133 pages).

8.    By letter dated May 27, 2005, SBC opposed release of the records sought by CompTel's FOIA request, and requested that all records that it submitted to the FCC in connection with IHD's E-Rate investigation be treated as confidential. *See* letter from Jim Lamoureux, Senior Counsel, SBC, to Judy Lancaster, IHD, EB, FCC, dated May 27, 2005, attached hereto as Attachment B.

9.    On June 28, 2005, CompTel submitted a reply to SBC's May 27, 2005 letter. *See* letter from Mary C. Albert to Judy Lancaster, IHD, EB, FCC, dated June 28, 2005, attached hereto as Attachment C.

10.    On August 5, 2005, the IHD issued a decision granting in part and denying in part CompTel's FOIA request ("IHD's decision"). *See* letter from William H. Davenport, Chief, IHD, EB, FCC, to Jim Lamoureux (SBC) and Mary C. Albert (CompTel), dated August 5, 2005, attached hereto as Attachment D.  IHD's decision also constituted a decision concerning SBC's May 27, 2005 request for confidential treatment (as described in ¶ 8 above).  *Id.*  IHD's decision concluded that certain records contained in case file no. EB-04-IH-0342 should be released to CompTel, and that others should be withheld from disclosure in whole or in part under FOIA Exemptions 4, 5, 6 and 7(C).

11.    IHD's decision concluded that there was no basis to treat all of the records as confidential as SBC had requested, because SBC had failed to make a sufficient showing under the Commission's rules to warrant such treatment. *Id.* at 4.  IHD concluded on its own motion that certain information contained in SBC's submissions should be treated as confidential, including "costs and pricing data, its billing and payment dates, and identifying information of SBC's staff, contractors, and the representatives of its contractors and customers." *Id.*  IHD concluded that such information was protected from disclosure under FOIA Exemption 4 because it was not publicly available and disclosure was "likely to substantially harm SBC's competitive position." *Id.* at 5.  IHD's decision concluded further that the names of individuals identified in SBC's submissions should be redacted under FOIA Exemptions 6 and 7(C).  IHD's decision

concluded finally that drafts of bureau pleadings and correspondence, and internal memoranda and e-mails discussing the FCC's investigation of SBC, should be withheld from release pursuant to FOIA Exemption 5 because such records would disclose the Commission's deliberative process. *Id.* at 6. IHD's decision explained that, consistent with the FCC's rules, the parties could file administrative appeals if dissatisfied with the decision. *Id.,* citing 47 C.F.R. §§ 0.461(i); 0.461(j).

12.    On August 19, 2005, SBC filed with the FCC an application for review (an administrative appeal) of IHD's decision. *See* letter from Jim Lamoureux to Samuel Feder, Acting General Counsel, Office of General Counsel, FCC, dated August 19, 2005, attached hereto as Attachment E.

13.    On September 1, 2005, CompTel filed an opposition to SBC's August 19, 2005 application for review. *See* letter from Mary C. Albert to Samuel Feder, Esq., FCC, dated September 1, 2005, attached hereto as Attachment F.

14.    On September 6, 2005, CompTel filed an application for review of IHD's decision. *See* letter from Mary C. Albert to Samuel Feder, Esq., FCC, dated September 6, 2005, attached hereto as Attachment G.

15.    On September 20, 2005, SBC filed an opposition to CompTel's September 6, 2005 application for review. *See* letter from Jim Lamoureux to Samuel Feder Esq., FCC, dated September 20, 2005, attached hereto as Attachment H.

16.    The administrative appeals of both parties remain pending before the Commission. IHD has redacted all protected information from the records contained in IHD case file no. EB-04-IH-0342 that are responsive to CompTel's FOIA request, but has not yet released any records to CompTel.

**FOIA Exemption 4**

17.    IHD case file no. EB-04-IH-0342 contains records that SBC submitted to the FCC involuntarily in its September 13, 2004 response to the LOI. Some of these records contain confidential financial and commercial information that would likely cause substantial competitive harm to SBC if released. Specifically, the records at issue consist of SBC's response to the FCC's LOI and various exhibits thereto (approximately 268 pages). The exhibits to SBC's response to the FCC's LOI include invoices for services and equipment that SBC submitted to the school district and the Schools and Libraries Division and that SBC received from suppliers, as well as related quotations, orders, and funding commitments. The exhibits also include internal SBC spreadsheets and e-mails that discuss financial information related to the provision of service and equipment. Telecommunications companies do not customarily disclose such information to outside parties.

18.    IHD redacted from these records pricing and cost data, and billing and payment dates. *Id.* For example, IHD redacted from SBC's response to LOI Inquiry 4(a)

information regarding invoice amounts and dates. The redacted response reads:

> FRN 936679 (Bennie Dover) in the amount of XXXX was invoiced
> on or about XXXXXXX in application ID 4250008. FRN 936583
> (Jennings) in the amount of XXXX was invoiced on or about
> XXXXXXX in application ID 424966. FRN 936642 (Winthrop)
> in the amount of XXXX was invoiced on or about XXXXXXX in
> applications ID 425001. FRN 936663 (little Red) in the amount of
> XXXX was invoiced on or about XXXXXXX in application ID 425006.

19.    Pricing and cost data is among the most sensitive corporate information.
Information regarding the timing of billing and payment could give competitors insights
into SBC's relationships with its customers and suppliers, including whether the
customers are prompt payers. Disclosure of this information would give SBC's
competitors an overview of SBC's costs, pricing, schedules, and operations. Such
information could enable competitors to craft offerings and proposals that would allow
them to compete more effectively against SBC for similar business, and/or allow
competitors to woo SBC's contractors or contacts. Similarly, disclosure of SBC's
invoice and discount amounts could disclose the total value of SBC's contract, which
would provide competitors with crucial information that could be used to underbid SBC
in future contract negotiations for this and similar contracts.

20.    SBC's August 6, 2004 voluntary disclosure to the FCC in this case alerted the
FCC to a problem with SBC's use of E-Rate program funding and permitted the FCC to
investigate that problem. That process culminated in SBC taking voluntary remedial
action to correct the problem. Voluntary disclosure is encouraged by the FCC's
Enforcement Bureau as a means to quickly identify and address instances of non-
compliance with the Communications Act and Commission rules.

21.    Release of SBC's confidential financial and commercial information could
discourage other licensees from voluntarily reporting to the Commission such internal
compliance problems in the future out of fear that such voluntary disclosure could result
in release of their confidential business information through the FOIA. Service providers
delay or avoidance reporting such problems to the FCC would hinder the FCC's ability to
discover such problems early and address them quickly and effectively.

22.    Disclosure of SBC's confidential financial and commercial information could
make it difficult for the FCC to obtain reliable financial and commercial information
from telecommunications companies in the future because disclosure of this information
could encourage other companies to be less forthcoming in their submissions of such
information to the FCC out of concern for their own financial interests.

## FOIA Exemption 5

23.    IHD case file no. EB-04-IH-0342 contains intra-agency and/or inter-agency
communications discussing issues related to IHD's investigation, as well as drafts of final

versions of documents related to the investigation, a total of approximately 237 pages. The FCC withheld all of this information from release.

24.    IHD withheld from release e-mails among FCC staff discussing issues related to the SBC investigation, and staff memoranda dealing with these issues. These communications are deliberative and pre-decisional, and reflect FCC staff's opinions and impressions with respect to matters concerning the FCC's investigation of SBC. The staff opinions and impressions were tentative, and proposed and/or recommended certain courses of action. The opinions and impressions thus constitute deliberative materials. Some of these e-mails are also pre-decisional inter-agency e-mails. The foregoing e-mails and memoranda reflect the FCC's decision making process regarding IHD's investigation, and were withheld, among other reasons, to encourage open discussion on the staff level and to guard against the public confusion that could result from the release of tentative rationales for Agency decisions.

25.    IHD withheld from release preliminary drafts of both the consent decree and an agreement tolling the statute of limitations because they reflect the tentative thinking of FCC staff with respect to these documents, and the final versions of these records are publicly available. Such documents are pre-decisional because they represent the consideration of issues preliminary to adoption of the consent decree or, in a few instances, involve the preliminary consideration of potential additional action that the FCC considered taking with respect to SBC.

26.    IHD withheld from release portions of e-mails discussing the draft consent decree that involve communications between FCC staff and SBC, and FCC staff members' handwritten notes regarding these issues, including notes made on copies of the e-mails, memoranda, and drafts mentioned above. These records reveal FCC staff's deliberative process and the time line of that process.

**FOIA Exemptions 6 and 7(C)**

27.    IHD case file no. EB-04-IH-0342 contains personal information about individuals, and the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy. This information is contained in SBC's September 13, 2004 response to the LOI and exhibits thereto.

28.    This information was compiled for law enforcement purposes, and release of the information could reasonably be expected to constitute an unwarranted invasion of personal privacy for certain individuals to whom the information pertains. The Commission's LOI required SBC to submit internal documents to the Commission in connection with the FCC's investigation into whether SBC violated FCC rules and orders. If SBC failed to comply with the LOI, the LOI stated, "[t]o knowingly and willfully make any false statement or conceal any material fact in reply to this inquiry is punishable by fine or imprisonment. *See* 18 U.S.C. § 1001; *see also* 47 C.F.R. § 1.17." Thus, SBC's submissions are records or information compiled for law enforcement purposes.

5

29.    IHD redacted the names and other identifying information of individuals identified in SBC's submissions contained in IHD case file no. EB-04-IH-0342. Most of these individuals appear to be SBC employees, representatives, contractors and sub-contractors. Others appear to be SBC's contacts from other companies and organizations. The import of the remaining information contained in the records at issue is not significantly impacted by the redaction of the identifying information regarding these individuals.

30.    For example, IHD redacted from SBC's response to LOI Inquiry 2(e) the name and job title of an SBC employee so that the redacted response states:

> XXXXXXXXXXXX authorized billing for these on-site engineering services in or about November, 2003. So far as SBC can determine, XXXXX was not aware at the time he authorized this billing that some of the services had been performed in schools for which SLD had not committed Year 6 funding.

## Segregability

31.    I have reviewed IHD case file no. EB-04-IH-0342 to determine whether any records therein contain information responsive to CompTel's FOIA request that is segregable from the information withheld in IHD's decision.

32.    I have determined that portions of certain documents are segregable from the withheld information and should be released. Specifically, portions of certain e-mails do not reflect staff deliberations and may be segregated from deliberative material without disclosing its content. These include a news article and a chart listing SBC E-rate projects.

33.    Certain public documents contained in IHD case file no. EB-04-IH-0342 are also releasable. These consist of copies of two judicial plea agreements in other proceedings. The case file also contains a copy of a Commission decision, which is already publicly available in the FCC Record and on the Commission's website. *See Request for Review of a Decision of the Universal Service Administrative Company (Naperville, Illinois),* 16 FCC Rcd 5032 (2001). The copy of this decision contained in the file contains handwritten notations by FCC staff, which will be withheld from disclosure under Exemption 5.

34.    Pursuant to 28 U.S.C. § 1746, I, Judy Lancaster, declare under penalty of perjury that the foregoing is true and correct. Executed on this 12th day of February, 2007.

*Judy Lancaster*

Judy Lancaster

6

# ATTACHMENT A

Project Code *M 3100*

# ★URGENT
## Freedom of
## Information Act
### PRIORITY PROCESSING REQUIRED

Priority processing required under provisions of The Freedom of Information Act

## Records not routinely available

*2 005-333*

*EB*

**Bureau/Office**

*05/02/05*

**Date Time Limit Expires**

Other coordinating Bureaus/Offices

# URGENT
### PRIORITY PROCESSING REQUIRED

Form A-397

**Patricia Quartey**

From:        Mary C. Albert [malbert@comptelascent.org]
Sent:        Monday, April 04, 2005 10:52 AM
To:          FOIA
Subject:     Electronic FOIA (E-FOIA) Request Form

Mary C. Albert
CompTel/ALTS, 1900 M Street N.W.
800
Washington, DC
20036

Phone Number: (202)296-6650
Fax Number:(202)296-7585
Email Address: malbert@comptelascent.org

Date of Request: 04/04/2005

Mary C. Albert Requests:
All pleadings and correspondence contained in File No. EB-04-IH-0342.
------------------------------------------------------------
Subject:  Enforcement Bureau investigation into SBC Communications, Inc. compliance with
47 USC Section 254 and 47 CFR Part 54.

Maximum Fee: $50.00

Listed In CFR 47:
If Yes Give Reasons for Inspection:

Is the requester entitled to a restricted fee assessment? No
If Yes Give Reasons for Inspection:

Any Additional Information and/or Comments:

Server protocol: HTTP/1.1
Remote host: 208.178.77.162
Remote IP address: 208.178.77.162

1

# ATTACHMENT B



**Jim Lamoureux**
Senior Counsel

SBC Services, Inc.
1401 I Street NW, Suite 400
Washington, D.C. 20005
Phone 202 326-8895
Fax 202 408-8745

May 27, 2005

## BY ELECTRONIC AND U.S. MAIL

Judy Lancaster
Enforcement Bureau
Investigations and Hearings Division
Federal Communications Commission
445 12ᵗʰ Street SW
Washington DC 20554

     **Re:**   **Freedom of Information Act Request, Control No. 2005-333
(CompTel/ALTS, April 4, 2005)**

Dear Ms. Lancaster:

     SBC Communications Inc. ("SBC"), on behalf of itself and its affiliates, opposes release of the records sought by CompTel/ALTS in the above-referenced Freedom of Information Act ("FOIA") request. In its request, CompTel/ALTS seeks release of "[a]ll pleadings and correspondence contained in File No. EB-04-IH-0342." Included within the scope of the CompTel/ALTS request are records that SBC submitted to the Commission in response to a Letter of Inquiry issued by the Enforcement Bureau, as well as the Letter of Inquiry itself.[1] All of the records responsive to the CompTel/ALTS request were issued and obtained by the Commission as part of an Enforcement Bureau investigation, and thus, pursuant to 47 C.F.R. § 0.457, are not routinely available for public inspection.[2] Moreover, all responsive documents plainly fall within the "law enforcement-privacy" and "confidential commercial information" exemptions to the FOIA's disclosure requirements. *See* 5 U.S.C. § 552(b)(7)(C) and 5 U.S.C. § 552(b)(4). Accordingly, pursuant to the FOIA and Commission Rule 0.459, all of the requested records should be maintained by the Commission as confidential and should not be made available for public inspection or disclosure.

     All of the records requested by CompTel/ALTS fall within 5 U.S.C. 552(b)(7)(C), which exempts from public disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to constitute an unwarranted invasion of personal privacy." All of the records responsive to the CompTel/ALTS request were clearly "compiled for law enforcement

---

[1] If the Commission determines that other records are responsive to the CompTel/ALTS request, SBC reserves the right to object to disclosure of any such additional records.

[2] Contrary to FCC Rule 0.461(c) pertaining to material not routinely available for public inspection, the CompTel/ALTS request does not "contain a statement of the reasons for inspection and the facts in support thereof."

purposes." The Letter of Inquiry itself was issued as part of an Enforcement Bureau investigation, and the documents provided to the Enforcement Bureau by SBC were all in response to the Letter of Inquiry. The stated purpose of the Enforcement Bureau's Letter of Inquiry, as well as the overall purpose of the Enforcement Bureau's investigation was to determine whether SBC had violated Commission rules. It is thus plain that the records in question were compiled by the Enforcement Bureau for law enforcement purposes. The courts have made clear that all agency enforcement proceedings, including civil enforcement proceedings generally, and FCC Enforcement Bureau investigations in particular, fall within the ambit of Exemption 7. *See, e.g., Aspin v. Dept. of Defense,* 348 F. Supp. 1081 (D.D.C.), *aff'd* 491 F.2d 24 (D.C. Cir. 1972); *Windels, Marx, Davies & Ives. v. Dept. of Commerce,* 576 F. Supp. 405 (D.D.C. 1983); *Kay v. FCC,* 867 F. Supp. 11 (D.D.C. 1994). There is thus no doubt that all of the records responsive to the CompTel/ALTS request were compiled for law enforcement purposes under Exemption 7 of the FOIA.

Moreover, disclosure of the records requested by CompTel/ALTS would cause an unwarranted invasion of personal privacy, and thus, pursuant to Exemption 7(C), should not be disclosed. The purpose of Exemption 7(C) is to protect third parties from embarrassment, reprisal or harassment, and other invasions of privacy associated with the stigma of law enforcement investigations. *See Voinche v. F.B.I,* 940 F. Supp. 323 (D.D.C. 1996); *Foster v. U.S. Dept. of Justice,* 933 F. Supp. 687 (E.D. Mi 1996). Moreover, because of the intense privacy interests in information compiled by law enforcement agencies, Exemption 7(C) "affords broad[] privacy rights to suspects, witnesses, and investigators." *Bast v. Dep't of Justice,* 665 F.2d 1251, 1254 (D.C. Cir. 1981). The question of whether disclosure of such information is warranted turns on whether "the privacy interest at stake outweighs the public interest in disclosure." *Nation Magazine, Washington Bureau v. U.S. Customs Svc.,* 71 F.3d 885, 893 (D.C. Cir. 1995). In this instance, there is no public interest in disclosure that could possibly offset the invasion of privacy that would result from disclosure.

The Supreme Court has made clear that, for purposes of Exemption 7(C), "whether an invasion of privacy is *warranted* cannot turn on the purposes for which the request for information is made." *United States Dept. of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 771 (1989). Rather, "whether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny rather than on the particular purpose for which the document is being requested." *Id. (Internal quotation marks and citations omitted.).*[3] In *Reporters Committee,* several journalists sought disclosure under the FOIA of the FBI "rap sheet" of a reputed mob boss. In holding that disclosure was prohibited by Exemption 7(C), the Court held that the core purpose of the FOIA,

... is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about

---

[3] *See also Wichlacz v. U.S. Dept. of Interior,* 938 F. Supp. 325 (E.D. Va. 1996)(only possible public interest to weigh against privacy interest is extent to which disclosure would shed light on agency's performance of its statutory duties or otherwise let citizens know what their government is up to).

an agency's own conduct. In this case—and presumably in the typical case in which one private citizen is seeking information about another—the requester does not intend to discover anything about the conduct of the agency that has possession of the requested records. Indeed, response to this request would not shed light on the conduct of any Government agency or official.

*Reporters Committee*, 489 U.S. at 773. More specifically, with respect to documents compiled by agencies during the course of law enforcement investigations, the Court further held that,

. . . although there is undoubtedly some public interest in anyone's criminal history, especially if the history is in some way related to the subject's dealing with a public official or agency, the FOIA's central purpose is to ensure that the *Government's* activities be opened to the sharp eye of public scrutiny, not that information about *private citizens* that happens to be in the warehouse of the Government be so disclosed.

*Id.* at 774.[4] The Court thus concluded that the public interest in disclosure of the rap sheet sought by the journalists "is not the type of interest protected by the FOIA." *Id.* at 775. As a general proposition, moreover, the Court held,

. . . *as a categorical matter* that a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy, and [] when the request seeks no "official information" about a Government agency, but merely records that the Government happens to be storing, the invasion of privacy is "unwarranted."

*Id.* at 780.[5] (Emphasis added.) The Court's holding in *Reporters Committee*, as well as the D.C. Circuit's holding in *SafeCard Services* apply with equal force in this instance.

---

[4] *See also SafeCard Services, Inc. v. Securities and Exchange Commission*, 926 F.2d 1197, 1205 (D.C. Cir. 1991)("the type of information sought is simply not very probative of an agency's behavior or performance."); *Nation Magazine*, 71 F.3d at 895 ("In some, perhaps many, instances where a third party asks if an agency has information regarding a named individual in its law enforcement files, the cognizable public interest in that information will be negligible; the requester will be seeking records about a private citizen, not agency conduct."); *Alexander & Alexander Svcs., Inc. v. Securities and Exchange Commission*, Civ.A. No. 92-1112 (JHG), 1993 WL 439799 (D.D.C. Oct. 19, 1993)("when a private citizen seeks information regarding another private citizen or corporation, the requester is not seeking information regarding the conduct of the agency in possession of the information.").

[5] *See also SafeCard*, 926 F.2d at 1205-1206 ("Indeed, unless there is compelling evidence that the agency denying the FOIA request is engaged in illegal activity, and access to the names of private individuals appearing in the agency's law enforcement files is necessary in order to confirm or refute that evidence, there is no reason to believe that the incremental public interest in such information would ever be significant."); *see also id.* at 1205 ("The public interest in disclosure is not just less substantial, it is insubstantial.")

The only records responsive to the CompTel/ALTS request are internal documents of a private party that were submitted to and compiled by the Commission pursuant to investigative demands issued by the Enforcement Bureau. None of the records in question contain "official information" about the Commission; nor do any of the records pertain to the conduct of the Commission or any Commission official. The only ostensible interest on the part of CompTel/ALTS in disclosure of the requested documents is to try to embarrass SBC with the information compiled by the Enforcement Bureau. There is thus no public policy interest in disclosure of the requested documents. Conversely, there are substantial privacy interests in such documents. As with information compiled by the FBI in rap sheets, the requested records are no more than documents that "happen to be in the warehouse" of the Commission because they were gathered during the course of a law enforcement investigation. Indeed, the privacy interest in the particular information at issue here is stronger than that in *Reporters Committee*. The discrete informational components of rap sheets are frequently publicly available through various court records; it was thus the compilation of such information in which the Court found a cognizable privacy interest. *See Reporters Committee*, 489 U.S. at 763-764.[6] Here, in contrast, none of the information is generally publicly available. Indeed, but for the investigative demand of the Enforcement Bureau, the information would remain in SBC's possession. Moreover, the information would remain in SBC's possession as discrete documents and information scattered throughout SBC's offices and files. But for the Enforcement Bureau's investigative demand, there would be no compilation of those records as there is now in the Enforcement Bureau's files. Accordingly, given the strong privacy interest in the records at issue here, and the complete lack of any public interest in disclosure of those records, *Reporters Committee* and *SafeCard Services* make clear the Exemption 7(C) compels the Commission not to publicly disclose any of the records responsive to the CompTel/ALTS request.

Exemption 4 also requires that the Commission not publicly disclose any of the records responsive to the CompTel/ALTS request. 5 U.S.C. § 552(b)(4). Exemption 4 applies to "trade secrets and commercial or financial information obtained from a person and privileged and confidential." *Id.* The phrase "commercial or financial information" has a broad meaning under the FOIA, and includes anything pertaining to or relating to commerce. *American Airlines, Inc. v. National Mediation Bd.*, 588 F.2d 863, 870 2d Cir. 1978); *see also Public Citizen Health research Group v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983)(documents are commercial if a submitter has a commercial interest in them). The records at issue here clearly pertain to SBC's business dealings with one of its customers and are thus undoubtedly commercial information under the FOIA.

Those records, moreover, are confidential under Exemption 4. Two lines of cases have evolved for determining whether agency records fall within this component of Exemption 4. Under *Critical Mass*, commercial information that is voluntarily submitted to the Commission must be

---

[6] *Reporters Committee* thus disposes of any notion that SBC has no privacy interest in the records in question merely because the investigation is a matter of public record as a result of the Order issued by the Commission approving the Consent Decree between SBC and the Enforcement Bureau. *See, e.g., Reporters Committee*, 489 U.S. at 1480 ("In sum, the fact that an event is not wholly private does not mean that an individual has no interest in limiting disclosure or dissemination of the information." (Internal quotation marks and citations omitted.))

withheld from public disclosure if such information is not customarily disclosed to the public by the submitter. *Critical Mass Energy Project v. NRC*, 975 F.2d 871, 879 (D.C. Cir. 1992). All of the information at issue here is maintained on a confidential basis within SBC and would not ordinarily be disclosed to parties outside the company. Company practices instruct employees not to disclose such information outside the company and restrict access to this information on a need-to-know basis. In short, none of the information at issue here is customarily disclosed to the public, and should, therefore, be withheld under Exemption 4.

For materials not subject to *Critical Mass, National Parks* establishes a two part test for determining if information qualifies for withholding under Exemption 4. *National Parks & Conservation Assoc. v. Morton*, 498 F.2d 765 D.C. Cir. (1974). The first prong asks whether disclosing the information would impair the government's ability to obtain necessary information in the future. The second prong asks whether the competitive position of the person from whom the information was obtained would be impaired or substantially harmed. If the information meets the requirements of either prong, it is exempted from disclosure under Exemption 4. Here, the first prong of *National Prongs* compels the Commission not to publicly disclose the records requested by CompTel/ALTS. The subject matter of the investigation at issue here was voluntarily brought to the Enforcement Bureau's attention by SBC as a result of an ongoing internal review conducted by SBC. SBC, moreover, voluntarily refunded all amounts that might have been at issue, and it entered into a consent decree to make a voluntary contribution to the United States Treasury. Compelled public disclosure of the records compiled by the Enforcement Bureau in this instance would plainly impair the Enforcement Bureau's ability to obtain similar information in the future. It would chill industry incentives to conduct internal investigations and to bring the results of those investigations to the attention of the Commission. It would thus hamper the general ability of the Commission to conduct investigations and enforcement proceedings and to rely on the cooperation of parties involved in those proceedings, which would necessarily impair the Commission's ability to obtain documents and information in investigations and enforcement proceedings. It would, in short, undermine the agency's "effective execution of its statutory responsibilities." *9 to 5 Org. for Women Office Workers v. Board of Governors*, 721 F2.s 1, 11 (1st Cir. 1983). *See also Africa Fund v. Mosbacher*, No. 92-289, 1993 WL 183736 at *7 (S.D.N.Y. May 26, 1993)(disclosure would impinge upon agency's receipt of substantial information that potential exporters voluntarily submit when seeking export licenses and that the agency finds invaluable in making policy and maintaining effective export controls.) Accordingly, in addition to Exemption 7(C), Exemption 4 also compels the Commission not to publicly disclose any of the records responsive to the CompTel/ALTS request.

If the Commission determines that Exemptions 7(C) and 4 do not compel it to withhold all of the requested records from public disclosure, at a minimum, specific records and information responsive to the CompTel/ALTS requests fall within the scope of Exemptions 7(C) and 4 and should be withheld from public disclosure. First, the requested records contain information identifying SBC employee names, titles and job functions, phone numbers, email addresses, and physical addresses, which are highly sensitive not only in terms of SBC confidential commercial information, but also from a personal privacy perspective. Indeed, the DC Circuit holds "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure."

*SafeCard*, 926 F.2d at 1206. Accordingly, the Commission should withhold from disclosure all such information pertaining to individuals identified in the records responsive to the CompTel/ALTS request.

In addition, the documents in question contain competitively sensitive information which should not be made available for public disclosure. Telecommunications is a highly competitive industry. The presence of such competition and the likelihood of competitive injury threatened by release of the information provided to the Commission by SBC should compel the Commission to withhold the information from public disclosure. *CNA Financial Corp. v. Donovan*, 830 F.2d 1132, 1152 (D.C. Cir. 1987); *Frazee v. U.S. Forest Service*, 97 F.3d 367, 371 (9th Cir. 1996); *Gulf & Western Indus. v. U.S.*, 615 F.2d 527, 530 (D.C. Cir. 1979).[7]

The requested records contain information pertaining to SBC's systems, processes, and operations, and thus represent confidential commercial information that should not be released under the FOIA. The records also contain cost, pricing information that clearly falls within the scope of Exemption 4. Attachment A identifies the records that contain such information. Competitors could use such confidential information to assist in targeting their service offerings and enhancing their competitive positions, to the detriment of SBC's competitive position. *See, e.g., GC Micro Corp. v. Defense Logistics Agency*, 33 F.3d 1109 (9th Cir. 1994). Commission precedent has clearly found this type of information to be competitively sensitive and withholdable under Exemption 4.[8] The Commission has recognized that competitive harm can result from the disclosure of confidential business information that gives competitors insight into a company's costs, pricing plans, market strategies, and customer identities. *See In re Pan American Satellite Corporation*, FOIA Control Nos. 85-219, 86-38, 86-41, (May 2, 1986).[9] Accordingly, the Commission should withhold all of the records identified in Attachment A.

---

[7] It is worth noting that the request in question comes from a trade association representing many of SBC's competitors in the marketplace.

[8] *See e.g. In Matter of Pacific Bell Telephone Company Petition for Pricing Flexibility for Special Access and Dedicated Transport Services*, CCB/CPD No. 00-23, DA 00-2618, November 20, 2000 (supporting confidentiality for collocation data); *Local Exchange Carrier's Rates, Terms and Conditions for Expanded Interconnection Through Virtual Collocation for Special Access and Switched Transport; Southwestern Bell Telephone Company*, 13 FCC Rcd 13615 (1998)(keeping administrative operating expenses confidential because it would provide insight into business strategies); *AT&T/McCaw Merger Applications* 9 FCC Rcd 2610 (1994)(keeping confidential accounting records showing account balance information); *NAACP Legal Defense Fund on Request for Inspection of Records* 45 RR 2d 1705 (1979)(keeping confidential records that contained employee salary information); *Mercury PCS II, LLC (Request for Inspection of Records) Omnipoint Corporation (Request for Confidential Treatment of Documents)*, FCC 00-241 (July 17, 2000)(keeping confidential marketing plans and strategy information).

[9] Further, the Commission has ruled that not only should such information be protected, but also that information must be protected through which the competitively sensitive information can be determined. *Allnet Communications Services, Inc. Freedom of Information Act Request*, FOIA Control No. 92-149, Memorandum Opinion and Order (released August 17, 1993) at p. 3. The

Judy Lancaster
May 27, 2005
Page 7 of 7


For the above reasons, SBC opposes the CompTel/ALTS request for the records described in its April 4, 2005, email. If you have any questions, please do not hesitate to contact me at (202) 326-8895.

Sincerely,

Jim Lamoureux
Senior Counsel
SBC Services, Inc.


cc:    William Davenport


---

Commission's decision was upheld in a memorandum opinion of the U.S. Court of Appeals for the D.C. Circuit, which affirmed a U.S. District Court decision protecting the information. *Allnet Communications Services, Inc. v. FCC*, Case No. 92-5351 (memorandum opinion issued May 27, 1994, D.C. Cir.).

# ATTACHMENT A

| Document Reference | Information that is confidential commercial |
|---|---|
| Pages 4-8 | Identification of SBC's customers, contracts, projects, and invoice amounts |

### SBC Response to LOI

| Document Reference | Information that is confidential commercial |
|---|---|
| SBC's Responses to the Enforcement Bureau's interrogatories (pages 1-15) | Identification of SBC's customers, contracts, projects, invoice amounts and subcontractors |
| Attachment A, Job Responsibilities (pages 1-9) | Identification of SBC job functions, responsibilities and priorities |
| SBCNL000022–27 | Identification of SBC vendors and subcontractors, cost and pricing detail, and general customer bid strategies and operational processes |
| SBCNL000029 | Identification of SBC cost and pricing detail |
| SBCNL000042–55 | Identification of SBC cost and pricing detail |
| SBCNL000056-59 | Identification of SBC vendors and subcontractors, and general customer bid strategies and operational processes |
| SBCNL000060 | Identification of SBC cost and pricing detail and vendor and subcontractor information |
| SBCNL000061 | Identification of SBC cost and pricing detail |
| SBCNL000062-65 | Identification of SBC cost and pricing detail and general customer bid strategies and operational processes |
| SBCNL000067 | Identification of SBC cost and pricing detail and vendor and subcontractor information |
| SBCNL000068-72 | Identification of SBC vendors and subcontractors, cost and pricing detail, and general customer bid strategies and operational processes |
| SBCNL000074-80 | Identification of SBC general customer bid strategies and operational processes |
| SBCNL000081-100 | Identification of SBC operational processes, vendor and subcontractor information, cost and pricing detail and billing information |
| SBCNL000101-102 | Identification of SBC billing information |
| SBCNL000103 – 142 | Identification of SBC cost and pricing detail and billing information |
| SBCNL00143-152 | Identification of SBC cost and pricing detail |
| SBCNL00163 – 166 | Identification of SBC cost and pricing detail and billing information |
| SBCNL00167 | Identification of SBC vendor and subcontract information |
| SBCNL000169 | Identification of SBC billing information |
| SBCNL000170 – 174 | Identification of SBC vendor and subcontract information |
| SBCNL000175 – 178 | Identification of SBC cost and pricing detail and billing information |

Letter to Judy Lancaster
Re: Freedom of Information Act Request, Control No. 2005-333
May 27, 2005
Attachment A
Page 2 of 2

| SBCNL000179 – 182 | Identification of SBC cost and pricing detail and billing information and vendor and subcontract information |
| SBCNL000183 | Identification of SBC cost and pricing detail and billing information |
| SBCNL000184 – 185 | Identification of SBC cost and pricing detail and billing information |
| SBCNL000186-190 | Identification of SBC billing information and operational processes |
| SBCNL000196-218 | Identification of SBC internal documentation and operational processes |

**ATTACHMENT C**

 

1900 M St. NW • Suite 800 • Washington, DC 20036
P (202) 296-6650   F (202) 296-7585

June 28, 2005

Ms. Judy Lancaster
Enforcement Bureau
Federal Communications Commission
445 12ᵗʰ Street S.W.
Washington, D.C. 20554

Re: Freedom of Information Act Request, Control No. 2005-333

Dear Ms. Lancaster:

CompTel/ALTS hereby responds to SBC Communications, Inc.'s ("SBC") objection to the release of documents to CompTel/ALTS pursuant to the above-captioned Freedom of Information Act ("FOIA") request.

On April 4, 2005, CompTel/ALTS submitted an FOIA request to the Commission for documents contained in File No. EB-04-IH-0342. These documents relate to the Enforcement Bureau's investigation of SBC for violations of the Commission's rules in connection with the receipt of universal service support for the New London Connecticut Public Schools. The Commission terminated the investigation upon issuing an Order adopting a Consent Decree. *In the Matter of SBC Communications, Inc.*, File No. EB-04-IH-0342, Order, DA 04-3893 (released December 16, 2004).

By letter dated May 27, 2005, SBC objected to disclosure of the documents requested on the grounds that they were exempt from disclosure pursuant to FOIA Exemptions 7(C) and 4.[1] 5 U.S.C. §§ 552(b)(7)(C), 552(b)(4). SBC is wrong on both counts. As demonstrated below, neither Exemption is applicable and the Commission is obligated to grant CompTel/ALTS' request without further delay.[2]

---

[1]    See Letter from Jim Lamoureux, SBC, to Judy Lancaster dated May 27, 2005. SBC's letter was provided to CompTel/ALTS on June 23, 2005.

[2]    CompTel/ALTS notes for the record that the Commission has not met the statutory deadline for notifying CompTel/ALTS whether it will comply with the request for documents nor provided written notice to extend the deadline. See 5 U.S.C. §552(a)(6).

Ms. Judy Lancaster
June 28, 2005
Page 2

The FOIA embodies a policy authorizing liberal disclosure of government documents and records. Government documents must be produced upon request unless they are specifically exempted from disclosure by statute. FOIA Exemption 7 authorizes disclosure of law enforcement[3] records unless the government can demonstrate one of six specific harms. Although SBC correctly notes that pursuant to Exemption 7(C), the Commission has the discretion to exempt from disclosure investigatory records compiled for law enforcement purposes only to the extent that the production of such records "could reasonably be expected to constitute an unwarranted invasion of personal privacy," it has failed to demonstrate that the documents requested are covered by that Exemption.

SBC asserts that disclosure of the records requested by CompTel/ALTS would cause an unwarranted invasion of its personal privacy. (SBC Objection at 2) SBC is mistaken. As a large, publicly traded corporation, it is well settled that SBC possesses no protectable "personal privacy" interest as that term is used in the FOIA. *The Washington Post Company v. United States Department of Agriculture*, 943 F.Supp. 31, 35 n. 4 (D.D.C. 1996); *Ivanhoe Citrus Association v. Handley*, 612 F. Supp. 1560, 1567 (D.D.C. 1985); *National Parks and Conservation Association v. Kleppe*, 547 F.2d 673 (D.C. Cir. 1976). *See also, The Washington Post Company v. United States Department of Justice*, 863 F. 2d 96, 100 (D.C. Cir. 1988) (investigation and assessment of business decisions of corporate employees during the development and marketing of a commercial product do not qualify for exemption from disclosure under Exemption 7(C)). Thus, the Commission cannot withhold the documents under Exemption 7(C) on the grounds that their release may invade SBC's "personal privacy."

To the extent that any of the responsive documents contain the names, telephone numbers, email addresses and physical addresses of SBC employees, CompTel/ALTS has no objection to the redaction of such information before the documents are released. *See Safecard Services, Inc. v. Securities and Exchange Commission*, 926 F.2d 1197 (D.C. Cir. 1991) (upholding SEC's deletion of names and addresses of third parties mentioned in investigatory file).

SBC's reliance on Exemption 4 is similarly unavailing. Exemption 4 gives the Commission discretion to withhold privileged and confidential "commercial or financial information." SBC asserts that all records responsive to the CompTel/ALTS request meet the test of confidentiality under Exemption 4 and must be withheld. (SBC Objection at 4). The test for determining whether information is confidential within the meaning of Exemption 4 differs depending on whether the information was provided to the government voluntarily or under compulsion. *Critical Mass Energy Project v. Nuclear Regulatory Commission*, 975 F. 2d 871 (D.C. Cir. 1992). Financial or commercial information voluntarily provided to the government is exempt from disclosure if it is of a kind that would not customarily be released to the public. *Id.* In contrast, information that is provided to the government under compulsion will be treated

---

[3]    CompTel/ALTS also notes for the record that it does not concede SBC's characterization of the records requested as being compiled for law enforcement purposes.

Ms. Judy Lancaster
June 28, 2005
Page 3

as confidential where its disclosure would (1) impair the government's ability to obtain necessary information in the future or (2) cause substantial harm to the competitive position of the person from whom information was obtained. *National Parks and Conservation Association v. Kleppe*, 547 F.2d 673 (D.C. Cir. 1976).

SBC's argument that all responsive documents are confidential is entitled to little weight given the conflicting positions it takes with respect to whether the information was provided voluntarily or under compulsion. SBC first asserts that the responsive documents were produced under compulsion. "The only records responsive to CompTel/ALTS request are internal documents of a private party that were submitted to and compiled by the Commission pursuant to investigative demands issued by the Enforcement Bureau"; "but for the investigative demand of the Enforcement Bureau, the information would remain in SBC's possession"; "[b]ut for the Enforcement Bureau's investigative demand, there would be no compilation of those records as there is now in the Enforcement Bureau's files"; "the documents provided to the Enforcement Bureau by SBC were all in response to the Letter of Inquiry." (SBC Objection at 2, 4) If the Enforcement Bureau compelled SBC to submit the documents to the Commission, the first prong of the *National Parks* test cannot be satisfied. In *National Parks*, the Court held that where entities are required to submit commercial information to the government, there is no danger that public disclosure of the information will impair the ability of the government to obtain such information in the future. 547 F. 2d at 678. *See also, CNA Financial Corporation v. Donovan*, 830 F. 2d 1132, 1153 (D.C. Cir. 1987) (where government requires submission of information, first prong of *National Parks* test is not implicated).

Nor has SBC satisfied the second prong of the *National Parks* test which requires a showing that disclosure of the information will cause substantial harm to SBC's competitive position. *Id.* at 677. SBC merely asserts that the requested records "contain information pertaining to SBC's systems, processes and operations" and also "contain cost, pricing information" that could be used by competitors "to assist in targeting their service offerings and enhancing their competitive positions, to the detriment of SBC's competitive position." (SBC Objection at 6) Such conclusory and generalized allegations are insufficient to demonstrate the likelihood of substantial competitive injury necessary to sustain the burden of nondisclosure under Exemption 4. *Id.* at 680. In any event, Exemption 4 cannot be used to justify withholding any of the cost and pricing information contained in the responsive documents identified on SBC's Attachment A because such data is already in the public domain. Section 54.501(d)(3) of the Commission's rules clearly requires that e-rate service providers, such as SBC, make records of rates charged and discounts allowed to participating schools available for public inspection. That rule reads as follows:

> Service providers shall keep and retain records of rates charged to and discounts allowed for eligible schools and libraries – on their own or as part of a consortium. **Such records shall be made available for public inspection.**

47 C.F.R. §54.501(d)(3) (emphasis added). Records that are required to be made available for public inspection are not confidential within the meaning of Exemption 4. *See CNA Financial Corporation v. Donovan*, 830 F. 2d 1132, 1154 (D.C. Cir. 1987) (a claim of confidentiality cannot be made for any data in the public domain).

Ms. Judy Lancaster
June 28, 2005
Page 4

In the alternative, SBC argues that the responsive documents were voluntarily provided to the Commission and are protected from disclosure because they are of a kind that SBC would not ordinarily disclose to parties outside the company. (SBC Objection at 5)  SBC has failed, however, to identify any financial or commercial information that was voluntarily provided to the Commission.  On the contrary, SBC concedes that only "the subject matter of the investigation at issue" was "voluntarily brought to the enforcement Bureau's attention by SBC." (SBC Objection at 5)  The "subject matter" of the investigation is not entitled to exemption from disclosure under Exemption 4 because the Commission has already made the "subject matter" of the investigation a matter of public record by virtue of its release of the Order and Consent Decree.  SBC's voluntary act of notifying the Commission of possible rule violations cannot shield the subsequent investigatory record nor any documents SBC provided to the Commission under regulatory compulsion from disclosure.

SBC has failed to demonstrate that the information requested is protected from disclosure under either Exemption 7(C) or Exemption 4 of the FOIA.  As a result, the FOIA mandates release of the requested files to CompTel/ALTS immediately.

Respectfully submitted,

Mary C. Albert
Vice President, Regulatory Policy

cc:  William Davenport
     Jim Lamoureux, SBC

# ATTACHMENT D



**FEDERAL COMMUNICATIONS COMMISSION**
Enforcement Bureau, Investigations and Hearings Division
445 12ᵗʰ Street, S.W., Room 4-C320
Washington, D.C. 20554

August 5, 2005

<u>**Via Certified Mail, Return Receipt Requested,**</u>
<u>**Facsimile and E-Mail**</u>

Mr. Jim Lamoureux
SBC Services, Inc.
1401 I Street N.W., Suite 400
Washington, D.C. 20005

Ms. Mary C. Albert
Vice President, Regulatory Policy
CompTel / ALTS
1900 M Street, N.W.
Washington, D.C. 20036

 Re:    Freedom of Information Act Request
         FOIA Control No. 2005-333

Dear Mr. Lamoureux and Ms. Albert:

## I.    INTRODUCTION

 This letter concerns a Freedom of Information Act ("FOIA") request from
Comptel/ALTS ("Comptel") for information submitted by SBC Communications, Inc. ("SBC")
in response to a Letter of Inquiry ("LOI") from the Enforcement Bureau.  SBC has requested
confidential treatment of its submissions.  As explained below, we grant SBC's request in part
and deny it in part.  Therefore, we will release to Comptel SBC's responses as described herein
unless we receive an application for review from SBC within ten working days from the date of
this letter.  If Comptel believes that any portion of this decision is in error, it may file an
application for review of this action with the Commission's Office of General Counsel within 30
days of the date of this letter.

## II.    BACKGROUND

 On August 24, 2004, the Investigations and Hearings Division of the Enforcement
Bureau (the "Bureau") sent SBC an LOI notifying the company that the Bureau was
investigating whether it violated Part 54, Subpart F, of the Commission's rules, 47
C.F.R. §§ 54.500-54.521, and the Commission's orders regarding universal service funding.[1]
SBC responded to this LOI on September 13, 2004.[2]

---

[1] Letter to Michelle A. Thomas, Executive Director, Federal Regulatory, SBC Communications, Inc., and
Christopher Heimann, General Attorney, SBC Telecommunications Inc. from Hillary S. DeNigro, Deputy Chief,

Mr. Jim Lamoureux
Ms. Mary C. Albert
August 5, 2005
Page 2

On December 16, 2004, the Bureau terminated its investigation by adopting a Consent Decree in which SBC agreed to make a voluntary contribution to the United States Treasury in the amount of $500,000 and to institute a compliance plan, as specified therein, "to ensure SBC's wholly-owned subsidiaries' future compliance with the Commission's rules governing the E-Rate program."[3] The Consent Decree specifies that "it does not constitute an admission, denial, adjudication on the merits, or a factual or legal determination regarding any compliance or noncompliance with the requirements of section 254 of the Act or Part 54 of the Commission's rules."[4]

On April 4, 2005, the Bureau received Comptel's FOIA request for copies of "all pleadings and correspondence contained in file number EB-04-IH-0342,"[5] the investigative file for the investigation referenced in the December 16, 2004, Consent Decree. On May 27, 2005, SBC filed its response to the FOIA request, opposing release of the requested documents and seeking confidentiality for the materials.[6] SBC argues in its Opposition that the requested documents were "compiled for law enforcement purposes," and, thus, are exempt from disclosure under FOIA Exemption 7. Specifically SBC argues that disclosure is prohibited by FOIA Exemption 7(C) because it would cause an unwarranted invasion of personal privacy. SBC also contends that FOIA Exemption 4 prohibits release of the requested documents because the documents "clearly pertain to SBC's business dealings with one of its customers" and because many of the documents contain information pertaining to SBC's systems, processes and operations, and include cost, pricing and other "commercially sensitive" information.[7]

By letter dated June 28, 2005, Comptel replied to SBC's Opposition.[8] Comptel challenges SBC's claims that FOIA Exemptions 7(C) and 4 prohibit disclosure of the requested

---

Investigations and Hearings Division, Enforcement Bureau, Federal Communications Commission, dated August 24, 2004 (" LOI").

[2] Letter to David Janas, Special Counsel, Investigations and Hearings Division, Enforcement Bureau from Christopher Heimann, General Attorney, SBC Telecommunications Inc., dated September 13, 2004 ("LOI Response").

[3] SBC Communications Inc., Order and Consent Decree, 19 FCC Rcd 24014 (Enf. Bur. 2004).

[4] Id at 24019, ¶13.

[5] See Electronic FOIA (E-FOIA) request form from Mary C. Albert ("Requester"), Comptel / ALTS, dated April 4, 2005 ("FOIA 2005-333"). In a telephone conversation with IHD staff on April 12, 2005, the Requester modified and clarified her FOIA request to seek only pleadings filed by SBC and correspondence between SBC and the Commission.

[6] See Letter from Jim Lamoureux, Senior Counsel, SBC Services, Inc., to Judy Lancaster, Investigations and Hearings Division, Enforcement Bureau, dated May 27, 2005 ("Opposition").

[7] Opposition at 6.

[8] Letter from Mary C. Albert, Vice President Regulatory Policy, CompTel/Ascent/ALTS to Judy Lancaster, Investigations and Hearings Division, Enforcement Bureau, Federal Communications Commission, dated June 28, 2005 ("Reply")

documents. Although Comptel does not object to redaction from the requested documents of the names, telephone numbers, and home and email addresses of SBC employees, it argues that Exemption 7(C) is inapplicable to SBC because it is "a large, publicly traded corporation . . . that . . . possesses no protectable personal privacy interest."[9] Comptel also asserts that SBC's "conflicting positions" regarding whether its submissions were provided to the Bureau voluntarily or under compulsion do not support SBC's reliance upon Exemption 4 to prohibit disclosure of the requested documents, that SBC's "conclusory and generalized" characterizations of the records as confidential commercial information are "insufficient to demonstrate the likelihood of substantial competitive injury" as required by Exemption 4, and that the cost and pricing information that SBC wishes to withhold from disclosure is already in the public domain because E-Rate service providers are required under section 54.501(d)(3) of the Commission's rules[10] to make those records available for public inspection.[11]

## III.    DISCUSSION

### A.    SBC's Requests To Keep Its Responses Confidential In Their Entirety Are Deficient

Section 0.459 of the Commission's rules establishes a procedure by which parties may request that information or materials that they have submitted to the Commission not be made routinely available for public inspection. *See* 47 C.F.R. § 0.459. This rule requires that a party seeking confidentiality provide a statement of the reasons for withholding the materials in question from public inspection and set forth specific categories of materials for which such treatment is appropriate. A request for confidentiality "shall include," *inter alia*, an "explanation of the degree to which the information is commercial or financial, or contains a trade secret or is privileged;"[12] an "[e]xplanation of how disclosure of the information could result in substantial competitive harm;"[13] and "[i]dentification of whether the information is available to the public and the extent of any previous disclosure of the information to third parties."[14]

We find that SBC's requests for confidential treatment of its submissions substantially fail to comply with the standards set forth in section 0.459(b) of the Commission's rules. The rules clearly state that casual requests for confidentiality that do not comply with the requirements set forth in sections 0.459(a) and (b) will not be considered.[15] Further, the LOI

---

[9] *Id* at 2.

[10] 47 C.F.R. § 54.501(d)(3).

[11] Reply at 3.

[12] *See* 47 C.F.R. § 0.459(b)(3).

[13] See 47 C.F.R. § 0.459(b)(5).

[14] See 47 C.F.R § 0.459(b)(7).

[15] *See* 47 C.F.R. § 0.459(c).

Ms. Mary C. Albert
August 5, 2005
Page 4

issued to SBC by the Bureau explicitly warns SBC that requests for confidential treatment must comply with the requirements specifically mandated by section 0.459(b), and that the Bureau will not consider confidentiality requests that do not so comply.

Nevertheless, SBC has failed to provide a statement of specific reasons for withholding its responses in their entirety. While generally categorizing the information contained in its submissions, SBC does not, as required by section 0.459(b)(3), explain the degree to which specific information is commercial or financial or contains a trade secret. Nor does it explain, as required by section 0.459(b)(5), how disclosure of such information could result in substantial competitive harm. SBC also fails to state whether any of the information for which it seeks protection is already available to the public.[16]

We find SBC's request for the confidential treatment of all its submissions to be overly broad. Portions of the documents submitted by SBC appear to contain commercial or financial information, the disclosure of which could result in substantial competitive harm to SBC. But most of those pages also contain information that is not confidential, such as FRN numbers, lists of equipment, and references to ordinary administrative matters. Some of that information is already within the public domain.[17] Release of such information appears unlikely to result in competitive harm to SBC and SBC offers no justification for withholding such information as commercial, financial or trade secret information. Consequently, that information will be disclosed.

Accordingly, we conclude that SBC has failed to demonstrate by a preponderance of the evidence a case for nondisclosure of all of its submissions. We therefore deny SBC's requests that we grant confidential treatment of the entirety of its submissions.

**B.    Portions of SBC's Submissions Are Subject To Protection From Disclosure As "Commercially Sensitive Information"**

We base confidentiality determinations under section 0.459 of the Commission's rules relating to commercial or financial materials on Exemption 4 of the FOIA which permits us to withhold "trade secrets and commercial or financial information obtained from a person and [that is] privileged or confidential."[18] Exemption 4 protects "any financial or commercial information provided to the Government on a *voluntary* basis if it is of a kind that the provider would not customarily release to the public."(emphasis added)[19] However, under Exemption 4 commercial or financial materials that are part of *required* submissions are held to be confidential only when

---

[16] See 47 C.F.R. § 0.459 (b)(7).

[17] Federal Registration Numbers ("FRN"s), including those of SBC, are available to the public on the Commission Registration System ("CORES") database which is located on the Commission's internet web page. *See also* 47 C.F.R. 54.501(d)(3).

[18] 5 U.S.C. § 552(b)(4).

[19] *See Critical Mass Energy Project v. NRC*, 975 F.2d 871, 880 (D.C. Cir. 1992) ("*Critical Mass*").

Mr. Jim Lamoureux
Ms. Mary C. Albert
August 5, 2005
Page 5

disclosure would either impair the government's ability to obtain necessary information in the future or would be likely to substantially harm the competitive position of the submitter.[20]

SBC's LOI responses were *required* submissions for the purposes of our FOIA analysis.[21] An LOI is an administrative order that compels the production of information. Failure to respond properly to an LOI may subject an entity to forfeiture action.[22] Because we directed SBC to submit its written responses to the Bureau's LOI, its responses were required.

We find that certain information in SBC's submissions constitutes commercial or financial information, the disclosure of which could result in substantial competitive harm to SBC. Such commercially sensitive information includes, but is not limited to, SBC's costs and pricing data, its billing and payment dates, and identifying information of SBC's staff, contractors, and the representatives of its contractors and customers. Accordingly, such information is exempt from disclosure under FOIA Exemption 4.[23]

Although section 54.501(d)(3) of the Commission's rules requires telecommunications service providers such as SBC to allow public inspections of the rates it charges and the discounts it allows to schools and libraries eligible for universal service support,[24] SBC can comply with the rule's requirements by maintaining a "public inspection file" containing the required rate information. The rule does not mandate disclosure here of all of the pricing data contained in SBC's submissions. In this instance, disclosure of SBC's invoice and discount amounts could disclose the total value of its contract, information that would not otherwise be publicly available. That information is not in the public domain and its release is not required by the rule. Because release of SBC pricing information in this case is likely to substantially harm SBC's competitive position, such information is exempt from disclosure under FOIA Exemption 4.

### C.    Names of SBC Employees And Customers Are Protected From Disclosure Due To Personal Privacy Concerns

The FOIA statute, 47 U.S.C. § 552(b)(7)(C), provides that records or information compiled for law enforcement purposes are exempt from disclosure to the extent that the

---

[20] *National Parks and Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974) ("*National Parks*"); *Critical Mass*, 795 F.2d at 878 (citing *National Parks*).

[21] *See Critical Mass* (establishing separate tests for confidential treatment of voluntary submissions and required submissions). *See also*

[22] *See SBC Communications, Inc.*, Order of Forfeiture, 17 FCC Rcd 7589 (2002) (forfeiture paid); *Globcom Inc.*, Notice of Apparent Liability for Forfeiture and Order, 18 FCC Rcd 19893, n. 36 (2003), *response pending.*

[23] *See, e.g., In Re The Lakin Law Firm, P.C.*, Memorandum Opinion and Order, 19 FCC Rcd 12727 (2004).

[24] 47 C.F.R. § 54.501(d)(3) provides that "[Telecommunications] Service providers shall keep and retain records of rates charged to and discounts allowed for eligible schools and libraries – on their own or as part of a consortium. Such records shall be available for public inspection."

Mr. Jim Lamoureux
Ms. Mary C. Albert
August 5, 2005
Page 6

production of such records could reasonably be expected to "constitute an unwarranted invasion of personal privacy" are exempt from disclosure.[25] Generally, businesses do not possess "personal privacy" interests as required for application of FOIA Exemption 7(C).[26] However, the individuals identified in SBC's submissions do have such privacy rights and, pursuant to this provision, portions of SBC's submissions will be redacted to withhold the names and identifying information of those individuals to prevent unwarranted invasions of their personal privacy.

### D. Documents Which Disclose an Agency's Deliberative Process Are Protected From Disclosure

Exemption 5 of the FOIA protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."[27] Pursuant to this exemption we will withhold from public disclosure drafts of Bureau pleadings and correspondence, and memoranda and emails, distributed among Commission staff, which discuss the issues and investigation related to this matter.

## IV. CONCLUSION

For the reasons stated above, we grant in part and deny in part SBC's request for confidentiality. If SBC believes that this decision is in error, it must file an application for review of this action with the Commission's Office of General Counsel within ten working days of the date of this letter. *See* 47 C.F.R. § 0.461(i). We will produce the documents requested as noted above if no such application for review is filed. We will assess copying charges, if any, at that time. ·If Comptel believes that this decision is in error, it may file an application for review of this action with the Commission's Office of General Counsel within 30 days of the date of this letter. *See* 47 C.F.R. § 0.461(j).

We are providing SBC's counsel with a copy of the documents as redacted pursuant to this decision.

Sincerely,

William H. Davenport
Chief, Investigations and Hearings Division
Enforcement Bureau

---

[25] 5 U.S.C. § 552(b)(7)(C). *See also* 5 U.S.C. § 552(b)(6); *In re William McConnell, Broadcasting and Cable*, Order, 18 FCC Rcd 26371 (2003).

[26] *See, e.g., Chadmore Communications, Inc.*, Memorandum Opinion and Order, 13 FCC Rcd 23943 (1998)

[27] 5 U.S.C. § 552(b)(5).

# ATTACHMENT E

**Jim Lamoureux**
Senior Counsel

SBC Services, Inc.
1401 I Street NW, Suite 400
Washington, D.C. 20005
Phone 202 326-8895
Fax 202 408-8745

*(SBC)*

August 19, 2005

**VIA FACSIMILE, HAND DELIVERY AND U.S. MAIL**

Samuel Feder
Acting General Counsel
Office of General Counsel
Federal Communications Commission
445 12th Street SW
Washington DC 20554

> **Re:**   **Application for Review of Freedom of Information Action;**
> **FOIA Control No. 2005-333**

Dear Mr. Feder:

Pursuant to 47 C.F.R. § 0.461(i), SBC Communications Inc. ("SBC") hereby files an application for review of the Enforcement Bureau's August 5, 2005, determination to deny in part confidential treatment of records responsive to a Freedom of Information Act ("FOIA") request submitted by CompTel/ALTS. SBC does not object to the specific redactions proposed by the Enforcement Bureau under FOIA Exemptions 4 and 7(C) or its determination to withhold documents under Exemption 5. However, SBC seeks review of the Bureau's rejection of SBC's assertion of the application of Exemption 7(C), *in toto*, to the responsive records.

Background

In its FOIA request, CompTel/ALTS sought release of "[a]ll pleadings and correspondence contained in File No. EB-04-IH-0342." Included within the scope of the CompTel/ALTS request are records that SBC submitted to the Commission in response to a Letter of Inquiry issued by the Enforcement Bureau, as well as the Letter of Inquiry itself. All such records responsive to the CompTel/ALTS request were obtained by the Commission as part of an Enforcement Bureau investigation. Accordingly, SBC asserted that all such responsive documents fell within the "law enforcement-privacy" exemption to the FOIA's disclosure requirements. *See* 5 U.S.C. § 552(b)(7)(C).[1] Pursuant to the FOIA and Commission Rule 0.459, SBC requested that all of the requested records should be maintained by the Commission as confidential and should not be made available for public inspection or disclosure.

---

[1] *See* Letter from Jim Lamoureux, Senior Counsel, SBC Services Inc. to Judy Lancaster, Investigations and Hearings Division, Enforcement Bureau, Federal Communications Commission (May 27, 2005)("*Lamoureux Letter*").

On August 5, 2005, the Enforcement Bureau denied SBC's request that the documents be withheld from disclosure under FOIA Exemption 7(C).[2] Although the Enforcement Bureau agreed to redact the names of individuals contained in the responsive records, the Enforcement Bureau otherwise denied SBC's claim that the records should be withheld pursuant to Exemption 7(C).[3] Its rationale for doing so was contained in a single sentence: "Generally businesses do not possess 'personal privacy' interests as required for application of FOIA Exemption 7(C)." In effect, with a single sweeping statement, the Enforcement Bureau held, as a categorical matter, that corporations have no rights under FOIA Exemption 7(C). Thus, according to the Enforcement Bureau, a corporation's basis for requesting non-disclosure of records compiled for law enforcement purposes is limited to an assertion that the records fall within some other specific FOIA exemption, such as Exemption 4 pertaining to confidential commercial information. That holding is inconsistent with and contrary to the purpose underlying Exemption 7(C), cases addressing the scope of Exemption 7(C), and the actual language of Exemption 7(C). Accordingly, SBC respectfully requests that the Enforcement Bureau's rejection of SBC's request for confidentiality be reversed, and that the documents requested by CompTel/ALTS be withheld from disclosure.

### Exemption 7(C) Compels Withholding of the Responsive Documents

Exemption 7(C) applies to all "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The purpose of Exemption 7(C) is to protect parties who had been the subject of law enforcement proceedings from embarrassment, reprisal or harassment, and other invasions of privacy associated with the stigma of law enforcement investigations. *See Voinche v. F.B.I,* 940 F. Supp. 323 (D.D.C. 1996); *Foster v. U.S. Dept. of Justice,* 933 F. Supp. 687 (E.D. Mi 1996). Because of the intense privacy interests in information compiled by law enforcement agencies, Exemption 7(C) "affords broad[] privacy rights to suspects, witnesses, and investigators." *Bast v. Dep't of Justice,* 665 F.2d 1251, 1254 (D.C. Cir. 1981). With respect to the records at issue here, there is no question, and the Enforcement Bureau does not challenge, that the records were "compiled for law enforcement purposes."[4] Thus, the only question is

---

[2] *See* Letter from William H. Davenport, Chief, Investigations and Hearings Division, Enforcement Bureau, Federal Communications Commission to Jim Lamoureux, SBC Services Inc. at 5-6 (August 5, 2005)("Davenport Letter").

[3] The Enforcement Bureau also agreed to redact specific information in the responsive records pursuant to Exemption 4, and it withheld certain records pursuant to Exemption 5. SBC does not seek review of those determinations.

[4] The Letter of Inquiry was issued as part of an Enforcement Bureau investigation, and the documents provided to the Enforcement Bureau by SBC were all in response to the Letter of Inquiry. The stated purpose of the Enforcement Bureau's Letter of Inquiry, as well as the overall purpose of the Enforcement Bureau's investigation was to determine whether SBC had violated Commission rules. It is thus plain that the records in question were compiled by the Enforcement Bureau for law enforcement purposes. The courts have made clear that all agency enforcement proceedings, including civil enforcement

whether disclosure of such documents would constitute an unwarranted invasion of SBC's personal privacy.

The question of whether disclosure of records compiled for law enforcement purposes is warranted turns on whether "the privacy interest at stake outweighs the public interest in disclosure." *Nation Magazine, Washington Bureau v. U.S. Customs Svc.*, 71 F.3d 885, 893 (D.C. Cir. 1995). In this instance, there is no public interest in disclosure that could possibly offset the invasion of privacy that would result from disclosure. The Supreme Court has made clear that, for purposes of Exemption 7(C), "whether an invasion of privacy is *warranted* cannot turn on the purposes for which the request for information is made." *United States Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 771 (1989). Rather, "whether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny rather than on the particular purpose for which the document is being requested." *Id. (Internal quotation marks and citations omitted.).*[5] The Supreme Court's *Reporters Committee* decision is dispositive in this instance.

In *Reporters Committee*, several journalists sought disclosure under the FOIA of the FBI "rap sheet" of a reputed mob boss. In holding that disclosure was prohibited by Exemption 7(C), the Court held that the core purpose of the FOIA,

> . . . is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct. In this case—and presumably in the typical case in which one private citizen is seeking information about another—the requester does not intend to discover anything about the conduct of the agency that has possession of the requested records. Indeed, response to this request would not shed light on the conduct of any Government agency or official.

*Reporters Committee*, 489 U.S. at 773. More specifically, with respect to documents compiled by agencies during the course of law enforcement investigations, the Court further held that,

---

proceedings generally, and FCC Enforcement Bureau investigations in particular, fall within the ambit of Exemption 7. *See, e.g., Aspin v. Dept. of Defense*, 348 F. Supp. 1081 (D.D.C.), *aff'd* 491 F.2d 24 (D.C. Cir. 1972); *Windels, Marx, Davies & Ives. v. Dept. of Commerce*, 576 F. Supp. 405 (D.D.C. 1983); *Kay v. FCC*, 867 F. Supp. 11 (D.D.C. 1994).

[5] *See also United States Dep't of Defense v. Federal Labor Relations Bd.*, 114 S.Ct. 1006, 1012 (1994)("the only relevant 'public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,'" which is 'contribut[ing] significantly to public understanding *of the operations or activities of the government.*'")(quoting *Reporters Committee*); *Wichlacz v. U.S. Dept. of Interior*, 938 F. Supp. 325 (E.D. Va. 1996)(only possible public interest to weigh against privacy interest is extent to which disclosure would shed light on agency's performance of its statutory duties or otherwise let citizens know what their government is up to).

. . . although there is undoubtedly some public interest in anyone's criminal history, especially if the history is in some way related to the subject's dealing with a public official or agency, the FOIA's central purpose is to ensure that the *Government's* activities be opened to the sharp eye of public scrutiny, not that information about *private citizens* that happens to be in the warehouse of the Government be so disclosed.

*Id.* at 774.[6] The Court thus concluded that the public interest in disclosure of the rap sheet sought by the journalists "is not the type of interest protected by the FOIA." *Id.* at 775. As a general proposition, moreover, the Court held,

. . . *as a categorical matter* that a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy, and [] when the request seeks no "official information" about a Government agency, but merely *records that the Government happens to be storing,* the invasion of privacy is "unwarranted."

*Id.* at 780 (emphasis added).[7] (Emphasis added.) notably, nowhere in its decision did the Court limit its holding to the disclosure of documents pertaining to *individuals.* The Court's holding in *Reporters Committee,* as well as the D.C. Circuit's subsequent application of that holding in *SafeCard Services* and *Nation Magazine* thus apply with equal force in this instance.

The only records responsive to the CompTel/ALTS request are internal documents of a private corporate citizen that were submitted to and compiled by the Commission pursuant to investigative demands issued by the Enforcement Bureau. None of the records in question contain "official information" about the Commission; nor do any of the records pertain to the conduct of the Commission or any Commission official. The only ostensible interest on the part of CompTel/ALTS in disclosure of the requested documents is to try to embarrass SBC with the information compiled

---

[6] *See also SafeCard Services, Inc. v. Securities and Exchange Commission,* 926 F.2d 1197, 1205 (D.C. Cir. 1991)("the type of information sought is simply not very probative of an agency's behavior or performance."); *Nation Magazine,* 71 F.3d at 895 ("In some, perhaps many, instances where a third party asks if an agency has information regarding a named individual in its law enforcement files, the cognizable public interest in that information will be negligible; the requester will be seeking records about a private citizen, not agency conduct."); *Alexander & Alexander Svcs., Inc. v. Securities and Exchange Commission,* Civ.A. No. 92-1112 (JHG), 1993 WL 439799 (D.D.C. Oct. 19, 1993)("when a private citizen seeks information regarding another private citizen or corporation, the requester is not seeking information regarding the conduct of the agency in possession of the information.").

[7] *See also SafeCard,* 926 F.2d at 1205-1206 ("Indeed, unless there is compelling evidence that the agency denying the FOIA request is engaged in illegal activity, and access to the names of private individuals appearing in the agency's law enforcement files is necessary in order to confirm or refute that evidence, there is no reason to believe that the incremental public interest in such information would ever be significant."); *see also id.* at 1205 ("The public interest in disclosure is not just less substantial, it is insubstantial.")

by the Enforcement Bureau. There is thus no public policy interest in disclosure of the requested documents.

Conversely, there are substantial privacy interests in such documents. As with information compiled by the FBI in rap sheets, the requested records are no more than documents that "happen to be in the warehouse" of the Commission because they were gathered during the course of a law enforcement investigation. Indeed, the privacy interest in the particular information at issue here is stronger than that in *Reporters Committee*. The discrete informational components of rap sheets are frequently publicly available through various court records; it was thus the compilation of such information in which the Court found a cognizable privacy interest. *See Reporters Committee*, 489 U.S. at 763-764.[8] Here, in contrast, the records are SBC's private possessions; none of the information in those records is generally publicly available. Indeed, but for the investigative demand of the Enforcement Bureau, the records would remain in SBC's possession. Moreover, the information would remain in SBC's possession as discrete documents and information scattered throughout SBC's offices and files. But for the Enforcement Bureau's investigative demand, there would be no compilation of those records as there is now in the Enforcement Bureau's files. Accordingly, given the strong privacy interest in the records at issue here, and the complete lack of any public interest in disclosure of those records, *Reporters Committee* is clear that Exemption 7(C) compels the Commission not to publicly disclose the records responsive to the CompTel/ALTS request.

The Enforcement Bureau's sole response to this argument is that "Generally, businesses do not posses 'personal privacy' interests as required for application of FOIA Exemption 7(C)."[9] That statement is inaccurate as a general proposition as well as in the application of Exemption 7(C) to compilations of records contained in law enforcement files.

First, there is no support for any general proposition that corporations do not have privacy rights in their documents. In an analogous setting in which a corporation sought to keep sealed documents that had been produced in discovery in civil litigation, the D.C. Circuit held that "a corporation possesses legitimate constitutional expectations of confidentiality in internal commercial information." *Tavoulares v. Washington Post Company*, 724 F.2d 1010, 1022 (D.C. Cir. 1983), *rev'd en banc on other grounds*, 737 F.2d 1170 (1984). The only qualification of a corporation's right to nondisclosure is to allow "adequate policing of corporate conduct." *Id.*[10]

---

[8] *Reporters Committee* thus disposes of any notion that SBC has no privacy interest in the records in question merely because the investigation is a matter of public record as a result of the Order issued by the Commission approving the Consent Decree between SBC and the Enforcement Bureau. *See, e.g.*, *Reporters Committee*, 489 U.S. at 1480 ("In sum, the fact that an event is not wholly private does not mean that an individual has no interest in limiting disclosure or dissemination of the information.")(*internal quotation marks and citations omitted*).

[9] *Davenport Letter* at 6.

[10] Which, of course, goes to the authority and power of the Commission to obtain documents from SBC in the first instance, not to subsequent disclosure of those documents to the public.

Similarly, and even closer to the situation at hand, in a case in which a corporation sought to keep sealed documents that had been gathered by law enforcement officials during searches of a corporation, the D.C. Circuit held that "The public attributes of corporations may reduce pro tanto the reasonableness of their expectation of privacy, but the nature and purpose of the corporate entity and the nature of the interest sought to be protected will determine the question whether under given facts the corporation per se has a protectible interest." *U.S. v. Hubbard*, 650 F.2d 293, 306 (D.C. Cir. 1980). There is thus no question that corporations generally have privacy interests in their own documents.

There also is no merit to the argument that the protections of Exemption 7(C) do not apply to corporations. On its face, Exemption 7(C) is not limited to protecting the personal privacy of individuals. Nor has SBC been able to discover any legislative history that would suggest that Exemption 7(C)'s protections are limited to individuals. Indeed, there is no reason that corporations should not be protected from the embarrassment, reprisal or harassment, and other invasions of privacy associated with the stigma of law enforcement investigations that Exemption 7(C) was designed to prevent.

The Enforcement Bureau's holding effectively conflates the protections afforded by Exemptions 6 and 7(C). Both Exemption 6 and Exemption 7(C) involve personal privacy concerns, but the specific language of Exemption 6 is fundamentally different than the language of Exemption 7(C). Specifically, Exemption 6 only protects from disclosure "personnel and medical files and similar files." 47 U.S.C. § 552(B)(6). Thus, by its own terms, Exemption 6 protects information that could only pertain to an individual and which might reveal personal private information pertaining to that individual. A personnel file is something that is compiled only with respect to an individual as an employee, and a medical file is something that is compiled only with respect to an individual's medical health. Corporations, in their own capacity, do not have personnel or medical files. It thus makes plain sense to conclude that Exemption 6 implicates only individual privacy concerns and does not apply to corporations. In contrast, there are no restrictive adjectives with respect to the files subject to Exemption 7(C). Rather, Exemption 7(C)'s protections against invasions of privacy applies to all records or information compiled for law enforcement purposes.

The Commission's holding also flies in the face of the language in Exemption 7(B), which immediately precedes Exemption 7(C). Exemption 7(B) applies to documents that would deprive "a person"—not an individual—of a right to a fair trial or an impartial adjudication. 47 U.S.C. § 552(b)(7)(B). Corporations are generally presumed "persons" for purposes of statutory construction. *See, e.g., Cook County, Illinois v. U.S.*, 123 S.Ct. 1239, 1244 (2003)("There is no doubt that the term [person] [extends] to corporations, the Court in 1826 having expressly recognized the presumption that the statutory term 'person' extends as well to persons politic and incorporate, as to natural persons whatsoever.")(*internal quotation marks and citations omitted*). It is thus reasonable to attach the same presumption to Exemption 7(C)'s use of the term "personal," which is merely the adjectival form of the noun "person" used in Exemption 7(B). The language and structure of Exemptions 6, 7(B) and 7(C) thus compel rejection of the Commission's holding that Exemption 7(C) does not apply to corporations.

Nor is there case support for the Enforcement Bureau's holding. The Enforcement Bureau's sweeping pronouncement that corporations have no rights to non-disclosure under Exemption 7(C) was supported by a citation to a single prior Commission decision: *Chadmore Communications, Inc. Memorandum Opinion and Order*, 13 FCC Rcd. 23943 (1998). That decision rejected a non-disclosure claim on the ground that the information in question pertained to the interests of individuals "in their status as holders of commercial radio licenses, a capacity in which they have neither a personal privacy interest nor an expectation of privacy." *Id.* ¶ 7. As support for its holding in *Chadmore*, the Commission relied upon three cases, all of which involved application of Exemption 6, and none of which involved application of Exemption 7(C). *Sims v. CIA*, 642 F.2d 562 (D.C. Cir. 1980); *National Parks and Conservation Ass'n v. Kleppe*, 547 F.2d 673 (D.C. Cir. 1976); *Ivanhoe Citrus Ass'n v. Handley*, 612 F. Supp. 1560 (D.D.C. 1985).[11] None of the cases relied upon by the Commission thus actually stand for the proposition that Exemption 7(C) does not apply to corporations.[12]

Moreover, all three cases pre-date the Supreme Court's decision in *Reporters Committee*. That decision fundamentally altered the calculus of balancing public and private interests in determining whether to disclose documents in response to FOIA requests. Thus, all of the cases relied on by the Commission in *Chadmore*, and, by extension in this instance, to restrict the scope of Exemption 7(C) are supplanted by the Court's pronouncement in *Reporters Committee* that the core purpose of the FOIA is not served by disclosure of information that merely resides in agency files but reveals nothing about the agency's own conduct, and its *categorical* pronouncement that a third party request that seeks no "official information" about an agency,

---

[11] The *Chadmore* decision apparently understood the tenuousness of its conclusion, because it went on to find, "Even assuming these commercial licensees have a privacy interest, it is at most de minimis and is far outweighed by the public interest in publicly disclosing information about commercial licensees who have been granted rule waivers in Commission proceedings." *Chadmore* ¶ 7. In this instance, *Reporters Committee* firmly and categorically establishes that there is *no* public interest in granting disclosure to a third party of law enforcement records that happen to be stored in agency files. Accordingly, any slight privacy interest is sufficient to compel nondisclosure.

[12] One D.C. Circuit decision, *Washington Post Co. v. United States Dep't of Justice*, 863 F.2d 96, 100 (D.C. Cir. 1988)("Information relating to business judgments does not qualify for exemption."), and one decision from the United States District Court for D.C., *Cohen v. EPA*, 575 F. Supp. 425, 429 (D.D.C. 1983)("The privacy exemption does not apply to information regarding professional or business activities.") contain language suggesting that Exemption 7(C) protects only individual privacy interests. However, as with the Commission's decision in *Chadmore*, both *Washington Post* and *Cohen* support their statements as to the applicability of Exemption 7(C) with citations to prior cases that involved only the application of Exemption 6. Thus, the *Cohen* decision relies on *Rural Housing alliance v. Untied States Dep't of Agriculture*, 498 F.2d 73 (D.C. Cir. 1974) and *Kurzon v. Dep't Of Health and Human Svcs.*, 649 F.2d 65 (1st Cir. 1981), both of which involved only the application of Exemption 6, and the *Washington Post* decision relies on *Sims v. CIA*, 642 F.2d 562 (D.C. Cir. 1980), which also involved only the application of Exemption 6. Thus, as with the Commission's *Chadmore* decision, neither *Washington Post* or *Cohen* are supported by prior decisions concerning the scope of Exemption 7(C). Moreover, as with the cases relied on by the Commission in *Chadmore*, both *Washington Post* and *Cohen* pre-date the Supreme Court's *Reporters Committee* decision.

but merely seeks files accumulated and stored by the agency is an invasion of privacy. The holding in *Reporters Committee* is not limited to privacy interests of individuals. Rather, the comparison of the core purpose of the FOIA—shedding light on agency conduct—and the potential invasion of privacy occasioned by disclosure of law enforcement records an agency happens to be storing, applies with equal force to individuals and corporations. Indeed, the United States District Court for D.C. has indicated its understanding that the Court's holding in *Reporters Committee* applies "when a private citizen seeks information regarding another private citizen *or corporation*." *Alexander & Alexander* at \*10 (emphasis added). In that case, the district court rejected the SEC's proposed disclosure of information dealing only with individuals in their professional capacities. *Id.* It held that under *Reporters Committee*

> personal information is exempt from disclosure to a FOIA requester in the absence of compelling evidence that the agency was involved in illegal activity. The fact that the information may or may not injure these individuals' reputations is irrelevant to the inquiry whether the information sheds any light on what the SEC "was up to." *Id.*

That application of the balancing required under *Reporters Committee* is directly on point here. None of the documents requested by CompTel/ALTS reveal anything about the official conduct of the Commission. They are all SBC's personal business documents. Accordingly, given the complete lack of any public interest that would be served by disclosure, the documents should be withheld.[13]

The Enforcement Bureau's sweeping pronouncement that Exemption 7(C) does not apply to corporations is thus belied by the purpose of Exemption 7(C), cases addressing the scope of Exemption 7(C), and the actual language of Exemption 7(C). Accordingly, SBC respectfully requests that the Enforcement Bureau's rejection of SBC's request for confidentiality be reversed, and that the documents requested by CompTel/ALTS be withheld from disclosure.

If you have any questions, please do not hesitate to contact me at (202) 326-8895.

Sincerely,

Jim Lamoureux
Senior Counsel
SBC Services, Inc.

cc:    Judy Lancaster
       Mary C. Albert

---

[13] See *United States Dep't of Defense v. Federal Labor Relations Authority*, 114 S.Ct. 1006, (1994)("Because a very slight privacy interest would suffice to outweigh the relevant public interest, we need not be exact in our quantification of the privacy interest. It is enough for present purposes to observe that the employees' interest in nondisclosure is not insubstantial.")

# ATTACHMENT F

COMPETITIVE         ADVANCING           1900 M STREET, NW, SUITE 800
TELECOMMUNICATIONS  GLOBAL              WASHINGTON, DC 20036-3508
ASSOCIATION         COMMUNICATIONS
                    THROUGH             PH: 202.296.6650
                    COMPETITION         FX: 202.296.7585
                                        www.comptel.org



September 1, 2005

**By Facsimile, U.S. Mail and E-Mail**

Samuel Feder, Esq.
Acting General Counsel
Federal Communications Commission
445 12th Street S.W.
Washington, D.C. 20554

Re:    SBC's Application for Review of Freedom of Information
       Act Action, FOIA Control No. 2005-333

Dear Mr. Feder:

Pursuant to Section 0.461(i)(1) of the Commission's Rules, 47 C.F.R. §
0.461(i)(1) CompTel hereby responds to SBC Communications, Inc.'s ("SBC")
application for review of the Enforcement Bureau's August 5, 2005 letter rejecting its
claim that Freedom of Information Act ("FOIA") Exemption 7(C) protects from
disclosure all pleadings and correspondence in File No. EB-04-IH-0342. The
Commission should summarily deny SBC's Application for Review because the
arguments contained therein are utterly without merit.

**Background**

On April 4, 2005, CompTel submitted an FOIA request to the Commission for
documents contained in File No. EB-04-IH-0342. These documents relate to the
Enforcement Bureau's investigation of SBC for violations of the Commission's rules in
connection with the receipt of universal service support for the New London Connecticut
Public Schools. The Commission terminated the investigation upon issuing an Order
adopting a Consent Decree. *In the Matter of SBC Communications, Inc.*, File No. EB-04-
IH-0342, Order, DA 04-3893 (released December 16, 2004). The Enforcement Bureau
informed SBC of CompTel's FOIA request and by letter dated May 27, 2005, SBC
objected to disclosure of the documents requested on the grounds that they were exempt

Mr. Samuel Feder
September 1, 2005
Page 2

from disclosure pursuant to FOIA Exemptions 7(C) and 4.[1] 5 U.S.C. §§ 552(b)(7)(C), 552(b)(4). CompTel responded to SBC's objections by letter dated June 28, 2005. By letter dated August 5, 2005, the Bureau sustained in part and overruled in part SBC's objections to release of the documents requested. On August 19, 2005, SBC submitted its Application for Review of the Bureau's decision, but limited its request for review to the Bureau's determination that Exemption 7(C) does not protect the documents from disclosure *in toto*.

### SBC Has Waived Its Right To Request
### Confidential Treatment Under Commission Rule 0.459

SBC contends that it sought confidential treatment for the requested documents pursuant to Section 0.459 of the Commission's Rules.[2] Section 0.459 provides that any person submitting information or materials to the Commission "may submit therewith a request that such information not be made routinely available for public inspection." SBC apparently did not request confidential treatment at the time the materials were submitted to the Enforcement Bureau despite the fact the Bureau had alerted SBC to its right to request such treatment.[3] Indeed, SBC did not request confidential treatment until it learned of CompTel's FOIA request, which came 5 months after the Bureau terminated the investigation into possible violations of the Commission's universal service funding rules and 8 months after the documents were submitted to the Commission. SBC's dilatory behavior in requesting confidential treatment for the documents requested cannot be reconciled with its claims in this matter that the documents requested are extremely "private."

SBC asserted that all records responsive to the CompTel request were entitled to confidential treatment, but did not provide the detailed explanation required by Section 0.459(a). The Bureau correctly found that SBC failed to meet its burden of demonstrating that confidential treatment was warranted for the requested documents

---

[1]    See Letter from Jim Lamoureux, SBC, to Judy Lancaster dated May 27, 2005. SBC's letter was provided to CompTel/ALTS on June 23, 2005.

[2]    See Application for Review at 1.

[3]    Application for Review at 1 at fn. 1. Although SBC submitted the documents to the Commission on or about September 13, 2004, it appears that SBC did not ask for confidential treatment at that time. The Bureau notes that the Letter of Inquiry sent to SBC on August 24, 2004 warned SBC that requests for confidential treatment must comply with the requirements set forth in Section 0.459(b) and that the Bureau would not consider confidentiality requests that did not so comply. See August 5, 2005 Letter from William H. Davenport to Jim Lamoureux and Mary C. Albert at 4. SBC made no attempt to secure confidential treatment for the materials until the Bureau advised it of CompTel's April 4, 2005 FOIA request.

Mr. Samuel Feder
September 1, 2005
Page 3

pursuant to Section 0.459(b).[4]  In its Application for Review, SBC did not challenge the
Bureau's finding.  Accordingly, the Commission should conclude that SBC has waived
any rights to confidential treatment under Section 0.459 both by failing to make the
request that the documents be withheld from public inspection in a timely manner and by
failing to raise any objection to the Bureau's determination in its August 19, 2005
Application for Review.

<div align="center">

**Exemption 7(C) Does Not Protect
The Records From Disclosure**

</div>

SBC maintains that all documents contained in the case file of the Commission's
investigation into its violation of the e-rate rules are exempt from disclosure pursuant to
FOIA exemption 7(C) simply because they were accumulated in the course of an
Enforcement Bureau investigation of SBC's business activities.[5]  There is no support for
SBC's position in either the language of the statute or the case law that SBC itself cites.

Exemption 7(C) protects from disclosure "records or information compiled for
law enforcement purposes, *but only to the extent* that the production of such law
enforcement records or information . . . could reasonably be expected to constitute an
unwarranted invasion of *personal privacy*." 5 U.S.C. §552(b)(7)(C) (emphasis added).
If, as SBC asserts, the only criterion for withholding material under Exemption 7(C) is
that the information was compiled for law enforcement purposes, there would be no need
for the language narrowly limiting the exemption to situations where disclosure could
constitute an unwarranted invasion of *personal* privacy. *See FBI v. Abrahmson*, 456 U.S.
615, 627-628 (1982) (all law enforcement files are not entitled to a blanket exemption
from disclosure); *Wichlaz v. U.S. Department of Interior*, 938 F. Supp. 325 (E.D.Va.
1996) (the conclusion that documents were compiled for law enforcement purposes does
not preclude disclosure); *Kimberlin v. Department of Justice*, 139 F. 3d 944, 950 (D.C.
Cir. 1998) at 950 (in order to withhold an entire file pursuant to Exemption 7(C), the
government must show that disclosure of any part of the file could reasonably be
expected to constitute an unwarranted invasion of personal privacy); *The Nation
Magazine v. U.S. Customs Service*, 71 F.3d 885, 896 (D.C. Cir. 1995) (agencies not
permitted to exempt from disclosure *all* of the material in an investigatory record solely

---

[4]    August 5, 2005 Letter from William H. Davenport to Jim Lamoureux and Mary C. Albert at 3-4.

[5]    SBC's Application for Review at 1 (all documents responsive to CompTel's request were obtained
by the Commission as part of an Enforcement Bureau investigation and accordingly fall within the "law
enforcement –privacy" exemption to the disclosure requirements).  CompTel notes for the record that it
does not concede the validity of SBC's characterization of the records requested as being compiled for law
enforcement purposes.

Mr. Samuel Feder
September 1, 2005
Page 4

on the grounds that the record includes some information that identifies a private citizen or provides that person's name and address. SBC made no showing that disclosure of any of the requested documents could reasonably be expected to constitute an unwarranted invasion of *personal* privacy.[6]

The FOIA embodies a policy authorizing liberal disclosure of government documents and records and such records must be produced upon request unless they are specifically exempted from disclosure by statute. Given the liberal disclosure policy of FOIA, the exemptions are to be narrowly construed in favor of disclosure. *Wichlaz v. U.S. Department of Interior*, 938 F. Supp. 325, 331 (E.D.Va. 1996). The Bureau correctly determined that "businesses do not possess 'personal privacy' interests as required for application of FOIA Exemption 7(C)."[7] The Bureau's determination is well grounded in both Commission and judicial decisions interpreting the privacy exemption. *See e.g., Chadmore Communications, Inc.*, FOIA Control No. 97-308, Memorandum Opinion and Order, 13 FCC Rcd 23943 (1998) (individuals have neither a personal privacy interest nor an expectation of privacy in their capacity as holders of commercial radio licenses); *The Washington Post Company v. United States Department of Agriculture*, 943 F.Supp. 31, 35 n. 4 (D.D.C. 1996)(a business entity has no "personal privacy" interest); *Ivanhoe Citrus Association v. Handley*, 612 F. Supp. 1560, 1567 (D.D.C. 1985) (neither corporations nor business associations possess protectible privacy interests); *National Parks and Conservation Association v. Kleppe*, 547 F.2d 673 (D.C. Cir. 1976). *See also, The Washington Post Company v. United States Department of Justice*, 863 F. 2d 96, 100 (D.C. Cir. 1988) (investigation and assessment of business decisions of corporate employees during the development and marketing of a commercial product do not qualify for exemption from disclosure under Exemption 7(C)); *Cohen v. EPA*, 575 F. Supp. 425, 429 (D.D.C. 1983) (the Exemption 7(C) privacy exemption does not apply to information regarding business and professional activities).

Despite this precedent, SBC alleges quite incredibly that there is no case support for the Bureau's holding.[8] Moreover, it attempts to discredit the Bureau's reliance on *Chadmore* on the grounds that the judicial decisions[9] cited therein involved Exemption 6,

---

[6] The Bureau has agreed to delete the names of individuals identified in the SBC documents to protect their privacy interests. August 5, 2005 Letter from William H. Davenport to Jim Lamoureux and Mary C. Albert at 6.

[7] August 5, 2005 Letter from William H. Davenport to Jim Lamoureux and Mary C. Albert at 6.

[8] Application for Review at 2, 7, 8.

[9] *Chadmore* cites *Sims v. CIA*, 642. F2d 562 (D.C. Cir. 1980); *National Parks and Conservation Ass'n v. Kleppe*, 547 F.2d 673 (D.C. Cir. 1976); and *Ivanhoe Citrus Ass'n v. Hadley*, 612 F. Supp. 1560 (D.D.C. 1985).

Mr. Samuel Feder
September 1, 2005
Page 5

rather than Exemption 7.[10] While SBC concedes that Exemption 6 applies only to the privacy interests of individuals, it argues that Exemption 7(C) is not so limited.[11] SBC's argument is without foundation. It is well settled that although "Exemption 7(C) is not congruent with Exemption 6, the difference lies in the standard of review and not in the relevant privacy interests covered by the exemption." *Cohen v. EPA*, 575 F. Supp. 425, 429 at n. 6.[12] Significantly, SBC has not been able to unearth one case finding that large publicly traded corporations, such as SBC, possess protectible privacy interests within the meaning of Exemption 7(C). Instead, it relies on *Tavoularas v. Washington Post Company*, 724 F.2d 1010 (D.C. Cir. 1983) for the proposition that a corporation has a legitimate expectation of privacy in internal corporate information.[13] SBC's reliance on *Tavoularas* underscores the weakness of its argument. In addition to the fact that *Tavoularas* addressed a request for the reinstatement of a protective order for discovery materials and not a FOIA request, the opinion and judgment of the Court have been vacated and thus have no precedential value. *See Tavoularas v. Washington Post Company*, 737 F. 2d 1170 at 1172 (D.C. Cir. 1984).

SBC also argues that because invasion of SBC's privacy is not warranted to promote the basic purposes of the FOIA, the Supreme Court's decision in *United States Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749 (1989), requires the Commission to withhold from disclosure all of the documents requested by CompTel.[14] Again, SBC's position is wide of the mark. As a large publicly traded corporate entity, SBC simply does not have a protectible privacy interest within the meaning of Exemption 7(C), much as it wishes it otherwise. For that reason, the Commission is not required to balance SBC's purported privacy interest against the public interest in disclosure.

---

[10]    SBC's Application for Review at 7.

[11]    *Id.* at 6.

[12]    Exemption 6 protects from disclosure "personnel and medical files and similar files, the disclosure of which *would* constitute a clearly unwarranted invasion of personal privacy" whereas Exemption 7(C) protects from disclosure law enforcement records but only to the extent that such disclosure "*could* constitute an unwarranted invasion of personal privacy." 5 U.S.C. §§ 552(b)(6), 552(b)(7)(C). *U.S. Department of Defense v. Federal Labor Relations Board*, 510 U.S. 487, 496 (1994) (Exemption 7(C) is more protective of privacy than Exemption 6).

[13]    Application for Review at 5.

[14]    Application for Review at 3-5.

Mr. Samuel Feder
September 1, 2005
Page 6

  Although the privacy interest at stake in *Reporters Committee* was that of an individual,[15] SBC contends that the Court did not limit its holding to documents pertaining to individuals.[16]  Not only is there no language in the Supreme Court's decision to support SBC's assertion that corporations have the type of privacy interests protected by Exemption 7(C), SBC has cited no case decided in the 16 years since *Reporters Committee* was issued that has so found.  On the contrary, the cases SBC does cite all deal with the privacy rights of individuals.  *See The Nation Magazine v. U.S. Customs Service*, 71 F. 3d 885 (D.C. Cir. 1995) (information in investigatory files that would reveal the identities of individuals who are subjects, witnesses or informants in law enforcement investigations are exempt from disclosure under Exemption 7(C)); *Safecard Services, Inc. v. Securities and Exchange Commission*, 926 F.2d 1197 (D.C. Cir. 1991) (agency may withhold the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C)); *United States Department of Defense v. Federal Labor Relations Board*, 510 U.S. 487 (1994) (home addresses of bargaining unit employees may be withheld from disclosure under Exemption 6); *Wichlaz v. U.S. Department of Interior*, 938 F. Supp. 325 (D.D.C. 1996) (law enforcement officers, interviewees, suspects, witnesses and other individuals named in investigatory files may be withheld pursuant to Exemption 7(C)); *Alexander & Alexander Services, Inc. v. Securities and Exchange Commission*, 1993 U.S. Dist. Lexis 14945 (D.D.C. 1993) (Exemption 7(C) protects from disclosure personal information about corporate officers, directors and employees, such as home phone numbers, salaries, pension benefits and personal expenses and assets).[17]

  SBC has failed to demonstrate any error in the Bureau's determination that Exemption 7(C) of the FOIA does not protect from disclosure the documents requested

---

[15]  The *Reporters Committee* Court found that Exemption 7(C) was properly applied to withhold an individual's rap sheet from disclosure.

[16]  Application for Review at 4, 8.

[17]  SBC also relies on *U.S. v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980) (Application for Review at 6) which has no applicability to the facts of this case.  *Hubbard* involved a church's motion for the return of documents that had been seized in the course of a criminal investigation and the church's claim that it had a privacy interest in the documents under state law.  Contrary to SBC's contention that the case stands for the proposition that corporations generally have privacy interests in their own documents, the Court found that "[w]hether and to what extent the privacy interests protected by state law may be asserted by corporations is still unsettled." *Id.* at 306.

Mr. Samuel Feder
September 1, 2005
Page 7

by CompTel. For the foregoing reasons, the Commission should deny SBC's Application for Review and direct the Enforcement Bureau to make the documents available without further delay.

Respectfully submitted,

Mary C. Albert
Vice President, Regulatory Policy

cc:  William Davenport
     Jim Lamoureux, SBC

# ATTACHMENT G

**CompTel ASCENT**  **/\TS**

1900 M Street, NW Suite 800 Washington, DC 20036-3508
PH: (202) 296-6650   FX: (202) 296-7585
www.comptelascent.org

# FAX COMMUNICATION

Date: 9/6/05

Pages (including cover): 7

To: SAM Feder                                    Title:

Company: FCC

Fax#: 418 2822

From: MARY C. ALBERT

Message: Review of Freedom of Information Action)
Case 2005-333

---

| Fall 2005 Convention & Expo | Spring 2006 Convention & Expo | Fall 2006 Convention & Expo |
|---|---|---|
| October 9-12, 2005 | March 19-22, 2006 | October 2006 |
| Orlando World Center Marriott | Manchester Grand Hyatt San Diego | Orlando World Center Marriott |
| Orlando, FL | San Diego, CA | Orlando, FL |



COMPETITIVE          ADVANCING          1900 M STREET, NW, SUITE 800
TELECOMMUNICATIONS   GLOBAL             WASHINGTON, DC 20036-3508.
ASSOCIATION          COMMUNICATIONS
                     THROUGH            PH: 202.296.6650
                     COMPETITION        FX: 202.296.7585
                                        www.comptel.org

September 6, 2005

**By Facsimile, U.S. Mail and E-Mail**

Samuel Feder, Esq.
Acting General Counsel
Federal Communications Commission
445 12th Street S.W.
Washington, D.C. 20554

Re:    CompTel's Application for Review of Freedom of
       Information Act Action, FOIA Control No. 2005-333

Dear Mr. Feder:

Pursuant to Section 0.461(j) of the Commission's rules, 47 C.F.R. §0.461(j), CompTel hereby submits its Application for Review of the Enforcement Bureau's August 5, 2005[1] letter denying in part CompTel's Freedom of Information Act Request ("FOIA") on the grounds that FOIA Exemptions 4 and 5 protect certain documents from disclosure.

### Background

On April 4, 2005, CompTel filed with the Commission an FOIA request for documents contained in File No. EB-04-IH-0342. These documents relate to the Enforcement Bureau's investigation of SBC for violations of the Commission's rules in connection with the receipt of universal service support for the New London, Connecticut Public Schools. The Commission terminated the investigation in December 2004 upon issuing an Order adopting a Consent Decree. *SBC Communications, Inc.* Order and Consent Decree, 19 FCC Rcd 24014 (released December 16, 2004).

Apparently SBC did not seek confidential treatment for its documents at the time it provided them to the Commission in connection with the investigation. Upon being

---

[1]    August 5, 2005 Letter from William Davenport to Jim Lamoureux and Mary C. Albert.

Samuel Feder, Esq.
September 6, 2005
Page 2

notified of CompTel's FOIA request, however, SBC objected to the disclosure of the
documents requested, claiming that they were exempt from disclosure pursuant to FOIA
Exemptions 7(C) and 4, 5 U.S.C. §§552(b)(7)(C) and 552(b)(4).[2]  CompTel responded to
SBC's objections and the Bureau issued its decision on August 5, 2005.[3]  The Bureau
rejected SBC's Exemption 7(C) claims, but stated that it would withhold certain
documents pursuant to Exemption 4 and certain other documents pursuant to Exemption
5 of the FOIA.  CompTel is at an extreme disadvantage in making a case for review of
the Enforcement Bureau's decision because the Bureau has not provided CompTel with a
Vaughn index[4] identifying the documents it proposes to withhold and the particular
Exemption(s) that applies to each document.  Nonetheless, out of an abundance of
caution and in order to protect its rights on appeal, CompTel requests that the
Commission review the Bureau's determinations to withhold documents pursuant to
Exemptions 5 and 4 for the following reasons.

### The Bureau Has Not Identified With Particularity The Documents Withheld Under Exemption 5 Or Demonstrated That The Exemption Applies

Exemption 5 of the FOIA, 47 U.S.C. §552(b)(5), permits the Commission to
withhold inter-agency or intra-agency memorandums that would not be available to a
private party in litigation with the agency through discovery.  In invoking this exemption,
the Bureau has stated that it "will withhold from public disclosure drafts of pleadings and
correspondence, and memoranda and emails, distributed among Commission staff which
discuss the issues and investigation related to this matter."[5]  The burden is on the Bureau
to prove that Exemption 5 protects all of these materials.  *Vaughn v. Rosen*, 484 F.2d 820
(D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).  The conclusory and generalized
allegation that Exemption 5 applies to all of the withheld material is insufficient to meet
the Bureau's burden.  In order to carry its burden, the Bureau must describe both the
contents of each of the withheld documents and enough about their context to establish
that Exemption 5 applies.  *SafeCard Services, Inc. v. Securities and Exchange
Commission*, 926 F.2d 1197, 1204 (D.C. Cir. 1991); *Vaughn v. Rosen*, 484 F.2d 820
(D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974) (withheld documents must be
described and indexed).  Because the materials the Bureau intends to withhold are not
otherwise identified or indexed, it is impossible for CompTel to challenge with any
specificity the Bureau's decision to withhold any or all of the documents.  Based on the
information that is available to CompTel, however, there are at least two aspects of the
Bureau's Exemption 5 determination that warrant review.

---

[2]     May 27, 2005 Letter from Jim Lamoureux to Judy Lancaster.

[3]     August 5, 2005 Letter from William Davenport to Jim Lamoureux and Mary C. Albert.

[4]     *See e.g., Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974)
(withheld documents must be described and indexed).

[5]     August 5, 2005 Letter from William Davenport to Jim Lamoureux and Mary C. Albert at 6.

Samuel Feder, Esq.
September 6, 2005
Page 3

First, intra-agency memoranda that explain decisions not to file a complaint are
final opinions made in the adjudication of a case that fall outside the scope of Exemption
5. *National Labor Relations Board v. Sear Roebuck & Co.*, 421 U.S. 132 (1975);
*SafeCard Services, Inc. v. Securities and Exchange Commission*, 926 F.2d 1197, 1204
(D.C. Cir. 1991) (agency's decision not to file injunctive action against a particular entity
is final agency action in the adjudication of a case). The Bureau's investigation into
SBC's violations of the Commission's universal service rules was terminated upon the
adoption of a Consent Decree. *SBC Communications, Inc.* Order and Consent Decree, 19
FCC Rcd 24014. A complaint was never filed.   To the extent that any of the documents
withheld pursuant to Exemption 5 reflect an explanation of the Bureau's or the
Commission's decision not to pursue a complaint against SBC, they must be produced.

Secondly, Exemption 5 does not protect any purely factual material appearing in
the intra-agency documents in a form that is severable without compromising the
deliberative or policy making material contained therein. *Environmental Protection
Agency v. Mink*, 410 U.S. 73 (1973) (agency must demonstrate by surrounding
circumstances that particular documents are purely advisory or deliberative and contain
no separate factual information); *Sterling Drug v. Federal Trade Commission*, 450 F.2d
698 (D.C. Cir. 1971) (while communications of thoughts and opinions are to be
protected, statements of fact are subject to disclosure). To the extent that any of the
documents withheld contain statements of fact, those documents, or the portions thereof
that contain the statements of fact, must be produced.

### Exemption 4 Does Not Protect From Disclosure All of
### The Financial Information The Bureau Intends To Withhold

The Bureau warned SBC in the Letter of Inquiry ("LOI") pursuant to which SBC
submitted the documents requested by CompTel that requests for confidential treatment
must comply with the requirements specifically mandated by Section 0.459(b), and that
the Bureau would not consider confidentiality requests that did not so comply.[6] SBC
apparently did not heed the warning or request confidential treatment at the time it
submitted the documents. Indeed, it did not request confidential treatment until 8 months
after the documents were originally produced to the Commission, 5 months after the
investigation was terminated and then only in response to CompTel's FOIA request.[7]

The Bureau correctly found that SBC's belated request for confidential treatment
was woefully inadequate:

---

[6]   August 5, 2005 Letter from William Davenport to Jim Lamoureux and Mary C. Albert at 3-4.

[7]   May 27, 2005 Letter from Jim Lamoureux to Judy Lancaster.

Samuel Feder, Esq.
September 6, 2005
Page 4

We find that SBC's requests for confidential treatment of its submissions
substantially fail to comply with the standards set forth in section 0.459(b) of the
Commission's rules.[8]

SBC has failed to provide a statement of specific reasons for withholding its
responses in their entirety. While generally categorizing the information
contained in its submissions, SBC does not, as required by section 0.459(b)(3)
explain the degree to which specific information is commercial or financial or
contains a trade secret. Nor does it explain, as required by section 0.459(b)(5),
how disclosure of such information could result in substantial competitive harm.
SBC also fails to state whether any of the information for which it seeks
protection is already available to the public.[9]

Despite these findings, the Bureau determined on its own that disclosure of certain
information "could result in competitive harm to SBC." As a result, the Bureau stated its
intent to withhold certain documents, including, but not limited to, SBC's costs and
pricing data, invoice and discount amounts, and its billing and payment dates[10] pursuant
to Exemption 4 of FOIA, 5 U.S.C. §552(b)(4).

Exemption 4 gives the Commission discretion to withhold from disclosure
confidential commercial and financial information. In order to prevail on a claim under
Exemption 4, a party must demonstrate that disclosure of the requested information is
likely to cause substantial harm to the competitive position of the entity from whom the
information was obtained. *National Parks and Conservation Association v. Kleppe*, 547
F.2d 673, 677-678 (D.C. Cir. 1976). The Bureau determined that SBC had failed to
show how disclosure of any of the information could result in substantial competitive
harm. The Bureau's own conclusory and generalized allegation of substantial
competitive harm is unacceptable and cannot support its decision to withhold the
requested documents. *Public Citizen Health Research Group v. Food and Drug
Administration*, 704 F.2d 1280, 1291 (D.C. Cir. 1983). It is difficult to imagine, for
example, how the disclosure of billing and payment dates could cause substantial harm
to SBC's competitive position. Moreover, the fact that SBC was unable to demonstrate
substantial harm to its competitive position from disclosure of the documents should
weigh heavily against withholding any of the documents.

The Bureau's determination that Exemption 4 protects from disclosure SBC's
invoice and discount amounts is similarly wanting. Exemption 4 does not protect from

---

[8]    August 5, 2005 Letter from William Davenport to Jim Lamoureux and Mary C. Albert at 1.

[9]    *Id.* at 4. SBC did not challenge these findings in its Application for Review of the Bureau's
decision.

[10]    *Id.* at 5.

Samuel Feder, Esq.
September 6, 2005
Page 5

disclosure the rates SBC charged or the discounts it provided to any participating schools and libraries because that information already is (or should be) in the public domain. Section 54.501(d)(3) of the Commission's rules requires e-rate service providers, such as SBC, to make records of rates charged and discounts allowed to participating schools available for public inspection.[11]

    While acknowledging the applicability of the rule, the Bureau stated that SBC can comply with its requirements "by maintaining a 'public inspection' file containing the required rate information" and that the rule does not mandate disclosure of the SBC invoice and discount information pursuant to CompTel's FOIA request because disclosure of such amounts "could disclose the total value of [SBC's] contract, information that would not otherwise be publicly available.[12] There are at least two flaws in the Bureau's reasoning. First, a claim to confidentiality cannot be sustained under Exemption 4 for any data that is already in the public domain. *CNA Financial Corporation v. Donovan*, 830 F. 2d 1132,1154 (D.C. Cir. 1987). To the extent that any of the requested documents show the rates SBC charged or the discounts it allowed – i.e., the information required to be maintained in its "public inspection" file -- the documents must be produced. Secondly, the inquiry that must be made in determining whether Exemption 4 applies is not whether or not the information would otherwise be publicly available, but whether disclosure would cause substantial competitive harm to SBC. *CNA Financial Corporation v. Donovan*, 830 F. 2d at 1153 (rejecting appellant's invitation to adopt an Exemption 4 test that "focuses solely on whether the material is 'customarily kept confidential' by the submitter"). The Bureau did not explain exactly how disclosure of the total value of SBC's contract to provide publicly funded e-rate services to the New London, Connecticut schools could cause SBC competitive harm. Moreover, although the Bureau found that SBC had failed "to state whether any of the information for which it seeks protection is already available to the public,"[13] the Bureau determined apparently on its own that the total value of SBC's contract "is not in the public domain" without revealing the factual basis for that determination.

    The exemptions in the Freedom of Information Act must be construed narrowly in such a way as to provide maximum access to the material requested. The Commission cannot sustain the Bureau's determination to withhold materials pursuant to Exemptions 5 and 4 withhold further explanation and justification.

---

[11]     Section 54.501(d)(3) requires service providers to "keep and retain records of rates charged to and discounts allowed for eligible schools and libraries – on their own or as part of a consortium. Such records shall be made available for public inspection."

[12]     August 5, 2005 Letter from William Davenport to Jim Lamoureux and Mary C. Albert at 5.

[13]     *Id.* at 4.

Samuel Feder, Esq.
September 6, 2005
Page 6

For the foregoing reasons, CompTel respectfully requests that the Commission grant this Application for Review and at the very least direct the Enforcement Bureau to provide a *Vaughn* index of the documents it proposes to withhold.

Respectfully submitted,

Mary C. Albert

cc: William Davenport
   Jim Lamoureux

# ATTACHMENT H



**Jim Lamoureux**
Senior Counsel

SBC Services, Inc.
1401 I Street NW, Suite 400
Washington, D.C. 20005
Phone 202 326-8895
Fax 202 408-8745

September 20, 2005

**VIA FACSIMILE, U.S. MAIL, AND EMAIL**

Samuel Feder
Acting General Counsel
Office of General Counsel
Federal Communications Commission
445 12th Street SW
Washington DC 20554

> Re:    **CompTel's Application for Review of FOIA Action**
>        **FOIA Control No. 2005-333**

Dear Mr. Feder:

 SBC Communications Inc. ("SBC"), hereby opposes the Application for Review submitted by CompTel on September 6, 2005.[1]  CompTel seeks review of the Enforcement Bureau's partial denial of CompTel's October 7, 2003, broad-sweeping Freedom of Information Act ("FOIA") request for "[a]ll pleadings and correspondence contained in File No. EB-04-IH-0342."  Included within the scope of CompTel/ALTS's original FOIA request are business records that SBC submitted to the Commission in response to a Letter of Inquiry issued by the Enforcement Bureau.  In response to CompTel/ALTS' request, the Enforcement Bureau declined to disclose certain information in SBC's business records that constitute confidential commercial information under Exemption 4 to the FOIA.  Specifically, the Enforcement Bureau declined to disclose information including "SBC's cost and pricing data, its billing payment dates, and identifying information of SBC's staff, contractors, and representatives of its contractors and customers."[2]  The Enforcement Bureau also declined to disclose certain documents under Exemption 5, which protects "interagency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  In light of the confidential commercial nature of the material requested, and the confidentiality of the documents under the deliberative process privilege, the Commission should affirm its earlier decision not to disclose the requested material and should deny CompTel's Application for Review.

---

[1] *See* Letter from Mary C. Albert, CompTel, to Samuel Feder, Acting General Counsel, Federal Communications Commission, FOIA Control No. 2005-333 (Sept. 6, 2005)("CompTel AFR").

[2] *See* Letter from William H. Davenport, Chief, Investigations and Hearings Division, Enforcement Bureau, Federal Communications Commission to Jim Lamoureux, SBC Services Inc. at 5 (Aug. 5, 2005)("Davenport Letter").

Exemption 4 applies to "trade secrets and commercial or financial information obtained from a person and privileged and confidential." *Id.* The phrase "commercial or financial information" has a broad meaning under the FOIA, and includes anything pertaining to or relating to commerce. *American Airlines, Inc. v. National Mediation Bd.*, 588 F.2d 863, 870 2d Cir. 1978); *see also Public Citizen Health research Group v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983)(documents are commercial if a submitter has a commercial interest in them). CompTel does not challenge the determination that the records at issue are commercial or financial information. The information in those records which the Enforcement Bureau declined to disclose is, moreover, confidential under Exemption 4. *National Parks* establishes a two part test for determining if information qualifies for withholding under Exemption 4. *National Parks & Conservation Assoc. v. Morton*, 498 F.2d 765 D.C. Cir. (1974). The first prong asks whether disclosing the information would impair the government's ability to obtain necessary information in the future. The second prong asks whether the competitive position of the person from whom the information was obtained would be impaired or substantially harmed. If the information meets the requirements of either prong, it is exempted from disclosure under Exemption 4. Here, the first prong of *National Prongs* fully supports the Enforcement Bureau's decision not to publicly disclose the material at issue.

The subject matter of the Enforcement Bureau's investigation was voluntarily brought to the Enforcement Bureau's attention by SBC as a result of an ongoing internal review conducted by SBC. SBC, moreover, voluntarily refunded all amounts that might have been at issue, and it entered into a consent decree to make a voluntary contribution to the United States Treasury. Compelled public disclosure of the material at issue in this instance would plainly impair the Enforcement Bureau's ability to obtain similar information in the future. It would chill efforts to conduct internal investigations and to bring the results of those investigations to the attention of the Commission. It would thus hamper the general ability of the Commission conduct investigations and enforcement proceedings and to rely on the cooperation of parties involved in those proceedings, which would necessarily impair the Commission's ability to obtain documents and information in investigations and enforcement proceedings. It would, in short, undermine the agency's "effective execution of its statutory responsibilities." *9 to 5 Org. for Women Office Workers v. Board of Governors*, 721 F2.s 1, 11 (1st Cir. 1983). *See also Africa Fund v. Mosbacher*, No. 92-289, 1993 WL 183736 at *7 (S.D.N.Y. May 26, 1993)(Disclosure would impinge upon agency's receipt of substantial information that potential exporters voluntarily submit when seeking export licenses and that the agency finds invaluable in making policy and maintaining effective export controls.) Accordingly, Exemption 4 fully supports the Enforcement Bureau's determination not to publicly disclose the material at issue.

In addition, the material CompTel seeks to obtain clearly is competitively sensitive information which should not be made available for public disclosure. That material contains cost and pricing information, billing and payment dates, and customer and contractor information that clearly falls within the scope of Exemption 4. Such information—which SBC specifically identified for each document responsive to CompTel's request—plainly is commercially sensitive, and SBC is not aware that any of it is in the public domain.[3] Competitors could use such confidential

---

[3] The Enforcement Bureau is correct that Commission Rule 54.501(d)(3) does not require SBC to disclose either the records at issue, or the information in the format and substance in which it appears in those

Samuel Feder
September 20, 2005
Page 3 of 4

information to assist in targeting their service offerings and enhancing their competitive positions, to the detriment of the competitive position of the SBC Companies. *See, e.g., GC Micro Corp. v. Defense Logistics Agency*, 33 F.3d 1109 (9th Cir. 1994). Commission precedent has clearly found this type of information to be competitively sensitive and withholdable under Exemption 4.[4] The Commission, moreover, has recognized that competitive harm can result from the disclosure of confidential business information that gives competitors insight into a company's costs, pricing plans, market strategies, and customer identities. *See In re Pan American Satellite Corporation*, FOIA Control Nos. 85-219, 86-38, 86-41, (May 2, 1986).[5] In its initial objection to CompTel's FOIA request, SBC clearly articulated each of these reasons that disclosure of such information could be competitively harmful to SBC. Accordingly, the Enforcement Bureau was clearly justified in withholding the material in question under Exemption 4.

The Commission also should affirm the Enforcement Bureau's application of Exemption 5 to the requested records. CompTel essentially disputes that the withheld records are predecisional.[6] All of the records identified by the Enforcement Bureau, however—drafts of pleadings and correspondence, and internal memoranda generated during the pendency of the Enforcement Bureau's investigation—are plainly pre-decisional. None embody final agency action or policy making that has the force of law, implement final Commission policy, or justify

---

records. That rule merely requires SBC maintain information, in whatever form SBC chooses, of the rates charged to and discounts allowed for eligible schools and libraries. It does not require SBC to disclose underlying cost or pricing data, or invoice and discount amounts that could be used to ascertain such data or the overall value of SBC's contracts.

[4] *See e.g. In Matter of Pacific Bell Telephone Company Petition for Pricing Flexibility for Special Access and Dedicated Transport Services*, CCB/CPD No. 00-23, DA 00-2618, November 20, 2000 (supporting confidentiality for collocation data); *Local Exchange Carrier's Rates, Terms and Conditions for Expanded Interconnection Through Virtual Collocation for Special Access and Switched Transport; Southwestern Bell Telephone Company*, 13 FCC Rcd 13615 (1998)(keeping administrative operating expenses confidential because it would provide insight into business strategies); *AT&T/McCaw Merger Applications* 9 FCC Rcd 2610 (1994)(keeping confidential accounting records showing account balance information); *NAACP Legal Defense Fund on Request for Inspection of Records* 45 RR 2d 1705 (1979)(keeping confidential records that contained employee salary information); *Mercury PCS II, LLC (Request for Inspection of Records) Omnipoint Corporation (Request for Confidential Treatment of Documents)*, FCC 00-241 (July 17, 2000)(keeping confidential marketing plans and strategy information).

[5] Further, the Commission has ruled that not only should such information be protected, but also that information must be protected through which the competitively sensitive information can be determined. *Allnet Communications Services, Inc. Freedom of Information Act Request*, FOIA Control No. 92-149, Memorandum Opinion and Order (released August 17, 1993) at p. 3. The Commission's decision was upheld in a memorandum opinion of the U.S. Court of Appeals for the D.C. Circuit, which affirmed a U.S. District Court decision protecting the information. *Allnet Communications Services, Inc. v. FCC*, Case No. 92-5351 (memorandum opinion issued May 27, 1994, D.C. Cir.). Billing and payment date information would certainly fall within this category. Billing and payment date information also is commercially sensitive in its own right as it pertains to the details of SBC's ongoing business operations and processes.

[6] *CompTel AFR* at 3.

Samuel Feder
September 20, 2005
Page 4 of 4

action already taken by the Commission. They are all thus clearly distinguishable from the records at issue in *National Labor Relations Board v. Sears Roebuck and Co.*, 421 U.S. 132 (1975) and *SaefCard Services, Inv. Securities and Exchange Comm'n*, 926 F.2d 1197 (D.C. Cir. 1991), which reflected final agency decisions. Here, the only documents that reflect final Commission action are the Order and Consent Decree which terminated the Enforcement Bureau's investigation. The Enforcement Bureau's internal drafts, work papers, emails, and memoranda undoubtedly reflect the Enforcement Bureau's deliberative processes as well as the pre-decisional communications between staff. Accordingly, the Commission should affirm the Enforcement Bureau's determination to withhold documents pursuant to Exemption 5.

If you have any questions, please do not hesitate to contact me at (202) 326-8895.

Sincerely,

Jim Lamoureux
Senior Counsel
SBC Services, Inc.

cc:    Judy Lancaster
       Mary C. Albert

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

COMPTEL,                                )
                                        )
        Plaintiff,                      )
                                        )
        v.                              )          Civil Action No. 06-1718 (HHK)
                                        )
FEDERAL COMMUNICATIONS                  )
  COMMISSION,                           )
                                        )
        Defendant,                      )
                                        )
AT&T,                                   )
                                        )
        Intervenor.                     )
_____)

ORDER ON MOTION FOR SUMMARY JUDGMENT

        Upon consideration of Defendant's Motion for Summary Judgment, any

opposition thereto, and the entire record herein, it is this _____ day of _____, 2007,

hereby **Ordered**:  That Defendant's motion is granted and the Complaint is dismissed with

prejudice.

Dated:


                                        _____
                                        United States District Judge