# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

COMPTEL,

      Plaintiff,

      v.

FEDERAL COMMUNICATIONS
COMMISSION,

      Defendant.

Civil Action No. 06-01718 (HHK)

## OPPOSITION OF INTERVENOR-DEFENDANT AT&T INC. TO COMPTEL'S MOTION FOR SUMMARY JUDGMENT

Gary L. Phillips (D.C. Bar No. 334037)
James P. Lamoureux (D.C. Bar No. 431631)
AT&T INC.
1120 20th Street, N.W.
Washington, D.C. 20036

Colin S. Stretch (D.C. Bar No. 470193)
Kelly P. Dunbar (D.C. Bar No. 500038)
KELLOGG, HUBER, HANSEN, TODD,
  EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036

*Counsel for AT&T Inc.*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................2

ARGUMENT ....................................................................................................5

I.    COMPTEL IS NOT ENTITLED TO DISCLOSURE.......................................5

      A.    AT&T's Documents Are Exempt From Disclosure ................................5

      B.    The FCC's Alleged Violation of the FOIA's Statutory Deadline Does Not
            Warrant Disclosure ........................................................................9

II.   NEITHER A *VAUGHN* INDEX NOR *IN CAMERA* REVIEW IS WARRANTED .........10

CONCLUSION.................................................................................................16

# TABLE OF AUTHORITIES

Page

**Cases**

*August v. FBI*, 328 F.3d 697 (D.C. Cir. 2003) ................................................................10

*Barvick v. Cisneros*, 941 F. Supp. 1015 (D. Kan. 1996) ...............................................10

*Boyd v. Criminal Div. of Dep't of Justice*, 475 F.3d 381
    (D.C. Cir. 2007) ........................................................................................................15

*Brinton v. Department of State*, 636 F.2d 600 (D.C. Cir. 1980).....................................15

*Center for Nat'l Sec. Studies v. Department of Justice*, 331 F.3d 918
    (D.C. Cir. 2003) ...................................................................................................11, 13

*Church of Scientology of Cal. v. IRS*, 792 F.2d 146 (D.C. Cir. 1986).............................11

*Davis v. Dept. of Justice*, 968 F.2d 1276 (D.C. Cir. 1992)................................................8

*Deglace v. DEA*, 2007 WL 521896 (D.D.C. Feb. 15, 2007) ......................................12, 13

*Department of Justice v. Reporters Comm. for Freedom of the Press,*
    489 U.S. 749 (1989)..................................................................................................13

*Judicial Watch, Inc. v. United States Postal Service*, 297 F. Supp. 2d 252
    (D.D.C. 2004) ......................................................................................................10, 16

*Lesar v. Department of Justice*, 636 F.2d 472 (D.C. Cir. 1980).....................................11

*M.K. v. Department of Justice*, 1996 WL 509724 (S.D.N.Y. Sept. 9, 1996).................10

*National Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004) ..........................13

*Niagara Mohawk Power Corp. v. Department of Energy*, 169 F.3d 16
    (D.C. Cir. 1999) .......................................................................................................7, 8

*Oglesby v. Department of Army*, 79 F.3d 1172 (D.C. Cir. 1996) ...................................15

*PHE, Inc. v. Department of Justice*, 983 F.2d 248 (D.C. Cir. 1993)..............................16

*Public Employees for Envtl. Responsibility v. Department of Interior*
    2006 WL 3422484 (D.D.C. Nov. 28, 2006) ............................................................5

*Spannaus v. Department of Justice*, 824 F.2d 52 (D.C. Cir. 1987) ................................9

*Spirko v. United States Postal Serv.*, 147 F.3d 992 (D.C. Cir. 1998) ............................................16

*Wolf v. CIA*, 473 F.3d 370 (D.C. Cir. 2007) ................................................................................11


**Administrative Authorities**

Fifth Report and Order and Order, *Schools and Libraries Universal Service
    Support Mechanism*, 19 FCC Rcd 15808 (2004) ..............................................................7, 8

Order and Consent Decree, *SBC Communications Inc.*, 19 FCC Rcd 24014
    (Enf. Bur. 2004) ................................................................................................................3

Report and Order, *Federal-State Joint Board on Universal Service*
    12 FCC Rcd 8776 (1997) ..................................................................................................7


**Statutes, Regulations, and Rules**

5 U.S.C. § 552(a)(6)(A) ............................................................................................................9

5 U.S.C. § 552(a)(6)(A)(ii) ...............................................................................................4, 9, 10

5 U.S.C. § 552(a)(6)(C) .....................................................................................................2, 4, 9

5 U.S.C. § 552(b)(4) ..................................................................................................................1

5 U.S.C. § 552(b)(7)(C) ......................................................................................................1, 12

47 C.F.R. § 0.457 ..................................................................................................................3, 4

47 C.F.R. § 0.457(f) ..................................................................................................................4

47 C.F.R. § 0.457(g) ..................................................................................................................4

47 C.F.R. § 0.459 ......................................................................................................................4

47 C.F.R. § 0.459(a) ..................................................................................................................4

47 C.F.R. § 54.501(d)(3) .....................................................................................................6, 7, 8

47 C.F.R. § 54.516(a)(2) ........................................................................................................7, 8

iii

**Other Materials**

1 James T. O'Reilly, *Federal Information Disclosure* § 7:30 (3d ed. 2006)................................10

## INTRODUCTION

CompTel — a trade association that represents competitors of Intervenor-Defendant

AT&T Inc. ("AT&T") — is trying to use the Freedom of Information Act ("FOIA") to gain

access to documents that belong to AT&T, that shed no light on the workings of the government,

and that are in the hands of the government only through the happenstance of a Federal

Communications Commission ("FCC") law-enforcement investigation.  In its motion for

summary judgment filed February 12, 2007, AT&T explained that the documents at issue are

protected from disclosure by the FOIA and applicable FCC regulations.  In this opposition to

CompTel's motion for summary judgment, AT&T further explains that CompTel's request for

an order compelling disclosure, as well as its alternative request for an order directing the FCC to

produce a *Vaughn* index and/or the requested documents for *in camera* inspection, is deeply

flawed.

CompTel's request for disclosure is unwarranted, first, because the documents at issue

are protected by the FOIA's law-enforcement exemption (Exemption 7(C)), 5 U.S.C.

§ 552(b)(7)(C).  As AT&T has explained, the documents were provided by AT&T to the FCC in

connection with a law-enforcement investigation that began when AT&T self-reported concerns

about invoices that it had submitted to the universal service fund administrator.  In addition,

those documents contain details surrounding AT&T's concerns that could be used to harass or

stigmatize the company, and they are therefore protected from disclosure under Exemption 7(C).

In the alternative, at a minimum, portions of the documents contain confidential and

commercially sensitive information that is protected from disclosure under the FOIA's

confidential commercial information exemption (Exemption 4), 5 U.S.C. § 552(b)(4).

Apart from its misplaced claims that the documents at issue are not protected under the

FOIA, CompTel contends that disclosure is warranted because the FCC failed to adjudicate

CompTel's agency appeal within the FOIA's statutory deadline.  But it is settled law that the remedy for an agency's violation of FOIA deadlines is not disclosure, but rather is the right to seek a judicial determination of the applicant's right to the documents at issue.  *See*  5 U.S.C. § 552(a)(6)(C).  That rule is especially appropriate here, where the remedy CompTel seeks would punish AT&T (whose documents are primarily at issue) for the alleged transgressions of the FCC.

CompTel's request for a *Vaughn* index and/or *in camera* review should also be denied. The law is clear that affidavits, if detailed and specific, are sufficient for this Court to resolve the applicability of a FOIA exemption on summary judgment.  The declaration submitted by AT&T sets forth in sufficient detail why AT&T's documents fit within Exemption 7(C).  And the declarations submitted by AT&T and the FCC, taken together, show that the FCC's redactions under Exemption 4 are appropriate.  Nothing more is necessary for this Court to conclude that the documents at issue are protected from disclosure.

## BACKGROUND[1]

On August 24, 2004, in connection with an investigation initiated in response to a voluntary disclosure by AT&T, the FCC's Enforcement Bureau ordered AT&T to answer interrogatories and to provide documents relating to AT&T's provision of universal service-eligible services to the New London Public Schools.  AT&T responded less than a month later by providing a wide range of documents to the Enforcement Bureau.  *See* Declaration of Ann

---

[1] The facts set forth here are relevant to AT&T's Opposition to CompTel's Motion for Summary Judgment.  A full recitation of the background of this case can be found in AT&T's Memorandum of Law in Support of Motion for Summary Judgment (Feb. 12, 2007) [Docket #19.1] and accompanying Proposed Statement of Undisputed Material Facts (Feb. 12, 2007) [Docket #19.3].  The Response of Intervenor-Defendant AT&T Inc. to Plaintiff CompTel's Statement of Material Facts as to Which There is No Genuine Dispute is attached to this Opposition.

Rotatori ¶ 5 (Feb. 2, 2007) [Docket #19.4] ("Rotatori Decl."). On December 16, 2004, the FCC

and AT&T entered a consent agreement ending the FCC's investigation. *See* Order and Consent

Decree, *SBC Communications Inc.*, 19 FCC Rcd 24014 (Enf. Bur. 2004).

More than three months later, CompTel submitted a one-sentence FOIA request to the

FCC demanding disclosure of the entire contents of the Enforcement Bureau's investigative file

pertaining to AT&T's alleged violations of FCC rules.[2]  Upon being notified of CompTel's

request, AT&T notified the FCC of its opposition to the release of its documents.[3]  AT&T argued

that its documents were "obtained by the Commission as part of an Enforcement Bureau

investigation" and, therefore, "pursuant to 47 C.F.R. § 0.457" and Exemption 7(C) of the FOIA,

were "not routinely available for public inspection." Dunbar Decl. Exh. B at 1.  AT&T also

argued that many parts of the requested documents contain "competitively sensitive information"

that should be withheld under FOIA Exemption 4.  *Id.* Exh. B. at 6.  AT&T attached to its

request for confidential treatment a list of each document that should be withheld as well as an

explanation of the basis for withholding the document.  *See id.* Exh. B Attach. A.  CompTel

responded approximately one month later with a letter filing in which it disputed AT&T's

reliance on Exemptions 4 and 7(C) of the FOIA.[4]

---

[2] *See* Email from Mary C. Albert, CompTel, to FOIA FCC (Apr. 4, 2005) (Exh. A to Declaration of Kelly P. Dunbar (Feb. 12, 2007) [Docket #19.5] ("Dunbar Decl.")).

[3] *See* Letter from Jim Lamoureux, SBC Services, Inc., to Judy Lancaster, Enforcement Bureau, FCC, FOIA Control No. 2005-333 (May 27, 2005) (Dunbar Decl. Exh. B).

[4] *See* Letter from Mary C. Albert, CompTel, to Judy Lancaster, Enforcement Bureau, FCC, FOIA Control No. 2005-333 (June 28, 2005) (Dunbar Decl. Exh. C).

The Enforcement Bureau issued a ruling resolving CompTel's FOIA request in August

2005.[5]  Although the Bureau asserted that AT&T's request for confidential treatment did not

strictly conform with the FCC's rules,[6] the Bureau, pursuant to 47 C.F.R. § 0.457(f), considered

the FOIA exemptions invoked by AT&T and decided that certain portions of AT&T's

documents were in fact protected from disclosure under Exemptions 4 and 7(C).  *See* Dunbar

Decl. Exh. D at 5-6.

AT&T promptly sought review by the FCC of the Bureau's decision, arguing that the

Enforcement Bureau improperly applied Exemption 7(C).[7]  Several weeks later, CompTel also

sought review.[8]  The FCC has not yet acted on either request for review.  Although CompTel

was entitled to bring a civil action under 5 U.S.C. § 552(a)(6)(C) twenty days after it filed its

application for review, *see id.* § 552(a)(6)(A)(ii), CompTel waited nearly one year before

initiating the instant action in this Court on October 5, 2006.

---

[5] *See* Letter from William H. Davenport, Enforcement Bureau, FCC, to Jim Lamoureux, SBC Services, Inc., and Mary Albert, CompTel, FOIA Control No. 2005-333 (Aug. 5, 2005) (Dunbar Decl. Exh. D).

[6] The Enforcement Bureau's suggestion that AT&T's request for confidentiality did not comply with § 0.459 is mistaken.  By the plain terms of the FCC's rules, "records listed in [§ 0.457] are not routinely available for public inspection."  47 C.F.R. § 0.457.  Section 0.457 specifically lists "[i]nvestigatory records compiled for law enforcement purposes" as records that are not routinely available for public inspection.  *Id.* § 0.457(g).  Because AT&T submitted its documents within the context of a law-enforcement investigation, a separate request for confidential treatment was unnecessary.  *See id.* § 0.459(a) ("If the materials are specifically listed in § 0.457," a request for confidential treatment "is unnecessary.").  Upon notification of CompTel's request, moreover, AT&T provided detailed justifications for withholding AT&T's documents.  In all events, the FCC in fact considered AT&T's requests for confidentiality under Exemptions 4 and 7(C), which the FCC is authorized to do.  *See id.* § 0.457(f).

[7] *See* Letter from Jim Lamoureux, SBC Services, Inc., to Samuel Feder, Acting General Counsel, FCC, FOIA Control No. 2005-333 (Aug. 19, 2005) (Dunbar Decl. Exh. E).

[8] *See* Letter from Mary Albert, CompTel, to Samuel Feder, Acting General Counsel, FCC, FOIA Control No. 2005-333 (Sept. 6, 2005) (Dunbar Decl. Exh. F).

## ARGUMENT

In moving for summary judgment, CompTel seeks (1) a declaration that the FCC's delay in acting on its application for review violates the FOIA, (2) an order compelling the FCC to release the documents at issue, and/or (3) an order directing the FCC to produce either a *Vaughn* index or the documents for *in camera* inspection. *See* CompTel Memo. 18. AT&T takes no position on CompTel's entitlement to a declaration regarding the FOIA's deadlines, but CompTel is manifestly not entitled to disclosure of AT&T's documents. Those documents are protected from disclosure under Exemptions 7(C) and 4 of the FOIA, and disclosure is not a proper remedy for any FCC violation of a statutory deadline. Furthermore, neither a *Vaughn* index nor *in camera* inspection are warranted because the declarations that AT&T and the FCC have filed are sufficient to permit this Court to conclude that the requested documents are exempt from disclosure.

## I.    COMPTEL IS NOT ENTITLED TO DISCLOSURE

### A.    AT&T's Documents Are Exempt From Disclosure

CompTel's effort to compel disclosure should be denied, first and foremost, because the documents that CompTel seeks are protected from disclosure by two FOIA exemptions.

*First*, as AT&T explained in detail in its memorandum in support of its motion for summary judgment, which AT&T incorporates by reference here,[9] all of the documents submitted by AT&T fit within Exemption 7(C). These documents were collected as part of an Enforcement Bureau investigation of possible violations of FCC rules, and they were therefore "compiled for law enforcement purposes" under Exemption 7(C). *See* AT&T Memo. 7-8;

---

[9] *See, e.g.*, *Public Employees for Envtl. Responsibility v. Department of Interior*, No. CIV.A. 06-182, 2006 WL 3422484, at *2 (D.D.C. Nov. 28, 2006) (considering cross-motion for summary judgment that "incorporate[ed] by reference" opposition to motion for summary judgment).

Rotatori Decl. ¶¶ 5-6, 9.  In addition, disclosure of the documents would violate AT&T's privacy because the documents, which contain details relating to AT&T's alleged violations of FCC rules, could be used to embarrass, harass, and stigmatize the company.  *See* AT&T Memo. 8-14; Rotatori Decl. ¶¶ 8-12.  Finally, the invasion of AT&T's privacy that would occur as a result of disclosure would be unwarranted because, as a categorical matter, CompTel lacks a cognizable public interest justification in AT&T's documents and, even under a balancing approach, CompTel has failed to submit any evidence of agency wrongdoing that would justify disclosure. *See* AT&T Memo. 16-21.

*Second*, at a minimum, the FCC correctly redacted competitively sensitive information that is protected from disclosure under Exemption 4.  As AT&T and the FCC have shown in detail, the relevant documents contain detailed pricing and cost data relating to services that AT&T supplies to schools, as well as information relating to "billing and payment dates and practices, descriptions of AT&T's systems, processes, and operations, and identifying information" relating to "AT&T's staff, contractors, and customers."  *See* Rotatori Decl. ¶ 15; Declaration of Judy Lancaster ¶¶ 17-18 (Feb. 12, 2007) [Docket #21.1] ("Lancaster Decl."). Given the competitive nature of the communications industry generally and the market for educational services specifically, disclosure of such information would create a substantial likelihood of competitive injury.  *See* Rotatori Decl. ¶¶ 14-16; Lancaster Decl. ¶ 19.  For that reason, the redactions are appropriate.  *See* AT&T Memo. 24-26.

CompTel disputes the FCC's reliance on Exemption 4 to protect the price and discount data included in AT&T's documents.  According to CompTel, AT&T must disclose such data pursuant to 47 C.F.R. § 54.501(d)(3), and such data are accordingly in the public domain and therefore not protected under Exemption 4.  *See* CompTel Memo. 13-14.

"[CompTel's] position here is a little odd: if the information is publicly available, one wonders, why is it burning up counsel fees to obtain it under FOIA?" *Niagara Mohawk Power Corp. v. Department of Energy*, 169 F.3d 16, 19 (D.C. Cir. 1999). And, in fact, the information at issue is not publicly available under Rule 54.501(d)(3). The rule, which was first promulgated in 1997, states that "[s]ervice providers shall keep and retain records of rates charged to and discounts allowed for eligible schools and libraries . . . . Such records shall be available for public inspection." 47 C.F.R. § 54.501(d)(3). As AT&T has explained, *see* AT&T Memo. 2-3, for all the projects at issue in the FCC's investigation, AT&T either cancelled the invoices to the universal service fund administrator or refunded any amounts that had been paid. For these projects, there have therefore been no "rates charged" or "discounts allowed" within the meaning of the FCC's universal service rules. Rule 54.501(d)(3) is accordingly irrelevant here.

Beyond that, the "rates charged" and "discounts allowed" referenced in the rule refer to *aggregate* rates charged for universal service-eligible products, as well as the percentage discounts (ranging between 20 and 90%) that an eligible school or library is entitled to receive. *See* Report and Order, *Federal-State Joint Board on Universal Service*, 12 FCC Rcd 8776, 9075-76, ¶ 569 (1997); *see also id.* at 9072-73, ¶ 563 (distinguishing between "discount[]" and "pre-discount" prices). This understanding is confirmed by the Commission's 2004 decision to promulgate a new rule, 47 C.F.R. § 54.516(a)(2), which requires service providers to retain, but *not* to publicly disclose, procurement and other disaggregated information related to universal service projects that was not otherwise subject to an FCC recordkeeping requirement. *See* Fifth

Report and Order and Order, *Schools and Libraries Universal Service Support Mechanism*, 19 FCC Rcd 15808, 15824-25, ¶ 48 (2004).[10]

Importantly, the bulk of the cost and pricing data the FCC has marked for redaction in this case involves such disaggregated procurement information — involving, for example, the costs of individual components of various service offerings, as well as AT&T's labor rates and other competitively sensitive information. *See* Rotatori Decl. ¶¶ 7, 12. Although AT&T may be required to *maintain* records that include such information under FCC Rule 54.516(a)(2), it would not be required to *disclose* it under Rule 54.501(d)(3) even if the data related to projects that had actually been funded by the universal service fund. Because CompTel cannot carry its burden of "point[ing] to 'specific' information [in the public domain that is] identical to that being withheld," *Davis v. Department of Justice*, 968 F.2d 1276, 1280 (D.C. Cir. 1992); *see Niagara Mohawk Power Corp.*, 169 F.3d at 19, its reliance on Rule 54.501(d)(3) fails.

CompTel also argues (at 14) that billing and payment dates and cost information are not protected under Exemption 4 because there is no indication that their disclosure would cause any competitive harm. The Rotatori Declaration, however, establishes the common-sense proposition that "information about when and how AT&T bills customers for services — including information regarding AT&T's price quotes — would allow competitors to undercut AT&T's efforts to service new customers." *Id.* ¶ 16; *see also* Lancaster Decl. ¶ 19

---

[10] This understanding is also confirmed by the universal service fund administrator's practice of making publicly available, for any given Education-rate (or "E-rate") project, the "Form 471," which provides the total value of a given project as well as the applicable discount. *See* http://www.universalservice.org/sl/tools/search-tools/form471-application-display.aspx. Underlying the Form 471 is an "Item 21" attachment that includes disaggregated pricing information regarding specific components of the project and that is *not* publicly available. *See generally* http://www.sl.universalservice.org/reference/Form471item21Attachments.asp. The detailed cost and pricing information that AT&T seeks to protect here is comparable to the information included on the Item 21 attachment. *See generally* Rotatori Decl. ¶¶ 7, 14-16.

("[i]nformation regarding the timing of billing and payment could give competitors insights into SBC's relationships with its customers and suppliers, including whether the customers are prompt payers").  In addition, cost information is "among the most sensitive corporate information," Lancaster Decl. ¶ 19, because its disclosure would allow competitors to "tailor their competitive strategies to compete unfairly against AT&T," Rotatori Decl. ¶ 16.  Case law uniformly establishes the competitive sensitivity of such information, *see* AT&T Memo. 26 (collecting cases), and nothing CompTel states is to the contrary.

**B.    The FCC's Alleged Violation of the FOIA's Statutory Deadline Does Not Warrant Disclosure**

Apart from its contention that the documents at issue are not protected by the FOIA, CompTel appears to contend (at 10) that the FCC's inaction on CompTel's application for review itself warrants disclosure of the documents CompTel seeks.  AT&T takes no position on CompTel's request for a declaration that the FCC's failure to comply with the FOIA's statutory deadline is unlawful.  But CompTel's suggestion that the FCC's delay "precludes" a finding that the documents at issue here should be withheld, CompTel Memo. 10, is without merit.

Contrary to CompTel's apparent understanding, an agency's failure to act upon an initial FOIA request or to consider an administrative appeal within the prescribed statutory time limit, *see* 5 U.S.C. § 552(a)(6)(A), does not automatically warrant disclosure.  Rather, agency delay entitles the requesting party to bring a civil action in federal district court *requesting* disclosure. *See id.* § 552(a)(6)(C).  Put differently, CompTel's remedy for failure of the FCC to comply with the time limit set forth in § 552(a)(6)(A)(ii) is the right to bring this case, nothing more.  *See Spannaus v. Department of Justice*, 824 F.2d 52, 58 (D.C. Cir. 1987) (noting that, "[b]y virtue of a special provision virtually unique to FOIA, exhaustion is complete — for purposes of allowing recourse to the courts — on the expiration of specified deadlines").

In this respect, this Court's decision in *Judicial Watch, Inc. v. United States Postal Service*, 297 F. Supp. 2d 252 (D.D.C. 2004), is instructive.  There, the plaintiff "requested the immediate production of the documents" as a remedy for the defendant agency's noncompliance with the FOIA.  *Id.* at 270.  This Court declined that request for relief, reasoning that a finding that the defendant agency's "[FOIA] declaration [was] insufficient" was not the same as concluding "that disclosable documents have been withheld."  *Id.*

The same analysis applies here.  That the FCC may be in violation of § 552(a)(6)(A)(ii) says nothing about whether the withheld documents should be disclosed and therefore does not entitle CompTel to a remedy of disclosure.  *See* 1 James T. O'Reilly, *Federal Information Disclosure* § 7:30 (3d ed. 2006) ("[a]gency's delay in responding beyond [the statutory deadline] does not entitle requester to summary judgment"); *Barvick v. Cisneros*, 941 F. Supp. 1015, 1019-20 (D. Kan. 1996) ("an agency's failure to respond within ten days does not automatically entitle a FOIA requester to summary judgment"); *M.K. v. Department of Justice*, No. 96 CIV. 1307, 1996 WL 509724, at *3 (S.D.N.Y. Sept. 9, 1996) ("[T]he government's failure to respond to [the FOIA] request within the statutory . . . time limit does not give M.K. the right to obtain the requested documents; it merely amounts to an exhaustion of administrative remedies and allows M.K. to bring this lawsuit.").  And that is particularly so given that CompTel's requested remedy would punish *AT&T*, whose documents are at issue, for the *FCC's* failure to abide by the FOIA's deadlines.  *See August v. FBI*, 328 F.3d 697, 701 (D.C. Cir. 2003) ("[t]he law does not require that third parties pay for the Government's mistakes").

## II.    NEITHER A *VAUGHN* INDEX NOR *IN CAMERA* REVIEW IS WARRANTED

CompTel's alternative request for a *Vaughn* index and/or *in camera* review, *see* CompTel Memo. 18, should also be rejected.

**A.**      The FOIA does not require that an agency produce a *Vaughn* index as a matter of course.  Instead, "a court may rely on government affidavits to support the withholding of documents," *Center for Nat'l Sec. Studies v. Department of Justice*, 331 F.3d 918, 926 (D.C. Cir. 2003), provided "the affidavits describe the justifications for nondisclosure with reasonably specific detail . . . and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith," *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (internal quotation marks and citations omitted); *see Lesar v. Department of Justice*, 636 F.2d 472, 481 (D.C. Cir. 1980).  In determining whether that standard is met, the Court must keep in mind that "an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"  *Wolf*, 473 F.3d at 374-75.  Because the declarations here "describe the justifications for nondisclosure" under Exemptions 7(C) and 4 with sufficient detail to permit the Court to conclude that the application of the FOIA Exemptions at issue is "'logical'" or "'plausible,'" *Wolf*, 473 F.3d at 375, a *Vaughn* index is unnecessary.

**1.**      The detail and specificity of the Rotatori Declaration are sufficient to show that AT&T's documents fit within the scope of Exemption 7(C).

When, as here, "a claimed FOIA exemption consists of a generic exclusion, dependent upon the *category of records* rather than the subject matter which each individual record contains, resort to a *Vaughn* index" is unnecessary.  *Church of Scientology of Cal. v. IRS*, 792 F.2d 146, 152 (D.C. Cir. 1986) (emphasis added).  The rationale for that rule is that some FOIA exemptions, such as Exemption 7, do "not require a showing that each individual document," if disclosed, would give rise to the threatened harm, but rather stand "generically" for the proposition that disclosure of certain "classes of records" would give rise to the harm.  *Id.*  In

such cases, the proper inquiry is whether a declaration is "sufficiently detailed to establish that the document or group of documents in question actually falls into the exempted category." *Id.*

Under this standard, the Rotatori Declaration is sufficient, and a *Vaughn* index is unnecessary, because this Court can decide that the AT&T documents requested by CompTel were "compiled for law enforcement purposes," that disclosure of the documents would invade AT&T's "privacy," and that the invasion of privacy is "unwarranted" based on the level of detail provided in the Declaration. *See* 5 U.S.C. § 552(b)(7)(C); *see also* AT&T Memo. 7-21. To begin with, the Rotatori Declaration makes clear that the documents that AT&T produced to the FCC were produced in connection with a law-enforcement investigation by the FCC. *See* Rotatori Decl. ¶¶ 5, 9. The Declaration also shows that AT&T has a substantial privacy interest in those documents. The Declaration outlines the specific categories of documents that AT&T provided to the FCC, along with the approximate number of pages of those categories, and it describes the contents of the documents in detail sufficient to establish that disclosure would risk embarrassment, harassment, and stigmatization of AT&T and its individual employees. *See id.* ¶ 7. The documents reveal, for example, "the decisionmaking processes that led to the alleged violations of the FCC rules, the period of time over which the arguable billing errors occurred, and AT&T's internal responses to the arguable misconduct," all of which is information that could be used to embarrass, harass, and stigmatize AT&T through "press releases, advertisements, or news reports," as well "by competitors in regulatory proceedings, in an attempt to prejudice decisionmakers against AT&T's interests." *Id.* ¶ 10.

These facts establish that the documents requested by CompTel implicate AT&T's privacy interests protected by Exemption 7(C). *See* AT&T Memo. 11-12. A document-by-document approach under a *Vaughn* index is therefore unnecessary. *See, e.g.*, *Deglace v. DEA*,

No. CIVA 05-2276, 2007 WL 521896, at *3-*5 (D.D.C. Feb. 15, 2007) (holding, as a categorical matter, that a private party's "privacy interest [was] implicated with regard to any records at issue" and that there was no public interest in disclosure under Exemption 7(C), where Government had not even confirmed the existence of responsive records, much less supplied an affidavit or *Vaughn* index); *cf. Center for Nat'l Sec. Studies*, 331 F.3d at 929 (finding that, "[o]n numerous occasions, both the Supreme Court and this Court have found government declarations expressing the likelihood of witness intimidation and evidence tampering sufficient to justify withholding of witnesses' names under Exemption 7(A)").

Furthermore, a *Vaughn* index would not shed any light on whether CompTel has a public interest in disclosure. As AT&T has explained, CompTel has failed to carry its burden of "produc[ing] evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred," *National Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004), and there is no plausible argument that an index of the documents at issue would change that basic fact. Indeed, all of AT&T's documents relate to conduct *by AT&T* and just happen to be in the possession of the FCC as a result of the FCC's investigation. As the Supreme Court has said, "when [a] request seeks no 'official information' about a Government agency, but merely records that the Government happens to be storing, the invasion of privacy is 'unwarranted'." *Department of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 780 (1989). A *Vaughn* index — no matter how detailed — could not cure those defects in CompTel's request.

2.    The level of detail and specificity of the Declarations of AT&T and the FCC is likewise sufficient to render a *Vaughn* index unnecessary with respect to Exemption 4.

The Rotatori Declaration submitted by AT&T sets forth the specific *types* of redactions that were made — that is, cost and pricing data pertaining to services and hardware used in connection with the New London Public Schools projects; amounts AT&T invoiced for certain projects; relevant dates; and "names and identifying information of AT&T's staff, contractors, and representatives of its contractors and customers." Rotatori Decl. ¶ 12. The Lancaster Declaration submitted by the FCC likewise details the types of documents that AT&T provided to the FCC, explaining that the records "consist of [AT&T's] response to the FCC's LOI and various exhibits thereto," including "invoices for services and equipment" submitted to the school district, "as well as related quotations, orders, and funding commitments" and "[AT&T] spreadsheets and e-mails that discuss financial information related to the provision of service and equipment." Lancaster Decl. ¶ 17. The Declaration goes on to say that the FCC redacted from that set of documents "pricing and cost data, and billing and payment dates," and provides specific illustrations of the redactions. *Id.* ¶ 18.

The Declarations also establish the competitive effects of disclosure. The Lancaster Declaration explains that disclosure "would give [AT&T's] competitors an overview of [AT&T's] costs, pricing, schedules, and operations." *Id.* ¶ 19; *see also* Rotatori Decl. ¶ 14. Such information, if publicly disclosed, would "enable competitors to craft offerings and proposals that would allow them to compete more effectively against [AT&T] for similar business, and/or allow competitors to woo [AT&T's] contractors or contracts." Lancaster Decl. ¶ 19. Further, release of AT&T's information "could discourage other licensees from voluntarily reporting to the Commission" in the future, *id.* ¶ 21, and "could make it difficult for the FCC to obtain reliable financial and commercial information from telecommunications companies in the future," *id.* ¶ 22. The FCC's reasoned determinations that release of such information would

have serious competitive effects and could impair the efficacy of future FCC information-gathering efforts thus "forge the logical connection between the information withheld and the claimed exemption" and are therefore entitled to "substantial weight." *Oglesby v. Department of Army*, 79 F.3d 1172, 1178 (D.C. Cir. 1996) (internal quotation marks, alteration, and citation omitted). Those determinations, coupled with the information provided in the Rotatori Declaration, provide the Court sufficient information to determine that the information redacted by the FCC is protected by Exemption 4. *See* AT&T Memo. 23-26.

      **B.**      If a *Vaughn* index is unnecessary — and, for the reasons set out above, it is — it necessarily follows that *in camera* review is likewise unnecessary.

      Where "affidavits [make] a detailed showing of applicability of [a FOIA exemption]" and where "there is no contradictory evidence or evidence of [] bad faith," a district court is "entirely correct in granting summary judgment without conducting an in camera inspection of the documents." *Brinton v. Department of State*, 636 F.2d 600, 606 (D.C. Cir. 1980); *see also Boyd v. Criminal Div. of Dep't of Justice*, 475 F.3d 381, 391 (D.C. Cir. 2007) (district court was warranted in declining "*in camera* review" when affidavits "describe[d] the documents and justifications for withholding in sufficient detail to demonstrate that the claimed exemption applies"). For the reasons set forth above, the Rotatori Declaration describes the documents in ample detail to show the applicability of Exemption 7(C), and the Rotatori and Lancaster Declarations together provide adequate detail and specificity for this Court to judge the applicability of Exemption 4.

      Even if that were not the case, however, *in camera* review would be inappropriate prior to a request for a more detailed agency affidavit. "[S]everal concerns counsel against hasty resort to *in camera* review," including that *in camera* review may "place a substantial burden on

judicial resources" and that decisions based on such review "may not be amenable to meaningful review by an appellate court." *Spirko v. United States Postal Serv.*, 147 F.3d 992, 997 (D.C. Cir. 1998). In fact, the D.C. Circuit has cautioned that "*in camera* review is generally disfavored." *PHE, Inc. v. Department of Justice*, 983 F.2d 248, 253 (D.C. Cir. 1993). If the Court determines that further specification of the documents at issue is necessary to judge the applicability of Exemption 7(C), Exemption 4, or both, the proper remedy is to remand to the agency, not to undertake such review itself. *See Spirko*, 147 F.3d at 997 ("a district court should not undertake *in camera* review of withheld documents as a substitute for requiring an agency's explanation of its claimed exemptions in accordance with *Vaughn*"); *Judicial Watch*, 297 F. Supp. 2d at 270 (remanding to the agency for "further review and consideration" rather than undertaking "in camera inspection").

## CONCLUSION

The Court should deny CompTel's motion for summary judgment.

Respectfully submitted,

/s/ Colin S. Stretch

| | |
|---|---|
| Gary L. Phillips (D.C. Bar No. 334037) | Colin S. Stretch (D.C. Bar No. 470193) |
| James P. Lamoureux (D.C. Bar No. 431631) | Kelly P. Dunbar (D.C. Bar No. 500038) |
| AT&T INC. | KELLOGG, HUBER, HANSEN, TODD, |
| 1120 20th Street, N.W. |   EVANS & FIGEL, P.L.L.C. |
| Washington, D.C. 20036 | 1615 M Street, N.W., Suite 400 |
| | Washington, D.C. 20036 |
| | Tel.: (202) 326-7900 |
| | Fax: (202) 326-7999 |

*Counsel for AT&T Inc.*

April 13, 2007

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 13th day of April, 2007, I served, via ECF, a true and correct copy of the foregoing document and its attachments to:

Mary Catherine Albert
CompTel
900 17th Street, N.W., Suite 400
Washington, D.C. 20006
Tel: (202) 926-6650
malbert@comptel.org

*Counsel for CompTel*

Peter S. Smith
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530-0001
Tel: (202) 307-0372
Fax: (202) 514-8780
peter.smith@usdoj.gov

*Counsel for the Federal Communications Commission*

/s/  Diane M. Cooke

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

COMPTEL,

     Plaintiff,

     v.

FEDERAL COMMUNICATIONS
COMMISSION,

     Defendant.

Civil Action No. 06-01718 (HHK)

### RESPONSE OF INTERVENOR-DEFENDANT AT&T INC. TO PLAINTIFF COMPTEL'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE

Intervenor-Defendant AT&T Inc. ("AT&T") hereby submits this response to Plaintiff CompTel's Statement of Material Facts as to Which There is No Genuine Dispute:

1.     AT&T admits that CompTel requested via email that the Federal Communications Commission ("FCC") provide documents relating to File No. EB-04-IH-0342. CompTel's request speaks for itself. *See* Email from Mary C. Albert, CompTel, to FOIA FCC (Apr. 4, 2005) (Exh. A to Declaration of Kelly P. Dunbar (Feb. 12, 2007) [Docket #19.5] ("Dunbar Decl.")).

2.     AT&T denies the allegation in the first sentence of this paragraph insofar as its suggests that AT&T violated FCC rules relating to the submission of claims for and receipt of universal service support for the New London, Connecticut public schools.

3.     AT&T admits that, on December 16, 2004, the FCC released the order and consent decree in *SBC Communications Inc.*, 19 FCC Rcd 24014, which speaks for itself.

4.     The FCC's Letter of Inquiry of August 24, 2004 speaks for itself.

5.      The first sentence concerns the FCC's Letter of Inquiry, which speaks for itself. The remainder of the paragraph contains conclusions of law to which no response is required.

6.      Admitted.

7.      The FCC's Letter of Inquiry speaks for itself.  The paragraph also contains conclusions of law to which no response is required.

8.      AT&T admits that it submitted a letter to the FCC on May 27, 2005.  The letter of May 27, 2005 speaks for itself.  *See* Letter from Jim Lamoureux, SBC Services, Inc., to Judy Lancaster, Enforcement Bureau, FCC, FOIA Control No. 2005-333 (May 27, 2005) (Dunbar Decl. Exh. B).

9.      AT&T's letter of May 27, 2005 speaks for itself.  *See id.*

10.     AT&T is without sufficient knowledge or information to respond to the alleged facts in this paragraph.

11.     AT&T admits that CompTel submitted a letter to the FCC on June 28, 2005.  The letter of June 28, 2005 speaks for itself.  *See* Letter from Mary C. Albert, CompTel, to Judy Lancaster, Enforcement Bureau, FCC, FOIA Control No. 2005-333 (June 28, 2005) (Dunbar Decl. Exh. C).

12.     AT&T is without sufficient knowledge or information to respond to the facts alleged in this paragraph.

13.     AT&T is without sufficient knowledge or information to respond to the facts alleged in this paragraph.

14.     The paragraph contains conclusions of law to which no response is required.  The Enforcement Bureau's letter of August 5, 2005 speaks for itself.  *See* Letter from William H.

Davenport, Enforcement Bureau, FCC, to Jim Lamoureux, SBC Services, Inc., and Mary Albert, CompTel, FOIA Control No. 2005-333 (Aug. 5, 2005) (Dunbar Decl. Exh. D).

15.    The paragraph contains conclusions of law to which no response is required.  The Enforcement Bureau's letter of August 5, 2005 speaks for itself.  *See id.*

16.    The paragraph contains conclusions of law to which no response is required.  The Enforcement Bureau's letter of August 5, 2005 speaks for itself.  *See id.*

17.    The paragraph contains conclusions of law to which no response is required.  The Enforcement Bureau's letter of August 5, 2005 speaks for itself.  *See id.*

18.    AT&T admits that it timely filed an application for review on August 19, 2005. The application for review speaks for itself.  *See* Letter from Jim Lamoureux, SBC Services, Inc., to Samuel Feder, Acting General Counsel, FCC, FOIA Control No. 2005-333 (Aug. 19, 2005) (Dunbar Decl. Exh. E).

19.    AT&T admits that CompTel filed a response to AT&T's application for review on September 1, 2005.  The response speaks for itself.

20.    AT&T admits that CompTel filed an application for review on September 6, 2005. The application for review speaks for itself.  *See* Letter from Mary Albert, CompTel, to Samuel Feder, Acting General Counsel, FCC, FOIA Control No. 2005-333 (Sept. 6, 2005) (Dunbar Decl. Exh. F).

21.    The application for review speaks for itself.  *See id.*

22.    Admitted.

23.    Admitted.

24.    The Stipulated Scheduling Order and the FCC's Answer to CompTel's Complaint speak for themselves.

25.     AT&T is without sufficient knowledge or information to respond to the facts alleged in this paragraph.

26.     AT&T is without sufficient knowledge or information to respond to the facts alleged in this paragraph.

27.     This paragraph contains conclusions of law to which no response is required.  To the extent that a response is required, AT&T denies that the FCC has failed to explain lawfully why certain documents are properly withheld under the Freedom of Information Act.

Respectfully submitted,

/s/ Colin S. Stretch
_____

| | |
|---|---|
| Gary L. Phillips (D.C. Bar No. 334037) | Colin S. Stretch (D.C. Bar No. 470193) |
| James P. Lamoureux (D.C. Bar No. 431631) | Kelly P. Dunbar (D.C. Bar No. 500038) |
| AT&T INC. | KELLOGG, HUBER, HANSEN, TODD, |
| 1120 20th Street, N.W. |   EVANS & FIGEL, P.L.L.C. |
| Washington, D.C. 20036 | 1615 M Street, N.W., Suite 400 |
| | Washington, D.C. 20036 |
| | Tel.: (202) 326-7900 |
| | Fax: (202) 326-7999 |

*Counsel for AT&T Inc.*

April 13, 2007

4

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

COMPTEL,

      Plaintiff,

      v.

FEDERAL COMMUNICATIONS
COMMISSION,

      Defendant.

Civil Action No. 06-01718 (HHK)

## ORDER DENYING COMPTEL'S MOTION FOR SUMMARY JUDGMENT

For the reasons stated in the Memorandum Opinion filed separately and contemporaneously herewith, it is hereby

ORDERED that the Motion for Summary Judgment filed by Plaintiff CompTel is DENIED. The documents at issue in the case are protected from disclosure pursuant to Exemption 7(C) of the Freedom of Information Act, 5 U.S.C. § 552(b)(7)(C), and applicable regulations of the Federal Communications Commission. In addition, the Federal Communications Commission's Enforcement Bureau properly redacted material from the documents at issue that is confidential and competitively sensitive, and that accordingly is protected from disclosure under Exemption 4 of the Freedom of Information Act, *id.* § 552(b)(4).

IT IS FURTHER ORDERED that this case is dismissed from the docket of the Court. This is a final appealable order. *See* Fed. R. App. P. 4(a).

SO ORDERED.

SIGNED this _____ day of _____, 2007.

_____
HENRY H. KENNEDY, JR.
UNITED STATES DISTRICT JUDGE