## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **COMPTEL,** | ) |
| | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 06CV01718 (HHK) |
| | ) |
| v. | ) |
| | ) |
| **Federal Communications Commission,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

## PLAINTIFF COMPTEL'S OPPOSITION TO THE MOTION OF INTERVENOR-DEFENDANT AT&T FOR SUMMARY JUDGMENT

Plaintiff COMPTEL hereby opposes Defendant-Intervenor AT&T's ("AT&T") Motion For Summary Judgment filed in the above-captioned proceeding. AT&T has failed to show that it is entitled to judgment as a matter of law and for this reason, its Motion must be denied.

As an initial matter, AT&T's Motion is procedurally defective. AT&T devotes the majority of its Memorandum of Law filed in support of the Motion to the argument that the Defendant Federal Communications Commission's ("FCC") Enforcement Bureau erred in its determination that Exemption 7(C) of the Freedom of Information Act ("FOIA"), 5 U.S.C.§552(b)(7)(C), does not shield AT&T's records from disclosure with the exception of the names and other identifying information relating to the individuals mentioned in those records. AT&T has been granted leave to participate in this case as an Intervenor-Defendant. AT&T cannot use COMPTEL's FOIA claim to bootstrap its own "reverse-FOIA" action, which must be filed under the Administrative Procedures Act ("APA"), 5 U.S.C. §706. Even if AT&T had properly brought an appeal of the

FCC's action pursuant to the APA, this Court lacks subject matter jurisdiction to entertain AT&T's claims because the Enforcement Bureau's decision does not constitute final agency action. Nor can AT&T use its intervenor status to seek adjudication of legal issues that are not in dispute between Plaintiff COMPTEL and Defendant FCC. Finally, AT&T cannot prevail on the merits of its Exemption 7(C) claims because it does not have a protectible personal privacy interest necessary to invoke the protection of that Exemption. The Court should deny AT&T's Motion for Summary Judgment for lack of jurisdiction and lack of merit.

## I.    AT&T's Motion for Summary Judgment Is Procedurally Defective

The bulk of AT&T's Memorandum of Law is devoted to AT&T's contention that the FCC's Enforcement Bureau erroneously rejected its arguments that all of AT&T's documents should be withheld from disclosure under Exemption 7(C) of FOIA.[1] Without objection from COMPTEL, the FCC redacted the names and identifying information of individuals identified in AT&T's submissions pursuant to Exemption 7(C).[2] The FCC has not proposed to withhold any other documents or parts thereof pursuant to Exemption 7(C).

Although there is no "live" case or controversy between Plaintiff COMPTEL and Defendant FCC for the Court to decide on the Exemption 7(C) issue, AT&T asks the Court for summary judgment against the FCC to prohibit the FCC from releasing any of

---

[1]    AT&T's Memorandum of Law in support of its Motion for Summary Judgment at 7-22.

[2]    Defendant FCC's Memorandum of Points and Authorities at 25 and Attachment C to the Declaration of Judy Davenport at 2.

[2]    Attachment D to the Declaration of Judy Davenport at 6.

the documents that COMPTEL requested. This the Court cannot do. In *Chrysler Corporation. v. Brown*, 441 U.S. 281 (1979), the Supreme Court held that there is no private right of action under FOIA to block an agency from releasing documents and that District Courts lack subject matter jurisdiction to entertain such claims. *See also*, *e.g.*, *Acumenics Research & Technology v. United States Department of Justice*, 843 F.2d 800, 804 (4th Cir. 1988) (*Chrysler* established that a private party seeking to block an agency's disclosure of information has no private right of action under FOIA).

COMPTEL has sued the FCC for improperly *withholding* all requested records in the more than two years since COMPTEL's initial request was submitted. AT&T—as an Intervenor in support of the Defendant—cannot properly seek resolution of its contention that the FCC inappropriately *refused to withhold* all documents from disclosure under FOIA in this case. If an agency determines that information requested pursuant to FOIA is not exempt from disclosure and must be released, judicial review of that action must proceed under the Administrative Procedure Act, 5 U.S.C. §706. *Chrysler Corp.*, 441 U.S. at 318.

At this juncture, AT&T cannot challenge the Enforcement Bureau's decision under the APA because that decision does not constitute a final agency action. As all parties noted in their Motions for Summary Judgment, the FCC has not yet acted on the applications for review of the Enforcement Bureau's decision filed by either COMPTEL or AT&T in 2005[3] and those applications for review remain pending. It was because of

---

[3]    COMPTEL's Memorandum of Points and Authorities filed in support of its Motion for Summary Judgment at 5; Defendant's Memorandum of Points and Authorities in support of its Motion for Summary Judgment at 6; AT&T's Memorandum of Law in support of its Motion for Summary Judgment at 6.

the FCC's failure to issue a decision within the 20 business days required by law that COMPTEL sought relief in this Court.

### a.    The Court Lacks Subject Matter Jurisdiction To Block The FCC From Releasing Records To COMPTEL

As this Court is well aware, this suit was brought to adjudicate COMPTEL's claim that the FCC has improperly withheld records under the FOIA, and to compel the FCC's compliance with the laws of the United States. The only legal controversy in the present case is that the FCC violated, and continues to violate, the FOIA by improperly withholding records subject to public disclosure. The only statute implicated in this case is FOIA, and the Supreme Court has clearly and forcefully explained that, while the FOIA contains exemptions, these exemptions are not mandatory, and do not authorize courts to foreclose the release of records,

> [s]ubsection (a)(4)(B) gives federal district courts 'jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.' 5 U. S. C. § 552 (a)(4)(B). That provision does not give the authority to bar disclosure, and thus fortifies our belief that Chrysler, and courts which have shared its view, have incorrectly interpreted the exemption provisions of the FOIA.

*Chrysler Corp. v. Brown*, 441 U.S. at 292. Reverse FOIA actions like AT&T's must be brought under the APA. *Occidental Petroleum Corp. v. Securities and Exchange Commission,* 873 F. 2d 325 (D.C. Cir. 1981). Because the FCC has not yet issued a final decision on AT&T's Exemption 7(C) claims, nor released any documents to COMPTEL, however, this Court lacks subject matter jurisdiction to review AT&T's claims under the APA. 5 U.S.C. § 704 (agency action must be final in order to be subject to judicial review); *Franklin v. Massachusetts*, 505 U.S. 788, 795 (1992) (an agency position is not final if it is only a ruling by a subordinate official).

4

Two conditions must be satisfied for an agency action to be final. First, the action must consummate the agency's decision-making process and second, the action must be one by which rights or obligations have been determined or from which legal consequences flow. *Bennett v. Spear*, 520 U.S. 154 (1997). Neither condition is met here. First, the Enforcement Bureau's decision is not the consummation of the agency's decision-making process, but only the first step. The Bureau acted pursuant to delegated authority[4] and its decision does not have the same force and effect as a decision of the FCC. 47 U.S.C.§155(c)(3).[5] *Doss v. Federal Communications Commission*, 1998 U.S.App.Lexis 33911 (D.C. Cir. 1998) (court lacks jurisdiction to hear appeals from decisions made or taken pursuant to a delegation of authority). Second, although the Enforcement Bureau's decision determined that COMPTEL was entitled to certain documents, no documents have been produced and the FCC has stated its intent to withhold all documents from COMPTEL until this Court acts on any dispositive motions.[6]

Under these circumstances, the Court must properly reject AT&T's requests that the Court ignore the Supreme Court's interpretation of FOIA as a disclosure statute, allow AT&T to circumvent the statutory procedures for obtaining judicial review of an agency

---

[4]     47 C.F.R. §0.311.

[5]     Section 155(c)(3) of the Communications Act provides that decisions taken pursuant to delegated authority shall have the same force and effect as decisions of the Federal Communications Commission *unless* parties aggrieved by the decision file applications for review with the Commission. As noted, both AT&T and COMPTEL filed applications for review of the Enforcement Bureau's decision and those applications for review remain pending before the FCC. Only the FCC may "pass upon" applications for review. See 47 U.S.C.§ 155(c)(4).

[6]     Stipulated Scheduling Order at n. 1.

interpretation with which it disagrees under the APA, and grant AT&T, as an Intervenor-Defendant, a judgment against the very Defendant AT&T claims to be supporting.

**b.      The Court Lacks Article III Authority to Resolve AT&T's Claims Regarding the Applicability of Exemption 7(C)**

Without a live controversy on the Exemption 7(C) issue, this Court also lacks jurisdiction to act on AT&T's claims under Article III of the Constitution. *See* U.S. CONST. art. III, § 2 ("judicial Power shall extend to all Cases...and...to controversies"). The Supreme Court has consistently cautioned that "[t]he exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy." See, e.g., *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975).  Similarly, the Court has explained,

> [a] plaintiff must allege that he has been or will in fact be perceptibly harmed by the challenged agency action, not that he can imagine circumstances in which he could be affected by the agency's action.

*Id.* at 402 (internal citations omitted).  COMPTEL has made no allegations that it has been or will be harmed by the Enforcement Bureau's decision on AT&T's Exemption 7(C) claims.  And, as noted above, there is no controversy between Plaintiff COMPTEL and Defendant FCC with respect to the redaction of the personal information of the individuals mentioned in the AT&T documents.   Where, as here,  "both litigants desire precisely the same result, [with respect to AT&T's Exemption 7(C) claims], [t]here is, therefore, no case or controversy within the meaning of Art. III of the Constitution." *Moore v. Charlotte-Mecklenburg Bd. of Education*, 402 U.S. 47, 48 (1971).  Accordingly, the Court should deny AT&T's Motion.

II.    **Exemption 7(C) Does Not Shield AT&T's Records From Disclosure**

Even if AT&T had been able to establish that this Court has subject matter jurisdiction to reverse the FCC's interpretation of Exemption 7(C)—which it did not—the Court would have to reject its plea to impermissibly stretch the "law enforcement" exemption by conferring "personal privacy" rights on large, publicly traded corporations. AT&T maintains that all documents contained in FCC File No. EB-04-IH-0342 are protected from disclosure pursuant to FOIA Exemption 7(C) because they were submitted to the FCC in the course of an investigation into AT&T's business activities and were compiled for law enforcement purposes.[7] There is no foundation for AT&T's position in either the language of FOIA or the case law interpreting that language.

Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes, *but only to the extent* that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of *personal privacy.*"  5 U.S.C. §552(b)(7)(C) (emphasis added). The Enforcement Bureau properly determined that businesses, such as AT&T, "do not possess 'personal privacy' interests as required for application of FOIA Exemption 7(C)."[8]  AT&T challenges that determination here, but offers no statutory or legal support for its contention that the personal privacy interests protected by Exemption 7(C) encompass corporate privacy interests.[9]  It is not surprising that AT&T can produce no support for its argument because it is dead wrong on the law.

---

[7]    AT&T's Memorandum of Law at 4, 7.

[8]    COMPTEL's Statement of Undisputed Facts at Exhibit C, p.6.

[9]    AT&T's Memorandum of Law at 8-14.

The FOIA embodies a policy authorizing liberal disclosure of government records. Such records must be produced upon request unless they are specifically exempted from disclosure pursuant to one of the statute's nine exemptions. In light of the liberal disclosure policy of the statute, the exemptions must be narrowly construed in favor of disclosure. *National Labor Relations Board v. Robbins Tire & Rubber Co.,* 437 U.S. 214 (1978). What AT&T advocates is the opposite of liberal disclosure. Indeed, under AT&T's theory, all law enforcement investigatory records pertaining to corporations would be immune from disclosure under FOIA. The Supreme Court has made very clear that such an interpretation of Exemption 7 is not consistent with the language of the statute. *See FBI v. Abrahmson,* 456 U.S. 615, 627-628 (1982) (all law enforcement files are not entitled to a blanket exemption from disclosure; government must demonstrate one of six types of harm to prevent production of records compiled for law enforcement purposes); *National Labor Relations Board v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 227-228 (Exemption 7 amended in 1974 to clarify Congressional intent and override judicial decisions finding that all investigatory files compiled for law enforcement purposes exempt from disclosure).

AT&T asserts that disclosure of any of the documents it submitted to the FCC would cause an unwarranted invasion of its "personal privacy," but none of the cases it cites support the argument that large, publicly traded corporations have a personal privacy interest protected by Exemption 7(C). Significantly, AT&T was unable to unearth one case finding that large publicly traded corporations possess protectible privacy interests within the meaning of Exemption 7(C). All of the cases AT&T does cite relate solely to the personal privacy interests of individuals. For example, AT&T

relies on *National Archives & Records Administration v. Favish*, 541 U.S. 157 (2004)[10]

which held that members of a deceased person's family had a personal privacy interest

recognized by Exemption 7(C) in death scene photographs and that disclosure of those

photographs would constitute an unwarranted invasion of that privacy. The quotation

that AT&T cites from *Carpenter v. United States Department of Justice*, 470 F. 3d 434

(2006)[11] is actually the lead-in to a discussion of Exemption 7(C)'s application to

*individual* (not corporate) privacy interests. Read in context, the quote directly

undermines AT&T's contention that corporations have privacy interests protected by

Exemption 7(C):

> The privacy interest protected by Exemption 7(C) is not a "cramped" or limited
> notion of personal privacy. [Citations omitted] Instead, Exemption 7(C) protects
> a broad notion of personal privacy, including an *individual's* interest in avoiding
> disclosure of personal matters. [Citations omitted] This notion of privacy
> "encompass[es] the *individual's* control of information concerning his or her
> person," and "when, how, and to what extent information about them is
> communicated to others. [Citations omitted] The *individual*, and not the agency
> in possession of the records, controls the privacy interest.

470 F. 3d at 438 (emphasis added). See also, *Davin v. Department of Justice*, 60 F. 3d

1043, 1058 (3d Circuit 1995)[12] (*individuals* involved in FBI investigations have privacy

interest in not having their identities disclosed); *Foster v. Untied States Department of*

*Justice*, 933 F. Supp. 687 (E.D. Mich. 1996)[13] (IRS properly invoked Exemption 7(C) in

redacting identifying information concerning government agency employees,

---

[10]     AT&T's Memorandum of Law at 8.

[11]     AT&T's Memorandum of Law at 8-9.

[12]     AT&T's Memorandum of Law at 11.

[13]     *Id.*

investigation targets and prospective witnesses); *Voinche v. FBI*, 940 F. Supp. 323
(D.D.C. 1996)[14] (FBI properly invoked Exemption 7(C) to withhold names and
identifying information of individuals associated with, or focus of, FBI investigation);
*United States Department of Justice v. Reporters Committee for Freedom of the Press*,
489 U.S. 749 (1989)[15] (disclosure of individual's rap sheet or criminal identification
record constitutes unwarranted invasion of personal privacy prohibited by Exemption
7(C)); *SafeCard Services, Inc. v. SEC*, 926 F. 2d 1197 (D.C. Cir. 1991)[16] (access to
names and other identifying information on individuals appearing in agency's law
enforcement files exempt from disclosure under Exemption 7(C)); *Campaign for Family
Farms v. Glickman*, 200 F. 3d 1180 (8th Cir. 2000)[17] (the purpose of the personal privacy
exemption is to protect the privacy of *individuals*).

Contrary to AT&T's position that the corporation itself has a "personal privacy"
interest, the law in this Circuit is clear that the personal privacy exemption of 7(C) does
not apply to corporations and other non-individuals.[18] Moreover, AT&T's repeated
complaints that release of the details surrounding its receipt of federal E-rate funds could

---

[14]    *Id.*

[15]    *Id.* at 14.

[16]    *Id.* at 15.

[17]    *Id.* at 21.

[18]    *See also United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950)
("corporations can claim no equality with individuals in the enjoyment of a right to
privacy. They are endowed with public attributes. They have a collective impact upon
society, from which they derive the privilege of acting as artificial entities. ")

be used to "embarrass," "harass" or "stigmatize" AT&T[19] provide no basis for

withholding the information under any FOIA Exemption. *The Washington Post*

*Company v. United States Department of Justice*, 863 F.2d 96, 100 (D.C. Cir. 1988)

(report revealing business judgments and relationships of corporation and its employees

does not qualify for exemption under 7(C) even if disclosure might tarnish someone's

professional reputation); *Cohen v. Environmental Protection Agency*, 575 F. Supp. 425

(D.D.C. 1983) (privacy exemption of 7(C) does not apply to information regarding

professional or business activities and information must be released even if a professional

reputation may be tarnished); *see also, Washington Research Project, Inc. v. Department*

*of Health, Education and Welfare*, 366 F. Supp. 929, 938 (D.D.C. 1973) (the right of

privacy envisioned in FOIA is personal and cannot be claimed by a corporation or

association); *Ivanhoe Citrus Association v. Handley*, 612 F. Supp. 1560 (D.D.C. 1985)

(corporations and business associations have no protectible privacy interests under

FOIA); *The Washington Post Company v. United States Department of Agriculture*, 943

F. Supp. 31 (D.D.C. 1996) (business entities have no "personal" privacy interests under

FOIA);; *Long v. United States Department of Justice*, 450 F. Supp. 42, 72-73 (D.D.C.

2006) (information relating to corporations not exempt from disclosure under 7(C)).

    AT&T's contention that the Court is required to "'balance' the public interest in

disclosure against the 'privacy interests that are at stake'"[20] has no merit whatsoever.

As a large publicly traded corporate entity, AT&T does not have a protectible privacy

---

[19]    AT&T's Memorandum of Law at 2, 6, 11-12, 19, 20. See also Declaration of
Ann Rotatori at ¶¶ 2, 8, 9, 10, 11, 12, 18.

[20]    AT&T's Memorandum of Law at 16-18.

interest within the meaning of Exemption 7(C), much as it wishes it otherwise. For that reason, the Court is not required to balance AT&T's non-existent corporate privacy interest against the public interest in disclosure.

COMPTEL informed the FCC that to the extent that any of the responsive documents contain the names and other identifying information of individuals, including AT&T employees, it had no objection to the redaction of that personal information relating to individuals. In its June 28, 2005 letter to the FCC responding to AT&T's belated request for confidential treatment of its submissions, COMPTEL clearly stated that "[t]o the extent any of the responsive documents contain the names, telephone numbers, email addresses and physical addresses" of AT&T employees, COMPTEL had no objection to the redaction of such information before the documents were released.[21] The Enforcement Bureau's decision stated that AT&T's submissions would be redacted to withhold names and identifying information of individuals.[22] COMPTEL is not challenging these redactions so the Court need not even consider AT&T's argument relating to any privacy interests these individuals may have.[23]

In what can only be termed a particularly desperate attempt to prevent disclosure, AT&T argues that even if the FCC could release the requested records under FOIA, Section 0.457(g) of the FCC's rules, 47 C. F. R. §0.457(g), prohibits disclosure.[24]

---

[21]     Defendant FCC's Memorandum of Points and Authorities at 25 and Attachment C to the Declaration of Judy Davenport at 2.

[22]     Attachment D to the Declaration of Judy Davenport at 6.

[23]     AT&T's Memorandum of Law at 18.

[24]     *Id.* at 21-22.

Again, AT&T is wide of the mark. Section 0.457 basically tracks the language of

Exemption 7(C). Just as AT&T possess no protectible "personal" privacy interest under

Exemption 7, it possesses no protectible "personal" privacy interest under Section 0.457

of the FCC's rules. *Chadmoore Communications, Inc.*, 13 FCC Rcd 23943 (1998) (FCC

licensees have no "personal" privacy interest protected by Exemption 7(C) in their

capacity as holders of commercial radio licenses).

## III.    Exemption 4 Does Not Protect Any of AT&T's Documents From Disclosure

In its Opposition to the FCC's Motion For Summary Judgment, COMPTEL

demonstrated that the FCC had failed to meet its burden of proving that any of the

documents requested were protected from disclosure under Exemption 4 and incorporates

those arguments here by reference.[25] Although AT&T attempts to bolster the FCC's

arguments with its own allegations of potential competitive harm resulting from

disclosure,[26] AT&T's arguments are as vague and conclusory as the FCC's and

insufficient to allow the Court to determine whether the FCC has properly invoked

Exemption 4 to withhold any documents.[27]    The claims that release of the information

would "embarrass," "harass" or "stigmatize" AT&T or subject it to criticism "by making

public" "the what, when, where, why and how of AT&T's alleged violations of FCC

rules"[28] do not constitute "competitive harm" within the meaning of Exemption 4. *See*

---

[25]    Plaintiff COMPTEL's Opposition to the FCC's Motion For Summary Judgment at 6-16.

[26]    AT&T's Memorandum of Law at 25-26; Declaration of Ann Rotatori at ¶¶ 14-16.

[27]    Unlike the FCC, AT&T at least provided a broad description of some of the documents the FCC has withheld. See Declaration of Ann Rotatori at ¶7.

[28]    Declaration of Ann Rotatori at ¶¶ 9-13.

*Public Citizen Health Research Group v. Federal Drug Administration*, 704 F. 2d 1280, 1291 (D.C. Cir. 1983) (competitive harm referenced in Exemption 4 does not include injury to competitive position as might flow from customer or employee disgruntlement, or from embarrassing publicity attendant upon public revelation of illegal conduct). Competitive harm is "harm flowing from the affirmative use of proprietary information by competitors." *CNA Financial Corporation v. Donovan*, 830 F. 2d1132, 1154 (D.C. Cir. 1987).

## IV.    The Court Should Strike The Conclusions of Law, Speculation and Opinion That AT&T Characterizes As Undisputed Material Facts

In addition to asserting legal arguments that are not sustainable, AT&T has included conclusions of law, speculation and opinions in its Proposed Statement of Undisputed Material Facts. As set forth below, these assertions are neither statements of "fact" nor undisputed and should be stricken.

Paragraphs 16 and 23 of AT&T's "Proposed Statement of Undisputed Material Facts" must be stricken, because they contain conclusions of law that are properly the domain of the Court, and not AT&T. At paragraph 16, AT&T alleges that "it is entitled to the protection of 'personal privacy' provided in Exemption 7(C)." As discussed above, COMPTEL vigorously disputes that AT&T has a "personal privacy" interest. AT&T cited not one case where a corporation or other business entity was found by a court to have a protectible privacy interest under Exemption 7(C). AT&T cannot eliminate the impact of all of the judicial precedent that contradicts its position simply by alleging that its entitlement to the protection of the personal privacy exemption of 7(C) is an undisputed fact. The Court should strike Paragraph 16 of AT&T's statement of undisputed facts.

14

Similarly, in Paragraph 23, AT&T alleges that release of information relating to the cost and pricing of its services, its billing and invoices procedures and practices and the names of customers, vendors and representatives of customers and vendors "would be likely to result in substantial competitive harm to AT&T." Whether release of the information would be likely to result in substantial competitive harm to AT&T is a question of law for the Court to decide. Accordingly, the Court should strike AT&T's legal conclusion from Paragraph 23.

In Paragraph 17, AT&T speculates that if the documents were released, "AT&T as a corporation and AT&T employees would face public embarrassment, harassment and stigma" and that COMPTEL "could use the documents to make representations regarding how and why AT&T came to submit the arguably improper invoices, and it could further rely on them to make representations regarding the adequacy of AT&T's internal controls." AT&T's thoughts are not undisputed material facts, but rank speculation that should be stricken.

Likewise in Paragraph 18, AT&T continues its irrelevant speculation that "[t]here is no evidence that the documents CompTel seeks would shed any light on alleged impropriety by the FCC or any other government agency." Not having seen any of the documents, COMPTEL has not "alleged" any impropriety by the FCC or any other government agency. Again, AT&T's assertion is not an undisputed material fact and should be stricken.

Finally, at Paragraph 22, AT&T expresses the opinion that "the market for providing telecommunications services is vibrantly competitive. . . .Numerous companies compete aggressively in the marketplace for educational customers." These are neither

statements of fact nor undisputed. The day after AT&T filed its Motion for Summary Judgment, two former AT&T employees pled guilty to mail fraud charges related to a scheme to defraud the E-rate program in connection with funding provided to the Hartford, New London, New Haven and Bridgeport, Connecticut school districts. The fraud included submission of invoices for work never performed and submission of inflated invoices.[29] A "vibrantly competitive" market would not have allowed AT&T to get away with artificially inflating the prices charged to the four largest school districts in Connecticut or to demand payment for work never performed. Paragraph 22 of AT&T's Statement of Undisputed Facts should therefore be stricken.

## CONCLUSION

For the foregoing reasons, the Court should deny AT&T's Motion for Summary Judgment and should strike Paragraphs 16, 17, 18, 22 and 23 of AT&T's Proposed Statement of Undisputed Material Facts.

April 13, 2007                                    Respectfully submitted,

                                                 _____
                                                 Mary C. Albert, DC Bar #347617
                                                 Jonathan D. Lee, D/C/ Bar #435586
                                                 COMPTEL
                                                 900 17th Street N.W., Suite 400
                                                 Washington, D.C. 20006
                                                 (202) 296-6650
                                                 malbert@comptel.org
                                                 jlee@comptel.org

---

[29]    See "Two Rhode Island Men Plead Guilty To Defrauding Federal E-Rate Program," United States Attorney's Office District of Connecticut Press Release dated February 13, 2007, attached as Exhibit A to Plaintiff COMPTEL's Statement of Material Facts As To Which There Is A Genuine Dispute.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

COMPTEL,                                    )
                                           )
        Plaintiff,                       )   Civil Action No. 06CV01718 (HHK)
                                           )
    v.                                   )
                                           )
**Federal Communications Commission,**      )
                                           )
        Defendant.                       )
                                           )

## PLAINTIFF COMPTEL'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS A GENUINE DISPUTE

Pursuant to LCvR 7(h) and in response to Intervenor-Defendant AT&T's Motion For Summary Judgment and Proposed Statement of Undisputed Material Facts submitted in support thereof, Plaintiff COMPTEL hereby submits this Statement of Material Facts As To Which There Is A Genuine Dispute.

1. At Paragraph 16, AT&T alleges that as a corporation, it is "entitled to the protection of the 'personal privacy' provided in FOIA Exemption 7(C). AT&T's allegation is an erroneous conclusion of law, not a statement of fact, and it is entirely unsupported by the case law.

2. In Paragraph 17, AT&T speculates that if the documents were released, "AT&T as a corporation and AT&T employees would face public embarrassment, harassment and stigma" and that COMPTEL "could use the documents to make representations regarding how and why AT&T came to submit the arguably improper

invoices, and it could further rely on them to make representations regarding the adequacy of AT&T's internal controls." AT&T's thoughts are not undisputed material facts, but rank speculation that should be stricken.

3. In Paragraph 18, AT&T continues its irrelevant speculation that "[t]here is no evidence that the documents CompTel seeks would shed any light on alleged impropriety by the FCC or any other government agency." Not having seen any of the documents, COMPTEL has not "alleged" any impropriety by the FCC or any other government agency. Again, AT&T's assertion is not an undisputed material "fact" and should be stricken.

4. At Paragraph 22, AT&T expresses the opinion that "the market for providing telecommunications services is vibrantly competitive. . . .Numerous companies compete aggressively in the marketplace for educational customers." These are neither statements of fact nor undisputed. The day after AT&T filed its Motion for Summary Judgment, two former AT&T employees pled guilty to mail fraud charges related to a scheme to defraud the E-rate program in connection with funding provided to the Hartford, New London, New Haven and Bridgeport, Connecticut school districts. The fraud included submission of invoices for work never performed and submission of inflated invoices.[1] A "vibrantly competitive" market would not have allowed AT&T to get away with artificially inflating the prices charged to the four largest school districts in Connecticut or to demand payment for work never performed. Paragraph 22 of AT&T's Statement of Undisputed Facts should therefore be stricken.

---

[1]     See "Two Rhode Island Men Plead Guilty To Defrauding Federal E-Rate Program," United States Attorney's Office District of Connecticut Press Release dated February 13, 2007, attached hereto as Exhibit A.

5.  At Paragraph 23, AT&T alleges that release of the documents responsive to

COMPTEL's request "would be likely to result in substantial competitive harm to

AT&T."   AT&T's allegation is a conclusion of law, not a statement of fact, which

COMPTEL disputes.


April 13, 2007                                        Respectfully submitted,

                                                     _Mary C Albert_____
                                                     Mary C. Albert, DC Bar #347617
                                                     Jonathan D. Lee, D/C/ Bar #435586
                                                     COMPTEL
                                                     900 17th Street N.W., Suite 400
                                                     Washington, D.C. 20006
                                                     (202) 296-6650
                                                     malbert@comptel.org
                                                     jlee@comptel.org

# Exhibit A



**United States Attorney's Office District of Connecticut**
**Press Release**

February 13, 2007

**TWO RHODE ISLAND MEN PLEAD GUILTY TO DEFRAUDING FEDERAL E-RATE PROGRAM**

Kevin J. O'Connor, United States Attorney for the District of Connecticut, announced that **RICHARD E. BROWN**, age 50, of 25 Wincheck Road, Rockville, Rhode Island, and **KEITH J. MADEIROS**, age 40, of 8 Ricci Road, Westerly, Rhode Island, waived their right to indictment and pleaded guilty today before United States Magistrate Judge Donna F. Martinez in Hartford to mail fraud charges related to a scheme to defraud the Federal Communications Commission ("FCC") in connection with the E-Rate program, which provides funding to qualifying school districts nationwide to upgrade their internet access capabilities. BROWN, formerly an account manager for *Southwestern Bell Communications* ("SBC"), pleaded guilty to three counts of mail fraud related to the scheme, and MADEIROS, also a former SBC account manager, pleaded guilty to his involvement in one of those schemes.

To fund the E-Rate program, the FCC mandates that telecommunication companies throughout the country add surcharges to the bills of their customers, that, after collected, are forwarded to the FCC. Applications by school districts are reviewed and awards to school districts are made by *Universal Services Administrative Company* ("USAC"), the FCC designated administrator of the program. In Connecticut, the Hartford, New London, New Haven and Bridgeport school districts received E-Rate funding. Each school district selected *SBC/Southern New England Telephone* ("SNET") as the prime contractor to perform its internet upgrades. *American Networks International, Inc.* ("ANI") of Bristol, a company that installs telecommunication wiring, was a first-tier subcontractor to SBC/SNET.

The scheme to which both BROWN and MADEIROS pleaded guilty involved Scott Federowicz, ANI's project manager. According to documents filed with the Court and statements made in court, in late 2002, BROWN and MADEIROS approached Federowicz with a proposal that he approve for payment invoices submitted by two purported second-tier subcontractors, *MRB Associates* ("MRB") and *Responsive Communications Services, Inc.* ("RCS"). MRB was BROWN's creation, and RCS was MADEIROS'. Each existed in name only, and neither performed any work. Initially, Federowicz agreed to do as he was asked to ensure that ANI continued to receive business from SBC/SNET. Later, he asked to be paid and received $16,917 from BROWN and MADEIROS.

MRB and RCS submitted to ANI sham invoices totaling $453,203, which Federowicz approved. ANI paid the invoices, unaware that no work had been performed, and BROWN and MADEIROS split the money. ANI invoiced SBC/SNET for these expenses, and SBC/SNET, in turn, invoiced the FCC

through USAC.

Federowicz has pleaded guilty to his involvement in the E-Rate fraud scheme and to an unrelated scheme to defraud ANI. He is currently awaiting sentencing.

BROWN and MADEIROS also were involved in two other schemes to defraud the E-Rate program, although only BROWN has been charged. In one, BROWN and MADEIROS and two other individuals, one of whom was also an SBC employee, decided that engineers would be hired for certain E-Rate funded school district projects, the costs for which would be billed first to SBC/SNET, and later to an SBC/SNET subcontractor. The co-schemer who was not an SBC employee arranged for the hiring of the engineers, and also arranged for the billings to SBC/SNET and to the subcontractor for their services. However, those billings, which SBC/SNET paid and then invoiced to the FCC, were inflated by approximately $503,000. That money was split primarily among BROWN, MADEIROS and the non-SBC employee.

In approximately October 2003, John Doe III, a former SBC employee, became an employee of a company that was a first-tier subcontractor to SBC. BROWN and MADEIROS entered into an arrangement with John Doe III similar to the one that they had with Federowicz. John Doe III agreed to accept invoices submitted by BROWN's AND MADEIROS' purported business and approve them for payment, resulting in his company making payment on those invoices. From November 16, 2003 through January 11, 2004, MADEIROS submitted five RCS invoices totaling $161,93 for work allegedly performed on the New Haven school district E-Rate funded project, and RCS was paid that amount by John Doe III's company.

Instead of using MRB, BROWN created another fictitious business, *Chariho Associates*. On January 2, 2004 and February 2, 2004, BROWN submitted eight *Chariho* invoices totaling $446,572 to John Doe III's company for work allegedly performed on the New London and New Haven school district's E-Rate funded projects, and BROWN, through *Chariho*, was paid that amount.

It is not clear how the money paid to RCS was divided. However, of the $446,572 that was paid to *Chariho*, BROWN gave John Doe III $175,199 and MADEIROS $103,937. BROWN kept $167,432 for himself.

BROWN and MADEIROS are scheduled to be sentenced by Chief United States District Judge Robert N. Chatigny in Hartford on May 4, 2007, at which time BROWN faces a maximum term of imprisonment of 60 years and a fine of up to $750,000, and MADEIROS faces a maximum term of imprisonment of 20 years and a fine of up to $250,000.

United States Attorney O'Connor said the investigation is continuing.

This case is being investigated by the Federal Bureau of Investigation and is being prosecuted by Assistant United States Attorney Calvin B. Kurimai.

**CONTACT:**    **U.S. ATTORNEY'S OFFICE**
Tom Carson
(203) 821-3722
thomas.carson@usdoj.gov

Home • Privacy Policy • USAO Homepage • Department of Justice • USA.gov • Project Safe
Neighborhoods • PSN Grants • www.regulations.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                    )
**COMPTEL,**                        )
                                    )
          Plaintiff,                )  Civil Action No. 06CV01718 (HHK)
                                    )
     v.                             )
                                    )
**Federal Communications Commission,**  )
                                    )
          Defendant.                )
_____)

### [PROPOSED] ORDER

Upon consideration of Defendant –Intervenor AT&T's Motion for Summary

Judgment, Plaintiff COMPTEL's Opposition thereto and the entire record herein, it is

hereby

**ORDERED** that AT&T's Motion for Summary Judgment is **DENIED.**


Dated:_____, 2007        _____
                                          Henry H. Kennedy, Jr.
                                          United States District Judge
                                            for the District of Columbia