# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

COMPTEL,

      Plaintiff,

      v.

FEDERAL COMMUNICATIONS
COMMISSION,

      Defendant.

Civil Action No. 06-01718 (HHK)

## REPLY OF INTERVENOR-DEFENDANT AT&T INC. IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Gary L. Phillips (D.C. Bar No. 334037)
James P. Lamoureux (D.C. Bar No. 431631)
AT&T INC.
1120 20th Street, N.W.
Washington, D.C. 20036

Colin S. Stretch (D.C. Bar No. 470193)
Kelly P. Dunbar (D.C. Bar No. 500038)
KELLOGG, HUBER, HANSEN, TODD,
  EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036

*Counsel for AT&T Inc.*

## TABLE OF CONTENTS

Page

INTRODUCTION AND SUMMARY ............................................................................................1

ARGUMENT ...........................................................................................................................2

    I.    AT&T'S MOTION IS PROCEDURALLY PROPER ............................................2

    II.    AT&T'S DOCUMENTS ARE PROPERLY WITHHELD....................................7

        A.    AT&T's Documents Fit Within FOIA Exemption 7(C).............................7

        B.    In the Alternative, the Material Redacted by the FCC is Protected Under Exemption 4 ...................................................................................14

    III.    AT&T'S PROPOSED STATEMENT OF FACTS IS PROPER..........................16

CONCLUSION.......................................................................................................................17

# TABLE OF AUTHORITIES

Page

**Cases**

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937).......................................................6

*Bast v. Department of Justice*, 665 F.2d 1251 (D.C. Cir. 1981)....................................10

*Bennett v. Spear*, 520 U.S. 154 (1997) ...........................................................................5

*Better Gov't Ass'n v. Department of State*, 780 F.2d 86 (D.C. Cir. 1986) .....................6

*Burlington N. Inc. v. ICC*, 462 F.2d 280 (D.C. Cir. 1972) ..............................................8

*CAB v. United Airlines, Inc.*, 520 U.S. 154 (1997)..........................................................8

*Delaware River Stevedores v. DiFidelto*, 440 F.3d 615 (3d Cir. 2006) ..........................7

*Department of Defense v. Federal Labor Relations Auth.*, 510 U.S. 487 (1994).........13

*Department of Justice v. Reporters Comm. for Freedom of the Press*,
    489 U.S. 749 (1989)..................................................................................8, 10, 12, 13

*Department of Justice v. Tax Analysts*, 492 U.S. 136 (1989) .........................................4

*G.M. Leasing Corp. v. United States*, 429 U.S. 338 (1977) ............................................8

*Halperin v. Kissinger*, 807 F.2d 180 (D.C. Cir. 1986) .................................................11

*Hopkins v. Department of Housing & Urban Dev.*, 929 F.2d 81 (2d Cir. 1991).......9, 10

*Jama v. Immigration & Customs Enforcement*, 543 U.S. 335 (2005).............................8

*James Madison Ltd. v. Ludwig*, 82 F.3d 1085 (D.C. Cir. 1996).....................................6

*John Doe Agency v. John Doe Corp.*, 493 U.S. 146 (1989) .........................................10

*Judicial Watch, Inc. v. FDA*, 449 F.3d 141 (D.C. Cir. 2006) .............................2, 9, 11

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ......................................................6

*National Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004) ..............8, 10, 13

*National Parks & Conservation Ass'n v. Kleppe*, 547 F.2d 673 (D.C. Cir. 1976) ........11

*Oglesby v. Department of Army*, 79 F.3d 1172 (D.C. Cir. 1996) ...................................................15

*SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991) ....................................................13

*Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26 (1976)..................................................6, 7

*Sims v. CIA*, 642 F.2d 562 (D.C. Cir. 1980) ..............................................................................11

*United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980) ...........................................................8

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950)...................................................................8

*Washington Post Co. v. Department of Justice*, 863 F.2d 96 (D.C. Cir. 1988) ............................11

## STATUTES, RULES, and REGULATIONS

5 U.S.C. § 551(2) ...........................................................................................................................7

5 U.S.C. § 552(a)(4)(B) ..................................................................................................................4

5 U.S.C. § 552(b)(4) .......................................................................................................................1

5 U.S.C. § 552(b)(6) .......................................................................................................................9

5 U.S.C. § 552(b)(7)(C) ..................................................................................................................1

47 C.F.R. § 0.457(g) .......................................................................................................................4

47 C.F.R. § 54.501(d)(3)................................................................................................................15

LCvR 7(h) .....................................................................................................................................13

## OTHER MATERIALS

Richard H. Fallon *et al.*, *Hart and Wechsler's The Federal Courts and The Federal System* (4th ed. 1996) ...................................................................................7

**INTRODUCTION AND SUMMARY**

In this action, CompTel is attempting to use the Freedom of Information Act ("FOIA") to gain access to private internal documents that belong to AT&T Inc. ("AT&T"), that shed no light on the workings of the government, and that are in the hands of the Federal Communications Commission ("FCC") only because of an agency law-enforcement investigation. AT&T's motion for summary judgment, filed on February 12, 2007, explained that all of the AT&T documents that CompTel seeks are protected under the FOIA's law-enforcement exemption (Exemption 7(C)), 5 U.S.C. § 552(b)(7)(C), and in the alternative that the portions of the documents the FCC redacted are protected under the FOIA's confidential commercial information exemption (Exemption 4), *id.* § 552(b)(4).[1] In this reply brief in support of its motion for summary judgment, AT&T reiterates those points and responds to the points made in CompTel's April 13, 2007 opposition.

In opposing AT&T's motion for summary judgment, CompTel contends that, because the FCC has not yet finally resolved AT&T's claim under Exemption 7(C), this Court has no jurisdiction to reach that claim. But AT&T is not challenging a decision of the FCC; rather, AT&T has intervened in the case and is *defending* against CompTel's claim that it is entitled to disclosure of AT&T's documents, on the theory that the documents are protected by Exemption 7(C) and the FCC's rules. This Court plainly has jurisdiction to resolve the merits of that defense, as CompTel may lawfully obtain AT&T's documents only if they do not fit within a FOIA exemption and are not protected by the FCC's rules. Were it otherwise, *CompTel* would

---

[1] In AT&T's April 13, 2007 opposition to CompTel's motion for summary judgment, AT&T again discussed its Exemption 7(C) and 4 positions and further established that the result that CompTel seeks here – court-ordered disclosure as a result of the FCC's delay in acting on CompTel's FOIA request – is unsupported in the statute or case law implementing it.

lack Article III standing, because the Court would be required to remand the case to the FCC and could not order the disclosure remedy that CompTel seeks.

On the merits, CompTel's position that AT&T's documents are not protected by Exemption 7(C) boils down to the claim that corporations are categorically excluded from invoking that exemption. But, as AT&T has explained – and as CompTel does not seriously dispute – the text of Exemption 7(C) encompasses corporations. As a result, corporations, like individuals, may invoke the exemption when, as here, disclosure of private documents would result in embarrassment, harassment, or stigmatization. That reading of Exemption 7(C) is in accord with the D.C. Circuit's recent decision in *Judicial Watch, Inc. v. FDA*, 449 F.3d 141 (D.C. Cir. 2006), which held that companies and businesses may invoke the "personal privacy" protections of the FOIA.

In the alternative, CompTel provides no reason to doubt that the material in AT&T's documents that the FCC redacted is confidential, commercially sensitive, and therefore exempt from disclosure under Exemption 4. Those redactions are supported by declarations submitted by both the FCC and AT&T that describe the redacted material as well as its sensitivity, and nothing CompTel says is to the contrary.

Finally, CompTel's request to strike certain of AT&T's statements of fact is unavailing. The facts that AT&T proposed as undisputed are amply supported by the record, including by the largely uncontested declaration filed by AT&T official Ann Rotatori.

## ARGUMENT

## I.    AT&T'S MOTION IS PROCEDURALLY PROPER

AT&T's memorandum in support of its motion for summary judgment explained in detail that the AT&T documents that CompTel seeks are protected by the FOIA's law-enforcement exemption (Exemption 7(C)) and that, therefore, they cannot be disclosed pursuant to the FCC's

rules.  CompTel's lead argument (at 2) is that AT&T's argument is "procedurally defective" because AT&T's administrative appeal raising its Exemption 7(C) argument, like CompTel's own appeal seeking disclosure, remains pending before the FCC.  In CompTel's view, the pendency of AT&T's administrative appeal means that AT&T is, in this Court, improperly challenging a non-final FCC decision.

CompTel's argument fails for two reasons:  first, AT&T's motion for summary judgment with respect to Exemption 7(C) does not challenge an FCC decision; and, second, if this Court cannot resolve the Exemption 7(C) argument, CompTel itself lacks standing.

   **A.**    CompTel's procedural arguments are predicated on the mistaken assertion that AT&T is challenging an *agency* action.  It is not.  Rather, AT&T, as an Intervenor-Defendant, is defending against *CompTel's* entitlement to disclosure of AT&T's documents.

CompTel filed the instant action seeking a judicial order requiring the FCC to disclose documents in an Enforcement Bureau investigative file.[2]  Because many of the documents that CompTel requested are documents of AT&T, AT&T intervened as a defendant to challenge CompTel's entitlement to such an order.  AT&T is thus not "challeng[ing] the Enforcement Bureau's decision," as CompTel states (at 3); rather, in the posture of this case, AT&T is challenging CompTel's legal entitlement to disclosure of AT&T's documents by showing that those documents are protected by the FOIA.

---

[2] *See* CompTel Complaint, Demand for Relief (Oct. 5, 2006) ("Compl.") [Docket #1] (asking for order "compel[ling]" FCC "to produce . . . the documents requested by COMPTEL"); *see also* Plaintiff CompTel's Memorandum of Points and Authorities in Opposition to Defendant Federal Communications Commission's Motion for Summary Judgment 2 (Apr. 13, 2007) ("CompTel FCC Opp.") [Docket #24] ("COMPTEL is entitled to an order from the Court directing the FCC to release all documents that it has improperly withheld").

AT&T's specific argument with respect to Exemption 7(C) is that disclosure of AT&T's documents would be unlawful, first, because AT&T's documents fit within Exemption 7(C), and, second, because, although Exemption 7(C) does not prevent the FCC from disclosing the documents of its own force, FCC regulations do. *See* 47 C.F.R. § 0.457(g); Memorandum of Law in Support of Motion for Summary Judgment of Intervenor-Defendant AT&T Inc. 21-22 (Feb. 12, 2007) ("AT&T Mem.") [Docket #19.1]. In other words, AT&T's documents must be withheld under the FCC's rules – and CompTel is therefore not entitled to them – if they fall within the scope of Exemption 7(C). *See Department of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989) ("agency records which do not fall within *one* of the [FOIA's] exemptions are 'improperly withheld'") (emphasis added). AT&T is therefore not challenging a decision of the Enforcement Bureau, as CompTel posits, but is advancing a reason that CompTel is not entitled to the remedy it seeks – namely, disclosure of AT&T's documents.

CompTel nevertheless argues that this Court lacks subject matter jurisdiction to resolve the application of Exemption 7(C) here. That is incorrect. CompTel invoked 5 U.S.C. § 552(a)(4)(B) as the basis for this Court's jurisdiction. *See* Compl. ¶ 2. That provision states that a district court "has jurisdiction to enjoin the agency from withholding agency records . . . *improperly withheld*." 5 U.S.C. § 552(a)(4)(B) (emphasis added); *see* CompTel FCC Opp. 5 n.8 (this Court has jurisdiction to compel production of documents "improperly withheld"). AT&T's documents are *properly* withheld if they fit within Exemption 7(C) and, therefore, are protected from disclosure by the FCC's rules. AT&T as a defendant therefore need not show that it has Article III standing – indeed, AT&T has not asked for any relief other than summary judgment denying CompTel's entitlement to disclosure – because this Court's jurisdiction is provided by CompTel's request for relief: CompTel is entitled to an order enjoining the FCC

from withholding AT&T's documents only if the documents are "improperly withheld," which demands resolution of the Exemption 7(C) issue. For that reason, there plainly is a "live" controversy between the parties: CompTel believes that it is entitled to AT&T's documents; AT&T believes those documents are properly withheld. There is therefore no Article III barrier to this Court's resolution of AT&T's Exemption 7(C) argument.

CompTel's related concern (at 4-5) with the absence of a final FCC decision is wide of the mark. *First*, as explained above, AT&T is not seeking "a judgment against" the FCC, as CompTel states (at 6); AT&T is explaining why CompTel's request for disclosure is unwarranted. *Second*, and in any event, the purposes of the finality requirement of the Administrative Procedure Act are not implicated here. The FCC has set forth its view of the scope of Exemption 7(C). *See* Defendant's Memorandum in Opposition to Plaintiff CompTel's Motion for Summary Judgment and Response to Intervenor AT&T's Motion for Summary Judgment 16-18 (Apr. 13, 2007) ("FCC Opp.") [Docket #26]. Beyond that, the FCC has stated that it will not release any documents until this Court resolves the issues presented. *See* Stipulated Scheduling Order n.1 (Dec. 7, 2006) [Docket #12]; *see also* FCC Opp. 7 (the "FCC will refrain from releasing any records until the Court has resolved the pending motions"). Given those facts and the posture of this case, it is beside the point that the agency has not "final[ly]" resolved the Exemption 7(C) issue and thereby not "consummat[ed] [its] decisionmaking process" with respect to that issue. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

    **B.**    If CompTel is correct that this Court cannot now resolve AT&T's Exemption 7(C) argument, then it is CompTel that lacks Article III standing.

As explained at the outset, whether AT&T's documents are properly withheld turns on the meaning of *both* Exemption 4 (the confidential commercial information exception) *and* Exemption 7(C) (the law-enforcement exemption).  Absent a resolution of the Exemption 7(C) issue, CompTel is not entitled to the disclosure of AT&T's documents:  regardless of how the Court resolves the parties' dispute over Exemption 4, it could not order disclosure of any documents but instead would have to remand to the FCC for resolution of the Exemption 7(C) issue.  On remand, however, the FCC could change course and decide that Exemption 7(C) protects all of AT&T's documents, mooting the Exemption 4 issue.  Accordingly, any judicial resolution of the Exemption 4 issue now – without resolving Exemption 7(C) – could be an advisory opinion, stating only "what the law would be upon a hypothetical state of facts."  *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937); *see also Better Gov't Ass'n v. Department of State*, 780 F.2d 86, 91 (D.C. Cir. 1986) ("Any judgment issued must resolve a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.") (internal quotation marks and citations omitted).  Because this Court cannot – without resolving AT&T's entitlement to invoke Exemption 7(C) – grant the disclosure remedy that CompTel seeks, CompTel lacks Article III standing in the event that this Court cannot reach the Exemption 7(C) issue.  *See James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) ("If, as the FDIC contends, federal courts cannot grant any of the relief sought by Madison, a decision of this court would be an advisory opinion barred by Article III of the Constitution."); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (for plaintiff to have Article III standing, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision'") (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426

U.S. 26, 38 (1976)); Richard H. Fallon *et al.*, *Hart and Wechsler's The Federal Courts and The Federal System* 93-94 (4th ed. 1996) (noting "[t]he prohibition against advisory opinions has been termed the oldest and most consistent thread in the federal law of justiciability") (internal quotation marks and citation omitted).

## II.    AT&T'S DOCUMENTS ARE PROPERLY WITHHELD

### A.    AT&T's Documents Fit Within FOIA Exemption 7(C)

**1.**    In its memorandum in support of its motion for summary judgment, AT&T established that all of the documents it submitted to the Enforcement Bureau in connection with the New London Public Schools investigation fit within the compass of Exemption 7(C): the documents were compiled for law-enforcement purposes; disclosure of the documents would invade AT&T's "personal privacy"; and disclosure would be "unwarranted." *See* AT&T Mem. 7-21. CompTel's response rests on a single premise: corporations, "such as AT&T, do not posses 'personal privacy' interests as required for application of FOIA Exemption 7(C)." Plaintiff CompTel's Opposition to the Motion of Intervenor-Defendant AT&T For Summary Judgment 7 (Apr. 13, 2007) (internal quotation marks and citation omitted) ("CompTel AT&T Opp.") [Docket #25].

As an initial matter, CompTel advances that argument without making any effort to rebut AT&T's analysis of the text of the statute. As AT&T has shown, Exemption 7(C)'s reference to "personal privacy" encompasses corporations. *See* AT&T Memo. 8. Congress defined "person" under the FOIA to include corporations, s*ee* 5 U.S.C. § 551(2), and the adjectival form of that noun ("personal") thus likewise refers to corporations, *see generally Delaware River Stevedores v. DiFidelto*, 440 F.3d 615, 623 (3d Cir. 2006) (Fisher, J., concurring). In addition, engrafting a judicially-created limitation on the text to exclude corporations would be inconsistent with the

Supreme Court's teaching that a court should "not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply." *Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 341 (2005). CompTel provides no response to this analysis.

AT&T further demonstrated that categorically excluding corporations from the scope of Exemption 7(C) would be inconsistent with the purposes of that exemption because corporations, no less than individuals, may face embarrassment, harassment, and stigma from their participation in law-enforcement investigations. *See* AT&T Mem. 11-12. Moreover, the Supreme Court and other federal courts have held that corporations do possess privacy interests, even if the force of those interests varies. *See id.* 13-14; *see, e.g.*, *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 353-54 (1977) (finding "intrusion into [G.M. Leasing's] privacy"); *CAB v. United Airlines, Inc.*, 542 F.2d 394, 399 (7th Cir. 1976) (regulated carriers have a "'strong element of privacy'" in "internal corporate papers") (quoting *Burlington N. Inc. v. ICC*, 462 F.2d 280, 288 (D.C. Cir. 1972)); *United States v. Hubbard*, 650 F.2d 293, 304 (D.C. Cir. 1980) (search of "corporate premises may constitute an intrusion upon privacy").[3] CompTel stands silent in the face of those arguments as well.

---

[3] *United States v. Morton Salt Co.*, 338 U.S. 632 (1950), is not to the contrary. There, the Court held corporations cannot "plead an unqualified right to conduct their affairs in secret" under the Constitution in the face of an agency's "legitimate right to satisfy [itself] that corporate behavior is consistent with the law." *Id.* at 652. CompTel – a private trade association of AT&T's competitors – stands in a fundamentally different position from a federal agency. *GM Leasing*, moreover, puts beyond question that corporations may invoke constitutional privacy protections. *See* 429 U.S. at 353-54. And, in any event, the Supreme Court has said that the privacy interest underlying Exemption 7(C) "goes beyond" the Constitution. *National Archives & Records Admin. v. Favish*, 541 U.S. 157, 170 (2004); *see Department of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 762 n.13 (1989).

Although silent on the text and purpose of the statute, CompTel argues (at 8) that no case supports AT&T's position that corporations have "protectible [sic] privacy interests within the meaning of Exemption 7(C)." That is not so. In *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 153 (D.C. Cir. 2006), the Food and Drug Administration ("FDA"), citing FOIA Exemption 6 – which protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of *personal privacy*," 5 U.S.C. § 552(b)(6) (emphasis added) – withheld information relating to "private individuals *and companies* who worked on approval" of a controversial drug. 449 F.3d at 152 (emphasis added). Judicial Watch, like CompTel here, argued that such information could not be withheld because it was not "'about an individual.'" *Id.* The D.C. Circuit rejected that "crabbed reading of the statute," noting that the Supreme Court has instructed that the privacy interests protected by the FOIA should be construed "broadly." *Id.* The court explained that the privacy interests at stake under the FOIA "vary depending on . . . context," and that in that case disclosure of information about "persons *and businesses* associated with [the drug]" would risk retaliation against those persons and businesses and therefore would implicate the privacy interests of the FOIA. *Id.* at 153 (emphasis added). The court thus held that the FDA's withholding of documents was proper to protect private parties – including "companies" and "businesses" – "from the injury and embarrassment that can result from the unnecessary disclosure" of protected information. *Id.* at 152-53.

*Judicial Watch* is controlling here and establishes what is clear from the text and purposes of the statute – namely, that corporations do have privacy interests protected under the FOIA. Indeed, although *Judicial Watch* involved "personal privacy" under Exemption 6, Congress has provided a "*broader* degree of protection to privacy interests" under Exemption 7(C) than under Exemption 6. *Hopkins v. Department of Housing & Urban Dev.*, 929 F.2d 81,

86 (2d Cir. 1991) (emphasis added); *Bast v. Department of Justice*, 665 F.2d 1251, 1254 (D.C.

Cir. 1981) ("[Exemption] 7(C) . . . recognizes the stigma potentially associated with law

enforcement investigations and affords broader privacy rights [than Exemption 6] to suspects,

witnesses, and investigators").  If, as the D.C. Circuit held, the "personal privacy" interests

protected by Exemption 6 extend to corporations, it necessarily follows that those same interests

are protected by the "broader" protection afforded by Exemption 7(C).

   CompTel also argues (at 8) that the FOIA embodies a policy of "liberal disclosure" and

that the FOIA exemptions must be narrowly construed.  But CompTel ignores the Supreme

Court's teaching, followed by the D.C. Circuit in *Judicial Watch*, that the privacy protections of

the FOIA are not "some limited or 'cramped notion' of [the] idea."  *Favish*, 541 U.S. at 165

(quoting *Reporters Committee*, 489 U.S. at 763).  CompTel also overlooks that the Supreme

Court "has recognized that the [FOIA's] statutory exemptions are intended to have meaningful

reach and application."  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151-52 (1989).

And, regardless of the breadth of Exemption 7(C), CompTel has identified no logical basis for

excluding corporations from the exemption.

   Contrary to CompTel's claim (at 8), AT&T's position would not mean that "all" law-

enforcement records would be "immune from disclosure under FOIA."  In this case, AT&T

seeks protection only of its *own internal documents*, which are in the hands of the FCC (and

therefore subject to a FOIA request in the first place) only because *AT&T* brought the matter to

the FCC's attention and then fully cooperated with the FCC's ensuing investigation.  Beyond

that, records may be withheld under Exemption 7(C) – assuming that there is a legitimate

threshold public-interest basis for disclosure – only if disclosure would result in embarrassment,

harassment, or stigmatization.  AT&T here submitted a declaration, which CompTel did not

contest, explaining how that standard is met on the facts of this case.  If CompTel wished to challenge the *breadth* of AT&T's claim on that score, then it should have disputed the averments in AT&T's declaration.  Instead, CompTel insisted, incorrectly, that AT&T is categorically excluded from Exemption 7(C) because it is a corporation.

CompTel further asserts (at 10) that the law of this circuit is "clear" that Exemption 7(C) "does not apply to corporations."  But setting aside CompTel's misplaced reliance on the cases it cites (at 11),[4] the recent decision of the D.C. Circuit in *Judicial Watch* establishes both that the privacy protections of the FOIA extend to "businesses" and "companies" *and* that such entities can claim protection under the statute's purpose of protecting against the "*embarrassment* that can result from the unnecessary disclosure" of protected information.  449 F.3d at 152-53 (emphasis added).  As the D.C. Circuit's "more recent" pronouncement on those issues, *Judicial Watch* is the "law of this circuit" and is controlling here.  *Halperin v. Kissinger*, 807 F.2d 180, 193 n.11 (D.C. Cir. 1986) (Scalia, J.).

In short, the text and purposes of the FOIA as well as binding precedent establish that corporations may invoke the privacy protections of the FOIA when disclosure of private internal documents would result in embarrassment, harassment, and stigmatization.  That is precisely the

---

[4] AT&T addressed in its opening brief the bulk of the cases on which CompTel relies. Those cases either are largely based on dicta in *National Parks & Conservation Association v. Kleppe*, 547 F.2d 673, 685 & n.44 (D.C. Cir. 1976), and *Sims v. CIA*, 642 F.2d 562, 572 n.47 (D.C. Cir. 1980); involve Exemption 6, which is narrower than Exemption 7(C), *see supra* p. 9; or are not binding on this Court, *see* AT&T Mem. 14 n.15.  Nor do the cited cases address the specific arguments made here and in AT&T's opening brief regarding the text and purposes of the FOIA.  In addition, *Judicial Watch* refutes CompTel's suggestion that *Washington Post Co. v. Department of Justice*, 863 F.2d 96 (D.C. Cir. 1988), stands for the proposition that a corporation may not claim injury to reputation or embarrassment under the FOIA.  *See* 449 F.3d at 153 (noting "injury" and "embarrassment" that could result from disclosure).

case here.  *See* Declaration of Ann Rotatori ¶¶ 8-10 (Feb. 2, 2007) ("Rotatori Decl.") [Docket #19.4].[5]

        **2.**        Once it is established that AT&T may assert the protections of Exemption 7(C), the question is whether the invasion of AT&T's privacy caused by disclosure of its internal corporate papers is "warranted."  As AT&T has shown, under either a categorical or balancing approach, the answer is no.  *See* AT&T Mem. 14-21.

        Believing that it can succeed on the basis of a hard and fast exclusion of AT&T from Exemption 7(C), CompTel makes no argument with respect to *application* of a categorical rule or a balancing approach.  Indeed, CompTel all but acknowledges that its request for disclosure fails under either approach, as CompTel admits that it "has not 'alleged' any impropriety by the FCC or any other government agency" as basis for its FOIA request.  CompTel AT&T Opp. 15. That frank admission is dispositive of CompTel's FOIA claim.

        "[T]he FOIA's central purpose is to ensure that the Government's activities be opened to the sharp eye of public scrutiny, not that information about private citizens that happens to be in the warehouse of the Government be so disclosed."  *Reporters Committee*, 489 U.S. at 774; *see also id.* (FOIA is concerned with disclosure of "official information").  Yet CompTel here has requested hundreds of pages of AT&T's private documents that just "happen[] to be in the warehouse of the [FCC]."  CompTel has identified no cognizable public-interest justification in disclosure of those documents; the "purpose . . . [of the FOIA] is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that

_____

        [5] All of the cases cited by the FCC on Exemption 7(C) stand for the unremarkable proposition that individuals can invoke the exemption.  *See* FCC Opp. 16-18.  Those cases prove nothing more than that it is *sufficient*, not that it is *necessary*, that the party invoking Exemption 7(C) be an individual.  In addition, *Judicial Watch* makes clear that the FCC is wrong to suggest that AT&T's interpretation of Exemption 7(C) is not supported by the case law.

reveals little or nothing about an agency's own conduct." *Id.* at 773; *see also id.* at 774-75 ("in none of our cases construing the FOIA have we found it appropriate to order a Government agency to honor a FOIA request for information about a particular private citizen").

The only plausible basis for disclosure of AT&T's documents in this case would be if those documents shed light on alleged *FCC* impropriety. *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991) ("hold[ing] categorically that, unless access to [personal information] within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure"). But CompTel has conceded that it has not alleged such agency impropriety.

Even if CompTel had alleged a need for AT&T's documents relating to official agency conduct, the Supreme Court is clear that "[Exemption 7(C) of the FOIA] requires the person requesting . . . information to establish a sufficient reason for the disclosure." *Favish*, 541 U.S. at 172. "[T]he citizen must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake" and that "the information is likely to advance that interest." *Id.* "Otherwise," the Court held, "the invasion of privacy is unwarranted." *Id.* The requester's claimed public interest in disclosure must also be supported by "evidence." *Id.* at 174. Because CompTel has not proffered any cognizable public-interest justification for disclosure, let alone supported that justification with evidence, CompTel has failed to carry its burden of showing that the invasion of AT&T's privacy is warranted under either a categorical or a balancing approach. *See* AT&T Mem. 14-21.

In light of CompTel's failure even to articulate a cognizable public interest in disclosure of AT&T's documents, this Court need not ascertain the full weight of AT&T's privacy interests. *Cf. Department of Defense v. Federal Labor Relations Auth.*, 510 U.S. 487, 500 (1994)

("Because a very slight privacy interest would suffice to outweigh the relevant public interest, we need not be exact in our quantification of the privacy interest.  It is enough for present purposes to observe that the employees' interest in nondisclosure is not insubstantial.").  It suffices to note that AT&T has submitted a declaration explaining why disclosure of AT&T's documents would implicate the privacy interests protected by the FOIA.  *See* Rotatori Decl. ¶¶ 8-13.  CompTel has failed to challenge meaningfully the averments in that declaration, which are incorporated in ¶ 17 of AT&T's Proposed Statement of Undisputed Material Facts (Feb. 12, 2007) ("Proposed Statement") [Docket #19.3], and which therefore may be accepted for the purpose of summary judgment.  *See* LCvR 7(h).

B.    **In the Alternative, the Material Redacted by the FCC is Protected Under Exemption 4**

CompTel's arguments with respect to Exemption 4 are no more persuasive than its arguments with respect to Exemption 7(C).  As AT&T has shown, the FCC properly redacted confidential commercial information – including price and cost data – from AT&T's documents. *See* AT&T Mem. 23-26.

CompTel claims (at 13) that AT&T's declaration on this point is "vague and conclusory." But, as AT&T explained in its opposition to CompTel's motion for summary judgment, the level of detail and specificity of AT&T's declaration, coupled with that of the FCC, suffice to show that the FCC's redactions are proper.  *See* Opposition of Intervenor-Defendant AT&T Inc. to CompTel's Motion for Summary Judgment 13-15 (Apr. 13, 2007) ("AT&T Opp.") [Docket #23.1].  The Rotatori Declaration sets forth the types of redactions that were made:  cost and pricing data pertaining to services and hardware used in connection with the New London Public Schools projects; amounts AT&T invoiced for projects; relevant dates; and "names and identifying information of AT&T's staff, contractors, and representatives of its contractors and

14

customers." Rotatori Decl. ¶ 12.  The Lancaster Declaration details the types of documents that

AT&T provided to the FCC and goes on to explain that the FCC redacted from those documents

"pricing and cost data, and billing and payment dates," and provides specific illustrations of the

redactions.  Declaration of Judy Lancaster ¶¶ 17-18 (Feb. 12, 2007) ("Lancaster Decl.") [Docket

#21.1].

The Declarations also establish the adverse competitive effects of disclosure.  Both

declarations make clear that disclosure "would give [AT&T's] competitors an overview of

[AT&T's] costs, pricing, schedules, and operations."  *Id.* ¶ 19; *see* Rotatori Decl. ¶ 14.  Such

information, if publicly disclosed, would "enable competitors to craft offerings and proposals

that would allow them to compete more effectively against [AT&T] for similar business, and/or

allow competitors to woo [AT&T's] contractors or contracts."  Lancaster Decl. ¶ 19.  Further,

release of AT&T's information "could discourage other licensees from voluntarily reporting to

the Commission" in the future, *id.* ¶ 21, and "could make it difficult for the FCC to obtain

reliable financial and commercial information from telecommunications companies in the

future," *id.* ¶ 22.  The FCC's determinations that release of such information would have serious

competitive effects and could impair future FCC information-gathering efforts are entitled to

"substantial weight."  *Oglesby v. Department of Army*, 79 F.3d 1172, 1178 (D.C. Cir. 1996)

(internal quotation marks, alteration, and citation omitted).[6]

---

[6] CompTel repeats its claim that AT&T did not properly request confidential treatment.
*See* CompTel FCC Opp. 8-9.  As AT&T has shown, CompTel is wrong as a matter of law and
the issue is beside the point because the FCC has the authority to consider confidential treatment
on its own motion.  *See* AT&T Opp. 4 n.6; FCC Opp. 7-8.  CompTel also reasserts its argument
(at 13-14) based on 47 C.F.R. § 54.501(d)(3), which AT&T has already shown to be wide of the
mark.  *See* AT&T Opp. 6-8; FCC Opp. 8.

## III.    AT&T'S PROPOSED STATEMENT OF FACTS IS PROPER

CompTel also requests that several paragraphs of AT&T's Proposed Statement of Undisputed Facts be stricken.  CompTel's arguments are insubstantial.

*First*, CompTel asserts (at 14) that ¶ 16 of AT&T's Proposed Statement should be stricken because it contains a conclusion of law inasmuch as it states that AT&T is entitled to the protections of Exemption 7(C).  The Rotatori Declaration, however, establishes that the disclosure of AT&T's documents here would result in embarrassment, harassment, and stigmatization, *see* Rotatori Decl. ¶ 9, which are the interests underlying Exemption 7(C).  To the extent that this Court's resolution of Exemption 7(C) turns on a question of fact, AT&T's undisputed statement in ¶ 16 is proper and should not be stricken.

*Second*, CompTel argues (at 15) that ¶ 23 of AT&T's Proposed Statement, which states that disclosure of AT&T's documents would result in competitive harm, is also a statement of law.  AT&T's statement of fact, however, is that the information redacted by the FCC could, among other things, be used to "target specific customer accounts using specific knowledge of AT&T's costs."  That, like the question of whether AT&T would be competitively harmed by disclosure, is a factual question that is supported by the Rotatori Declaration, *see* Rotatori Decl. ¶¶ 14-16, and that should not be stricken.

*Third*, CompTel asserts (at 15) that ¶ 17 of AT&T's Proposed Statement – in which AT&T states that disclosure of AT&T's documents would result in public embarrassment, harassment, and stigma – is "rank speculation."  CompTel sets forth no evidence, however, calling into question the averments of the Rotatori Declaration on this point.  *See* Rotatori Decl. ¶¶ 8-10.  Nor does CompTel dispute that it has a history of assailing AT&T on the basis of self-reported violations of FCC rules before the agency and the public.  *See* AT&T Mem. 19.  Indeed,

CompTel takes precisely that tact here. *See* CompTel AT&T Opp. 16 (suggesting AT&T committed "fraud" and "artificially inflat[ed]" prices).

*Fourth*, CompTel asks the Court (at 15) to strike ¶ 18 of AT&T's Proposed Statement – in which AT&T states that CompTel has not alleged any impropriety by the FCC – because, according to CompTel, it has "not 'alleged' any impropriety by the FCC." CompTel's response proves that AT&T's statement is undisputed and that CompTel's request to strike is unwarranted.

*Finally*, CompTel insists (at 15-16) that ¶ 22 of AT&T's Proposed Statement – which states that the market for providing telecommunications services to educational institutions is competitive – should be stricken. But ¶ 22 is based on the averments of the Rotatori Declaration, which CompTel does not dispute. *See* Rotatori Decl. ¶ 14. That two former AT&T employees pleaded guilty to mail fraud says nothing about whether the market for providing telecommunications services to schools is competitive.

## CONCLUSION

The Court should grant AT&T's motion for summary judgment.

Respectfully submitted,

/s/ Colin S. Stretch

Gary L. Phillips (D.C. Bar No. 334037)    Colin S. Stretch (D.C. Bar No. 470193)
James P. Lamoureux (D.C. Bar No. 431631)    Kelly P. Dunbar (D.C. Bar No. 500038)
AT&T INC.    KELLOGG, HUBER, HANSEN, TODD,
1120 20th Street, N.W.      EVANS & FIGEL, P.L.L.C.
Washington, D.C. 20036    1615 M Street, N.W., Suite 400
    Washington, D.C. 20036
    Tel.: (202) 326-7900
    Fax: (202) 326-7999

*Counsel for AT&T Inc.*

April 30, 2007

17

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of April, 2007, I served, via ECF, a true and correct copy of the foregoing document and its attachments to:

Mary Catherine Albert
COMPTEL
900 17th Street, N.W., Suite 400
Washington, D.C. 20006
Tel: (202) 926-6650
malbert@comptel.org

*Counsel for CompTel*

Peter S. Smith
Assistant United States Attorney
UNITED STATES ATTORNEY'S OFFICE
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530-0001
Tel: (202) 307-0372
Fax: (202) 514-8780
peter.smith@usdoj.gov

*Counsel for the Federal Communications Commission*

/s/ Diane M. Cooke