# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **COMPTEL,** | ) |
| | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 06CV01718 (HHK) |
| | ) |
| v. | ) |
| | ) |
| **Federal Communications Commission,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

## PLAINTIFF COMPTEL'S REPLY TO DEFENDANT'S OPPOSITION TO COMPTEL'S MOTION FOR SUMMARY JUDGMENT

Plaintiff COMPTEL hereby replies to Defendant Federal Communications Commission's ("FCC") Opposition to its Motion For Summary Judgment. As COMPTEL demonstrated in its Motion, two years have passed since COMPTEL filed its request pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, and the FCC has not yet released one document despite its determination in August 2005 that COMPTEL was entitled to at least some documents. Totally ignoring its disclosure obligations under the law, the FCC continues to maintain that it is entitled to summary judgment and that COMPTEL's complaint should be dismissed with prejudice. The FCC is wrong and must be held to account. Pursuant to Section 552 (a)(4)(B) of FOIA, 5 U.S.C. §552(a)(4)(B), COMPTEL is entitled to a declaratory judgment that the FCC has flagrantly violated its obligations under FOIA and an order from this Court enjoining the FCC from withholding the records requested by COMPTEL.

The FCC's refusal to produce a *Vaughn* index or other particularized description of the documents it has withheld together with an explanation as to why each document is

exempt from disclosure makes it impossible for the Court to determine that any documents have been properly withheld. The only information the FCC has released through the Declarations of an FCC employee has come in bits and pieces, is inconsistent with the FCC's Enforcement Bureau's decision on COMPTEL's FOIA request, and does not come close to meeting its burden of proving that any documents qualify for exemption from disclosure.[1] For these reasons, the Court should grant summary judgment in favor of COMPTEL.

## I.    The FCC Cannot Keep Its Story Straight

Among the many reasons why the Court must deny the FCC's Motion For Summary Judgment and grant COMPTEL's is that the FCC keeps changing its story. For example, the FCC challenges COMPTEL's assertion "that there are approximately 3200 pages of records at issue in this case."[2] COMPTEL's assertion is based on a July 20, 2005 electronic mail from William H. Davenport, Chief, Investigations and Hearing Division, Enforcement Bureau in which he stated that the FCC "was reviewing approximately 3200 pages of documents that are potentially responsive" to COMPTEL's FOIA request.[3] Mr. Davenport estimated the "cost to retrieve, review and copy 3,000

---

[1]    The FCC's contention that COMPTEL's "arguments about the objective <u>lack</u> of any index of withholdings have become moot" because of the two Declarations it has submitted to this Court is specious. FCC's Memorandum In Opposition To Plaintiff COMPTEL's Motion For Summary Judgment and Response to Intervenor AT&T's Motion For Summary Judgment at 3. As demonstrated in COMPTEL's Opposition to the FCC's Motion for Summary Judgment and as further discussed herein, the FCC's Declarations do not come close to providing the level of detail the D.C. Circuit requires from a federal agency seeking to withhold documents under a FOIA Exemption.

[2]    FCC's Memorandum In Opposition at 2.

[3]    See July 20, 2005 e-mail mail from William H. Davenport to Mary Albert attached as Exhibit F to COMPTEL's Statement of Undisputed Facts.

pages of responsive documents at approximately $2237.70 (approximately 30 hours of work by a GS14 at $57.59 per hour, or $1721.70, and $510 for copying at $.17 per page)," asked for payment authorization to "complete the review and copying of the responsive documents" and committed to issuing a decision on COMPTEL's FOIA request as quickly as possible.[4]

COMPTEL authorized payment with the caveat that as a non-profit association, it believed it was entitled to the first two hours of search time and the first 100 copies without charge pursuant to 0.470(a)(3) of the FCC's rules, 47 C.F.R. §0.470(a)(3).[5] On July 21, 2005, the FCC responded and revised its estimate downward to "less than your revised authorization total of $2088.52."[6] Two weeks later, on August 5, 2005, the FCC issued its decision. While the FCC found that COMPTEL was entitled to some records, it did not as FOIA requires, 5 U.S.C. §552(a)(6)(F), estimate the volume of records it proposed to withhold.[7]

The FCC now claims the original estimate was made before processing of the request was completed and that the "actual number of responsive pages is much lower," citing Paragraphs 4 and 5 of the Supplemental Declaration of Judy Lancaster.[8] Neither of these claims rings true. Mr. Davenport's estimate of the volume of responsive

---

[4]    Id.

[5]    See Exhibit F to COMPTEL's Statement of Undisputed Facts. See also 5 U.S.C. § 552(a)(4)(A)(iv).

[6]    See July 21, 2005 e-mail from Judy Lancaster to Mary Albert, Exhibit F to COMPTEL's Statement of Undisputed Facts.

[7]    See Exhibit C to COMPTEL's Statement of Undisputed Facts.

[8]    Defendant's Memorandum in Opposition at 2.

documents was made more than *three months* after the FCC received COMPTEL's FOIA request and just *two weeks* before the FCC issued its decision. One month before Mr. Davenport's estimate, on June 22, 2005, the FCC had assured COMPTEL that it was reviewing the documents requested and hoped to have a decision soon.[9] Because COMPTEL had requested records from a single Enforcement Bureau file, estimating the volume would not have been a complicated task and certainly could have been accomplished with a degree of certainty in the month between June 22, 2005 and July 20, 2005. The huge difference between the 3000 pages of responsive documents identified by Mr. Davenport and the 500 pages of responsive documents referenced in Ms. Lancaster's Declaration cannot be explained away so cavalierly, unless one were to assume that the FCC's estimates of copying costs of $510 (at $.17 per page) and search time of 30 hours were just pulled out of thin air. If what the FCC is now telling the Court is true and given its steadfast refusal to release any documents to COMPTEL, one cannot help but wonder whether the FCC quoted COMPTEL a search and copying charge of $2,237.70 in the hopes of discouraging it from pursuing its FOIA request.

Paragraphs 4 and 5 of Ms. Lancaster's Supplemental Declaration reference only the "records that the FCC withheld from release on the basis of FOIA Exemptions 4, 6 and 7(C)," a total of 268 pages[10] and "237 pages minus 46 pages of duplicates" withheld on the basis of Exemption 5.[11] If these are the only responsive documents, as the FCC

---

[9]     June 22, 2005 e-mail from Judy Lancaster to Mary Albert, attached as Exhibit A.

[10]    Ms. Lancaster's Supplemental Declaration states at ¶ 4 that the 268 pages of AT&T documents mentioned in her original Declaration included 15 pages of duplicates.

[11]    *Id.* at ¶ 5.

now claims, and it proposes to withhold all of them, then COMPTEL gets nothing, contrary to the FCC's August 5, 2005 decision.

Of course, the documents referenced in paragraphs 4 and 5 of Ms. Lancaster's Supplemental Declaration are not the only responsive documents. She identifies a plea agreement and a settlement agreement entered into by a different E-rate provider in criminal cases brought by the U.S. Attorney's Office in California and a published FCC Order, totaling 64 pages, that are releasable,[12] but have not been released over two years after the FCC received COMPTEL's request.   These documents are not AT&T documents and the FCC could not claim that they are protected from disclosure under either Exemption 4 or 5.  Thus, the FCC's contention that AT&T's intervention has "created a situation similar to a reverse FOIA case"[13] does not provide a basis for withholding them.  AT&T has intervened on behalf of the FCC and has not sought a judgment against the FCC to prevent the release of any of its own documents, much less documents relating to a different company.

Ms. Lancaster's Supplemental Declaration stating that all 268 pages of the AT&T documents are being withheld pursuant to Exemptions 4, 6 and 7(C) and another 191 pages pursuant to Exemption 5 conflicts not only with the FCC's decision, but also with her original Declaration where she stated that AT&T documents with cost and pricing data and billing and payment dates redacted and portions of "e-mails discussing the draft consent decree that involve communications between FCC staff and [AT&T]" would be

---

[12]    Supplemental Declaration of Judy Lancaster at ¶ 3.

[13]    Defendant's Memorandum in Opposition at 6-7.

released.[14]  On the basis of the representations made by the FCC in this litigation, it is

impossible for COMPTEL or the Court to figure out how many pages of responsive

documents there are and how many pages the FCC intends to withhold.  The FCC's

refusal to be more forthcoming precludes grant of summary judgment in its favor.

## II.  The FCC Has Failed To Meet Its Burden of Proof

As the FCC stated in its Motion For Summary Judgment and in its Opposition to

COMPTEL's Motion For Summary Judgment, "an agency is entitled to summary

judgment once it demonstrates that no material facts are in dispute and that each

document that falls within the class requested either has been produced, not withheld, is

unidentifiable or is exempt from disclosure."[15]  Although it has correctly stated the

governing law, the FCC has not made the required showing.  First, as discussed above,

there is a material dispute with respect to the volume of responsive documents and that

dispute has been created by the inconsistencies between what the FCC said at the agency

level and the representations it has made in this litigation.  Second, the FCC has failed to

show that each document that falls within the requested class has either been produced,

not withheld or is exempt from disclosure.  On the contrary, the FCC has produced no

documents to COMPTEL despite its decision that at least some of the documents

requested by COMPTEL should be produced.   For example, Ms. Lancaster identified

"certain public documents contained in IHD case file no. EB-04-IH-0342" that are

releasable, portions of certain intra-agency emails that do not reflect staff deliberations,

---

[14]     Declaration of Judy Lancaster at ¶¶ 11, 18, 26, 29-30.

[15]     Defendant's Memorandum of Points and Authorities in support of its Motion For
Summary Judgment at 8 and Defendant's Memorandum in Opposition at 3.

and portions of emails between FCC staff and AT&T that are not exempt.[16] Although these are not AT&T documents, AT&T has not objected to their release and they are not exempt from withholding, the FCC has not produced them. It is, therefore, not entitled to summary judgment.

It is well settled that when an agency seeks to withhold information, it must provide a "relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Cent., Inc. v. U.S. Department of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977). The purpose of demanding such a detailed showing "is to prevent agencies from thwarting the intent of the Freedom of Information Act by making conclusory and generalized allegations of exemptions." *Vaughn v. Rosen*, 484 F. 2d 820, 826 (D.C. Cir. 1973). As COMPTEL demonstrated in its Motion for Summary Judgment, the FCC failed to make the detailed showing necessary for the documents it proposes to withhold under Exemptions 4 and 5. The Supplemental Declaration submitted with the FCC's Memorandum in Opposition to COMPTEL's motion does not remedy the deficiencies in its showing.

Ms. Lancaster's original Declaration provided not even the most basic information about any of the documents the FCC proposes to withhold, including author, date or subject matter. Nor did Ms. Lancaster's Declaration provide other than the most conclusory and generalized allegations that the withheld documents as a group were covered by one or more exemptions. It is the law in this Circuit that a declaration such as

---

[16]    Declaration of Judy Lancaster at ¶¶ 26 and 33; Supplemental Declaration of Judy Lancaster at ¶ 3.

Ms. Lancaster's is insufficient to carry an agency's burden of proof. In *Coastal States Gas Corporation v. Department of Energy*, 617 F.2d 254 (D.C. Cir. 1980), the Court rejected as insufficient to justify withholding an index that identified who wrote document, to whom it was addressed, its date and a brief description of contents, far more information than the FCC provided in Ms. Lancaster's Declaration.

Although the FCC continues to maintain erroneously that it is not required to provide the Court or COMPTEL with a *Vaughn* index, or any kind of detailed description of the documents it proposes to withhold,[17] it did supplement Ms. Lancaster's Declaration with significantly more information about the withheld documents than has previously been provided. As discussed below, however, the FCC has still failed to show that the majority (if not all) of the documents have been properly withheld.

A.    **The FCC Has Not Shown That Any Documents Have Been Properly Withheld Under Exemption 4**

The FCC produced no index or particularized description of the AT&T documents it has withheld pursuant to Exemption 4, nor any explanation as to why the exemption applies to any particular document. The D.C. Circuit stated in *Coast States Gas Corp. v. Department of Energy*:

> We remind the agencies, once again, that *the burden is on them to establish their right to withhold information from the public* and they must supply the courts with sufficient information to allow us to make a reasoned determination that they are correct.

617 F. 2d at 861 (emphasis added). Rather than even attempt to establish the FCC's right to withhold any documents under Exemption 4, Ms. Lancaster claims in her Supplemental Declaration that AT&T's indices of the documents set forth in Attachment

---

[17]    Defendant's Memorandum in Opposition at 2-5.

A to Exhibit B of the Kelly Dunbar Declaration and pages 5 to 7 of the Declaration of
Anne Rotatori are sufficient to satisfy the FCC's obligations under FOIA.[18]  The FCC's
claims are ludicrous for several reasons.

First, Kelly Dunbar is an attorney for AT&T and Ms. Rotatori is an employee of
AT&T.[19]  Neither is an employee of the FCC.  The Court cannot possibly rely upon
AT&T's "indices" of the withheld documents to make a determination that the FCC
properly withheld anything.

Second, the scanty index attached to Mr. Dunbar's Declaration is the very index
AT&T submitted to the FCC with its request for confidentiality[20] and that Ms.
Lancaster's supervisor, William H. Davenport, determined was wholly inadequate
because it "failed to provide a statement of specific reasons for withholding" the material;
failed to "explain the degree to which specific information is commercial or financial or
contains a trade secret;" failed to explain "how disclosure of such information could
result in substantial competitive harm;" and failed "to state whether any of the
information . . . is already available to the public."[21]  Despite this negative assessment of
AT&T's index in the FCC's decision on COMPTEL's FOIA request, Ms. Lancaster now
claims that the index is perfectly adequate for the Court to determine that AT&T's
documents are exempt from disclosure.  Counsel for the FCC also claims that the FCC

---

[18]    Supplemental Declaration of Judy Lancaster at ¶4.

[19]    Declaration of Kelly Dunbar at ¶2; Declaration of Ann Rotatori at ¶ 1.

[20]    Exhibit B to the Declaration of Kelly Dunbar.

[21]    See Exhibit C to COMPTEL's Statement of Undisputed Facts at 4.

concluded that AT&T had in fact made a showing of competitive harm.[22]  The FCC, of

course, did not so conclude and this is just a further example of the FCC's attempt to

revise history as this litigation progresses.  The AT&T index attached to Mr. Dunbar's

affidavit is inadequate on its face, the FCC has so determined, and the post-hoc

arguments of counsel cannot change that determination.

Third, although the index in Ms. Rotatori's Declaration[23] provides more of a

description of the withheld AT&T material than the FCC has provided to date, it does not

satisfy the FCC's burden under FOIA.  Ms. Rotatori provides a general description of the

"more than 150 documents comprising over 250 pages" that AT&T submitted in response

to the FCC's Letter of Inquiry ("LOI").[24]  The FCC determined, however, that not all of

AT&T's documents were exempt from disclosure.[25]   It is impossible to discern from Ms.

Rotatori's index which documents the FCC (as opposed to AT&T) claims are exempt

from disclosure under Exemption 4.

 A declaration or a *Vaughn* index must afford a FOIA requester a meaningful

opportunity to contest, and the District Court an adequate foundation to review, the

soundness of an agency's withholdings and the district court must be able to derive from

the index or declaration a clear explanation as to why each document or portion of a

---

[22]     Defendant's Memorandum in Opposition at 8.  Contrast counsel's allegation that the FCC concluded that AT&T made a showing of competitive harm with both the FCC's decision on COMPTEL's FOIA request and the FCC's quotation from that decision in its motion for summary judgment that AT&T "did not explain 'how disclosure of the information could result in substantial competitive harm.'"  Defendant's Memorandum of Points and Authorities in support of Motion for Summary Judgment at 5.

[23]     Declaration of Ann Rotatori at ¶ 7.

[24]     *Id.* at¶¶ 6-7.

[25]     See Exhibit C to COMPTEL's Statement of Undisputed Facts.

document withheld is putatively exempt from disclosure. *King v. U.S. Department of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987). Because the FCC has chosen not to produce a *Vaughn* index or a clear explanation as to why each AT&T document is exempt from disclosure, the Court cannot possibly determine that the FCC has properly withheld any of the documents.

An agency resisting disclosure pursuant to Exemption 4 must present a detailed justification for the application of the exemption to each specific document. *Pacific Architects and Engineers Incorporated v. The Renegotiation Board*, 505 F. 2d 383, 385 (D.C. Cir. 1974). The detailed justification must include a showing of "the extent to which disclosure of the information will cause substantial harm to the competitive position of the entity from whom the information was obtained, with specific factual or evidentiary material to support the conclusion reached." *Id.* Neither Ms. Lancaster's original nor Supplemental Declaration meets this standard. Nor does Ms. Rotatori's Declaration offers any justification for the application of Exemption 4 to any specific document. It is obvious from Ms. Rotatori's description of at least some of the documents that Exemption 4 could not possibly protect them from disclosure. For example, Ms. Rotatori claims that AT&T's Code of Business Conduct is protected from disclosure.[26] That Code of Business Conduct, however, is excerpted on AT&T's web site.[27] Any suggestion that disclosure of the Code of Business Conduct would cause AT&T substantial competitive harm just cannot be reconciled with AT&T's publication of excerpts of the Code. As COMPTEL demonstrated in its Motion for Summary

---

[26]    Declaration of Anne Rotatori at ¶ 7.

[27]    See http://www.att.com/gen/corporate-citizenship?pid=8510.

Judgment, competitive harm is "harm flowing from the affirmative use of *proprietary* information by competitors," and not simply any injury to competitive position, as might flow from customer or employee disgruntlement or from embarrassing publicity.[28]  The FCC's blatant mischaracterization of COMPTEL's argument as saying that records of customer complaints or employee disgruntlement cannot be protected[29] demonstrates the lengths to which it will go to gloss over its inadequate showing.

COMPTEL also showed in its Motion for Summary Judgment that Section 54.501(d)(3) of the FCC's rules, 47 C.F.R. §501(d)(3), requires service providers, such as AT&T, to make available for public inspection "rates charged to and discounts allowed for eligible schools and libraries."[30]  This is the very pricing and discount data that the FCC claims is protected from disclosure under Exemption 4.[31]  The FCC now claims that "just because something is in the public domain . . . does not mean that the government can release that information to the public," citing the Privacy Act, 5 U.S.C.§ 552a, of all things.[32]  As the FCC should be well aware, the Privacy Act applies only to records maintained by the government on individuals, not large publicly traded corporations like AT&T.  More importantly, Exemption 4 does not shield from disclosure data that are in the public domain. *CNA Financial Corporation* 830 F.2d at 1154 (D.C. Cir. 1987).  As a

---

[28]    See COMPTEL's Memorandum of Points and Authorities at 14, citing *CNA Financial Corporation v. Donovan*, 830 F.2d 1132, 1154 (D.C. Cir. 1987) (emphasis added) and *Public Citizen Health Research Group v. Food and Drug Administration*, 704 F.2d 1280, 1291 (D.C. Cir. 1983).

[29]    Defendant's Memorandum in Opposition at 9.

[30]    See COMPTEL's Memorandum of Points and Authorities at 13.

[31]    See Declaration of Judy Lancaster at ¶ 19.

[32]    Defendant's Memorandum in Opposition at 8.

result, the FCC's claim that AT&T's pricing and discount data may be withheld under
Exemption 4 must be rejected.

For the first time in its Opposition to COMPTEL's Motion For Summary
Judgment, the FCC stated that it "is prepared to release eighteen pages of Form 474s
which the FCC deems to be the sort of publicly-available information addressed in
Section 54.501(d)(3)"[33] subject to the Court's disposition of AT&T's arguments for
withholding this material pursuant to Exemption 7(C). The FCC's admission that the
information is publicly available demonstrates conclusively that it has improperly
withheld, and continues to improperly withhold, these records from COMPTEL. And the
public availability of the information eliminates any argument that release would
negatively impact AT&T's alleged "personal privacy" interest.

The FCC repeats its arguments that disclosure of the AT&T materials would
impair its ability to fulfill its statutory mandate to create and oversee the E-rate
program.[34] COMPTEL showed the fallacy of these arguments in its Opposition to the
FCC's Motion For Summary Judgment. Rather than repeat those arguments here,
COMPTEL incorporates them by reference.[35]

### B.    The FCC Has Not Shown That Any Documents Have Been Properly Withheld Under Exemption 5

The FCC erroneously claims that COMPTEL has waived its right to any of the
documents withheld pursuant to Exemption 5 because they are not responsive to

---

[33]    *Id.*

[34]    *Id.* 9-10.

[35]    COMPTEL's Memorandum of Points and Authorities in Opposition to the FCC's
Motion For Summary Judgment at 7-11.

COMPTEL's FOIA request.[36]  The Enforcement Bureau found otherwise in its August 5,

2005 decision.[37]  The post-hoc rationalizations of the FCC's litigation counsel cannot

substitute for the decision of the agency.  *See Connecticut Department of Public Utility*

*Control v. Federal Energy Regulatory Commission*, 2007 U.S. App. LEXIS 9119, at 6

(D.C. Cir. 2007).  In any event, the FCC's waiver argument is moot because COMPTEL

resubmitted a FOIA request for the documents withheld under Exemption 5 on April 16,

2007 to eliminate any debate with respect to their responsiveness.

      As a preliminary matter, the FCC has failed to demonstrate that there is no factual

information in the withheld documents that is subject to disclosure.  The FCC presented a

detailed discussion of the law on an agency's right to withhold factual information under

Exemption 5 where the information is "inextricably connected" to the deliberative

process,[38] but failed to tie that discussion to any of the documents withheld or show that

any factual information in the documents would reveal advice, opinions or evaluations

circulated within the FCC as part of the decision making process.  For this reason, the

FCC has failed to meet its burden of proving that the factual information in the

documents is exempt from disclosure.  *Mead Data Cent., Inc. v. U.S. Department of the*

*Air Force*, 566 F.2d 242, 254 (D.C. Cir. 1977).

      There is a strong public policy that the public is entitled to know what the

government is doing and why.  For this reason, Exemption 5 is to be interpreted

narrowly.  *NAACP Legal Defense and Educational Fund v. U.S. Department of Justice*,

---

[36]      Defendant's Memorandum in Opposition at 10-11.

[37]      Exhibit C to COMPTEL's Statement of Undisputed Facts.

[38]      Defendant's Memorandum in Opposition at 14-15.

612 F. Supp. 1143, 1147 (D.D.C. 1985). In ruling on COMPTEL's FOIA request, the

FCC determined that "drafts of Bureau pleadings and correspondence, and memoranda

and emails, distributed among Commission staff, which discuss the issues and

investigations related to this matter" were exempt from disclosure under Exemption 5.[39]

In its Motion For Summary Judgment, the FCC elaborated on its description of the

documents withheld to include "e-mails among FCC staff discussing issues related to the

SBC investigation and staff memoranda dealing with these issues" that are deliberative

and pre-decisional; preliminary drafts of the consent decree and an agreement tolling the

statute of limitations that are pre-decisional; and portions of e-mails discussing the draft

consent decree that involve communications between FCC staff and SBC, and FCC staff

members' handwritten notes regarding these issues.[40]

      In its Opposition to COMPTEL's Motion For Summary Judgment, the FCC

revealed for the first time additional details about the withheld materials that demonstrate

that its claims that the deliberative process privilege protects all of them must be

rejected.[41] Exemption 5 protects documents such as "recommendations, draft documents,

proposals, suggestions and other substantive documents which reflect the personal

opinions of the writer rather than the policy of the agency." *Coastal States Gas*, 617 F.

2d at 866. In order to properly withhold documents under Exemption 5, the FCC must

---

[39]     See Exhibit C to COMPTEL's Statement of Undisputed Facts.

[40]     Declaration of Judy Lancaster at ¶¶ 24-26.

[41]     Supplemental Declaration of Judy Lancaster at ¶¶ 6-70.

demonstrate both that the documents are pre-decisional and that they are deliberative.[42]
The FCC has failed to make such a showing for many of the withheld documents. The
D.C. Circuit has held that an index that identified who wrote a document, to whom it was
addressed, the date of the document and a brief description of its contents, together with
an identification of the exemption invoked to protect the document from disclosure, was
"patently inadequate" to permit a court to decide whether an exemption was properly
claimed. *Coastal States Gas*, 617 F. 2d at 861. The FCC's description of the documents
withheld pursuant to Exemption 5 does not even meet this patently inadequate standard.

Ms. Lancaster's Supplemental Declaration does not identify either the author of
any of the documents or to whom the documents were addressed or copied.[43] As the
Court stated in *Coastal States Gas Corp.*, the identity of the parties to a communication is
important in determining whether the deliberative process privilege applies. "[A]
document from a subordinate to a superior official is more likely to be pre-decisional,
while a document moving in the opposite direction is more likely to contain instructions
to staff explaining the reasons for a decision already made." 617 F.2d at 868. The FCC's
refusal to identify the parties to the communications it seeks to withhold precludes the
Court from making a determination that the FCC properly withheld any of them under the
deliberative process privilege. A review of the sparse descriptions the FCC did provide
reveals just how far the FCC has overreached in claiming the protection of Exemption 5.

---

[42]     *Jordan v. U.S. Department of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978)
(Exemption 5 "protects only communications between subordinates and superiors that are
actually antecedent to the adoption of an agency policy"). To be deliberative, a document
must actually be related to the process by which policies are formulated and must be a
direct part of the agency give-and-take by which a decision itself is made. *Id.*

[43]     See Supplemental Declaration of Judy Lancaster at ¶¶ 6-70.

1.  **Correspondence Between The FCC and AT&T
    May Not Be Withheld Under Any Exemption**

For the first time in its Opposition, the FCC contends that its August 24, 2004

Letter of Inquiry ("LOI") notifying AT&T that it was opening an investigation is

protected from disclosure by Exemption 4 and Exemption 5.[44] The FCC's contention is

nonsensical.  As the FCC itself concedes, Exemption 4 protects "trade secrets and

commercial or financial information *obtained from a person*" other than an agency.[45]

Because the FCC itself generated the LOI and did not obtain it from a "person,"

Exemption 4 cannot shield the LOI from disclosure.[46]  Nor can the FCC withhold the

LOI under Exemption 5.  The LOI is a government demand for information from a

regulated entity that was addressed to and shared with a non-governmental party.

Because it is neither pre-decisional nor deliberative, it is not entitled to protection under

Exemption 5.

Similarly, the FCC cannot use Exemption 5 to protect the documents identified in

paragraphs 19, 20, 24, 46, 47, 57, 58, 69 and 70 of Ms. Lancaster's Supplemental

Declaration.  Each of the documents involve communications between unidentified "FCC

staff" or "FCC officials" and unidentified "[AT&T] officials" discussing edits to the

FCC's proposed Consent Decree and Compliance Plan, AT&T's August 6, 2004 letter

notifying the FCC of possible rule violations, edits to a draft Tolling Agreement, edits to

---

[44]     *Id.* at ¶¶ 4-5.

[45]     5 U.S.C. 552(b)(4) (emphasis added); see also Defendant's Memorandum of
Points and Authorities in support of its Motion For Summary Judgment at 9-10.

[46]     The FCC erroneously claims that all documents its seeks to shield from disclosure
under Exemption 4 were "'obtained from a person' for purposes of FOIA Exemption 4
since they were submitted to FCC by AT&T."  Defendant's Memorandum in Opposition
at 7.  The FCC's LOI was clearly not submitted to the FCC by AT&T.

a draft Consent Decree between FCC and AT&T, an executed Tolling Agreement and confirming that a Tolling Agreement was signed. The FCC's correspondence with AT&T does not qualify as "inter-agency" or "intra-agency" communications, taking all of these communications outside the reach of Exemption 5. Documents that are shared with members of the public, in this case AT&T officials, lose any Exemption 5 status they may have had. *Center for Auto Safety v. Department of Justice,* 576 F. Supp. 739 (D.D.C. 1983), *vacated in part,* 1983 U.S. Dist. LEXIS 15611 (D.D.C. 1983).

Contrary to the FCC's assertion,[47] the FCC communications with AT&T cannot be withheld pursuant to an alleged "settlement privilege." As COMPTEL showed in its Opposition to the FCC's Motion For Summary Judgment,[48] this Court repeatedly has rejected the argument that Exemption 5 embraces a "settlement privilege."

The FCC's claim that the final version of the Tolling Agreement is "publicly available" cannot be verified.[49] The only documents relating to Enforcement Bureau File No. EB-04-IH-0342 that are publicly available as far as COMPTEL has been able to determine are the Order adopting the Consent Decree and the Consent Decree itself.

Nor does Ms. Lancaster's Supplemental Declaration meet the FCC's burden of showing that that the documents identified in paragraphs 15, 16, 17, 21, 22, 23, 25, 26, 27, 28, 31, 32, 33, 34, 36, and 45 are protected from disclosure under Exemption 5. Ms. Lancaster describes these documents as unidentified "FCC staff" e-mails and notes

---

[47]    Defendant's Memorandum in Opposition at 13, n. 7.

[48]    See COMPTEL's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment at 20-21.

[49]    See Defendant's Memorandum in Opposition at 13; Declaration of Judy Lancaster at ¶ 25.

discussing edits to draft Tolling Agreement Extension between the FCC and AT&T, edits

to draft Compliance Plan, edits to draft Consent Decree, AT&T settlement offers and

proposals, potential settlement terms, settlement negotiations and discussions between the

FCC and AT&T, potential settlement counter-offers, meetings with AT&T, and

telephone conversations with AT&T.

      In order to show that documents are protected under the deliberative process

privilege, the FCC must identify "what deliberative process is involved and the role

played by the documents in issue in the course of that process." *Coastal States Gas*

*Corp.*, 617 F. 2d at 868. The FCC has done neither. In fact, it has refused to even

disclose the author or addressee(s) of any of the e-mails. "[M]ere recitation of the buzz

words 'draft' and 'deliberative' is not enough." *ICM Registry, LLC v. U.S. Department*

*of Commerce,* 2007 U.S. Dist. LEXIS, 22853 (D.D.C. 2007) at 16. Although the FCC

correctly sets forth the bases for the deliberative process privilege,[50] it has failed to

provide the factual information that would allow the Court to determine whether any of

the communications it seeks to withhold involve (1) discussions on matters of policy

between subordinates and superiors, (2) discussions of proposed policies before they

were finally adopted or (3) reasons or rationales that are not in fact ultimately the grounds

for the FCC's action. Documents that reflect AT&T settlement offers and proposals,

potential settlement terms, settlement negotiations and discussions between the FCC and

AT&T, meetings with AT&T, and telephone conversations with AT&T cannot be

withheld under Exemption 5 because they are not intra-agency communications.

---

[50]     Defendant's Memorandum in Opposition at 13-14.

The FCC's refusal to provide the Court with even the most basic information needed to evaluate its claims that Exemption 5 protects any of these documents compels the grant of COMPTEL's Motion For Summary Judgment.

### 2. The FCC Has Not Shown That Other Internal E-mails Were Properly Withheld

In Paragraphs 29, 30, 37, 38, 39, 40, 41, 42, 43, 51 and 55 of her Supplemental Declaration, Ms. Lancaster identifies additional e-mails between unidentified "FCC staff" or unidentified "FCC officials" that have been withheld pursuant to Exemption 5. Based on the information the FCC has provided, none of these documents may be withheld under Exemption 5. While the FCC argues that documents that "advise superiors" are protected under the deliberative process privilege,[51] it has not shown that any of the withheld documents contain advice to superiors. Again, the FCC's refusal to identify the parties to the e-mails precludes a finding that any of these communications involved a policy discussion between subordinates and superiors or any other characteristics of the deliberative process privilege. *Coastal States Gas Corp.*, 617 F. 2d at 868. And a staff opinion on a news article involving a company other than AT&T dated six months before the FCC allegedly even became aware of AT&T's E-rate issues[52] cannot possibly be said to be either pre-decisional or to reflect the give and take of the decision-making process. *ICM Registry, LLC v. U.S. Department of Commerce*, 2007 U.S. Dist. LEXIS 22853 (D.C. Cir. 2007) (rejecting government's claim that draft memorandum commenting on press article exempt from disclosure under Exemption 5).

---

[51]    Defendant's Memorandum in Opposition at 13.

[52]    See Paragraph 51 of Ms. Lancaster's Supplemental Declaration. The FCC contends that it learned of AT&T's E-rate issues by letter from AT&T dated August 6, 2004. Defendant's Memorandum in Opposition at 12.

In paragraph 55, Ms. Lancaster identifies handwritten notes of "FCC staff" "discussing certain 'DOJ issues' relating to subject matter that is unclear, dated January 6, 2004." If the subject matter is unclear to the FCC, the FCC certainly cannot claim that the document played a role in its deliberative process.

### 3. Documents Dated After The AT&T/FCC Consent Decree Are Not Pre-decisional

The FCC terminated its investigation into AT&T's E-rate violations by adopting a Consent Decree on December 14, 2004.[53] In her original Declaration, Ms. Lancaster asserted that some of the e-mails withheld pursuant to Exemption 5 are "pre-decisional inter-agency e-mails."[54] The only inter-agency e-mails identified in Ms. Lancaster's Supplemental Declaration are those described in Paragraphs 11, 13 and 14 as "e-mail chain[s] between FCC staff and DOJ officials dated *December 20, 2004 through January 6, 2005.*" In order to qualify under Exemption 5, documents must be both pre-decisional and deliberative. *National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132, 151-153 (1975) (post-decisional communications are not protected by Exemption 5). The FCC's post-decisional e-mail correspondence with the Department of Justice is neither pre-decisional nor exempt from disclosure. Although FCC counsel characterizes these e-mails as "seeking advice and assistance from DOJ,"[55] referencing Ms. Lancaster's Supplemental Declaration, Ms. Lancaster's Declaration says nothing about "seeking

---

[53]     See Defendant's Memorandum in Opposition at 12, n. 6.

[54]     Declaration of Judy Lancaster at ¶ 25.

[55]     Defendant's Memorandum in Opposition at 12. Indeed, the FCC cites Paragraphs 6-9 of Ms. Lancaster's Supplemental Declaration which reference only e-mail chains between FCC employees.

advice and assistance from the DOJ." In addition, the FCC's refusal to identify either the "FCC staff" or the "DOJ officials" that were parties to the e-mail chains or the deliberative process to which these post-decisional e-mails contributed precludes a finding that they are protected from Exemption 5.

In Paragraphs 6, 7, 8, 9, 10, 12 of her Supplemental Declaration, Ms. Lancaster also identifies a number of post-decisional e-mail chains between "FCC employees" or "FCC staff" and handwritten notes of "FCC Staff" that the FCC claims are protected under Exemption 5. These documents are described as "discussing the FCC's investigation of [AT&T] for violations of the FCC's rules in connection with the submission of claims for and receipt of universal service support for the New London Connecticut Public Schools" and discussing whether documents associated with the investigation may be provided to the Department of Justice. The FCC asserts that these documents "are exactly the sort of staff-level preliminary exchange of drafts, views and advice that is protected by the deliberative process privilege."[56] The FCC's assertion is contradicted by its own description of the deliberative process privilege just a few pages later where it candidly acknowledges that the privilege is designed to encourage "open, frank discussions of policy *between subordinates and superiors*."[57] In *Jordan v. U.S. Department of Justice*, 591 F.2d 753, 774, the D. C. Circuit confirmed that Exemption 5 "protects only communications between subordinates and superiors that are actually antecedent to the adoption of an agency policy." The FCC's refusal to identify the "FCC

---

[56]     Defendant's Memorandum in Opposition at 5.

[57]     *Id.* at 13 (emphasis added).

staff" or "FCC employees" that were parties to the communications precludes a finding that they are protected by Exemption 5.

### 4. The FCC Has Not Shown That Undated Materials Were Pre-Decisional and Deliberative

In Paragraphs 56, 59, 60, 61, 62, 63, 64 and 65, Ms. Lancaster identifies handwritten and typed notes of unidentified "FCC staff" that have been withheld as pre-decisional and deliberative. The FCC does not claim that any of these documents "reflect the personal opinions of the writer rather than the policy of the agency,"[58] or provide any other information, including the identity of the author(s),that would allow the Court to determine that they have been properly withheld under the deliberative privilege of Exemption 5. At the very least, the "timeline of events" identified in Paragraph 59 would appear to be segregable factual material that must be disclosed.

### 5. Correspondence With USAC Is Not Exempt From Disclosure

In Paragraphs 35 and 50 of her Supplemental Declaration, Ms. Lancaster identifies two e-mails between "FCC staff" and "USAC officials" discussing analysis of FCC rules at issue in the investigation of AT&T and how rules might apply to investigation and discussing whether E-rate pays for certain equipment. As COMPTEL showed in its Opposition to the FCC's Motion For Summary Judgment, USAC is not a federal government agency and the FCC did not prove that any communications with USAC qualified as exempt communications from an outside consultant.[59] Therefore, any communications with USAC may not be withheld as "intra-agency" communications.

---

[58]    See *Coastal States Gas Corp.*, 617 F. 2d at 866.

[59]    COMPTEL's Memorandum in Opposition to the FCC's Motion for Summary Judgment at 22-23.

Section 54.702(c) of the FCC's rules, 47 C.F.R. §54.702(c), provides that USAC may not make policy or interpret unclear provisions of the Communications Act or rules. Where the Act or the Commission's rules are unclear, the rule requires USAC to seek guidance from the FCC. Section 552(a)(2) of FOIA requires the FCC to make available for public inspection statements of policy and interpretations that have been adopted by the agency and are not published in the Federal Register. To the extent that the e-mails from "FCC staff" to the "USAC officials" provided interpretations of FCC rules, they must be disclosed. As the Court ruled in *Coastal States Gas Corp.*, 617 F. 2d at 867, an "agency will not be permitted to develop a body of 'secret law' used by it in the discharge of its regulatory duties and its dealings with the public, but hidden behind a veil of privilege, because it is not designated as 'formal,' 'binding' or 'final.'"

### III. The FCC Is Not Entitled To Summary Judgment For the Records or Portions of Records Withheld Pursuant To Exemptions 6 and 7(C)

The FCC is not entitled to summary judgment on the records or portions of records withheld pursuant to FOIA Exemptions 6 and 7(C). COMPTEL made clear to the FCC on June 28, 2005 that it had no objection to the redaction of personal information regarding individuals that might be contained in AT&T's documents.[60] The FCC acknowledged COMPTEL's lack of objection to the redaction of personal information.[61] Because those redactions are not at issue, the FCC's request for summary judgment for withholding the redacted personal information[62] must be denied.

---

[60]    See Exhibit E to COMPTEL's Statement of Undisputed Facts at 2.

[61]    See Exhibit C to COMPTEL's Statement of Undisputed Facts at 3 and Defendant's Motion For Summary Judgment at 25.

[62]    Defendant's Memorandum in Opposition at 16.

## IV. The Court Should Conduct An *In Camera* Review Rather Than Allow The FCC To Supplement Its Inadequate Showing

The FCC has flagrantly violated its obligations under FOIA and refused to provide this Court with even the minimal information necessary to determine that it has properly withheld any documents. In over two years, the FCC has released no documents to COMPTEL, including the documents which it has determined should be released under FOIA, and will not do so without a Court order.[63]

In the event the Court determines that COMPTEL is not entitled to an order enjoining the FCC from improperly withholding some or all of the requested records, the Court should direct the FCC to produce the documents for an *in camera* inspection. An *in camera* inspection is particularly appropriate where, as here, the agency's declarations are insufficiently detailed to permit meaningful review of its exemption claims. *Spirko v. U.S. Postal Service*, 147 F. 3d 992, 996 (D.C. Cir.1998). The FCC's request that it be allowed to "supplement its declarations" in the event the Court determines that its declarations and index are insufficient[64] must be rejected. The FCC has had ample time and opportunity to comply with its obligations under FOIA, but has defiantly refused to do so. The FCC's request that the Court grant it yet another opportunity to meet its burden of proof is just another attempt to stall for time and delay the release of any documents to COMPTEL.

## CONCLUSION

For the foregoing reasons and those stated in its Motion For Summary Judgment, COMPTEL respectfully requests that the Court enter summary judgment in favor of COMPTEL and deny the FCC's Motion For Summary Judgment in its entirety.

April 30, 2007                                      Respectfully submitted,

---

[63]    *Id.* at 7.

[64]    *Id.* at 6, n.3.

_____

Mary C. Albert, DC Bar #347617
Jonathan D. Lee, D/C/ Bar #435586
COMPTEL
900 17th Street N.W., Suite 400
Washington, D.C. 20006
(202) 296-6650
malbert@comptel.org
jlee@comptel.org

# Exhibit A

**Mary Albert**

| | |
|---|---|
| **From:** | "Judy Lancaster" <Judy.Lancaster@fcc.gov> [Judy.Lancaster@fcc.gov] |
| **Sent:** | Wednesday, June 22, 2005 12:33 PM |
| **To:** | Mary Albert |
| **Subject:** | RE: Re: FOIA 333 |
| **Attachments:** | TEXT.htm; Mime.822 |

Ms. Albert:

As we previously discussed, SBC requested confidentiality for the
documents you requested and, as a consequence, the FOIA takes longer to
process. I am currently reviewing those documents and hope to soon have
a decision regarding this matter. As we also discussed, you and SCB
will be served with that decision and each of you will have an
opportunity to challenge it before the documents can be released.

Thank you for your patience with regard to this FOIA. I will inform you
of each change in its status.

Please give me a call if you have any questions or comments about this
matter.

Sincerely,

Judy Lancaster

Investigations & Hearings Division
Enforcement Bureau
Federal Communications Commission
445 12th Street, S.W., Room 4A237
Washington, D.C. 20554
2024187584 Direct Dial
2024182080 IHD Fax

> Original Message
> From: Mary Albert [mailto:malbert@comptelascent.org]
> Sent: Monday, June 20, 2005 10:49 AM
> To: Judy Lancaster
> Subject: Fwd: Re: FOIA 333

Ms. Lancaster  The statutory time period for the FCC to review
and respond to CompTel/ALTS' April 11, 2005 FOIA request has long since
expired. Would you please provide a status report? Thank you.

Mary Albert

4/23/2007