UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMPTEL, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FEDERAL COMMUNICATIONS ) <br> COMMISSION, ) <br> ) <br> Defendant, ) <br> ) <br> AT&T, ) <br> ) <br> Intervenor. ) | Civil Action No. 06-1718 (HHK) |

**DEFENDANT FCC'S REPLY TO PLAINTIFF COMPTEL'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, lawsuit concerns certain Federal Communication Commission ("FCC") records relating to an FCC investigation into allegations that SBC Communications, Inc. ("SBC"), now AT&T, violated the FCC's rules when it submitted claims for universal service support for the New London, Connecticut public schools. Complaint at ¶ 1. For the reasons set forth in Defendant's motion for summary judgment, its opposition to Plaintiff's motion for summary judgment, and as explained herein, the Court should enter summary judgment for the FCC.

As an initial matter, CompTel's Memorandum of Points and Authorities in Opposition to Defendant FCC's Motion for Summary Judgment, Document No. 24, seems to have abandoned its prior arguments that it is entitled to a grant of summary judgment based upon the FCC's purported delay in responding to the FOIA request at issue, CompTel Memo., Document No. 20, at 7, and because the FCC did not provide CompTel with a Vaughn index during the

administrative proceedings. See CompTel Memo. at 10-11. CompTel also seems to have abandoned its argument that the Court should review the FCC's proposed withholdings in camera. CompTel Memo. at 8 (requesting in camera inspection of records). Thus, CompTel has waived these arguments and the Court should not consider them. Stanford v. PEPCO, 394 F.Supp.2d 81, note 10 (D.D.C. 2005) (failure to respond to argument means that the argument is conceded). See also Neal v. Kelly, 963 F.2d 453, 456-57 (D.C. Cir. 1992); Fed. R. Civ. P. 56(e). As explained below, the arguments that CompTel does assert in its Opposition lack merit.

A.   **The Court Should Reject CompTel's Mistaken Assumptions About the Number of Pages at Issue as Incorrect and Immaterial.**

CompTel's argument concerning the number of pages encompassed by its FOIA request is incorrect and immaterial. CompTel continues to assert that there are approximately 3200 pages of records at issue in this case and that a purported "discrepancy in the FCC's representations with respect to the volume of documents [at issue]. . . has created a genuine issue of material fact." Opp. at 2. First, CompTel has not raised any challenge to the sufficiency of FCC's search for responsive records, all of which were contained in a single investigative file. To the extent that the claimed "discrepancy" could be construed as such an argument, CompTel fails to provide any competent evidence to support its contention. As explained in the FCC's prior filings, CompTel mistakenly relies on an FCC e-mail dated before the completion of the processing of CompTel's FOIA request that stated that approximately 3200 pages of records had been identified as potentially responsive. CompTel concedes that the e-mail uses the term "potentially" responsive, in fact quoting that term in its Opposition. Id. This e-mail was clearly an initial estimate of the number of pages of records that might conceivably, pending further review, be responsive to CompTel's request. Of course, the actual number of responsive pages,

after review of all of the potentially responsive pages, is set forth in the FCC's declarations in this case. See, e.g., Supplemental Declaration of Judy Lancaster at ¶¶ 4-5.

Second, CompTel's assertion with respect to an alleged "discrepancy" is so lacking in evidentiary basis that it cannot create a "genuine" issue of material fact. Fed. R. Civ. P. 56(c). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (if the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted."); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). As explained, the "evidence" upon which CompTel relies is an e-mail dated before the completion of the processing of its FOIA request that is, on its face, an indeterminate estimate as to the number of potentially responsive pages of records. This e-mail evidences only that the FCC provided CompTel with such an estimate, and is not probative with respect to the number of pages of records that the FCC determined to be responsive once the search and the review of the material were completed. Third, since CompTel has not challenged the adequacy of the FCC's search for records, even a "genuine" dispute about any purported "discrepancy" would not be "material" to the adjudication of the FCC's motion for summary judgment. Id. Accordingly, the Court should disregard CompTel's baseless contentions with respect to the number of pages of records at issue.

**B.      The Status of the Records That the FCC Previously Determined Could be Released.**

CompTel contends that it is "grossly improper" that the FCC has not released any of the records or portions of records that the FCC has determined are not subject to any FOIA exemption. Opp. at 3-5. In support of this contention, CompTel cites DOJ v. Tax Analysts, 492 U.S. 136, 151 (1989) and Gilmore v. DOE, 33 F.Supp.2d 1184, 1187 (N.D. Cal. 1998). Opp. at

3

5. In fact, neither case states that an agency must release records that still are at issue in the litigation, prior to the resolution of that litigation. Instead, the cases state simply that the court has jurisdiction over such a dispute. For example, the Supreme Court in Tax Analysts held that agencies must release records pursuant to a valid FOIA request once the court determines that no exemption applies to the withholdings. Of course, that is the very question currently before the Court with respect to all records at issue: namely, what records or portions of records, if any, the FCC is required to release. See AT&T's brief at 21-22 (citing, inter alia, Campaign for Family Farms v. Glickman, 200 F.3d 1180, 1184 (8th Cir. 2000)). It would be illogical for the FCC to provide records to CompTel during the pendency of a proceeding to determine whether or not those records should be released. To release the disputed documents obviously would usurp the Court's function in resolving the pending motions.

      CompTel argues that the FCC should ignore AT&T's intervention in this lawsuit, because this Court lacks jurisdiction over any affirmative claims that AT&T may be asserting in this case. CompTel's Opposition to the Motion of Intervenor-Defendant AT&T for Summary Judgment, Document No. 25 at 1-6. The FCC takes no position on these issues, but notes that the Court has not ruled on that question. In addition, the FCC has not issued a decision on the parties' FOIA appeals, nor has this Court resolved the various other legal issues presented to it by the parties in this litigation. Of course, as the FCC explained previously, under the FOIA there is no immediate right to the requested records, prior to the court's ruling on an agency's withholdings. See, e.g., Hornbostel v. Dept. of Interior, 305 F. Supp.2d 21, 28 (D.D.C. 2003) ("lack of timeliness does not preclude summary judgment for an agency in a FOIA case").

C. **The FCC's Declarations Comply with FOIA's Requirements.**

The Court should reject CompTel's two-paragraph argument concerning the sufficiency of the FCC's declarations. Opp. at 5 (citing, inter alia, Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973, cert. denied, 415 U.S. 977 (1974)). CompTel claims that the FCC has produced no "index or other particularized description of the documents it has withheld." Opp. at 6. In fact, the FCC now has provided two thorough declarations describing in detail the records withheld and the basis for the withholdings. In addition, Intervenor Defendant AT&T also has filed two declarations describing the records. See Document No. 19, Decl. of Kelly P. Dunbar at Ex. B, attachment A (index of records constituting AT&T's response to FCC's Letter of Inquiry and setting forth the rationale for the confidentiality of those records); Document 19, Declaration of Ann Rotatori at ¶ 7 (describing in detail records at issue subject to withholding under Exemption 4). The FCC's Supplemental Declaration of Judy Lancaster states that Ms. Lancaster reviewed AT&T's declarations and concluded that "AT&T correctly indexed these records." Supp. Decl. Lancaster at ¶ 4.

CompTel contends that the FCC's declarations contain only "generalized and conclusory allegations." Opp. at 5. In fact, as stated above, the FCC has adequately described the nature of the withheld information. See Delaney, Migdail & Young, Chartered v. IRS, 826 F.2d 124, 128 (D.C. Cir. 1987); Judicial Watch v. USPS, 297 F.Supp. 2d 252, 257 (D.D.C. 2004) (agency may submit materials in any form as long as reviewing court has reasonable basis to evaluate the claimed exemptions); Philadelphia Newspapers, Inc. v. HHS, 69 F.Supp.2d 63, 66 (D.D.C. 1999) (finding FOIA declarations sufficient because they described each document and because an attached list of documents identified the FOIA exemptions asserted by the agency).

As previously explained, an agency is entitled to a grant of summary judgment in a FOIA case when its withholdings are proper and based upon a declaration that is "relatively detailed, non-conclusory, and not impugned by evidence . . . of bad faith on the part of the agency." McGhee v. Central Intelligence Agency, 697 F.2d 1095, 1102 (D.C. Cir. 1983)); Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981); Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974). The two declarations of Judy Lancaster explain in detail that the FCC is withholding a total of 268 pages of an investigative file pursuant to FOIA Exemptions 4, 6, and 7(c). Supp. Lancaster Decl. at ¶ 4. The declarations specifically identify what documents have been withheld and the titles, dates and the number of pages of those documents. Id. at ¶¶ 4-5; Lancaster Decl. at ¶¶ 17-22, 27-30. Thus, the FCC and Intervenor-Defendant AT&T have provided the parties and the Court with declarations and indexes sufficient under the FOIA, and the records at issue in this lawsuit, and the basis for the withholdings, have been clearly explained.

D.  **The FCC Properly Withheld Records, or Portions of Records, Pursuant To FOIA Exemption 4.**

The FCC's Exemption 4 withholdings are proper given the confidential nature of the commercial and financial information contained in the records at issue. CompTel contends first that during the administrative processing of its FOIA request the FCC did not conclude that disclosure of the records at issue "would impair the government's ability to obtain necessary information in the future." Opp. at 7. CompTel suggests that the Lancaster Declaration conflicts with the FCC's initial decision on its FOIA request. Id. However, the language that CompTel quotes from the FCC's initial decision states, as have the FCC's filings in this Court, merely that certain records at issue in this case were required to be submitted to the FCC. That fact certainly

does not preclude the FCC from explaining the manner in which the disclosure of competitively sensitive information could impair the Agency's ability to obtain necessary information in the future. The Agency's articulation of impairment here is thus in no way inconsistent with its administrative FOIA decision. In any event, because review in this Court is de novo, the Agency's administrative decision is not the focus of this Court's inquiry.

CompTel contends that "[t]he D.C. Circuit has determined repeatedly that there is no danger that public disclosure will impair the ability of the Government to obtain information in the future where entities are *required* to provide commercial or financial information to the government." Opp. at 8 (emphasis in original) (citing, inter alia, Nat'l Parks and Conservation Ass'n v. Morton (National Parks I), 498 F.2d 765, 770 (D.C. Cir. 1974) and Nat'l Parks and Conservation Ass'n v. Kleppe (National Parks II), 547 F.2d 673 (D.C. Cir. 1976)). CompTel is mistaken in its characterization of the state of the law. The cases that Plaintiff cites all pre-date the Court of Appeal's decision in Critical Mass Energy Project v. Nuclear Regulatory Comm'n, which states in pertinent part that:

> While we indicated that the governmental interest is unlikely to be implicated where the production of information is compelled, we have since pointed out that there are circumstances in which disclosure could affect the reliability of such data. See Washington Post Co. v. HHS, 690 F.2d 252, 268-69 (D.C. Cir. 1982) (possible effect of disclosure on accuracy of statements filed by consultants). Thus, when dealing with a FOIA request for information the provider is required to supply, the governmental impact inquiry will focus on the possible effect of disclosure on its quality….Thus, when information is obtained under duress, the Government's interest is in ensuring its continued reliability.

975 F.2d 871, 878 (D.C. Cir. 1992), cert. denied, 507 U.S. 984 (1993). The Court of Appeals went on to explain that:

> It should be evident from this review that the two interests identified in the National Parks test are not exclusive. Although we overrule our decision in

> Critical Mass I, we note that the panel there adopted the First Circuit's conclusion that the exemption also protects a governmental interest in administrative efficiency and effectiveness. See Critical Mass I, 830 F.2d at 286 (citing 9 to 5 Org. for Women Office Workers, 721 F.2d at 11) . . . . We offer no opinion as to whether any other governmental or private interest might also fall within the exemption's protection.

975 F.2d at 879. Accordingly, the Court of Appeals explicitly has recognized, just as the FCC has explained in its declarations, that the government has an interest in avoiding "impaired operations" even when records are submitted involuntarily, to the extent that disclosure could affect the quality and reliability of future information that the government might receive. In addition, the Court of Appeals expressly left open the possibility that other government interests could be implicated as well. Judge Lamberth recognized and discussed at length in Judicial Watch, Inc. v. Export-Import Bank (an "involuntary submission" case involving banking) the government's interests in its administrative efficiency and effectiveness, and its interest in an agency's ability to carry out its statutory purpose. See 108 F. Supp. 2d 19, 29-31 (D.D.C. 2000). All of the foregoing interests are implicated in the FCC's withholdings in this case.

Plaintiff's attempt to distinguish the Judicial Watch case falls flat. Opp. at 11. CompTel argues that in Judicial Watch, "the information at issue was submitted to the government in confidence to obtain a bank loan," whereas in this case AT&T did not initially request confidentiality for the documents that it submitted to the FCC. Opp. at 11. In fact, however, AT&T did subsequently request confidential treatment for the records at issue. In any event, CompTel fails to demonstrate that this difference is a relevant basis for distinguishing the two cases, because the FCC permissibly designated the materials as confidential on its own motion pursuant to its regulations. Lancaster Decl., Attachment D at 4. See 47 C.F.R. § 0.459(f).

The FCC has demonstrated that disclosure of the records at issue could (1) discourage the

FCC's regulated entities from voluntarily alerting the FCC to problems in the future, thus hindering the FCC's ability to perform its statutory purpose; and (2) result in a diminution in quality of information that is involuntarily submitted. If not for AT&T's initial voluntary disclosure to the FCC, the Commission may not have begun any investigation, which in turn led to the requirement that AT&T submit to the FCC the Exemption 4 records at issue. In other words, but-for AT&T's voluntary disclosure, the FCC may not have required AT&T to provide these records.

It bears repeating that here, AT&T's voluntary disclosure alerted the FCC to a problem, prompted the FCC to investigate that problem, and resulted in AT&T's taking voluntary remedial action. See Lancaster Decl. at ¶ 20. Release of AT&T's sensitive financial and commercial information could discourage other licensees from voluntarily reporting to the Commission internal compliance problems, out of fear that such voluntary disclosure could result in release of their confidential business information through the FOIA. Id. at ¶ 21. This could make it difficult for the FCC to obtain reliable financial and commercial information from other telecommunications companies. Id. at ¶ 22. See Critical Mass, 975 F.2d at 878 (citing Washington Post Co. v. HHS, 690 F.2d 252 (D.C. Cir. 1982) (regarding importance of these interests).

Importantly, the FCC's demonstration that disclosure of records or portions of records could impair its ability to obtain reliable information in the future and to carry out its statutory purpose alone constitutes a sufficient basis for the Court to grant summary judgment in favor of the FCC. See Judicial Watch, 108 F.Supp. 2d at 29-31 (citations omitted). The FCC's sworn declaration to this effect is entitled to deference insofar as the FCC is in the best position to

ascertain under what circumstances its operations could be impaired.  See generally Lancaster Decl.  CompTel's unsupported speculation concerning impairment to government operations, on the other hand, is not entitled to any weight and should not be considered under Fed. R. Civ. P. 56(e).

CompTel next argues that the FCC has failed to provide a detailed justification for its withholdings, including providing evidence in support thereof.  Opp. at 13.  Of course, the FCC's two declarations and their attachments are themselves evidence and reflect the agency's expertise on these matters, which are within its statutory and regulatory purview.  See, e.g., Lancaster Decl. at ¶¶ 10-11.  AT&T has also provided evidence of the sort that CompTel claims is lacking.  See Document No. 19 at 23-26 and attachments.  That material is sufficient for this Court to grant the FCC's motion for summary judgment.  See Fed. R. Civ. P. 56(e).

CompTel claims that Exemption 4 does not protect the materials at issue from disclosure because that information already is in the public domain.  Opp. at 13 (citing 47 C.F.R. § 54.501(d)(3) and CNA Financial Corp. v. Donovan, 830 F.2d 1132, 1154 (D.C. Cir. 1987)).  As previously explained, the FCC is prepared to release eighteen pages of Forms 474, which the FCC deems to be the sort of publicly-available information addressed in section 54.501(d)(3).  The FCC proposes to release this information, subject to the Court's disposition of AT&T's Exemption 7(c) argument for withholding this material.  CompTel makes no showing, and no legal argument beyond reference to the regulation, that a carrier would be expected to retain in any such file all records that might conceivably reflect "rates charged" or "discounts allowed," such as an individual invoice for a particular service or piece of equipment.  To the extent that there are records at issue that contain "material required to be in a public inspection file," Opp. at

10

14, the FCC has determined to release those records. Importantly, the case CompTel relies upon, CNA Financial Corp. v. Donovan, 830 F.2d 1132, 1154 (D.C. Cir. 1987), is readily distinguishable from this case. In CNA, it was undisputed that much of the material at issue was in the public domain. Id. The CNA case does not require an agency to investigate whether information is, in fact, in the public domain. Id.

CompTel then argues that materials exchanged between the FCC and the Universal Service Fund Administrator (USAC) should be released because USAC "is neither a customer nor a supplier of AT&T." Opp. at 14. CompTel's assertions with respect to these records are somewhat unclear. The fact remains, however, that redacting information in the records at issue that was provided to USAC is proper because such information is commercially sensitive and not in the public domain. Aside from generalized speculation that such records would not cause AT&T competitive harm, CompTel has failed to provide any evidence to the contrary.

Similarly, the Court should reject CompTel's argument that the total value of AT&T's contract should be released. CompTel claims that the FCC lacks "any facts or other evidence" demonstrating that the contract value was not in the public domain. CompTel is arguing for agency "obligations" that are not grounded in the FOIA. CompTel cites no case or FOIA provision that requires agencies to do an investigation of whether information is in fact within the public domain. Opp. at 15. To create such an obligation would burden agencies unreasonably. The FCC explained its reasons in detailed and thorough declarations based upon the FCC's experience, the types of records at issue, and the facts of this case, as is its obligation. CompTel has the opportunity, as it has attempted to do here, to present evidence that the disputed materials are in the public domain. CompTel, however, has not demonstrated that the materials

are in the public domain. Instead, it has offered only its speculation and a general reference to the FCC's regulations.

For example, CompTel speculates at length about a criminal proceeding against certain individuals that involves, among other things, charges of mail fraud with respect to the E-rate program. Opp. at 15-16. CompTel provides no evidence to support its blanket assertion that the invoices at issue in this case are "fraudulent," but speculates that because the invoices here concern the New London School District, and New London is one of the school districts at issue in the pending criminal case, the invoices here must be "fraudulent." The invoices at issue in this case reflect pricing and cost data for equipment and services that AT&T charged to E-rate applicants and/or that AT&T sub-contractors charged to AT&T. Whether the invoices reflect work not performed or inflated prices as CompTel suggests is a question distinct from the FOIA analysis, as is the question whether AT&T properly submitted any such invoices to USAC for reimbursement.

As previously explained, such speculation cannot defeat a motion for summary judgment. Fed. R. Civ. P. 56(e). There is no evidence that the invoices and other material at issue in this case are the same as those at issue in the criminal proceeding. As previously explained, CompTel cites no legal authority requiring the FCC, when evaluating a FOIA request, to investigate whether any particular rate charged or discount allowed was "fraudulent" or was the subject of a criminal proceeding before another court, nor requiring the FCC to review its files to separate allegedly "fraudulent" invoices from those that are accurate. See Opp. at 15-16. In addition, even if CompTel's allegations were true, the FCC has no obligation when making its administrative FOIA determination to conduct a nationwide investigation of whether any of the

information that it reasonably believes is confidential has, at some time, somewhere, entered the public domain.  Instead, the relevant inquiry where, as here, the federal government requires a private party to submit information, is whether the disclosure is "likely either '(1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.'"  Pub. Citizen Health Research Group v. FDA, 185 F.3d at 903 (quoting Nat'l Parks & Conservation Ass'n v. Morton, 498 F.2d 765, 770 (D.C. Cir. 1974)).

E.      **The FOIA Exemption 5 Withholdings No Longer are at Issue in this Case and, Regardless, the FCC Properly Withheld Those Records, or Portions of Records.**

Perhaps recognizing that its FOIA request at issue in this lawsuit does not encompass internal FCC communications, or that alternatively, CompTel limited its FOIA request to exempt those materials during a telephone conversation with the FCC,[1] CompTel recently filed a new FOIA request with the FCC seeking FCC's internal communications in connection with the investigation at issue in this case.  Indeed, CompTel fails to address these issues at all in its Opposition or in its Statement of Facts.  Thus, the Court should accept as undisputed that CompTel has waived any claim to the Exemption 5 withholdings.  Local Civil Rule 7(h); Stanford v. PEPCO, 394 F.Supp.2d 81, note 10 (D.D.C. 2005) (failure to respond to argument means that the argument is conceded).

Nonetheless, in an abundance of caution, we will address CompTel's arguments concerning the Exemption 5 withholdings.  The Exemption 5 withholdings are communications

---

[1] As explained in the FCC's Opposition to CompTel's Motion for Summary Judgment: "the internal communications CompTel now is seeking are not clearly responsive to its FOIA request for "all pleadings and correspondence" in FCC File No. EB-04-IH-0342.  Even if those communications were responsive, CompTel has waived any request for those records by expressly limiting its request at the administrative level."  Lancaster Decl., Attachment D, note 5.

that occurred during pendency of the investigation and thus are pre-decisional, or are predecisional and deliberative with respect to other FCC decisions. IHD's investigation was prompted by an August 6, 2004 letter from AT&T notifying IHD that AT&T had discovered "certain irregularities" during an internal audit that constituted an "apparent violation of the E-rate rules." Lancaster Decl. at ¶ 5.

In its Opposition, CompTel does not take issue with any particular Exemption 5 withholding except for "settlement communications" and communications between the FCC and USAC, a small percentage of the Exemption 5 material withheld. Thus, even notwithstanding the fact that these materials exceed the scope of its FOIA request, CompTel has abandoned its earlier arguments about other communications, drafts and purported factual material improperly withheld.[2] Instead, CompTel merely repeats its earlier argument that the FCC's declarations are insufficient. Opp. at 18-19. That argument already has been addressed in FCC's earlier-filed opposition and in this reply and we will not repeat that discussion.

CompTel next argues that there is no settlement privilege under Federal law and thus that those materials are not properly withheld. Opp. at 20. In fact, the existence of the privilege is an open question in this Circuit. See In re Subpoena Issued to Commodity Futures Trading Comm'n, 370 F.Supp.2d 201, 209-10 (D.D.C. 2005) (reviewing cases and noting disagreement among various courts, but concluding under the facts of that case, that there is no settlement

---

[2] The FCC is prepared to make a discretionary release of certain materials that it previously had deemed to be settlement communications, namely the text of certain incoming e-mail communications from SBC to the FCC. Specifically, the FCC expects to release record number 24, as described in the Supplemental Declaration of Judy Lancaster, subject to redaction of any personally-identifying information (which is not contested by CompTel) and subject to the Court's adjudication of AT&T's arguments in this case. Also the FCC expects to release the small portions of record numbers 46 and 47 that are e-mail communications between SBC and the FCC, subject to the same limitations. See Supplemental Lancaster Decl. at ¶¶ 46, 47.

privilege in Federal law). In fact, as the United States Court of Appeals for the Sixth Circuit has explained in analogous circumstances, there are strong public policy grounds for safeguarding the confidentiality of settlement communications. Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc. d/b/a Heatway Systems, 332 F.3d 976 (6th Cir. 2003).

Finally, CompTel claims that communications with USAC cannot be withheld. As explained earlier in this reply, USAC is a nonprofit corporation set up to manage the E-rate funds. It is acting in the stead of the FCC in that capacity and the withholding of communications between the FCC and USAC is proper as those communications are "intra-agency" communications protected by the deliberative process privilege. Whether the documents at issue are "inter-agency or intra-agency" depends on a functional rather than a literal test. Philadelphia Newspapers, Inc. v. HHS, 69 F.Supp.2d 63, 68 (D.D.C. 1999) (citations omitted). In Philadelphia Newspapers, Judge Robertson found that materials exchanged between a Medicare contractor and HHS qualified for protection under Exemption 5. Id. See also Eastern Maine Medical Center v. HHS, 2005 WL 2840176 *11 (D. Maine 2005) (protecting from subpoena obligation thought processes and recommendations of staff member of an insurance company acting as Fiscal Intermediary with respect to Medicare program administered and regulated by the HHS, as part of the deliberative process). There is no basis for a different result in this case.

F.  **CompTel Concedes that The FCC Properly Withheld Records, or Portions of Records Pursuant To FOIA Exemptions 6 and 7(C).**

CompTel's Opposition explicitly states that it "does not object to the FCC's redaction of the names and other identifying information of individuals identified in AT&T's submissions to the FCC." Opp. at 24. Thus, FCC is entitled to a grant of summary judgment on this issue.

**CONCLUSION**

For the foregoing reasons, this Court should grant Defendant FCC's motion for summary judgment, enter summary judgment for Defendant and dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted,

    s/Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

    s/Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

    s/Peter S. Smith
PETER S. SMITH, D.C. BAR # 465131
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0372

Of counsel:

Michael A. Krasnow, Esq.,
Office of General Counsel,
Federal Communications Commission