**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **COMPTEL,** | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 06CV01718 (HHK) |
| | ) |
| v. | ) |
| | ) |
| **Federal Communications Commission,** | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF COMPTEL'S REPLY TO INTERVENOR-DEFENDANT AT&T'S OPPOSITION TO COMPTEL'S MOTION FOR SUMMARY JUDGMENT**

AT&T, in its Opposition to COMPTEL's Motion for Summary Judgment, does not contest—nor can it—that the Defendant Federal Communications Commission ("FCC") stands before this Court in stark and defiant violation of the FOIA.[1]  This fact, however, does not stop AT&T from contending that it is COMPTEL that should be denied relief.[2]  Specifically, AT&T argues that the Court cannot order the disclosure of AT&T's documents simply because the FCC violated the FOIA, because all of its documents are exempt from disclosure under Exemptions 7(C) and 4.  AT&T also contends that COMPTEL is not entitled to a *Vaughn* index of the documents the FCC has withheld and that the Court should not undertake an *in camera* inspection of the withheld

---

[1] "AT&T takes no position on CompTel's [sic] entitlement to a declaration regarding [the FCC's compliance with] the FOIA's deadlines . . . ." Opposition of Intervenor-Defendant AT&T Inc. to COMPTEL's Motion for Summary Judgment ("AT&T Opposition") at 5.  "AT&T takes no position on CompTel's [sic] request for a declaration that the FCC's failure to comply with the FOIA's statutory deadline is unlawful." *Id*. at 9.

[2] AT&T Opposition at 5.

documents. Because AT&T has no legal or factual support for its Opposition to COMPTEL's Motion, it primarily relies on the same unsupported, convoluted, and conclusory arguments on which it predicates its own Motion For Summary Judgment.

**I.      The Court Should Require the FCC to Produce the Requested Records**

AT&T makes the misleading argument that simply because the FCC has failed to comply with its obligations under FOIA, COMPTEL is not entitled to an order requiring the FCC to release the requested records. While the FCC's violation of FOIA may not create an absolute right for COMPTEL to obtain an order enjoining the FCC from withholding the requested records, the FCC's willful and defiant refusal to produce even one document to COMPTEL in over 2 years or to provide a detailed description of the documents withheld and its justification for withholding them so that the Court can determine whether the withholdings are lawful certainly gives the *Court* the right to compel the FCC to produce the records sought by COMPTEL.

In arguing that COMPTEL is not entitled to an order requiring the FCC to produce the requested documents, AT&T seems to misapprehend both the plain language and the pro-disclosure purpose of the FOIA statute. *First*, the FOIA specifically gives the Court the authority "to enjoin [a federal] agency from withholding records or to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). In its Motion for Summary Judgment, COMPTEL asks the Court to "enjoin[] Defendant FCC from withholding the documents responsive to COMPTEL's FOIA request," relief clearly authorized under the statute. The FCC bears the burden of demonstrating conclusively that each document, or portion thereof, withheld is subject to a FOIA exemption:

2

> If an agency improperly *withholds* any documents, the *district court has jurisdiction to order their production.* Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'

*United States DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989) (emphasis added).

*Second*, assuming, *arguendo,* that any of the records that COMPTEL requests are legitimately exempt from disclosure under the FOIA,[3] the decision to release the records is a decision within the sole discretion of the FCC, and AT&T's objections to the release can only be heard through an appeal of the FCC's decision under the Administrative Procedure Act. See, *e.g.*, *Tripp v. Department of Defense*, 193 F. Supp.2d 229, 239 (D.D.C. 2002) ("the provisions of FOIA allow agencies to withhold documents, but do not *require* agencies to withhold those documents") (emphasis in original); *Chrysler Corp. v. Brown*, 441 U.S. 281, 294 (1979) ("Congress did not limit an agency's discretion to disclose information when it enacted the FOIA.").

As a result of the FCC's failure to demonstrate that any documents have been lawfully withheld from COMPTEL and its failure to produce any documents to COMPTEL, the Court has jurisdiction to enjoin the FCC from continuing to withhold the records.

---

[3] As set forth in COMPTEL's Reply to the FCC's Opposition to its Motion for Summary Judgment filed simultaneously herewith, the FCC has failed to meet its burden of proving that any of the requested records are exempt from disclosure.

II.     **AT&T's Exemption 7(C) Arguments Are Not Properly Before the Court**

AT&T continues to insist that all of its documents are exempt from disclosure under Exemption 7(C). COMPTEL showed in its Opposition to AT&T's Motion for Summary Judgment that AT&T is mistaken because large, publicly traded corporations, such as AT&T, have no personal privacy interest protectable by Exemption 7(C). The FCC has also determined that Exemption 7(C) does not protect AT&T's documents[4] and has urged the Court to reject AT&T's arguments as unsupported by the case law.[5]

As noted, when an agency determines that information requested pursuant to FOIA is not exempt from disclosure and must be released, judicial review of that action must proceed under the Administrative Procedure Act ("APA"), 5 U.S.C. §706, not FOIA. *Chrysler Corporation,* 441 U.S. 281, 318 (1979). At this juncture, AT&T cannot seek judicial review under the APA of the FCC Enforcement Bureau's decision to release certain of its documents because that decision does not constitute a final agency action. It was because of the FCC's failure to issue a decision on COMPTEL's and AT&T's applications for review of the Enforcement Bureau's decision within the 20 business days required by law that COMPTEL sought relief in this Court. Only a final decision requiring the production of records for which an exemption is claimed entitles a party objecting to the disclosure of the records to seek review of that decision. For this reason, COMPTEL is somewhat puzzled by the FCC's somewhat misleading statement that,

---

[4]    See Exhibit C to COMPTEL's Statement of Undisputed Facts.

[5]    See Defendant's Memorandum in Opposition to Plaintiff COMPTEL's Motion for Summary Judgment and Response to Intervenor AT&T's Motion for Summary Judgment ("Defendant's Memorandum in Opposition") at 17.

4

> As AT&T points out . . . AT&T's intervention in this case has created a situation similar to a reverse FOIA case, in which a party brings suit to prevent an agency from releasing records . . . .[6]

As the FCC is well aware, AT&T intervened on behalf of the FCC and has not asserted a cross-claim against the FCC under the APA (nor could it) because the Court lacks a final agency action to review. Nor has AT&T asked the Court for summary judgment against the FCC. Contrary, to the FCC's assertion, this case is not a reverse FOIA action.

### III.   AT&T Has Failed to Show Its Records Are Protected By Exemption 4

COMPTEL demonstrated in its Oppositions to the FCC's and AT&T's Motions for Summary Judgment that neither AT&T nor the FCC has provided the Court with anything more than conclusory recitations that certain records are known to contain "competitively sensitive information that is protected from disclosure under Exemption 4."[7] The arguments that AT&T offers in opposing COMPTEL's Motion for Summary Judgment are simply the same old incantations—formulaic recitations of the relevant legal standard—with no factual or legal support for its contention that the documents the FCC has withheld meet the Exemption 4 standard. Although the FCC has failed to produce a *Vaughn* index or other detailed description of the documents withheld and a justification for withholding them, AT&T wrongly argues that COMPTEL is entitled to neither a *Vaughn* index nor an *in camera* inspection of the information the FCC seeks to withhold under Exemption 4. See *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 997 (D.C. Cir. 1998) (agency must provide a *Vaughn* affidavit explaining its reasons for withholding the documents so as to alert the FOIA requester to the nature of the

---

[6]   Defendant's Memorandum in Opposition at 6-7.

[7]   AT&T's Opposition at 6.

documents and the claimed exemptions and allow the requester to challenge the agency's assertions).

### IV. COMPTEL Is Entitled To An Order Directing The FCC To Produce Records Wrongfully Withheld Under Exemption 4

Rather than prepare a *Vaughn* index of the records withheld under Exemption 4 or describe them in detail in a sworn statement and provide a justification for each withholding, the FCC chose to rely on the index attached to the Declaration of Kelly Dunbar submitted on behalf of AT&T and the description of the documents provided in the Declaration of Anne Rotatori also submitted on behalf of AT&T. In its Reply to the FCC's Opposition to its Motion for Summary Judgment, COMPTEL explains why neither of these "indices" is sufficiently detailed to meet the FCC's burden of proof under FOIA. Neither Declaration provides sufficient information for the Court to assess the soundness of the FCC's decision to withhold anything or a clear explanation as to why each document or portion of a document withheld is exempt from disclosure under Exemption 4. *See Defenders of Wildlife v. USD*A, 311 F. Supp. 2d 44, 56 (D.D.C. 2004) citing *King v. U.S. Dep't of Justice,* 830 F.2d 210, 219 (D.C. Cir 1987) (a declaration or a *Vaughn* index must afford a FOIA requestor a meaningful opportunity to contest and the district court an adequate foundation to review the soundness of the withholding and the trial judge must be able to derive from the index or declaration a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure).

The failure of either the FCC or AT&T to demonstrate that release of any of the responsive documents would cause substantial competitive harm to AT&T means that the documents cannot be withheld under Exemption 4. Accordingly, COMPTEL is entitled

to an order enjoining the FCC from continuing to improperly withhold any documents under Exemption 4.

### V.  There Are Unique Facts Surrounding This FOIA Request

AT&T continues to maintain that "COMPTEL lacks a cognizable public interest justification in AT&T's documents and, even under a balancing approach, COMPTEL has failed to submit any evidence of agency wrongdoing that would justify disclosure."[8] For the past two years COMPTEL has been seeking access to the contents of an FCC Enforcement Bureau file which led to the FCC's adoption of a Consent Decree between the FCC and AT&T in December of 2004.  The Consent Decree terminated the investigation of AT&T for violations of Section 254 of the Communications Act, 47 U.S.C. § 254, and Part 54 of the FCC's Rules, 47 C.F.R. §§ 54.1 *et seq.*, in connection with its submission of claims for and receipt of universal service funds for the New London, Connecticut Public Schools.[9]  Criminal cases brought against two former AT&T employees and an AT&T subcontractor in connection with their roles in the E-rate fraud,[10] provide context to the issues addressed in the AT&T Consent Decree.

Congress created the E-Rate program as part of the Telecommunications Act of 1996 in order to promote the use of advanced telecommunications services in schools and libraries.  The E-Rate program is administered by a private, non-profit corporation, the Universal Service Administrative Company ("USAC").  Regardless of whether one

---

[8]    AT&T's Memorandum in Opposition at 6.

[9]    COMPTEL's Memorandum of Points and Authorities in Support of its Motion for Summary Judgment at 1-2.

[10]   See Exhibits A and C to COMPTEL's Opposition to Defendant FCC's Motion for Summary Judgment.

characterizes the conduct at issue in the FCC enforcement proceeding as the submission of "arguably improper invoices . . . relating to services performed for public schools in the New London, Connecticut school district"[11] or a "scheme and artifice to defraud the FCC and USAC . . . by means of materially false and fraudulent pretenses and misrepresentations[]"[12] involving invoicing for services for the "Hartford, New London, New Haven, and Bridgeport, Connecticut school districts[],"[13] what is clear is that the scope of AT&T's conduct involved the three largest school districts in Connecticut -- in addition to New London—not one of which is mentioned in the FCC's Consent Decree.

According to the Information filed against two former AT&T employees, the two employees and a third individual "did devise and did intend to devise a scheme and artifice to defraud the FCC and USAC and to obtain money from the FCC and USAC" by submitting invoices for payment for work not performed and inflated invoices to AT&T, which in turn submitted the invoices to USAC for payment.[14] The United States alleged that the toal cost to the FCC/USAC of the fraud in the four Connecticut school districts was over $1.5 million.[15]

---

[11]   This is AT&T's characterization. See Declaration of Ann Rotatori, submitted in support of AT&T's Motion for Summary Judgment, at ¶ 3.

[12]   This is the United States' characterization. See, *e.g.*, *United States v. Richard E. Brown and Keith J. Madeiros,* Information, Count I at ¶ 13, Count II at ¶ 2, Count III at ¶ 2, which is attached as Exhibit C to Plaintiff COMPTEL's Memorandum of Points and Authorities in Opposition to Defendant FCC's Motion for Summary Judgment ("COMPTEL's Opposition to Defendant's Motion for Summary Judgment").

[13]   *Id*. Count I at ¶ 7.

[14]   *Id.*

[15]   *Id.* Count 1 at ¶ 13; Count II at ¶ 2; Count III at ¶ 2.

8

The purpose of FOIA is to enable the public to know what the government is doing and why. *NAACP Legal Defense and Educational Fund v. U.S. Department of Justice*, 612 F. Supp. 1143, 1147 (D.D.C. 1985). Why did the FCC limit its investigation of AT&T's E-rate violations to the New London, Connecticut school district and ignore the Hartford, New Haven and Bridgeport school districts? Why did the FCC allow AT&T to enter into a Consent Decree rather than refer the matter to the Department of Justice?[16] The documents in FCC File No. EB-04-IH-0342 may provide the answers.

Taken in context, the criminal prosecution of AT&T's former employees for their role in the E-rate scheme sheds new light on the FCC's and AT&T's objections to disclosure of AT&T's invoices and pricing and cost data. With respect to the FCC's and AT&T's Exemption 4 claims, it is difficult to imagine how the disclosure of the requested records could cause competitive harm to AT&T[17] or why a competitor would want to use fraudulent invoices and pricing information to craft an offering to compete with AT&T. AT&T's inability to articulate how it will be competitively harmed by disclosure of the documents is clearly the reason why AT&T alleges only general concerns about competitors using the information to "embarrass, harass, and stigmatize

---

[16]   The FCC's website lists Enforcement Actions that have been brought against carriers and individuals for alleged violations of the universal service rules. See http://www.fcc.gov/eb/usfc. It appears that the Consent Decree the FCC entered into with AT&T is the only Consent Decree that the FCC has entered with a service provider dealing with E-rate violations as opposed to violations of other provisions of the universal service rules. Moreover, the Semi-Annual Reports of the FCC's Inspector General covering the period April 1, 2004 through September 30, 2006 list a significant number of criminal prosecutions brought against companies, as well as individuals. The Semi Annual Reports are available at http://www.fcc.gov/oig/oigreportssemiannual.html.

[17]   It is doubtful that AT&T would claim a proprietary interest in the fraudulent invoices.

9

AT&T publicly."[18]  Embarrassment, harassment and stigmatization are not interests that Exemption 4 is designed to prevent.[19]  The FCC's contention that AT&T would suffer competitive harm because disclosure of invoice and pricing information could enable competitors to compete more effectively against AT&T for similar business or allow competitors to woo AT&T's contractors or contacts[20] rings hollow in light of the fraudulent nature of the invoices and prices.

## CONCLUSION

For the foregoing reasons, AT&T has failed to show that COMPTEL is not entitled to the relief it has requested.  COMPTEL respectfully requests that the Court grant COMPTEL's Motion for Summary Judgment and deny AT&T's Motion for Summary Judgment.

April 30, 2007                                        Respectfully submitted,

                                                      _____
                                                      Mary C. Albert, DC Bar #347617
                                                      Jonathan D. Lee, D/C/ Bar #435586
                                                      COMPTEL
                                                      900 17th Street N.W., Suite 400
                                                      Washington, D.C. 20006
                                                      (202) 296-6650
                                                      malbert@comptel.org
                                                      jlee@comptel.org

---

[18]  See, e.g., Declaration of Ann Rotatori at ¶ 10.

[19]  "We emphasize that [c]ompetitive harm should not be taken to mean simply any injury to competitive position, as might flow from customer or employee disgruntlement or from the embarrassing publicity attendant upon public revelations concerning, for example, illegal or unethical payments to government officials or violations of civil rights, environmental or safety laws." *Public Citizen Health Research Group v. Food & Drug Admin.,* 740 F.2d 1280, 1291, n.30 (internal citations omitted).

[20]  Declaration of Judy Lancaster, submitted in support of the FCC's Motion for Summary Judgment, at ¶ 19.