## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

COMPTEL

          Plaintiff,

    v.

FEDERAL COMMUNICATIONS
COMMISSION

          Defendant.
_____

)
)
)
)
)
)
)
)
)
)
)
)
)

**Civil No. 06-1718 (RCL)**

## MEMORANDUM OPINION

This action concerns a Freedom of Information Act ("FOIA") request by COMPTEL for certain records held by the Federal Communications Commission ("FCC"). Before the Court are plaintiff COMPTEL's [52] and defendant FCC's [53] Cross-Motions for Summary Judgment.[1] In general, COMPTEL seeks an order enjoining the FCC from withholding the records it requested and compelling the FCC to produce unredacted versions of those records, and a declaratory judgment that the FCC has violated the FOIA. The FCC seeks a judgment that it conducted a reasonable search, produced all responsive documents, and properly withheld information under statutory FOIA exemptions.

---

[1] COMPTEL submitted a Memorandum [52] of Points and Authorities in Support of Summary Judgment, ECF No. 52, but not a formal motion for summary judgment. However, given that defendant FCC filed an Opposition to the Memorandum of Points and Authorities and COMPTEL filed a Reply, the Court deems the Memorandum a motion for summary judgment. In addition to the parties' cross motions, the Court considered the following filings, and their attached exhibits: COMPTEL's Statement [52-1] of Material Facts as to Which There Is No Genuine Dispute; FCC's Opposition [54] to Plaintiff's Motion for Summary Judgment; COMPTEL's Reply [56] to Defendant's Opposition to COMPTEL's Motion for Summary Judgment; FCC's Memorandum [53] of Points and Authorities in Support of its Motion for Summary Judgment; FCC's Statement [53-1] of Material Facts Not in Genuine Dispute and the attached Supplemental Declaration of Judy Lancaster and Vaughn Index [53-2]; COMPTEL's Opposition [55] to Defendant's Motion for Summary Judgment; FCC's Reply [57] in Support of its Motion for Summary Judgment; the FCC's Notice [58] of Supplemental Release of Information; and COMPTEL's Reply [59] to Defendant's Notice of Supplemental Release of Information.

The Court cannot grant summary judgment to either party at this time. First, there is a factual dispute as to whether the FCC conducted a search in response to COMPTEL's most recent FOIA request. More importantly, the FCC has not demonstrated that it conducted an *adequate* search in response to that request. This alone precludes summary judgment for the FCC. However, even if the FCC had demonstrated that it conducted an adequate search, the agency has not provided sufficient detail regarding its justifications for withholding certain information under various FOIA exemptions. As the D.C. Circuit has reiterated numerous times, agencies cannot rely on "conclusory and generalized allegations of exemptions," as it has done here. Finally, in response to an administrative order, the FCC released additional responsive information to COMPTEL after the pending motions for summary judgment were filed and ripe. However, the FCC has not amended its submissions to the Court to account for this release and the parties appear to disagree about whether the FCC has satisfied its obligations under the administrative order. Because the Court cannot determine which information has now been released and which withheld, it cannot evaluate the FCC's remaining redactions.

Although the FCC has not met its burden for summary judgment, the Court also lacks sufficient information by which to grant summary judgment for COMPTEL. As is often the practice with FOIA cases in which the record is not sufficiently developed, the Court will DENY WITHOUT PREJUDICE the parties' motions. The FCC is directed to file an amended declaration and *Vaughn* index to address the issues identified in this Opinion. Upon submission of the revised declaration and index, the parties may re-file their cross-motions, as appropriate. A separate Order consistent with this Opinion shall issue this date.

I.       **BACKGROUND AND PROCEDURAL HISTORY**

COMPTEL is a non-profit trade association whose members are communications service providers and their supplier partners.  Pl.'s Mem. P. & A. in Supp. Summ. J. 1, ECF No. 52 [hereinafter Pl.'s Mem P. & A.].  COMPTEL first filed an electronic FOIA request with the FCC in April 2005.  Although COMPTEL has not provided the Court with a copy of the request, the parties agree that it sought "all pleadings and correspondence" contained in File No. EB-04-IH-0342, which was opened by the FCC Enforcement Bureau ("EB") to investigate SBC Communications, Inc., now AT&T.[2]  Pl.'s Stmt. Mat. Facts ¶¶ 1–2, ECF No. 52-1 [hereinafter Pl.'s SMF]; Def.'s Stmt. Mat. Facts in Opp'n to Pl.'s Stmt. Mat. Facts ¶¶ 1–2.  In August 2004, the SBC had voluntarily reported to the FCC that it may have violated the Commission's rules in connection with SBC's receipt of universal service funds for Connecticut public schools under the E-Rate, or Education-Rate program.  Pl.'s SMF ¶ 2.  As part of the EB's subsequent investigation, SBC provided the FCC with a variety of documents which included cost and pricing data, billing and payment dates, and other information.  Lancaster Suppl. Decl. ¶ 4, July 25, 2012, ECF No. 53-2.  The FCC terminated its investigation in December 2004 upon issuing an Order adopting a Consent Decree.  Pl.'s SMF ¶ 3.

After COMPTEL requested records of the investigation, SBC sought confidential treatment, under FOIA Exemptions 4 and 7(C), of the materials it provided to the FCC.  Pl.'s SMF ¶ 4.  The FCC then notified COMPTEL via email that it was reviewing about 3200 pages of documents "potentially responsive" to the FOIA request.  *Id.*, Ex. 2.

---

[2] SBC merged with AT&T in November 2005.  The Court and the parties alternatively refer to that corporate entity as SBC or AT&T depending on the time period at issue.

In August 2005, the FCC granted in part and denied in part COMPTEL's FOIA request. In response to SBC's request for confidential treatment, the FCC agreed to withhold certain information in SBC submissions pursuant to Exemption 4, including "costs and pricing data, [SBC's] billing and payment dates, and identifying information of SBC's staff, contractors, and the representatives of its contractors and customers." Lancaster Suppl. Decl. ¶ 4. The FCC also withheld the names of individuals identified in SBC's submissions pursuant to Exemptions 6 and 7(C), and drafts of EB "pleadings and correspondence, and internal memoranda and emails discussing the SBC investigation" pursuant to Exemption 5. *Id.* The FCC stated that it would release any non-exempt documents to COMPTEL within ten days if AT&T failed to file an application for review with the FCC's Office of General Counsel. Pl's SMF ¶ 9. Both AT&T and COMPTEL timely filed applications for review. Lancaster Suppl. Decl. ¶ 4.

The FCC failed to act on the applications for review within the 20-day statutory period, 5 U.S.C. § 552(a)(4)(G)(6)(A)(ii), and COMPTEL filed this action on October 5, 2006 to enjoin the FCC from withholding the documents requested. Pl.'s SMF ¶ 11; Compl., ECF No. 1. AT&T intervened and cross-motions for summary judgment were filed by all parties in February 2007. When the FCC argued that COMPTEL had waived its request for certain documents, COMPTEL filed a second FOIA request on April 16, 2007 for all documents "referenced in the Supplemental Declaration of Judy Lancaster [and] all correspondence with any third party contained in FCC Case file no. EB-04-IH-0342." *See In the Matter of COMPTEL*, 27 F.C.C.R. 7705, 2012 WL 2354823 (June 19, 2012). This 2007 FOIA request appears to be the only request at issue in the pending cross-motions. At least in theory, though, it should have resulted in a response that is at least co-extensive with a response to the 2005 request.[3]

---

[3] The FCC asserts that the 2007 request is the subject of these cross-motions, Def.'s MSJ 5, and COMPTEL appears to agree, focusing almost all of its arguments on 193 pages of documents provided in response to that request.

Because the FCC administrative review process remained pending, Judge Kennedy, then assigned to the case, denied without prejudice the parties' cross-motions for summary judgment and stayed the case until final agency action was completed.  ECF No. 32; Minute Order, Mar. 5, 2008.  The FCC later denied AT&T's application for review, finding that Exemption 7(C) may protect the personal privacy interests of *individuals* identified in law enforcement documents, but not the privacy interests of *corporations*.  Pl.'s SMF ¶ 17.  AT&T appealed to the Third Circuit which ruled for them.  *AT&T v. FCC*, 582 F.3d 490 (3rd Cir. 2009).   In March 2011, the Supreme Court reversed, holding that Exemption 7(C) does not protect privacy interests of corporations and that AT&T could not invoke the exemption to shield documents provided to FCC during the investigation.  *FCC v. AT&T*,131 S. Ct. 1177 (2011).  When the FCC failed to release documents to COMPTEL after this decision, COMPTEL filed, and the Court granted, a motion to lift the stay in the instant litigation.

The FCC has given varying estimates of the number of pages of material responsive to COMPTEL's FOIA request.  While an early FCC email response to COMPTEL identified 3200 pages of "potentially responsive" documents, the FCC later significantly reduced this estimate. At the time of the 2007 cross-motions for summary judgment, the FCC estimated that there were approximately 508–544 pages of responsive documents, including 191–237 pages which the FCC planned to withhold under Exemption 5.

On June 3, 2011, the FCC sent COMPTEL 362 pages of redacted documents, which appear to include all of the information for which Exemption 5 was not invoked, along with

---

However, COMPTEL also repeatedly refers to a statement made by the FCC in response to COMPTEL's 2005 request that the FCC had identified 3200 pages of potentially responsive documents.  Thus, the Court is unsure whether COMPTEL continues to challenge the adequacy of the search conducted in response to the 2005 request.

fifteen pages of material that had been identified as protected by Exemption 5.[4]  On November 1, 2011, the FCC released an additional 193 pages (65 documents), bringing the total to 555 pages of material released.  Redactions were made to these materials pursuant to Exemptions 4, 5, 6, and 7(C).  The present controversy relates to this November 2011 release of 193 pages.

COMPTEL filed a second administrative application for review of the FCC's redactions to these documents on November 11, 2011.  Pl.'s SMF ¶ 23.  On June 19, 2012, the FCC issued a Memorandum Opinion and Order denying in part and granting in part the application for review.  Specifically, it ordered EB to provide the names of certain SBC and FCC staff that had been publicly identified and thus had been redacted in error under Exemptions 6 and 7(C).

The instant cross-motions for summary judgment were filed in July 2012.  The FCC did not release the additional information required by the June 2012 Order until the cross-motions were pending and ripe for review.  Def.'s Notice Suppl. Release Info., ECF No. 58.  COMPTEL replied to that supplemental release, asserting that the FCC had (strangely) included new redactions of information previously released and that it did not appear to have released information the Order required to be provided.  Pl.'s Reply to Def.'s Notice Suppl. Release Info., ECF No. 59 [hereinafter Pl.'s Reply to Release].  The FCC has not filed a supplemental declaration or revised *Vaughn* index to account for the latest release of information.

---

[4] COMPTEL states that the documents include "the publicly available plea agreements and FCC decision described in . . . Paragraph 3 of [Ms. Lancaster's] Supplemental Declaration" (an estimated 64 pages); a two-page email between FCC staff; a four-page email chain; and the documents "described in Paragraphs 4 and 5 of Ms. Lancaster's Supplemental Declaration."  Pl.'s SMF ¶ 19.  However, this would amount to all 538 pages identified in the Supplemental Declaration.  The Court assumes, therefore, that all 347 pages of non-Exemption 5 material  was provided, along with the six additional pages specifically cited by COMPTEL, and an additional, unidentified nine pages of material protected by Exemption 5.

## II.      LEGAL STANDARD

### A.      FOIA Generally

The Freedom of Information Act, 5 U.S.C. § 552, requires federal agencies to make certain records publicly available.  FOIA requires that agencies, upon request, "make the records promptly available to any person."  *Id.* § 552(a)(3)(A).  The Agency shall determine within twenty business days of receipt whether to comply with a request and shall immediately notify the requester of its determination and reasons therefore.  *Id.* § 552(a)(6)(A).  However, failure to meet the time limit is not a basis for denying an agency summary judgment.  *See Tijerina v. Walters*, 821 F.2d 789, 799 (D.C. Cir. 1987).

FOIA provides nine exemptions from the disclosure requirement which are to be "narrowly construed."  *FBI v. Abramson*, 456 U.S. 615, 630 (1982).  Four of these, Exemptions 4, 5, 6, and 7(C), are relevant to this case and described in greater detail below.

Should an agency deny a FOIA request, in whole or in part, the agency must "make a reasonable effort" to estimate and provide to the requester "the volume of any requested matter the provision of which is denied . . . ."  5 U.S.C. § 552(a)(6)(F).  Additionally, to the extent an exemption is invoked, any "reasonably segregable portion of a record shall be provided" after deletion of the exempt portions.  *Id.* § 552(b).  The  "amount of information deleted, and the exemption under which the deletion is made, shall be indicated on the released portion of the record . . . ."  *Id.*  In FOIA litigation, district courts must consider segregability *sua sponte* even when the parties have not raised such claims.  *Trans–Pac. Policing Agreement v. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

### B.       Summary Judgment and FOIA

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  FOIA cases are typically and appropriately decided on motions for summary judgment.  *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

By statute, the agency bears the burden in litigation to justify withholding any records. 5 U.S.C. § 552(a)(4).  This is in part because of the "strong presumption in favor of disclosure," *Dep't. of State v. Ray*, 502 U.S. 164, 173 (1991), and because FOIA requesters face an information asymmetry given that the agency possesses the requested information and decides whether it should be withheld or disclosed.  *See Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 145–46 (D.C. Cir. 2006).  Thus, even where the requester has moved for summary judgment, the Government "'ultimately [has] the onus of proving that the [documents] are exempt from disclosure.'"  *Pub. Citizen Health Research Grp. v. FDA*, 185 F.3d 898, 904–05 (D.C. Cir. 1999) (quoting *Nat'l Ass'n of Gov't Emps. v. Campbell*, 593 F.2d 1023, 1027 (D.C. Cir. 1978)).

To satisfy its burden to show the applicability of an exemption, an agency may rely on detailed affidavits, declarations, a *Vaughn* index, in camera review, or a combination of these tools.  A *Vaughn* index in combination with agency declarations is the typical way agencies provide courts with the information required.  A *Vaughn* index correlates each withheld document, or portion thereof, with a particular FOIA exemption and the justification for nondisclosure.  *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).  While agency affidavits

8

are accorded a presumption of good faith, *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), they must "'provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" *Judicial Watch v. FDA*, 449 F.3d at 146 (citation omitted)); *see also EPA v. Mink*, 410 U.S. 73, 86 (1973). The agency should "disclose as much information as possible without thwarting the exemption's purpose." *Hall v. Dep't of Justice*, 552 F. Supp. 2d 23, 27 (D.D.C. 2008) (quoting *King v. Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir. 1987)). Again, "'conclusory and generalized allegations of exemptions' are unacceptable." *Morley v. CIA*, 508 F.3d 1108, 1115 (D.C. Cir. 2007) (citations omitted); *see also Vaughn*, 484 F.2d at 826.

## III.   DISCUSSION

### A.   Jurisdiction

This Court has jurisdiction to decide the pending cross-motions. The U.S. District Court for the District of Columbia has jurisdiction to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B). District courts are to examine FOIA matters de novo. *Id.*[5]

### B.   Adequacy of FCC's Search

COMPTEL states that it "has not challenged the reasonableness of the FCC's search," only the "adequacy of its production," and does not specifically allege bad faith by the FCC.

---

[5] FOIA requires exhaustion of administrative remedies before a requester may bring suit. *Spannaus v. U.S. Dep't. of Justice*, 824 F.2d 52, 58 (D.C. Cir. 1987). While this is a jurisprudential, rather than jurisdictional, requirement, it "precludes judicial review if the purposes of exhaustion and the particular administrative scheme support such a bar." *Hidalgo v. FBI*, 344 F.3d 1256, 1259 (D.C. Cir. 2003) (internal quotation marks omitted)). Here, the defendant does not suggest, nor does it appear, that COMPTEL failed to exhaust administrative remedies. The FCC did not comply with statutory response time limits and COMPTEL thus "constructively" exhausted administrative remedies with respect to its 2005 request. *See* 5 U.S.C. § 552(a)(6)(C). Additionally, though COMPTEL filed a second FOIA request in 2007, to the extent it needed to exhaust administrative remedies with respect to that request, it did so constructively when the FCC again did not meet statutory time limits.

Pl.'s Reply to Def.'s Opp'n to Pl.'s MSJ 2, ECF No. 56 [hereinafter Pl.'s Reply].  Nevertheless, COMPTEL suggests the FCC may have withheld documents and seeks an order compelling the FCC to "disclose the total volume of documents responsive to COMPTEL's FOIA request . . . including the other 2600 to 2700 pages identified as potentially responsive" in a 2005 email. Pl.'s Mem P. & A. 37.  Although COMPTEL disclaims an intent to challenge the adequacy of the FCC's search, the Court must consider the issue to decide the FCC's motion for summary judgment.  *See* Def.'s Mem. P. & A. Supp. Summ. J. 1, 10, ECF No. 53 [hereinafter Def.'s Mem. P. & A.] (seeking judgment as a matter of law that FCC conducted a reasonable search).

"To prevail on summary judgment . . . the defending 'agency must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents.'"  *Morley*, 508 F.3d at 1114 (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)).  The adequacy of an agency's search is measured by a case-by-case standard of reasonableness that examines the method of the search, not whether additional responsive documents might exist.  *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).  Agency affidavits may be submitted by an official who coordinated, or has personal knowledge of, the search, and need not be from each individual who participated in the search.  *See SafeCard Servs.*, 926 F.2d at 1200.  However, summary judgment is improper where "agency affidavits . . . do not denote which files were searched, or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the requester] to challenge the procedures utilized." *Weisberg v. Dep't. of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980).

The history of this case makes it difficult for the Court to address the adequacy of the FCC's search.   First,   the   present   cross-motions   for   summary   judgment   relate   only   to

COMPTEL's 2007 FOIA request which requested all documents "referenced in the Supplemental Declaration of Judy Lancaster" submitted with the FCC's earlier motion for summary judgment, as well as "all correspondence with any third party contained in FCC Case file no. EB-04-IH-0342." *See In the Matter of COMPTEL*, 27 F.C.C.R. 7705.[6] Thus, assuming that the search in response to the 2005 request was adequate and that Ms. Lancaster's supplemental declaration listed all responsive documents, the 2007 request should result in the disclosure of at least as much information as the 2005 request, if not more given COMPTEL's additional request for "all correspondence with any third party."

However, there remains a possible dispute of fact as to whether, "[i]n response to the 2007 FOIA request, . . . Commission staff searched the Commission's files and staff e-mails for documents responsive to the request." *Compare* Def.'s SMF ¶ 11 (making this assertion) *and* Lancaster Suppl. Decl., July 25, 2012 (same), *with* Pl.'s Stmt. Mat. Facts in Opp'n to Def.'s Stmt. Mat. Facts 2, ECF No. 55-1 [hereinafter Pl.'s SMF in Opp'n] (disputing the assertion). COMPTEL disputes that the Commission conducted a search, asserting that "all of the documents responsive to COMPTEL's 2007 FOIA request were identified in the Declaration and Supplemental Declaration of Judy Lancaster filed with this Court on February 12, 2007 and April 13, 2011." Pl.'s SMF in Opp'n 2.[7] Whether this is a genuine dispute of fact need not be resolved here because it is not just the fact that a search *occurred*, but also the *adequacy* of the

---

[6] COMPTEL characterizes the 2007 request as being only for documents "already identified in Ms. Lancaster's Supplemental Declaration" Pl.'s SMF ¶ 15, though the request seems to have been somewhat broader."

[7] Despite COMPTEL's opposition, the FCC asserts that the statement is not in genuine dispute.  First, it argues that COMPTEL has not identified any contradictory evidence to show that the FCC did not complete a search.  The Court notes however that, as with all other FOIA plaintiffs, there is an information asymmetry that inhibits COMPTEL from offering evidence regarding whether the FCC actually conducted a search.  Second, the FCC argues that Judy Lancaster's prior declarations (which were given before the FCC even received the 2007 request) support its contention that it conducted a search in response to the 2007 request.  This is not possible since those declarations were executed before the 2007 request.  However, Ms. Lancaster's most recent declaration does lend some support to the FCC's contention.

search, that is required for summary judgment.  The Court finds the FCC's declaration to be insufficient to demonstrate the adequacy of its search as well.

The most recent Lancaster declaration describes the FCC's search in two sentences, stating that the FCC "searched the Commission's files and staff e-mails for documents responsive to the request" and that staff "reviewed each document[,] . . . discarded non-responsive documents, and marked each responsive document for redaction."  Lancaster Supp. Decl. ¶ 5.  The FCC provides no additional information about the search method used, the files reviewed, or the identity of the parties conducting the search.  In fact, Ms. Lancaster does not state whether she was involved in or otherwise has personal knowledge of the search, saying only that she has been an EB attorney since 1999.  Moreover, the FCC's most recent release of information casts doubt on the adequacy of its search.  Specifically, COMPTEL points out that previously redacted email headers have now been disclosed on all emails released by the FCC.  Pl.'s Reply to Release 10.  Those headers reveal that all of the released emails came from the email account of David Janas despite the fact that numerous FCC employees appear to have been involved in the SBC investigation.  *Id.*  Thus, unless David Janas was a party to every email chain involving the SBC investigation, searching for emails only from his account would not result in an adequate search.

For the foregoing reasons, the Court cannot grant summary judgment for the FCC because it cannot find, based on the evidence before it, that the FCC has conducted an adequate search.  However, because COMPTEL has not challenged the adequacy of the FCC's search, the Court also cannot grant summary judgment for COMPTEL on this point.  Instead, the FCC will be required to submit a revised declaration which more fully describes its search.  While the Court could conclude its analysis here, the Court now also addresses the FCC's invocation of

FOIA exemptions.  Assuming the FCC can demonstrate the adequacy of its search, its current *Vaughn* index and declaration would be inadequate to demonstrate that the agency has properly invoked FOIA exemptions to withhold redacted information.

### C.   Adequacy of *Vaughn* Index and Invocation of Exemptions

The FCC's *Vaughn* index and declaration are insufficient for several reasons.

First, as outlined below, they rely on conclusory assertions to justify withholding information under the FOIA exemptions.

Second, while the FCC states that "all reasonably segregable, non-exemption information . . . [was] provided to the Requester," Lancaster Suppl. Decl. ¶ 5, this is insufficient to meet the FCC's burden with respect to FOIA segregability requirements.  The *Vaughn* index should indicate, with respect to *each* document, that any reasonably segregable information has been released.  *Krikorian v. Dep't of State*, 984 F.2d 461, 467 (D.C. Cir. 1993).  As the FCC's *Vaughn* index stands now, the Court cannot even tell whether the entire contents of a given document have been redacted or whether only portions have been withheld.

Third, the FCC has not amended its *Vaughn* index to account for information it released to COMPTEL after the motions for summary judgment were ripe.  As a result, the Court cannot determine what information remains redacted.

### 1.   *Exemption 4*

The FCC invokes Exemption 4 to redact information from 17 documents.  Specifically, it seeks to redact the names and/or phone numbers of SBC staff and contractors, which it categorizes as "competitively sensitive" (Documents 13–15, 19, 26, 31, 33, 40–44, and 64); "competitively sensitive information regarding settlement negotiations" (Documents 14–15, 20,

26); "confidential settlement information"; and SBC's "competitively sensitive financial information" (Documents 27, 31, 34, 42–44).

FOIA Exemption 4 protects from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential."   5 U.S.C. § 552(b)(4). Because the FCC has not asserted that any redacted information contains trade secrets, the Court only addresses the test for "commercial or financial" information.   Such information is exempt only if it is (1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential.  *Pub. Citizen Health Research Grp. v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983).

The terms "commercial" or "financial" in Exemption 4 "are to be given their 'ordinary meanings' . . ." and are construed broadly.  *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 38 (D.C. Cir. 2002) (quoting *Pub. Citizen Health Research Grp. v. FDA*, 704 F.2d at 1290 (citations omitted)).   Commercial information need not be limited to information that "reveal[s] basic commercial operations," but may include any information in which the submitter has a "commercial interest,"  *see Pub. Citizen Health Research Grp. v. FDA*, 704 F.2d at 1290 (citations omitted), such as business sales statistics, research data, overhead and operating costs, and financial conditions, *see Landfair v. U.S. Dep't of Army*, 645 F. Supp. 325, 327 (D.D.C. 1986).   Although defined broadly, courts have rejected Exemption 4 protection for some information.  *See, e.g.*, *Chi. Tribune v. FAA*, 1998 WL 242611, at *2–3 (N.D. Ill. May 7, 1998).

Information may be "obtained from a person" if provided by individuals, corporations, or numerous other entities, but not if it was generated by the federal government.  *See Bd. of Trade v. CFTC*, 627 F.2d 392, 404 (D.C. Cir 1980).   However, government-prepared records may be protected if they summarize information obtained from another person.  *See, e.g.*, *Gulf & W. Indus. v. United States*, 615 F.2d 527, 529–30 (D.C. Cir. 1979).

Finally, if commercial or financial information was obtained from a person, it must be privileged or confidential to be protected by Exemption 4.  The test for confidentiality turns on whether the information was submitted to the agency voluntarily or involuntarily.  Voluntarily submitted commercial or financial information is confidential "if it is of a kind that would customarily not be released to the public by the person from whom it was obtained."  *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 879 (D.C. Cir. 1992).  On the other hand, involuntarily submitted information is confidential if disclosure is likely either "(1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained."  *Nat'l Parks and Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974).

> a.    Names and Contact Information of SBC/AT&T Employees and Contractors

The FCC invokes Exemption 4 to redact the names and/or phone numbers of SBC staff and contractors in Documents 13–15, 19, 26, 31, 33, 40–44, and 64.[8]  COMPTEL argues that in some cases the FCC has improperly invoked Exemption 4.[9]  Though it does not explain exactly why the redactions fail, it seems to imply that names do not meet the definition of "commercial or financial information."  *See* Pl.'s Mem P. & A. 18, 30–31; Pl.'s Reply 10.  Mysteriously, COMPTEL also states that it "has no objection to the redaction of the AT&T employee's contact information,"[10] Pl.'s Mem. P. & A. 31, or to the redaction of the names of SBC contractors.  Pl.'s Reply 9.  As the Court interprets these possibly conflicting statements, COMPTEL objects only

---

[8] According to its *Vaughn* index, the FCC also protects the names of SBC staff and contractors pursuant to Exemption 5 (Document 13), Exemption 6 (Document 31, 33, 40–44, and 64) and Exemption 7(C) (Documents 13–15, 33–34, 40–44, 64).  Because of a lack of detail in the *Vaughn* index, the Court presumes, but cannot be sure that the same names are redacted under all of the exemptions.  The FCC should clarify this in its amended filing.

[9] COMPTEL states that the FCC has improperly deleted "the names of authors, addresses, [and] 'contacts' or senders of faxes to the Commission."  Pl.'s Mem P. & A. 18 (citing Documents 14–15, 19, 41–42, 64, and 65).

[10] COMPTEL makes this statement in the context of redactions made to Document 13 though it presumably would not object to the redaction of AT&T or SBC employee contact information in other documents either.

to the redaction of the *names* of SBC staff and not to the redaction of their contact information or to the redaction of the names or contact information of SBC contractors.

The FCC has not met its burden to show that names and contact information should be exempt as confidential commercial or financial information.  Names clearly are not financial information and thus the FCC must consider them to be commercial in nature.  While the Court assumes corporations can have a commercial interest in the names of certain staff, it is not a certainty that a corporation would have a commercial interest in the names of every one of its employees.  Thus, the FCC must state why this information is commercial in nature.

Further, the FCC has not alleged that the information was "obtained from a person."  For example, the name of an SBC staffer in an email sent from FCC staff to SBC staff would not likely constitute information "obtained from a person."

In any case, the FCC likewise has not shown that the information is confidential.  Although the FCC asserts that SBC submitted information to FCC voluntarily, there is some indication to the contrary.[11]  Because of the distinction between the tests for voluntarily versus involuntarily submitted information, the FCC must disclose to the Court whether any information redacted was involuntarily submitted.  If voluntarily provided, the FCC must then show that the information is "of a kind that would customarily not be released to the public by the person from whom it was obtained."  If involuntarily provided, the FCC must show that disclosure would impair the Government's ability to obtain necessary information in the future or cause substantial competitive harm to AT&T.

---

[11] The FCC acknowledges that some information may have been submitted in the context of a law enforcement investigation.  It notes that its Letter of Inquiry "*required* SBC to submit internal documents to the Commission in connection with the FCC's investigation."  *See* Def.'s Mem. P. & A. 21 (emphasis added).

b.      Other Commercial and Financial Information

The FCC also invokes Exemption 4 to redact "competitively sensitive information regarding settlement negotiations" (Documents 14–15, 20, 26), "confidential settlement information," and SBC's "competitively sensitive financial information" (Documents 27, 31, 34, 42–44).

COMPTEL launches various challenges to these redactions.  First, it argues that material provided and exchanged in settlement negotiation emails between FCC staff and between the FCC and SBC cannot be withheld under Exemption 4.  COMPTEL seems to interpret the FCC's justifications for these redactions as proceeding solely from the fact that the information was exchanged in settlement negotiations.  Pl.'s Mem P. & A. 20.  Second, it alleges that information redacted from staff notes, draft letters of inquiry, and emails initiated by the FCC cannot be protected under Exemption 4 because the information was not "obtained from a person."  Pl.'s Mem P. & A. 19–20; Pl.'s Reply 10 (citing Documents 27, 31, 34, 42–44).   Third, COMPTEL seems to simply argue that the FCC has not met its burden to show that the information meets the requirements of Exemption 4.

As a preliminary matter, to the extent the FCC redacted information under Exemption 4 *solely* because it relates to settlement, the Court would reject such a justification.  The FCC's rationale for its redactions is not entirely clear:  its *Vaughn* index appears to attempt to fit the redacted information into the traditional requirements of Exemption 4 by labeling it "competitively sensitive," yet its declaration often justifies redactions purely on the basis of its relation to settlement negotiations.  *Compare Vaughn* Index 12, ECF No. 53-2 (noting redaction of "[c]ompetitively sensitive financial information"), *with* Lancaster Suppl. Decl. ¶¶ 21–22 (describing redacted documents as "prepared for settlement negotiations" and "discussing FCC

and SBC settlement offers"). Moreover, the FCC states that "information exchanged within the context of settlement negotiations may be properly withheld under Exemption (b)(4)" and that "documents related to settlement discussions [are] not normally revealed to the public." Def.'s Mem. P. & A. 12. However, the case cited for the proposition that settlement discussion information may be redacted appears to involve commercial or financial information that would separately qualify for Exemption 4 protection. *See id.* (citing *M/A-Com Info. Systems, Inc. v. U.S. Dep't of Health & Human Servs.*, 656 F. Supp. 691, 692 (D.D.C. 1986) (involving the redaction of information regarding "certain accounting and other internal procedures" and noting that the information was commercial in nature and obtained in confidence)). Information regarding settlement negotiations may only qualify for Exemption 4 protection if it is (1) commercial or financial information; (2) obtained from a person; and (3) confidential.

The Court disagrees with COMPTEL that information redacted from staff notes, draft letters of inquiry, and emails cannot be protected under Exemption 4 because it was not "obtained from a person." As stated above, information originally obtained from an outside source, but later included in agency documents, may be considered "obtained from a person." However, the FCC must state in its declarations or *Vaughn* index that the information was originally obtained from SBC or another person.

More broadly, the Court agrees with COMPTEL that the FCC has failed to meet its burden to show that redacted information meets the requirements of Exemption 4. For example, Ms. Lancaster's declaration notes that information was redacted because it would "reveal protected information," a description that is clearly inadequate. *See, e.g.*, Lancaster Suppl. Decl. ¶¶ 18–19, 21–24. While the *Vaughn* Index is somewhat more detailed, it too fails to provide sufficient information. By way of example, the index states that "competitively sensitive

information regarding settlement negotiations" was redacted from an email chain between FCC and SBC staff. *Vaughn* Index 7 (describing redactions from Document 14). These sorts of conclusory assertions, without any additional description of the contents of the redacted information or reasons for non-disclosure, are insufficient to show that Exemption 4 was appropriately invoked. Not only do such assertions not demonstrate that the information was "commercial or financial," but in many cases the FCC has failed to even allege that the information was confidential or "obtained from a person" (something that is particularly important in documents drafted by FCC). These problems persist throughout the *Vaughn* Index.

Again, it may be that the FCC has properly redacted information under Exemption 4. However, the Court lacks sufficient information to make this determination.

### 2.    Exemption 5

The FCC invokes Exemption 5 to redact information from all documents except Document 19. *Vaughn* Index. Exemption 5 shields from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 "protects only those memoranda which would not *normally* be discoverable in civil litigation against an agency." *Ryan v. Dep't of Justice*, 617 F.2d 781, 790 (D.C. Cir. 1980) (emphasis added). Courts have interpreted this to encompass traditional, civil discovery evidentiary privileges, including the attorney–client privilege, the attorney work-product privilege, and the executive deliberative process privilege. *Taxation With Representation Fund v. IRS*, 646 F.2d 666, 676 (D.C. Cir. 1981); *see also Tax Analysts v. IRS*, 294 F.3d 71, 76 (D.C. Cir. 2002).

a.   FCC Has Not Demonstrated the Inter- or Intra-Agency Character of Some Redacted Documents

As an initial matter, any information redacted pursuant to Exemption 5 must be either inter- or intra-agency in nature.  Qualifying records include those generated by agencies, but may include opinions and recommendations of outside entities such as consultants if the outside entity does not have its "own . . . interests in mind" and/or is not seeking "a government benefit at the expense of other applicants . . . ."  *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9–11, 12 & n.4 (2001).[12]

COMPTEL argues that some records cannot qualify as intra- or inter-agency memoranda. Specifically, it asserts that Exemption 5 cannot be used to shield communications with a non-agency third party.   COMPTEL presumably refers to communications with SBC and the Universal Service Administrative Company (USAC), an independent, not-for-profit corporation under the oversight of FCC.[13]

The Court agrees that FCC has not met its burden to show that communications with SBC or USAC should be considered inter- or intra-agency in nature.  The Court doubts, and the FCC has provided no evidence to the contrary, that communications with SBC could meet the requirements for consultant corollary outlined by *Klamath* and other relevant cases.  SBC was

---

[12] In *Klamath*, the Supreme Court denied Exemption 5 protection for communications between several Indian tribes and the Department of the Interior because the tribes had "their own, albeit entirely legitimate, interests in mind" and were "seeking a Government benefit at the expense of other applicants." *Klamath*, 532 U.S. at 12 & n.4.  Some courts have invoked both factors identified by *Klamath* (self-interest and pursuit of government benefit) to determine whether Exemption 5 applies to consultant submissions.  *See, e.g., Physicians Comm. for Responsible Med. v. NIH*, 326 F. Supp. 2d 19 (D.D.C. 2004); *see also* Guide to the Freedom of Information Act 361–62 (U.S. Dep't of Justice 2009) (referring to the "two-part test" articulated by *Klamath*).  Others have looked principally to the "degree of self-interest" of the outside entity.  *See, e.g., Ctr. for Int'l Envtl. Law v. Office of the U.S. Trade Representative*, 237 F. Supp. 2d 17, 27 (D.D.C. 2002); *Judicial Watch v. Dep't of the Army*, 435 F. Supp. 2d 81, 92 n.6 (D.D.C. 2006) (noting that the description of the *Klamath* factors as a two-part test misstates the holding of *Klamath* because the Supreme Court did not identify a two part test, but two factors that influenced its analysis").

[13] *See Vaughn* Index (describing Documents 14, 15, 41, 42, 64 (which include emails between FCC staff and SBC officials), Document 65 (an executed tolling agreement between FCC and SBC which appears to have been faxed to or from SBC), and Documents 25, 30, 45 (emails between FCC staff and the staff of USAC)).

being investigated by the FCC and was not a disinterested third party providing advice to the agency.  While communications with USAC are more likely qualify as inter-agency in nature, the FCC must explain why this would be the case.

For those records that do qualify as inter- or intra-agency, the next step is to determine whether they would be unavailable to a party other than an agency in litigation with the agency, for example through a traditional privilege.

b.    Attorney–Client Privilege

The FCC invokes Exemption 5 to protect information that it asserts would be protected under the attorney–client privilege.  *Vaughn* Index (invoking privilege for Documents 6–7, 10–11, 14–15, 16, 22–24, 26–29, 47–49).  That privilege protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice," *Mead Data Ctr.*, 566 F.2d at 252, and does not extend to facts provided by an attorney that do not reflect client confidences, *Brinton v. Dep't of State*, 636 F.2d 600, 603 (D.C. Cir. 1980).  In general, an agency must demonstrate the confidentiality of communications sought to be protected by Exemption 5 and the Court cannot assume confidentiality.  *Mead Data Ctr.*, 566 F.2d at 254.  Finally, the privilege is to be narrowly construed, *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980), and "'protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege.'"  *Id.* (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)).

COMPTEL argues that the FCC has not shown "that the attorney–client privilege protects any of the redacted materials because it has not shown that any of the documents contain confidential information communicated to an attorney for the purpose of obtaining legal advice."

Pl.'s Reply 7.   It reiterates that the agency bears the burden to establish confidentiality.   *Id.* (citing *Coastal States*, 617 F.2d at 863).

The FCC has done nothing to show that material for which the attorney–client privilege was invoked involved confidential communications or that it related to a legal matter for which the client sought legal advice.   Again, as the D.C. Circuit noted in *Coastal States*, conclusory assertions of privilege will not suffice to carry the Government's burden of proof in defending FOIA cases.   *Coastal States*, 617 F.2d at 861.   The Circuit noted in that case,

> The parties have referred to these materials as the Government's "*Vaughn* Index," but we wish to make clear that this index is not what we had in mind in our decision in *Vaughn* . . . .   A typical line from the index supplied in this case identifies who wrote the memorandum, to whom it was addressed, its date, [] a brief description of the memorandum [, and a] claim[ that the] document was "PD" (predecisional), "ATWP" (attorney work-product) . . . .   Such an index is patently inadequate.

> *Id.*

The index submitted by the FCC is quite similar to that rejected by the D.C. Circuit in Coastal States in that it merely identifies who wrote the memorandum, includes a brief description, and claims that it represents attorney–client material.

In addition to not sufficiently supporting its assertions of confidentiality, the information submitted by FCC sometimes suggests an *absence* of confidentiality.   For example, the FCC seeks to protect "attorney–client discussions" in an email chain between FCC staff and SBC officials.   However, information shared with outside entities would no longer be confidential.   *See Mead Data Ctr.*, 566 F.2d at 255 (noting that a document setting forth the background and negotiations with a publishing company may not reflect confidential communications given that much of the information would also be known to the publishing company itself).   While it is possible that some of these discussions were in emails on which SBC officials had been

22

removed, the FCC does not provide the Court with sufficient information with which to determine that.

c.      Attorney Work-Product Privilege

The FCC has also invoked the attorney work-product privilege to redact information from or fully withhold Documents 4–7, 10, 13–14, 17–18, 20–21, 24, 26–27, 28–29, 31, 34, 44, 47–49, 50, and 51–64.   The work-product privilege protects documents prepared in anticipation of litigation by a party or its attorneys and applies to both deliberative materials such as mental impressions, conclusions, opinions, and legal theories, and to factual materials prepared in anticipation of litigation.  *See Hickman v. Taylor*, 329 U.S. 495, 510 (1947); *see also* Fed. R. Civ. P. 26(b)(3); *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997).  The privilege is not limited to civil litigation but includes administrative proceedings as well.  *Schoenman v. FBI*, 573 F. Supp. 2d 119, 143 (D.D.C. 2008).  Attorney work product is exempt from mandatory disclosure regardless of whether the litigation for which it was prepared has ended or was never brought.  *FTC v. Grolier Inc.*, 462 U.S. 19, 28 (1983).  The privilege also applies to settlement discussions and work product prepared to avoid possible litigation.  Cities Serv. Co. v. FTC, 627 F. Supp. 827, 832 (D.D.C. 1984).

COMPTEL argues that the FCC has not met its burden to show that redacted materials were attorney work product.[14]  Many of the documents for which the privilege is invoked appear to have been prepared by an attorney during the course of the investigation into SBC, or immediately thereafter as the FCC contemplated additional enforcement actions.

---

[14] As an example, COMPTEL cites Document 30 as an example of an unreasonable invocation of the work-product privilege because the FCC does not list the parties to the email.  However, the *Vaughn* index does not appear to assert attorney work-product privilege for this document, unless the reference to "legal analysis" is intended as a reference to the work-product privilege.

The Court notes that the requirements of the work-product doctrine are more easily met than those for the attorney–client privilege.  The FCC need only demonstrate that the materials were prepared in anticipation of litigation and need not segregate deliberative from factual material.  However, the FCC must identify the nexus between the documents and any potential litigation or settlement thereof.  Again, the FCC relies on fairly conclusory assertions of the privilege here.  *See, e.g.*, *Vaughn* Index (describing redactions from Document 34 as "[h]andwritten notes of Dave Janas, FCC staff attorney, containing deliberative process attorney work product analysis of SBC invoices"); *id.* (describing redactions from Document 13 as "[h]andwritten attorney work product note of Dave Janas, FCC staff attorney, containing SBC staff contact information and statement memorializing a request from the person"); *id.* (describing redactions from Document 14 as "an attorney work product analysis by Dave Janas, FCC staff attorney, of SBC submissions . . . .").  While the Court assumes that the FCC can meet its burden given the nature of the investigation and settlement discussions at issue, the FCC must provide somewhat more detail in order for the Court to make this determination.

> d.      Deliberative Process Privilege

The deliberative process privilege encompasses "recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Klamath*, 532 U.S. at 8–9 (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (internal quotation marks omitted)).  The general purpose of the privilege is to "prevent injury to the quality of agency decisions."  *Sears, Roebuck*, 421 U.S. at 151.

The privilege protects agency documents that are both "predecisional and deliberative." *Judicial Watch v. FDA*, 449 F.3d at 151.  A document is predecisional if "'it was generated before the adoption of an agency policy.'" *Judicial Watch v. FDA*, 449 F.3d at 151 (quoting

*Coastal States*, 617 F.2d at 866).   Materials do not lose their predecisional status once a final

decision is made.   *See Elec. Privacy Info. Ctr. v. DHS*, 384 F. Supp. 2d 100, 112–13 (D.D.C.

2005) ("[I]t is the document's role in the agency's decision-making process that controls.").

Additionally, records generated after adoption of a particular agency policy may still be

predecisional with respect to other nonfinal agency policies.   *See, e.g.*, *Judicial Watch v. FDA*,

449 F.3d at 152 (noting that documents dated after a drug's approval could still be predecisional

with respect to other policies, including uses of the drug the agency had not approved).

A document is "deliberative" if "'it reflects the give-and-take of the consultative

process.'"   *Id.* (quoting *Coastal States Gas*, 617 F.2d at 866).   D.C. Circuit interpretations of this

requirement "have focused on whether disclosure of the requested material would tend to

'discourage candid discussion within an agency.'"   *Petroleum Info. Corp. v. U.S. Dept. of

Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992).   The first step in the inquiry into whether a

record was deliberative "'is to examine the context in which the materials are used.'"   *Id.* (citing

*Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988)).   Non-

deliberative, factual portions of a document must segregated and disclosed.   *Petroleum Info.

Corp.*, 976 F.2d at 1434.

COMPTEL opposes the FCC's use of the deliberative process privilege for four reasons.

First, it believes the FCC has withheld certain materials pursuant to Exemption 5 solely because

they relate to settlement discussions and argues that there is "no federal settlement privilege."

The Court is not certain that the FCC invokes a federal settlement privilege.   Instead, it seems to

argue that the documents include predecisional, deliberative materials shielded under Exemption

5.   *See* Def.'s Opp'n 14–15.   Specifically, the FCC only asserts that documents "related to the

FCC's *evaluation of the merits* of settling with SBC" would be exempt from disclosure.   *Id.*

(emphasis added).  However, the FCC's *Vaughn* index is not sufficiently detailed for the Court to ensure that the documents meet both the predecisional and deliberativeness requirements, thus the FCC will need to supplement its filings to address these requirements.

Second, with respect to documents post-dating the consent decree for which the FCC has invoked the deliberative process privilege, COMPTEL argues that the documents cannot be considered "predecisional."  *See* Pl.'s Mem P. & A. 24.  It also argues that any documents reflecting the FCC's decision not to pursue other causes of action or reflecting resolution of an issue must be produced because they are not predecisional.  *Id.* at 26–27.  The Court disagrees. A document may post-date one decision but still be predecisional with respect to another decision.  However, again, the FCC has the burden to show the documents' predecisional nature.

Third, COMPTEL suggests that FCC may not have segregated non-deliberative, factual materials.  Pl.'s Mem P. & A. 34.  In support, COMPTEL points to documents 47 through 49 which, it states, were redacted in their entirety.  However, the FCC invoked not only the deliberative process privilege, but the attorney work-product privilege to protect material in these documents.  "If a document is fully protected as work product, then segregability is not required" because that privilege does not distinguish between factual and deliberative materials. *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 371 (D.C. Cir. 2005).  Nevertheless, the agency must show that the document itself is fully protected as work product and then must state that it considered whether non-protected material could be segregated.  It has not done so.

Finally, COMPTEL seems to argue generally that the FCC has not met its burden to show that certain documents are deliberative.  As the Court has already stated, it agrees that the FCC has not provided sufficient detail with which to evaluate its claims of deliberative privilege.  For example, with respect to Document 20, the FCC notes that it has redacted "[a]ttorney–client,

deliberative process e-mail containing attorney work product analysis of SBC investigation evidence, recommendations regarding future actions and a request for approval of settlement provision." *Vaughn* Index 10.   Not only does this label join three distinct privileges without separately providing support for each, but it gives too little detail regarding the agency's justification for invoking the deliberative privilege.   Similarly, the FCC describes the redactions in Document 46 as "a deliberative process comment by FCC staff regarding a TR Daily story about Sprint and the E-Rate program."   Finally, in at least one case, the redaction of a 3-page email chain in Document 34, the FCC does not even identify which privilege has been invoked to protect redacted information.

In short, the FCC has not met its burden to show the applicability of Exemption 5.   Bare and conclusory assertions of the privilege are not sufficient.

### 3.   *Exemption 6*

The FCC invokes Exemption 6 to redact the names and work contact information of FCC, DOJ, USAC, and SBC staff.[15]

Since filing for summary judgment, the FCC has allegedly released the names of some SBC/AT&T staff and one FCC staff-level employee to conform with the FCC's Memorandum Opinion and Order in *In the Matter of Comptel*.   Def.'s Notice Suppl. Release Info. (citing F.C.C. 12-64, 2012 WL 2354823, at *5 (June 19, 2012)).   These appear to have originally been redacted under Exemptions 6 and 7(C).   The FCC's Memorandum and Order held that the redactions were erroneous because these employees had already been publicly connected with the investigation.   COMPTEL now disputes whether the FCC has released the information

---

[15] Specifically it redacts the names, office addresses and/or room numbers, telephone and fax numbers, email addresses, website information, and employer name of FCC and/or DOJ staff (Documents 1–12, 14–20, 22–26, 28–30, 32–50, 64–65); the names, email addresses, phone numbers, and office room numbers of USAC staff (Documents 25, 30, 32–34, 45); and the names, email addresses, job titles and descriptions, office phone numbers, and work departments of SBC staff (Documents 31, 33–34, 40–44, 64).

required by the FCC Memorandum and Order. *See* Pl.'s Reply to Release. The FCC has not provided an amended *Vaughn* index by which the Court can evaluate these claims. The FCC should revise its *Vaughn* index to provide the Court with this information.

Because the *Vaughn* index and declaration are insufficient in other ways with respect to Exemption 6, the Court outlines those deficiencies below so that the FCC may supplement its filings and the parties may re-file for summary judgment.

Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "Similar files" are interpreted broadly and are intended to cover "'detailed Government records on an individual which can be identified as applying to that individual.'" *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 600, 602 (1982). "When disclosure of information which applies to a particular individual is sought from Government records, courts must determine whether release of the information would constitute a clearly unwarranted invasion of that person's privacy." *Wash. Post Co.*, 456 U.S. at 602.

If a record constitutes a personnel, medical, or similar file, the court must determine if disclosure "would constitute a clearly unwarranted invasion of personal privacy." *Wash Post. Co.* 456 U.S. at 598. "To establish that the release of information contained in government files would result in a clearly unwarranted invasion of privacy, the court first asks whether disclosure 'would compromise a substantial, as opposed to a *de minimis*, privacy interest,'" *Nat'l Ass'n of Home Builders*, 309 F.3d at 33 (quoting *Horner*, 879 F.2d at 874), though that standard is "not very demanding," *Multi Ag Media LLC v. USDA*, 515 F.3d 1224, 1229–30 (D.C. Cir. 2008). If there is more than a *de minimis* privacy interest, the court must then weigh the interest against any public interest in disclosure. *Horner*, 879 F.2d at 874. The public interest in question is "the

extent to which disclosure would serve the core purposes of the FOIA" by "contributing significantly to public understanding of the operations or activities of the government." *U. S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (internal quotation marks omitted)).

COMPTEL argues that the FCC has not met its burden to show that the disclosure of names and other information would result in "clearly unwarranted invasion of personal privacy." Pl.'s Mem. P. & A. 14.  With respect to government employees, it argues that their names are not personal information in which they have a protected privacy interest, noting that their names and duty stations are available to the public and that names, phone numbers, and email addresses of FCC employees are available on the FCC's website. *Id.* at 14–15.

Because courts have broadly defined what constitutes a "similar" file under Exemption 4 to include information that applies to a particular individual, s*ee supra*, the documents referenced are likely to constitute "similar files."  However, any privacy interests at stake will vary depending on the individuals identified.  With respect to SBC employees, for example, the Court assumes that there is likely more than a *de minimis* privacy interest in the employees' names and contact information.  This is particularly the case where the individuals may have been responding to allegations of potential wrongdoing by their employer, SBC.

However, it is less likely that employees of USAC, FCC, and DOJ would have substantial privacy interests.  A number of courts have considered the applicability of Exemption 6 to government employees though their treatment does not appear to be particularly uniform. *See, e.g.*, *Aguirre v. SEC*, 551 F. Supp. 2d 33, 54 (D.D.C. 2008) ("Correspondence does not become personal solely because it identifies government employees."); *but see Lahr v. NTSB*, 569 F.3d 964, 973–79 (9th Cir. 2009) (recognizing, in response to agency arguments, that FBI

agents have an interest in keeping private their involvement in especially controversial events).
"[I]nformation that 'merely identifies the names of government officials who authored documents and received documents' does not generally fall within Exemption 6." *Aguirre*, 551 F. Supp. 2d at 53 (quoting *VoteHemp, Inc. v. DEA*, No. 02–cv–985 (RBW), slip op. at 12 (D.D.C. Oct. 15, 2004)).   Furthermore, the names of FCC staff are available through a search function on the FCC's website that allows one to generate a list of all of the individuals who work in EB along with their work telephone numbers and email addresses.   The public nature of this information weakens the FCC's claim.   Nevertheless, the Court acknowledges that government and USAC employees might have a more than *de minimis* privacy interest in information that not only identifies them, but links them to work on a particular investigation.

However, whatever hypothetical privacy interests the Court may imagine, the FCC has not met its burden to show that Exemption 6 was appropriately invoked.   The FCC suggests that names, office addresses, job titles, work phone numbers, etc. are "personal and private identifying information" in which "individuals have an expectation of privacy."   Def.'s Mem. P. & A. 18–20.   However, the FCC's *Vaughn* index does nothing more than restate the law and its declaration does not even address the redactions made pursuant to either Exemption 6 or Exemption 7(C).   *See, e.g.*, *Vaughn* Index 3 (describing redactions from Document 5 as "personal and private Identifying information (names, name of employer) of FCC and DOJ Gov't staff").   While courts often uphold the redaction of personal identifying information under Exemption 6, the agency must at least provide the Court with some basis for such an interest. This is particularly the case with respect to USAC, FCC, and DOJ staff since these individuals were engaged in performance of their official duties, not targets of any investigation, and may be at less risk for embarrassment, harassment, or unwanted contacts, etc.   While the Court can

imagine situations in which a privacy interest might exist because of these individuals' roles in the FCC investigation, the FCC has not provided any such justification.

On the other hand, COMPTEL has not asserted any public interest in disclosure of these names.  If the FCC shows a privacy interest in non-disclosure, COMPTEL cannot survive summary judgment without identifying a public interest in disclosure.  "[S]omething, even a modest privacy interest, outweighs nothing every time." *Horner*, 879 F.2d at 879.

Finally, because the FCC has allegedly released the names of certain individuals that it erroneously withheld, the Court has no way of knowing which names the agency plans to redact at this time.  The agency should submit a revised *Vaughn* index to reflect the most recent release of information along with any asserted privacy interests.

### 4.      *Exemption 7(C)*

The FCC invokes Exemption 7(C) to protect names and contact information of SBC, USAC, and FCC staff and FCC interns and other individuals in "law enforcement documents."[16]

Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(7)(C).

Records compiled for law enforcement purposes may relate to either criminal or civil matters.  *Rural Hous. Alliance v. USDA*, 498 F.2d 73, 81 & n.46 (D.C. Cir. 1974).  A "law enforcement purpose exists where there is a rational nexus between the compiled document and a law enforcement duty of the agency and where there is a connection between an individual or

---

[16] Specifically, the FCC redacts the names, work departments, work phone numbers, email addresses, and employer names of SBC staff (Document 13–15, 33–34, 40–44, 64); the names and email addresses of USAC staff members (Document 25, 30–32, 34, 45); the names and email address of FCC staff and interns (Document 32); and the names and email addresses of "individuals" in "law enforcement documents" (Documents 19–20).

incident and a possible . . . violation of federal law." *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 337 F. Supp. 2d 146, 179 (D.D.C. 2004) (internal quotation marks omitted)). Agencies with both law enforcement and non-law enforcement functions ("mixed-function" agencies) must satisfy a higher standard to show that records involve law enforcement. *Pratt v. Webster*, 673 F.2d 408, 418 (D.C. Cir. 1982).

Once records or information are shown to have been compiled for law enforcement, courts perform a balancing test similar to, those less demanding than, that for Exemption 6. *See Computer Prof'ls for Soc. Responsibility v. U.S. Secret Serv.*, 72 F.3d 897, 904 (D.C. Cir. 1996). Unlike the Exemption 6 requirement that disclosure "*would*" constitute a "*clearly* unwarranted" invasion of privacy, Exemption 7(C) only requires that disclosure "*could reasonably be expected to*" constitute an "unwarranted" invasion of privacy. *See Martin v. Dep't of Justice*, 488 F.3d 446, 456–57 (D.C. Cir. 2007). Thus, "privacy interests are particularly difficult to overcome when law enforcement information about third parties is implicated." *Id.* at 457.

COMPTEL does not generally dispute that the documents for which Exemption 7(C) is invoked were compiled for law enforcement purposes. However, it argues that the names of FCC and DOJ staff who worked on the SBC investigation and the names of AT&T counsel who authored or received copies of correspondence related to the investigation were not compiled for law enforcement purposes. Pl.'s Mem. P. & A. 17.; Pl.'s Reply 11.[17]

There are two problems with this argument. First, the FCC does not appear to invoke Exemption 7(C) to protect the names of any DOJ staff. In fact, Exemption 7(C) is invoked in only one document to justify redaction of the names of FCC staff and interns. Additionally, the Court cannot confirm whether FCC redacted the names of AT&T counsel under Exemption 7(C).

---

[17] The Court cannot confirm that the names of AT&T counsel were redacted by the FCC. COMPTEL does not point the Court to a particular document number or assertion in the FCC Declaration or *Vaughn* index.

Second, COMPTEL misconstrues the inquiry into whether names may be redacted under Exemption 7(C).  While the names at issue may not have been compiled for law enforcement purposes, if they are *contained in* records compiled for law enforcement purposes they may be redacted.  *See, e.g.*, *United Am. Fin., Inc. v. Potter*, 667 F. Supp. 2d 49, 59-60 (D.D.C. 2009) (considering whether names of OIG employees in OIG emails could be redacted and concluding that the emails fall within FOIA's law enforcement purposes requirement).

COMPTEL only requested documents related to the investigation of SBC's possible violations of federal law.  *See* Pl.'s SMF ¶ 2 (describing the request for documents related to possible violations by SBC of the Commission's rules).  Courts have previously upheld treatment of FCC investigatory files as law enforcement records.  *See, e.g.*, *Kay v. FCC*, 867 F. Supp. 11 (D.D.C. 1994).  Here, the documents all appear include a connection between a particular entity or incident and a possible violation of federal law.  Thus, all of the documents for which Exemption 7(C) protection was sought appear to have been compiled for law enforcement.

Nevertheless, COMPTEL argues, and the Court agrees, that the FCC has not shown that disclosure of the redacted information could reasonably be expected to result in an unwarranted invasion of privacy for all individuals involved.  While the FCC is correct that courts often uphold the redaction of the names of individuals identified in law enforcement records, including the names of government employees, the FCC must do more than simply assert that these individuals "have a clear expectation of privacy," Def.'s Mem. P. & A. 22.  For example, courts have upheld the redaction of the names of government employees performing their official duties when the disclosure of their names might results in harassment, intimidation, or attempts to unduly influence, or obtain information about, the employees' work.  In *Concepcion v. FBI*, 606 F. Supp. 2d 14 (D.D.C. 2009), the court upheld redaction of the names of FBI Special Agents

because, if their "identities were disclosed, they may be subjected to 'unnecessary, unofficial questioning regarding this and/or other investigations, whether or not they are currently employed by the FBI.'  In addition, 'publicity associated with the release of [a Special Agent's] identity in connection with a particular law enforcement investigation could rekindle animosity toward that [Special Agent]' on the part of persons targeted or otherwise affected by law enforcement action involving the agent."  *Concepcion*, 606 F. Supp. 2d at 38 (quoting agency's declaration).  The court also upheld the redaction of the names of support personnel because they "'were, and possibly are, in positions to access information regarding official law enforcement investigations,' [and] 'could become targets of harassing inquiries for unauthorized access to investigations if their identities were released.'"  *Id.* (quoting agency's declaration).  However, the court relied on the sworn declarations provided by the agency identifying these privacy concerns.  Here, the FCC merely restates the legal standard for Exemption 7(C).  This is insufficient to support summary judgment.  *See United Am. Fin., Inc. v. Potter*, 667 F. Supp. 2d 49, 60 (D.D.C. 2009) ("Neither of the . . . declarations . . . establish that the investigators and inspectors have a privacy interest . . . .  [A]n agency must at least explain the ground for concluding that there is some factual basis for concerns about harassment, intimidation, or physical harm." (internal quotation marks omitted))).

On the other hand, COMPTEL has made no showing of any public interest in disclosure. Thus, as with the Exemption 6 analysis, COMPTEL will fail on summary judgment if the FCC can show any privacy interest at all.

Finally, the FCC's June 2012 Memorandum and Order required the release of names of certain SBC/AT&T and FCC employees whose names were erroneously redacted under Exemption 7(C).  The FCC has not revised its *Vaughn* index or declaration to account for this

disclosure.  As a result, the Court cannot know in which documents the FCC invokes Exemption 7(C).

In summary, the FCC must amend its *Vaughn* index to account for the deficiencies identified above.  While it is possible that the FCC can show that it appropriately redacted information pursuant to Exemption 7(C), as well as Exemptions 4, 5, and 6, the FCC cannot rely on bare and conclusory assertions to demonstrate this.  Accordingly, the FCC should submit a revised *Vaughn* index and declaration.

### D.   Declaratory Judgment Analysis

COMPTEL seeks a declaratory judgment that the FCC has violated the FOIA and that its "pattern and practice" of delays in disclosing material to COMPTEL is unlawful and unreasonable.  Pl.'s Mem P. & A. 1, 6.  It also seeks a finding that the FCC's failure to disclose the volume of material withheld violates FOIA.  Pl.'s Mem P. & A. 6.

While FOIA does not specifically provide for declaratory relief, the Act "imposes no limits on courts' equitable powers in enforcing its terms."  *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) (citing *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 19-20 (1974).  However, "a declaration that an agency's initial refusal to disclose requested information was unlawful, after the agency made that information available, would constitute an advisory opinion in contravention of Article III of the Constitution."  *Payne Enters.*, 837 F.2d at 491 (citing *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 91 (D.C. Cir. 1986)).  A party whose FOIA request has been satisfied, however, may seek declaratory relief if an "agency policy or practice will impair the party's lawful access to information in the future."  *Id.* (citing *Better Gov't Ass'n*, 780 F.2d at 90–92).  The D.C. Circuit in *Payne* found that the district court had abused its discretion in refusing to grant declaratory relief.  In that case,

officers at Air Force Logistics Command (AFLC) bases had refused to fulfill a FOIA request even after the Secretary of the Air Force admonished AFLC officials for their failure to act. *Payne Enters.*, 837 F.2d at 494.

Here, the Court denies without prejudice the parties' motions for summary and the parties may refile their motions to address the issues identified in this opinion.  As a result, it is possible that COMPTEL's FOIA request may be satisfied through summary judgment.  It would be inappropriate for the Court to issue declaratory relief that the FCC has violated the FOIA when the Court lacks sufficient information to make this determination.

Furthermore, the Court is doubtful that it could find that the FCC's failure to disclose the volume of material withheld is a violation of the FOIA.  COMPTEL's request for such a finding is based on the fact that the FCC, in a single email in 2005, suggested that there might be 3200 pages of "potentially responsive" documents.  However, as the Court understands the parties' motions for summary judgment, they are based on COMPTEL's 2007 FOIA request.  According to COMPTEL itself, that request sought the information identified as responsive in the FCC's declarations with this Court (approximately 500–550 pages of material).  Thus, by COMPTEL's reasoning, there is no reason for the FCC to account for 2600 pages of "missing" material, because COMPTEL has sought only about 500–550 pages.  Even if more material would be responsive to the 2007 request, the Court cannot base a finding that the FCC has wrongfully withheld 2600 pages of material on a single 2005 email.  The FCC's three sworn declarations since that time have never cited more than approximately 550 pages of responsive material.

## IV.    CONCLUSION

For the foregoing reasons, the Court denies without prejudice the parties' motions for summary judgment.  The Court finds that the FCC has not demonstrated that it conducted an

adequate search in response to COMPTEL's 2007 FOIA request.   Even if the search had been shown to be adequate, the FCC has not met its burden to demonstrate, with respect to each document withheld or redacted, that it properly invoked any applicable exemptions and segregated information to which an exemption did not apply.   As a result, the Court denies without prejudice the parties' cross-motions for summary judgment.   The FCC shall submit a revised *Vaughn* index and declaration no later than 30 days from today.   As appropriate, the parties will have twenty days from the date of submission of the *Vaughn* index and declaration to submit new motions for summary judgment.

Signed by Royce C. Lamberth, Chief Judge, on December 19, 2012.