UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **COMPTEL** )<br>)<br>           Plaintiff,       )<br>)<br>     v.                          )<br>)<br>**FEDERAL COMMUNICATIONS** )<br>**COMMISSION** )<br>)<br>           Defendant.     )<br>) | Civil No. 06-1718 (RCL) |

## MEMORANDUM OPINION

This action concerns a Freedom of Information Act ("FOIA") request by COMPTEL for records held by the Federal Communications Commission ("FCC"). Before the Court are plaintiff COMPTEL's [70] and defendant FCC's [71] Cross-Motions for Summary Judgment.[1] In general, the FCC seeks a judgment that it conducted a reasonable search, produced all responsive documents, and properly withheld information under statutory FOIA exemptions. COMPTEL seeks a judgment that the FCC has failed to conduct an adequate search, has improperly withheld documents, and has violated the FOIA by engaging in unreasonable delays. It also seeks an order enjoining the FCC from withholding requested records.

The Court will GRANT the FCC's motion except as to documents 64a, 64b, 64e, and 64f; the Court will GRANT COMPTEL's motion as to those four documents and order their release but will otherwise DENY COMPTEL's motion. Specifically, the Court holds that the FCC

---

[1] In addition to the parties' cross motions, the Court considered the following: the Second Supplemental Declaration of Judy Lancaster [64-1]; the FCC's *Vaughn* Index [64-2]; COMPTEL's Statement [70-2] of Material Facts as to Which There Is No Genuine Dispute; FCC's Opposition [73] to Plaintiff's Motion for Summary Judgment; COMPTEL's Reply [75] to Defendant's Opposition; the FCC's Statement [71-1] of Material Facts Not in Genuine Dispute; COMPTEL's Opposition [72] to Defendant's Motion for Summary Judgment; and the FCC's Reply [76] in Support of its Motion for Summary Judgment.

1

performed an adequate search and that it has produced all responsive documents and properly withheld information on all documents except documents 64a, 64b, 64e, and 64f. The Court declines to grant COMPTEL's request for additional declaratory and injunctive relief.

## I. BACKGROUND

The facts of this case are described in greater detail in the Court's December Memorandum Opinion. *See COMPTEL v. FCC*, No. 06-1718, 2012 WL 6604528, at *5 (D.D.C. 2012). In short, COMPTEL filed a FOIA request with the FCC in April 2005 seeking "all pleadings and correspondence" contained in File No. EB-04-IH-0342, which was opened by the FCC Enforcement Bureau during a 2004 investigation of SBC Communications, Inc., now AT&T.[2] The FCC terminated its investigation upon the adoption of a Consent Decree.

The FCC notified COMPTEL in July 2005 that it was reviewing about 3200 pages of documents "potentially responsive" to the FOIA request. In August 2005, the FCC granted in part and denied in part COMPTEL's FOIA request. The agency withheld certain information pursuant to Exemption 4, including "costs and pricing data, [SBC's] billing and payment dates, and identifying information of SBC's staff, contractors, and the representatives of its contractors and customers." The FCC also withheld the names of individuals identified in SBC's submissions pursuant to Exemptions 6 and 7(C), and drafts of enforcement bureau "pleadings and correspondence, and internal memoranda and emails discussing the SBC investigation" pursuant to Exemption 5.

The FCC stated that it would release any non-exempt documents to COMPTEL if AT&T did not file an application for review. Both AT&T and COMPTEL timely filed applications for review. After the FCC failed to act on the applications within the 20-day statutory period,

---

[2] SBC merged with AT&T in November 2005. The Court and the parties alternatively refer to that corporate entity as SBC or AT&T depending on the time period at issue.

COMPTEL filed this action on October 5, 2006 to enjoin the FCC from withholding the requested documents. AT&T intervened and cross-motions for summary judgment were filed by all parties in February 2007.

When the FCC argued that COMPTEL had waived its request for certain documents, COMPTEL filed a second FOIA request on April 16, 2007 for all documents "referenced in the Supplemental Declaration of Judy Lancaster [and] all correspondence with any third party contained in FCC Case file no. EB-04-IH-0342."

Judge Kennedy, then assigned to the case, denied the first motions for summary judgment without prejudice and stayed the case until final agency action was completed. This Court denied a second set of cross motions for summary judgment for several reasons. *See* COMPTEL, 2012 WL 6604528. First, there was a fact dispute as to whether the FCC conducted a search in response to COMPTEL's 2007 FOIA request; the FCC had not demonstrated that it conducted an adequate search in response to that request. Second, the FCC failed to sufficiently justify withholding information under various FOIA exemptions. Because the Court lacked adequate information by which to grant summary judgment for COMPTEL, it denied without prejudice the parties' motions and directed the FCC to file an amended declaration and *Vaughn* index to address the issues identified in the Court's Memorandum Opinion.

After submission of the revised declaration and *Vaughn* index, ECF No. 64, the parties filed a third set of cross-motions for summary judgment. With these motions, the parties have considerably narrowed the issues in dispute. The present controversy concerns only the adequacy of the search performed in response to the 2007 FOIA request, corresponding redactions made pursuant to Exemptions (b)(4) and (b)(5), and whether additional declaratory and injunctive relief for COMPTEL is warranted.

## II.     LEGAL STANDARD

### A.     FOIA Generally

The Freedom of Information Act, 5 U.S.C. § 552, requires federal agencies to make certain records available to any person upon request.  The Agency must determine within twenty business days of receipt whether to comply with a request and shall immediately notify the requester of its determination and reasons therefore.  *Id.* § 552(a)(6)(A).  Failure to meet the time limit is not a basis for denying an agency summary judgment.  *See Tijerina v. Walters*, 821 F.2d 789, 799 (D.C. Cir. 1987).

FOIA provides nine exemptions from the disclosure requirement which are to be "narrowly construed."  *FBI v. Abramson*, 456 U.S. 615, 630 (1982).  Four of these, Exemptions 4, 5, 6, and 7(C), are relevant to this case and discussed in greater detail below.

Should an agency deny a FOIA request, in whole or in part, the agency must "make a reasonable effort" to estimate and provide to the requester "the volume of any requested matter the provision of which is denied . . . ."  5 U.S.C. § 552(a)(6)(F).  Additionally, to the extent an exemption is invoked, any "reasonably segregable portion of a record shall be provided" after deletion of the exempt portions.  *Id.* § 552(b).  The  "amount of information deleted, and the exemption under which the deletion is made, shall be indicated on the released portion of the record . . . ." *Id.*

### B.     Summary Judgment and FOIA

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247

(1986). FOIA cases are typically and appropriately decided on motions for summary judgment. *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

By statute, the agency bears the burden in litigation to justify withholding any records. 5 U.S.C. § 552(a)(4). This is in part because of the "strong presumption in favor of disclosure," *Dep't. of State v. Ray*, 502 U.S. 164, 173 (1991), and because FOIA requesters face an information asymmetry given that the agency possesses the requested information and decides whether it should be withheld or disclosed. *See Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 145–46 (D.C. Cir. 2006). Thus, even where the requester has moved for summary judgment, the Government "'ultimately [has] the onus of proving that the [documents] are exempt from disclosure.'" *Pub. Citizen Health Research Grp. v. FDA*, 185 F.3d 898, 904–05 (D.C. Cir. 1999) (quoting *Nat'l Ass'n of Gov't Emps. v. Campbell*, 593 F.2d 1023, 1027 (D.C. Cir. 1978)).

To satisfy its burden to show the applicability of an exemption, an agency may rely on detailed affidavits, declarations, a *Vaughn* index, in camera review, or a combination of these tools. A *Vaughn* index in combination with agency declarations is the typical way agencies provide courts with the information required. A *Vaughn* index correlates each withheld document, or portion thereof, with a particular FOIA exemption and the justification for nondisclosure. *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973). While agency affidavits are accorded a presumption of good faith, *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), they must "'provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" *Judicial Watch v. FDA*, 449 F.3d at 146 (citation omitted)); *see also EPA v. Mink*, 410 U.S. 73, 86 (1973). The agency should "disclose as much information as possible without thwarting the exemption's purpose." *Hall v.*

*Dep't of Justice*, 552 F. Supp. 2d 23, 27 (D.D.C. 2008) (quoting *King v. Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir. 1987)).  Again, "'conclusory and generalized allegations of exemptions' are unacceptable."  *Morley v. CIA*, 508 F.3d 1108, 1115 (D.C. Cir. 2007) (citations omitted); *see also Vaughn*, 484 F.2d at 826.

### III.   ANALYSIS

#### A.   The FCC Has Sufficiently Demonstrated the Adequacy of its Search

"To prevail on summary judgment . . . the defending 'agency must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents.'"  *Morley*, 508 F.3d at 1114 (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)).  As the Court stated in its earlier Memorandum Opinion in this case,

> The adequacy of an agency's search is measured by a case-by-case standard of reasonableness that examines the method of the search, not whether additional responsive documents might exist.  Agency affidavits may be submitted by an official who coordinated, or has personal knowledge of, the search, and need not be from each individual who participated in the search.  However, summary judgment is improper where "agency affidavits . . . do not denote which files were searched, or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the requester] to challenge the procedures utilized."

*COMPTEL*, 2012 WL 6604528, at *5 (citations omitted).

The Court identified a number of deficiencies with the FCC's prior description of its search, including that: (1) it did not make clear whether a search was actually conducted in response to COMPTEL's 2007 request; (2) it failed to detail the search method used, the files reviewed, or the identity of the parties conducting the search; (3) Ms. Lancaster did not state whether she had personal knowledge regarding the search; and (4) aspects of the documents produced, specifically the fact that all emails originated from the email account of FCC attorney David Janas, created an inference that the search may have been inadequate.  *Id.* at *6.

With its revised Declaration, the FCC has addressed a number of the Court's concerns. First, the agency has clarified that its declarant, Judy Lancaster, performed the search on behalf of the FCC and thus that she has personal knowledge of the search. *See* Second Suppl. Decl. of Judy Lancaster ¶¶ 1–16, Feb. 19, 2013, ECF No. 64-1 [hereinafter Lancaster Decl.]. Second, Lancaster's Declaration makes clear that, because COMPTEL requested documents "contained in" FCC File No. EB-04-IH-0342, Lancaster was able to limit her search to the electronic and hard copy versions of that particular file. *Id.* ¶¶ 3, 6, 8. The FCC also clarified that COMPTEL's 2007 FOIA request was "wholly encompassed" in the 2005 request. *Id.* ¶ 15. Thus, the FCC did not need to perform a separate search for documents in response to the new request, and simply relied on its earlier search. *Id.*

COMPTEL raises a number of concerns with the FCC's most recent Declaration. First, the FCC has not clarified why the case file searched contained emails from only the account of David Janas, despite the fact that as many as seventeen FCC employees appear to have been involved in the investigation. *See* Pl.'s Mem. P. & A. in Support of Summ. J. 12 [hereinafter Pl.'s Mem.]. COMPTEL continues to cite this as evidence that the FCC's search was inadequate, *id.*, and also seeks an order compelling the FCC to provide "an explanation as to why it only produced emails from the account of David Janas." Pl.'s Mot. Summ. J., Proposed Order, ECF No. 70-3 [hereinafter Pl.'s Proposed Order]. Second, COMPTEL argues that the "inadequacy of the FCC's search has resulted in the FCC's failure to identify as responsive and produce certain documents to which COMPTEL is entitled." Pl.'s Mem. 13. Specifically, COMPTEL points to the fact that the FCC identified copies of the draft Consent Decree and Compliance Plan that contained Mr. Janas's handwritten notes, but did not identify or produce clean versions of those documents. *Id* at 13–14 (arguing that the FCC should have produced

7

clean versions of the documents, including the version of the Consent Decree that it emailed to SBC on October 22, 2004, and the modified version that SBC emailed back to the FCC on October 28, 2004). COMPTEL asks the Court to order the FCC to produce the draft Consent Decree that the FCC emailed to SBC on October 22, 2004. Pl.'s Proposed Order.

The Lancaster Declaration notes that the physical case file searched was maintained by Mr. Janas and kept in his office. Although the FCC has not explained why all of the emails are from Mr. Janas's account, it has clarified that the agency searched only File No. EB-04-IH-0342 in response to COMPTEL's request. COMPTEL requested correspondence and internal FCC e-mails only from that case file. Lancaster Decl. ¶¶ 3, 14; Pl.'s Statement of Material Facts ¶¶ 1, 15, ECF No. 70-2 [hereinafter Pl.'s SMF]. COMPTEL did not request that the FCC search all agency emails for the information. Given that COMPTEL requested information from a discrete source, File No. EB-04-IH-0342, the method of the FCC's search appears to have been reasonable.

Similarly, the fact that the FCC produced one version of a particular document and not two different versions of the same document does not necessarily suggest that the search method was inadequate. Again, COMPTEL requested information only from a discrete FCC file.

As stated above, the adequacy of the agency's method is the key inquiry, "not whether additional responsive documents might exist." *COMPTEL*, 2012 WL 6604528, at *5 (citing *Steingberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994)). The Court holds that the FCC has produced sufficient evidence that it conducted an adequate search. The Court declines to order that the FCC provide additional explanation regarding why it produced email only from David Janas's account and declines to Order the FCC to produce the Consent Decree emailed to SBC on October 22, 2004.

### B.      Exemption (b)(4) Redactions

The FCC made redactions to a number of documents pursuant to Exemption 4 and now moves for judgment that it properly withheld information pursuant to this exemption. *See Vaughn* Index (noting redactions, pursuant to Exemption 4, to documents 13, 14b, 14c, 16, 19, 20a, 21, 26a, 27a, 31, 34a, 40, 41a, 42c, 43, 44, 47, 48, 57, 58, 59, 60, 64a, 64e, and 65d); Def.'s Mot. Summ. J. 2 [hereinafter Def.'s MSJ].

COMPTEL challenges only the FCC's redaction of documents 64a and 64e, which were redacted in their entirety. Pl.'s Mem. 17–21; and Pl.'s Opp'n 6–10. Where a party fails to address arguments raised by the opposing party's motion for summary judgment, the Court may treat those arguments as conceded.[3] Thus, the Court will treat the FCC's Exemption 4 redactions to documents *other than* 64a and 64e as proper and will grant summary judgment to the FCC with respect to the propriety of those redactions. However, as explained below, the FCC has not sufficiently justified the redaction of documents 64a and 64e, and the Court will order the FCC to produce these documents.

Document 64a is a draft Consent Decree initially prepared by FCC Enforcement Bureau staff, with proposed revisions from SBC. Lancaster Decl. ¶ 245. It is unclear if the document was sent as an attachment from SBC to the FCC. The FCC redacted the entire document pursuant to Exemption 4. The FCC provides the following justification for redacting the entirety of the document:

---

[3] *See Iweala v. Operational Techs. Servs., Inc.*, 634 F. Supp. 2d 73, 80–81 (D.D.C. 2009) (treating as conceded defendants' summary judgment arguments where plaintiff failed to respond in her opposition); *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) *aff'd* 98 Fed. App'x 8 (D.C. Cir. 2004) ("[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."); *cf.* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion; [or] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . .").

> [Document 64a] contains confidential commercial information that was voluntarily submitted to the FCC by employees of SBC for the purpose of settlement negotiations. Settlement negotiations, including documents prepared as part of the process, are not released to the public. In addition, disclosure would impair the Government's ability to obtain necessary information during the course of investigations and efficient resolutions thereof and would dissuade companies from engaging with the Agency [in] candid settlement negotiations to avoid costly litigation. There are no segregable portions of the document.

*Id.*

Document 64e is a draft compliance plan prepared by SBC as part of settlement negotiations of the Consent Decree. The FCC justifies redactions to 64e as follows:

> The entire document is protected from disclosure by Exemption 4 because it contains confidential commercial information that was voluntarily submitted to the FCC by employees of SBC for the purpose of settlement negotiations. Settlement negotiations, including documents prepared as part of the process, are not released to the public. In addition disclosure would impair the Government's ability to obtain necessary information during the course of investigations and efficient resolutions thereof and would dissuade companies from engaging with the Agency [in] candid settlement negotiations to avoid costly litigation. There are no segregable portions of the document.

*Id.* ¶ 249.

In its Memorandum of Points and Authorities in support of summary judgment, the FCC separately states that it withheld "commercial and competitively sensitive financial information related to potential settlement terms" from documents including 64a and 64e. Def.'s Mem. P. & A. in Support of Summ. J. 14 [hereinafter Def.'s Mem.].

As this Court noted in its earlier Memorandum Opinion,

> FOIA Exemption 4 protects from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). Because the FCC has not asserted that any redacted information contains trade secrets, the Court only addresses the test for "commercial or financial" information. Such information is exempt only if it is (1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential.

*See COMPTEL*, 2012 WL 6604528, at *7 (citing *Pub. Citizen Health Research Grp. v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983)).

The Court previously noted that the FCC "bears the burden in litigation to justify withholding any records." *Id.* at *4 (citing 5 U.S.C. § 552(a)(4)). The agency "must 'provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply'[;] 'conclusory and generalized allegations of exemptions are unacceptable.'" *Id.* (internal quotation marks omitted) (quoting *Judicial Watch,* 449 F.3d at 146 and *Morley,* 508 F.3d at 1115).

The Court held that the FCC's previous justifications for Exemption 4 withholdings were insufficient:

> By way of example, the index states that "competitively sensitive information regarding settlement negotiations" was redacted . . . . These sorts of conclusory assertions, without any additional description of the contents of the redacted information or reasons for non-disclosure, are insufficient to show that Exemption 4 was appropriately invoked. Not only do such assertions not demonstrate that the information was "commercial or financial," but in many cases the FCC has failed to even allege that the information was confidential or "obtained from a person" (something that is particularly important in documents drafted by FCC). These problems persist throughout the *Vaughn* Index.

*Id.* at *10.

The FCC's revised index does not fare much better than its last with respect to documents 64a and 64e. As the Court has already stated, the FCC has the burden to show that the information redacted is commercial or financial, in addition to demonstrating that it was obtained from a person and is privileged or confidential.

To address the first element, the FCC merely asserts, without any supporting detail, that documents 64a and 64e contain "confidential commercial information," Lancaster Decl. ¶¶ 245, 249, and "commercial and competitively sensitive financial information," Def.'s Mem. 14.

Apparently, the FCC asserts that the entirety of the documents consist of such information, given that it has argued that there are no segregable portions. However, merely labeling information as "commercial" or "financial" is exactly the sort of description that the Court has already rejected as inadequate. *See COMPTEL*, 2012 WL 6604528, at *10 ("[S]uch assertions do not demonstrate that the information was 'commercial or financial' . . . ."). As the Court noted in its December Memorandum Opinion, although the terms commercial and financial are defined broadly, they are not without limits and courts have rejected Exemption 4 protection for some information. *See id.* at * 7. For example, in *Chicago Tribune v. Federal Aviation Administration*, the Northern District of Illinois refused to label as "commercial or financial" data on the "nature and frequency of in-flight medical emergencies" on various airlines, in part because the data concerned chance encounters not bearing a particularly "direct relationship with the operations of a commercial venture . . . ." 1998 WL 242611, at *3 (N.D. Ill. 1998). Even with an incredibly broad definition of commercial or financial information, the government must at least provide the court with sufficient, non-conclusory detail to show that the information falls into this category.

With respect to the second element the agency must demonstrate, that the information was obtained from a person, the FCC also fails to meet its burden. The government notes that the Consent Decree was initially prepared by the FCC and that Document 64a was a version of this document with proposed revisions from SBC. The FCC does not explain how all portions of a document originally prepared by its own staff can be considered "obtained from a person." While it is possible that the government relied on information from SBC to draft parts of the original version, it seems unlikely, and the FCC has not met its burden to show, that this is true for the entire document.

Third, the FCC spills some ink justifying the categorization of information from these documents as "privileged or confidential." *See* Def.'s Mem. 13–14. The agency argues that the information satisfies the requirement for voluntarily submitted information, specifically, that it is of a kind that "'would customarily not be released to the public'" by SBC. *Id.* (quoting *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 879 (D.C. Cir. 1992)). Without more detail about the nature of the information, the Court cannot evaluate whether the FCC's assertion is correct on this point. More importantly, the privileged or confidential nature of the information is irrelevant if the FCC has not met its burden to show that the information was "commercial or financial" and "obtained from a person."

The Court notes that with respect to both documents, the FCC has asserted that there are "no segregable portions of the document." Lancaster Decl. ¶¶ 245, 249. The FCC does not explain why this is the case. As already stated, the Consent Decree was originally drafted by the FCC and any portions drafted by FCC staff do not qualify as "obtained from a person" unless they contain information provided by SBC. What's more, the Consent Decree was eventually made public and the terms of the Compliance Plan are reflected in that public Consent Decree. *See In the Matter of SBC Communications, Inc.*, 19 FCC Rcd 24014, 2004 WL 2913392 (2004). Any portions of the redacted documents mirroring the public versions cannot be redacted here. Finally, given the contents of the final Consent Decree and the fact that much of it does not contain commercial or financial information, it seems unlikely that there are no segregable portions of the documents.

In its Opposition to COMPTEL's motion for summary judgment and in its own motion for summary judgment, the FCC repeats the argument that "information exchanged within the context of settlement negotiations and otherwise commercial and sensitive in nature may be

properly withheld under Exemption (b)(4)." Def.'s Opp'n 16. The FCC cites *M/A-Com Information Systems, Inc. v. U.S. Department of Health and Human Services*. The FCC describes that case as "applying settlement privilege under Exemption 4." *Id.* However, this Court has already stated that, "to the extent the FCC redacted information under Exemption 4 *solely* because it relates to settlement, the Court would reject such a justification." *COMPTEL*, 2012 WL 6604528, at *9. The Court noted that the two page memorandum opinion in *M/A-Com* dealt with information that not only related to settlement negotiations, but that also qualified separately for Exemption 4 protection. *Id.* "Information regarding settlement negotiations may only qualify for Exemption 4 protection if it is (1) commercial or financial information; (2) obtained from a person; and (3) confidential." *Id.* As a result, the FCC cannot justify its Exemption 4 redactions from these documents merely by linking the documents to settlement discussions.

Finally, COMPTEL argues that the Court should take into consideration the context in which the information in documents 64a and 64e was provided and the fact that COMPTEL is made up of competitors to AT&T who wish to use FOIA "as an end-run attempt to obtain commercially confidential information . . . ." Def.'s Reply 5, ECF No. 76. This argument is unavailing for two reasons. First, the identity of a FOIA requester and the purpose of the request are irrelevant to whether Exemption 4 applies. *Cf. U.S. Dep't of Justice v. Reporter's Committee for Freedom of the Press*, 489 U.S. 749, 771 (1989) (noting, in the context of Exemption 7(C) that "[e]xcept for cases in which the objection to disclosure is based on a claim of privilege and the person requesting disclosure is the party protected by the privilege, the identity of the requesting party has no bearing on the merits of his or her FOIA request"); *id.* at 772 ("[W]hether disclosure . . . under Exemption 7(C) is warranted must turn on the nature of the

requested document and its relationship to 'the basic purpose of the [FOIA] to open agency action to the light of public scrutiny' rather than on the particular purpose for which the document is being requested." (internal quotation marks omitted)). Second, and more importantly, the FCC simply hasn't met its burden to show that this information is commercial or financial information, obtained from a person, *and* privileged or confidential. The identity of the requester and the purpose of the request are irrelevant to whether the agency has met its own burden to justify the invocation of a FOIA exemption.

In short, the FCC has not shown that Documents 64a and 64e were properly redacted under Exemption 4. Merely labeling information as "commercial or financial" in nature does not satisfy the government's burden to provide more than a "conclusory and generalized allegation" that Exemption 4 applies. Similarly, the FCC has not shown that all redacted portions of the documents were "obtained from a person" and "privileged or confidential." Finally, the FCC has failed to show that it redacted only information subject to an exemption and that no portion of the documents could be segregated. The Court will thus order the release of Documents 64a and 64e in their entirety.[4]

### C. Exemption (b)(5) Redactions

The FCC made redactions to a number of documents pursuant to Exemption 5 and moves for judgment that it properly withheld information pursuant to this exemption. *See Vaughn* Index (noting redactions, pursuant to Exemption 5, to all documents except 1e, 1f, 6g, 7e, 12d, 14a, 14b, 15b, 19, 20b, 20c, 23, 33b, 41a, 42a, 42c, 64a–64e, 65b–65d); Def.'s MSJ 2.

---

[4] Paragraph 246 of the Lancaster Declaration states, "[t]o the extent the text of the draft consent decree is the predecisional and deliberative work product of the FCC, it is also protected by Exemption 5, as discussed in paragraphs 242 through 244." However, paragraphs 242 through 244 deal with drafts of the consent decree that apparently were never shared with SBC. The FCC disclaims any intent to rely on Exemption 5 to redact the test of document 64a. Def.'s Opp'n 19. Thus, the Court does not understand Lancaster to suggest that the FCC claims Exemption 5 protection for this particular version of the draft Consent Decree.

COMPTEL challenges only the withholding of documents 64b and 64f under Exemption 5 and has thus conceded that the remaining Exemption 5 redactions were proper. The Court will thus grant summary judgment to the FCC with respect to the propriety of its Exemption 5 redactions on all documents except 64b and 64f. However, as explained below, the FCC has not sufficiently justified the redaction of 64b and 64f and the Court will order the FCC to produce these documents in full.

Documents 64b and 64f consist solely of handwritten notes by FCC attorney David Janas written on the draft Consent Decree (document 64a) and draft Compliance Plan (document 64e), respectively. Pl.'s Mem. 22. The FCC withheld Janas's notes because they "reflect[] opinions and impressions of SBC's proposed revisions to the draft consent decree, as well as strategies regarding the potential settlement." Lancaster Decl. ¶ 246 (referring to 64b); *see also id.* ¶ 250 (making the same argument with respect to 64f). The FCC argues that the notes are protected from disclosure under the deliberative process privilege because they relate to settlement negotiations that resulted in the Consent Decree. *Id.* ¶¶ 246, 250. The FCC also argues that they are "attorney work product made in furtherance of resolution of the case and mental impressions and opinions of settlement options." *Id.*

COMPTEL does not make clear whether it seeks access to Janas's notes or whether it objects to these redactions solely because it believes the FCC is shielding the text of the draft Consent Decree and Compliance Plan on which the notes are written. *See* Pl.'s Opp'n 10–13 (arguing that the FCC failed to show that the deliberative process or work product privileges exempted the text of the Consent Decree and Compliance Plan from disclosure). COMPTEL states:

> Document 64 is an 8 page document that the FCC has segmented into six sub-documents. As noted, COMPTEL is interested in only two of those sub-

>    documents, both of which were completely redacted: Document 64a (the draft Consent Decree as edited by SBC) and Document 64e (SBC's draft Compliance Plan).

Pl.'s Reply 12–13.

However, COMPTEL separately states that "[i]f Mr. Janas' handwritten notes were shared with SBC, they are not protected by the deliberative process or attorney-client privileges." Pl.'s Opp'n at 13; *see also* Pl.'s Reply 13 (making a similar statement and stating that the notes "must be produced" if they were shared with SBC). Thus, the Court understands COMPTEL to seek access to Janas's notes.

COMPTEL argues that the FCC has failed to demonstrate that the notes were not shared with SBC. Specifically, COMPTEL points to an odd statement in the Lancaster Declaration that, "if an email from SBC to the FCC attached a draft Consent Decree with handwritten notations by FCC staff, all pages of the document (email plus attachment) are accounted for" as "non-agency third party correspondence." Because document 64a (the draft consent decree upon which Janas's notes are written) appears to be the only draft consent decree in the *Vaughn* index which was sent from SBC to FCC, Lancaster's statement suggests that Janas's notes may have been shared with SBC. The FCC responds to COMPTEL's allegation by stating that the notes "represent Mr. Janas's views on how to respond to the information that SBC submitted, views that Mr. Janas only shared with other Agency personnel." Pl.'s Opp'n 20.

The Court cannot base its decision on statements included only in the FCC's Opposition, rather than in the agency's Declaration or *Vaughn* Index. Statements made by counsel in briefs are not admissible evidence upon which summary judgment may be granted. The FCC has thus

failed to meet its burden to show that the notes qualify for Exemption 5 protection and the Court will order productions of documents 64b and 64f.[5]

### D. Exemptions (b)(6) and (b)(7)(C) Redactions

The FCC moves for summary judgment that it properly withheld information pursuant to Exemption 6 and 7(C). Def.'s Mem. 20–23. By failing to respond to these arguments in its Opposition, COMPTEL has conceded the FCC's arguments. The Court will thus grant summary judgment to the FCC with respect to redactions made under Exemptions (b)(6) and (b)(7)(C).

### E. Additional Injunctive and Declaratory Relief

COMPTEL renews its request that the Court require the FCC to explain the basis for its July 20, 2005 statement that it was reviewing 3200 pages of documents, when in fact it ultimately identified around 548 pages. COMPTEL also asks that the Court declare that the FCC has violated the FOIA by engaging in unreasonable delays. The Court declines to grant either of these requests.

While FOIA does not specifically provide for declaratory relief, the Act "imposes no limits on courts' equitable powers in enforcing its terms." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) (citing *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 19–20 (1974)).

According to COMPTEL, the FCC stated in a July 2005 email that there might be 3200 pages of documents "potentially responsive" to COMPTEL's 2005 request. Pl.'s SMF ¶ 5; Def.'s Statement of Material Facts ¶ 5. The FCC ultimately informed COMPTEL that there were only around 548 pages of responsive documents. Lancaster Decl. 2 n.2. Since the July

---

[5] Apart from arguing that the notes may have been shared with SBC, COMPTEL does not challenge the FCC's redactions of Janas's notes. Thus, COMPTEL has conceded that, assuming the notes were not shared with SBC, the notes were otherwise properly redacted under the deliberative process and/or attorney work product privileges. *See supra* n.3.

18

2005 email, the FCC has submitted four sworn declarations to this Court, none of which have cited more than about 550 pages of responsive documents. The Court declines to require the FCC to explain this alleged discrepancy. Not only did the original estimate reflect "potentially" responsive documents, but it was included in an email, not a sworn document. Agency declarations are entitled to a presumption of good faith, *SafeCard*, 926 F.2d at 1200, and the Court credits the four sworn statements of the FCC that only around 550 pages of responsive documents were identified.

With respect to COMPTEL's request for a declaration that the FCC engaged in unlawful delays, the Court previously indicated its reluctance to issue such relief. "'[A] declaration that an agency's initial refusal to disclose requested information was unlawful, after the agency made that information available, would constitute an advisory opinion in contravention of Article III of the Constitution.'" *COMPTEL*, 2012 WL 6604528, at *5 (citing *Payne Enters.*, 837 F.2d at 491). "A party whose FOIA request has been satisfied, however, may seek declaratory relief if an 'agency policy or practice will impair the party's lawful access to information in the future.'" *Id.* (quoting *Payne Enters.*, 837 F.2d at 491).

With this Memorandum Opinion and the accompanying Order, the Court has granted COMPTEL all the relief to which it is entitled. COMPTEL has not provided any evidence that the FCC has an "agency policy or practice" that would impair COMPTEL's access to information in the future. Thus, the Court does not find that declaratory relief would be warranted or appropriate.

## IV.   CONCLUSION

Because the FCC has provided sufficient detail about the method of its search and the individuals performing the search, the Court holds that the FCC engaged in a reasonable search.

The Court declines to Order the FCC to provide an explanation for why it only released emails from the account of David Janas and declines to Order that the FCC produce the October 22, 2006 version of a draft Consent Decree.

The parties have considerably narrowed the areas of dispute, in part because COMPTEL does not address many of the FCC's arguments regarding the propriety of its redactions. Thus, the Court will grant summary judgment to the FCC with respect to its Exemption (b)(4) redactions on all documents except 64a and 64e; with respect to the its Exemption (b)(5) redactions on all documents except 64b and 64f; and with respect to all of its Exemption (b)(6) and (b)(7)(C) redactions..

The FCC has not sufficiently justified the redaction of the entirety of 64a and 64e pursuant to Exemption 4, and the Court will order the FCC to produce these documents.

The FCC has also failed to sufficiently justify the redaction of documents 64b and 64f, pursuant to Exemption 5, and the Court will order the FCC to produce these documents.

The Court declines to Order the FCC to account for the alleged discrepancy between its initial estimate of "potentially responsive" documents and the number of documents eventually released. The Court also declines to declare that the FCC unreasonably delayed responding to COMPTEL's request.

Signed by Royce C. Lamberth, Chief Judge, on May 20, 2013.